IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 3904 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Kevin Trudeau is one heck of a salesman. He is also a prolific author, self-described consumer advocate and "exposer of corporate and government corruption."[1] He is also an ex-felon[2] and, as discussed below, a contemnor of this court's orders. His favorite marketing tool is the "infomercial," a lengthy television advertisement that takes the form of a mock interview. Through this medium Mr. Trudeau has sold various products that he claimed could: cure numerous diseases, such as multiple sclerosis, cancer, substance abuse addictions, and arthritis (among many others); reverse hair loss; improve memory; and (apropos to the matter before the court) cause dramatic and permanent weight loss.

Naturally, Mr. Trudeau's activities drew the attention of the Federal Trade Commission. In 1998 and again in 2003 this court issued permanent injunctions against Mr. Trudeau concerning some of these activities. The 2003 case is back before the court on the FTC's motion

---

[1] These terms are taken from the book jacket of the weight loss book that is the subject of these proceedings.

[2] Mr. Trudeau has had two felony convictions in the early 1990s, one for depositing bad checks and one for credit card fraud.

for a rule to show cause why defendant Mr. Trudeau should not be held in contempt for violating a provision of that permanent injunction.

## FACTS

The 2003 litigation arose from Mr. Trudeau's marketing of coral calcium as a cure for many diseases, and of a product called "biotape," an adhesive pain relief product that supposedly eliminated pain from migraines, arthritis and sciatica. Despite the prohibition in the 2003 stipulated permanent injunction against false claims concerning coral calcium, Mr. Trudeau continued to represent that this product cured cancer. As a result, this court held him in contempt of the injunction. The parties ultimately resolved that matter by entering into a "Stipulated Final Order for Permanent Injunction" in September 2004, which prohibited Mr. Trudeau generally from producing or disseminating infomercials, with one narrow exception: he was allowed to make infomercials in connection with the advertising or promotion of publications such as books, provided that he "must not misrepresent the content of the book." He has since published several books, including Natural Cures "*They*" Don't Want You to Know About, Natural "Cures" Revealed: Previously Censored Brand Named Products that Cure Disease, and, most recently, The Weight Loss Cure "They" Don't Want You to Know About. It is the marketing of this last book through a series of three infomercials that brings Mr. Trudeau back to the attention of the FTC and the court.

**The Weight Loss Book**

The Weight Loss Cure "They" Don't Want You to Know About ("the Weight Loss Book") is a 255-page hardback volume copyrighted in 2007 and published by Alliance Publishing Group, Inc. of Elk Grove Village, Illinois. Mr. Trudeau's infomercials describes the Weight Loss Book as disclosing the "easiest," "simplest," and "most effective" diet for fast and permanent weight loss. The Weight Loss Book details a protocol consisting of four phases, the last of which is life-long. Each of these phases has mandatory "things you MUST do," "things you MUST NOT do," and "things STRONGLY SUGGESTED you do." Without describing the book in detail, these phases can be summarized as follows.[3] In Phase One (which the book states "is strongly recommended, but not required"), "things you MUST do" include: fifteen colonics (from a licensed colon therapist) within a 30-day period; drinking one half to one gallon of pure water with coral calcium supplements daily; walking outside for one hour each day; and consuming a number of specified foods, organic foods and food supplements. The list of "things you MUST NOT do" includes complete avoidance of "fast food, regional, or national chain restaurants," artificial sweeteners, specified fats and sugars, and <u>all</u> "non-prescription, over-the-counter or prescription medication (done only under the supervision of a physician)." Under the category of "STRONGLY SUGGESTED" are: deep breathing daily; 100% organic foods; yoga; massages; the use of shower filters; "play[ing] baroque classical music or other relaxing music at mealtime"; and playing a musical instrument. According to the book, dieters "should lose between five and thirty pounds during Phase 1."

---

[3]A complete list of "MUSTs," "MUST NOTs" and "STRONGLY SUGGESTED" do's and don'ts from the summary at pages 213 through 230 of the Weight Loss Book is attached as Appendix A.

After 30 days of this regimen the dieter enters Phase Two (which is mandatory and lasts three to six weeks), when he or she "MUST" be supervised under the care of a licensed physician, drink one half to one gallon pure water with coral calcium supplements daily, consume no more than 500 calories a day[4] for a 21- to 45-day period, consume a number of specified organic foods, and eat meals and snacks as directed in the Weight Loss Book. "MUST NOT" conduct includes "put[ting] nothing on the skin" and avoiding all nitrates, monosodium glutamate ("MSG"), artificial sweeteners, trans fats, and medications. It is "STRONGLY SUGGESTED" that dieters not: consume ice-cold drinks; be exposed to air conditioning or florescent lights; consume restaurant food; be exposed to advertisements for food or restaurants; use a microwave oven; or consume fresh fish. It is strongly recommended that one eat only 100% organic food, do deep breathing daily, "[w]ear a C-Link, E-Pendant, or use Biopro or other such devices," get massages, sing, dance and laugh often.

As if this list is not onerous enough, Phase 2 also <u>requires</u> the dieter to receive daily injections of human chorionic gonadotrophin ("HCG"), a hormonal pharmaceutical product that must be injected into deep muscles such as the upper buttocks. As stated in the book, HCG is available in the United States only by prescription, despite the fact that Phase 2 <u>prohibits</u> the use of all prescription medication. Additionally, as the book states, HCG is "one of the only pharmaceutical compounds that the FDA has specifically said should not be used in the treatment of obesity."[5] Receiving these injections, then, requires the dieter to do one of two

---

[4] As noted by the FTC, the National Institute for Health refers to any diet under 800 calories a day as a "very low calorie diet," intended for the obese and requiring supervision by a physician.

[5] According to the FDA's website, "FDA requires all labeling and advertising of HCG to state that it has not been demonstrated to be effective in the treatment of obesity. The ads must also

4

things: 1) travel outside the United States to obtain the substance without a prescription; or 2) find a doctor to prescribe HCG for a purpose not approved by the FDA and administer prescription injections in direct contravention of Phase Two's prohibition on prescription medications.

In Phase Three (also mandatory), the dieter "MUST" consume a number of specified organic and other food products, walk one hour a day outside, do a "colon cleanse" and colonics, eat six times a day, "[g]et personalized individual care from a licensed health care practitioner who does not use drugs and surgery," and drink one half to one gallon of pure water with coral calcium daily. The dieter "MUST NOT" consume sugar, starch, store-bought bottled, canned or cartoned juice, fast food, food from any "regional or national chain restaurant," certain sugars, meat, poultry, MSG, or trans fats. The Weight Loss Book "STRONGLY SUGGESTS" essentially the same items that were "STRONGLY SUGGESTED" in Phase Three, although it does add the use of "homeopathic human growth hormone."

Finally, the dieter comes to Phase Four, which is to last the rest of his or her life. The "MUST do" list includes (among other things): liver, parasite and colon cleanses; colonics; eating 100% organic foods; taking one hour walks outside daily; drinking one half to one gallon pure water with coral calcium supplements daily; a "supervised fast within twelve months"; and the consumption of other dietary supplements. The dieter "MUST NOT": ever use a microwave; consume fast food or any "regional or national chain restaurant food"; eat diet, low carb, low fat, non-fat, or "light" food, nitrates, MSG, artificial sweeteners, trans fats, or refined sugars; or use

---

state that HCG is not approved by FDA as safe and effective in treatment of obesity of weight control." See http://www.vm.cfsan.fda.gov/~dms/cos-822.html.

any "non-prescription, over-the-counter, or prescription drugs (must be done under the supervision of a licensed physician)." The Weight Loss Book "STRONGLY SUGGEST[S]" a number of special teas, yoga, resistance training, deep breathing, avoidance of "food from any restaurant," exposure to air conditioning and florescent lights, and a number of the other items contained in the previous phases.

Like Mr. Trudeau's other "cure" books, the Weight Loss Book has made the New York Times' bestseller list and is an enormous commercial success.

**The Infomercials**

The first infomercial about which the FTC complains was produced on or around December 23, 2006[6] and was followed by two other infomercials in January and July of 2007. In these infomercials, Mr. Trudeau is "interviewed" about the Weight Loss Book, as well as several other items that he is promoting. The FTC's motion for rule to show cause focuses on repeated references in the infomercials to the purported fact that the diet described in the Weight Loss Book is "easy," and that consumers will be able to eat whatever they want after completing the four-phase program. Throughout Mr. Trudeau's infomercials, he repeatedly states that the diet is "very easy to do . . . you don't have to go to a clinic to do it. You can do it at home. . . . I can attest, it was the easiest, simplest, most effective thing I've ever done. . . . The diet was 'the easiest method known on planet Earth.'"

---

[6]Apparently, the December 2006 infomercial was produced prior to Mr. Trudeau's obtaining the copyright on the Weight Loss Book in 2007.

Mr. Trudeau also repeats throughout the infomercials that after the four phase protocol is completed, "you're done with the protocol, eat whatever you want and you don't gain the weight back." Referring to his own experience after purportedly having taken the "cure," Mr. Trudeau states in a dialog with the supposed interviewer, "I've been off the program now . . . guess what I can eat? Anything." [Interviewer] "Nothing is restricted?" [Mr. Trudeau] "Oh, let's see, I had mashed potatoes and gravy, the mashed potatoes were real mashed potatoes loaded with cream and butter, gravy loaded with fat. I had a big prime rib marbled with fat. For dessert I had a big hot fudge sundae with real ice cream, real hot fudge, real nuts and real whipped cream." He further states that "you'll keep the weight off forever. You'll never have to diet again."

## **DISCUSSION**

This court has the inherent power to enforce its orders through civil contempt proceedings. Shillitani v. United States, 384 U.S. 364, 370 (1966); Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir. 1999). The FTC, as a party to the original action, can invoke the court's power by initiating a proceeding for civil contempt. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 44-45 (1911). To establish defendant's liability for civil contempt, the FTC must show by clear and convincing evidence that: 1) a valid court order existed; 2) defendant had knowledge of the order; and 3) defendant failed to comply with the order. Stotler & Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989). Once the FTC makes such a prima facie showing, the burden then shifts to defendant to demonstrate why he was unable to comply with the order. FTC v. Think Achievement Corp., 144 F. Supp. 2d 1029, 1034 (N.D. Ind. 2001), aff'd in part, 312 F.3d 259 (7th Cir. 2002).

7

To hold defendant in contempt, the court need not find that defendant willfully violated the order; the court need only find that defendant has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." Goluba v. School Dist. of Ripon, 45 F.3d 1035, 1037 (7th Cir. 1995). If the court finds defendant in contempt of the original order, it may impose civil sanctions to coerce compliance with the order and to compensate parties for harm suffered as a result of defendant's non-compliance. United States v. United Mine Workers of America, 330 U.S. 258, 303-04 (1947).

The order in question is simple and direct. Although Mr. Trudeau was permitted to publish the book, and although that book is protected by the First Amendment and allows Mr. Trudeau to express opinions or say pretty much anything he wishes, his marketing of such a book "must not misrepresent the content of the book." As demonstrated above, Mr. Trudeau's infomercials clearly violate this order.

"It's Easy! You Can Do It At Home!"

Mr. Trudeau states ad nauseum in his infomercials that his diet is "easy." As the FTC points out, the dietary regimen prescribed by the Weight Loss Book is anything but. The definitions of "easy" provided by Webster's include: "causing or involving little difficulty or discomfort"; "requiring or indicating little effort, thought, or reflection"; "not severe"; "not difficult to endure or undergo"; and "not hurried or strenuous." The diet described by Mr. Trudeau fits none of these descriptions. Nowhere in the infomercials does Trudeau make any mention of the colonics, the organ "cleanses," the requirement of walking a mile a day outdoors, the need to only 100% organic foods, or the specified supplements and food products. He also

8

fails to mention that the diet requires fifteen colonics in a 30-day period and a 500-calorie per day limit necessitating a physician's supervision.

Perhaps most significant, though, is the fact that Mr. Trudeau tells his viewers that the diet is so easy that they can "do it at home." He forgets to mention, of course, that HCG is available only by a trip to Europe or a doctor willing to prescribe the drug for a use not approved by the FDA . Perhaps Mr. Trudeau thinks doctors still make house calls, and that somehow this substance, available only by prescription (and, of course, not for weight loss purposes), is acceptable when <u>all</u> <u>other</u> prescription medications are prohibited by the diet. More likely, he is simply misrepresenting the content of the Weight Loss Book.

Mr. Trudeau, through skilled counsel, raises a number of defenses to the instant motion. His primary argument is that most of the infomercial language about which the FTC complains represents "opinion" that is protected by the First Amendment and, in any case, does not misrepresent the content of the book. With respect to Trudeau's repeated statements that the Weight Loss Book's protocol is "easy," defendant relies heavily on <u>Carlay Co. v. Federal Trade Commission</u>, 153 F.2d 493 (7th Cir. 1946), in which the Seventh Circuit observed that the term "easy . . . obviously is one of comparative or relative connotation. Whether one plan is easy and another hard, whether one is easier than another, whether one simple and another intricate, are all questions of comparative character and quality." <u>Id</u>. at 496. Thus, Mr. Trudeau argues, his statements that the protocol is "easy" are mere puffing and expression of opinion. He also argues that many of the more onerous aspects of the protocol are "optional," such as the colonics in Phase One, which, according to the book, is not required but highly recommended. Of course, the colonics are also part of Phase Four, which is required, and the injections of HCG, a non-

9

FDA approved hormone, are mandatory, as are a large number of the onerous dietary and lifestyle restrictions and requirements of the protocol.

Mr. Trudeau also fails to mention that many courts have found the use of the word "easy" to be more than mere puffing for more than fifty years. The Supreme Court found the statements that a dieter could shed pounds "easily" and "without tortuous diet" to be more than puffing when the facts clearly demonstrated that the advertisements for the diet in question misrepresented the actual program dieters had to follow. Reilly v. Pinkus, 338 U.S. 269, 271-75 (1949). The Ninth Circuit found the use of the phrase "easily learned" to be more than puffing because the technique in question was, in fact, difficult to learn. Goodman v. Federal Trade Commission, 244 F.2d 584, 597, 603 n. 43 (9th Cir. 1957). The D.C. Circuit found the term "easy credit," as used by a jewelry store making loans, to be misleading when such loans involved purchasing jewelry at "unconscionably high prices" and garnishing of the purchaser's wages after receiving such credit. Tashof v. Federal Trade Commission, 437 F.2d 707, 712 (D.C. Cir. 1970). Mr. Trudeau is simply incorrect that the term "easy" is always puffing or the expression of an opinion, and he is certainly incorrect as to its use in the instant case.

Additionally, the instant case differs from the cases relied upon by defendant in disputing the FTC's argument because it arises in the context of a contempt proceeding. This court ordered Mr. Trudeau not to mispresent the "content" of his books.[7] Despite Mr. Trudeau's

---

[7]As noted by the FTC, Mr. Trudeau expressly waived his "right to engage in speech protected by the First Amendment" in the Order, and that waiver was "voluntary, knowing, and intelligently made" as required in the context of constitutional rights. D.H. Overmyer Co., Inc. v. Frick, 405 U.S. 174, 185 (1972). Additionally, despite Mr. Trudeau's arguments to the contrary, his infomercials are quite clearly commercial speech; indeed, their entire purpose is to entice viewers to enter into a commercial transaction–the purchase of his book. Misleading commercial speech, such as the language at issue in the instant case, is entitled to no First

10

assertions, the word "content" does not refer to a few cherry-picked phrases. Again, according to Webster's, the word "content" means "all that is contained in something; everything inside." It refers to the book as a whole, and in this court's opinion, the protocol described in the Weight Loss Book as a whole is anything but "easy" under any definition. Mr. Trudeau cannot change the content of his book by stating that the diet is "easy to do" in a few select places. In fact, he states unequivocally in other portions of his book that the protocol is "overwhelming," "difficult," and "impossible" to follow all the time—only supporting the FTC's point. Even more important, though, is that the average consumer purchasing Mr. Trudeau's book after viewing his infomercials would be quite surprised to learn what was required of him or her to achieve the miraculous and permanent weight loss touted by the ads—daily hormone injections, colonics, and a calorie intake restriction requiring a doctor's supervision. Mr. Trudeau clearly misrepresents in his advertisements the difficulty of the diet described in his book, and by doing so, he has misled thousands of consumers.

"You Can Eat Anything You Want!"

Mr. Trudeau also states repeatedly in his infomercials that anyone who finishes the Weight Loss Book's protocol can eat "anything they want" without any dietary restrictions. As mentioned above, the following exchange, or one nearly identical to it, takes place in each of Mr. Trudeau's infomercials for the Weight Loss Book: "I've been off the program now . . . guess what I can eat? Anything." [Interviewer] "Nothing is restricted?" [Mr. Trudeau] "Oh, let's see, I

---

Amendment protection. See, e.g., Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 562-63 (1980).

had mashed potatoes and gravy, the mashed potatoes were real mashed potatoes loaded with cream and butter, gravy loaded with fat. I had a big prime rib marbled with fat. For dessert I had a big hot fudge sundae with real ice cream, real hot fudge, real nuts and real whipped cream." According to Mr. Trudeau, when "you're done with the protocol, eat whatever you want and you don't gain the weight back."

These claims are patently false. Phase Four of the protocol is described repeatedly as lasting "the rest of your life." As noted by the FTC, the fact that the protocol lasts until the dieter dies necessarily means that the dieter can <u>never</u> complete the protocol. The diet is also, of course, a far cry from one with "no restrictions." Phase 4 has, in fact, <u>50</u> such restrictions, including, among others: a strict regimen of only 100% organic foods; complete avoidance of all "fast food, regional or national chain restaurant food"; no "brand name" food—i.e., no food "produced by large publicly traded corporations"; no highly refined sugars, including corn syrup, fructose, and dextrose; no artificial sweeteners; no trans fats; no monosodium glutamate; no food with nitrites; no farm-raised fish; no food cooked in a microwave; and no "diet, low carb, low fat, non-fat, or 'lite' food."

How Mr. Trudeau was able to eat a "big" portion of prime rib "marbled with fat" and a "big hot fudge sundae with real ice cream, real hot fudge, real nuts and real whipped cream" and still follow Phase 4 of his own protocol remains a mystery. As far as this court can tell, it is impossible. More importantly, though, it is misleading, and it misrepresents the content of his book in flagrant violation of this court's order.

## **CONCLUSION**

As discussed above, Mr. Trudeau has violated this court's order. He has misrepresented the content of his book by stating in his infomercials that his diet protocol was "easy" and that it allowed dieters to "eat whatever they want," and he has misled thousands of consumers. For these reasons, the court holds Mr. Trudeau in contempt. By separate order, the court will set a hearing to determine the appropriate remedy in light of this opinion.

**ENTER:** **November 16, 2007**

_____
**Robert W. Gettleman
United States District Judge**