# EXHIBIT A

1

1       IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3   FEDERAL TRADE COMMISSION,        )
                                     )
4                    Plaintiff,      )
                                     )  No. 03 C 3904
5            vs.                     )  Chicago, Illinois
                                     )  September 27, 2007
6   KEVIN TRUDEAU,                   )  9:15 a.m.
                                     )
7                    Defendant.      )

8

         TRANSCRIPT OF PROCEEDINGS - MOTION
9
       BEFORE THE HONORABLE ROBERT W. GETTLEMAN
10
    APPEARANCES:
11
    For the Plaintiff:        FEDERAL TRADE COMMISSION
12                            601 New Jersey Avenue, NW
                              Suite 2215
13                            Washington, DC 20001
                              BY:  MS. LAUREEN KAPIN
14                                 MS. SANDHYA PRABHU

15                            FEDERAL TRADE COMMISSION
                              55 West Monroe Street
16                            Suite 1825
                              Chicago, Illinois 60603
17                            BY:  MR. DAVID O'TOOLE

18
    For the Defendant Trudeau:  JENNER & BLOCK, LLC
19                            One IBM Plaza
                              Chicago, Illinois 60611
20                            BY:  MR. DAVID J. BRADFORD
                                   MR. DANIEL J. HURTADO
21

22

23  Official Court Reporter:  JENNIFER S. COSTALES, CRR, RMR
                              219 South Dearborn Street
24                            Room 1706
                              Chicago, Illinois 60604
25                            (312) 427-5351

2

1    (Proceedings in open court.)

2        THE CLERK:  03 C 3904, FTC versus Kevin Trudeau;

3    plaintiff's motion.

4        MR. BRADFORD:  Good morning, Your Honor.

5        David Bradford and Dan Hurtado on behalf of Mr. Trudeau.

6        MS. KAPIN:  Good morning, Your Honor.

7        I'm Laureen Kapin representing the Federal Trade

8    Commission.  I'm here with my colleague Sandhya Prabhu and David

9    O'Toole.

10        THE COURT:  The case that keeps giving or taking, I

11   don't know, depending on how you look at it.

12        All right.  I've read the motion.  I haven't looked at

13   these infomercials, nor have I read the book.  I was going to

14   joke and say I'd wait for the movie, but there probably will be a

15   movie on this one.

16        MS. KAPIN:  We urge you to do both, Your Honor.

17        THE COURT:  Well, you can tell by looking at me this is

18   not the kind of book that I would ordinarily be reading.  That

19   being the case, I do understand the nature of the motion.  I

20   guess where should we go from here?

21        MR. BRADFORD:  Your Honor, we did file a preliminary

22   response.

23        THE COURT:  I haven't seen that.

24        MR. BRADFORD:  Okay.

25        THE COURT:  When was it filed?

1    MR. BRADFORD:  It was filed on Tuesday.  And the gist,

2  the gist of the response, if I may, was to indicate, first of

3  all, we had discussed that we would file, and I think the FTC

4  agreed, a fuller response to the motion by the 2nd, which is I

5  believe next Tuesday.  And with the Court's agreement, they would

6  file a reply on October 16th, and we would schedule this for

7  argument.

8    It's our view that the advertisements are a mirror image

9  of the informercial and that there is a well established doctrine

10  that if advertisements for a book do nothing more than accurately

11  recount what's in the book, it does not matter if the book is

12  right or wrong, that's all core protected First Amendment speech.

13    We think we can lay that out for you in a response and

14  show the appropriate excerpts from the book and the excerpts from

15  the infomercial and why the infomercial does nothing more than

16  recount accurately what's in the book and why under the law

17  that's fully protected.

18    If Your Honor finds based upon that submission and

19  argument that the order has been violated, then I think we will

20  need a hearing to determine remedy and whether Mr. Trudeau

21  exercised reasonable diligence such that he should not be held in

22  contempt, but that the issue of whether the order has been

23  violated or not can be determined from the face of the transcript

24  of the infomercials and the appropriate excerpts from the book.

25  And I think both sides would like to be heard on that.  So if

 1 that's agreeable to the Court, that's what we would propose.

 2         MS. KAPIN:  Your Honor, we're here today seeking a show
 3 cause order for Mr. Trudeau to show cause why he shouldn't be
 4 held in contempt and appear for a hearing.  Procedurally
 5 speaking, we believe that is the next step.

 6         We are in agreement with Mr. Bradford about their
 7 response date, and we are in agreement among ourselves as to the
 8 date of a reply for the Federal Trade Commission with the Court's
 9 permission, of course.

10         In terms of the substance, we are here because we
11 believe that Mr. Trudeau has misrepresented the contents of the
12 book, and even Mr. Trudeau's counsel agrees that the mirror image
13 doctrine to the extent it applies at all, and we believe it does
14 not apply, it wouldn't apply if Mr. Trudeau has misrepresented
15 the contents of his book.

16         We state in our brief and we believe the proof is in the
17 pudding, the pudding consisting of the infomercial as compared to
18 the book, that Mr. Trudeau has violated Your Honor's order which
19 specifically stated he shall not misrepresent the contents of a
20 book in an infomercial.  And he has violated that order by
21 representing that the protocol in his book is easy and would
22 allow consumers to, once they finish the protocol, eat whatever
23 they want, including hot fudge sundaes and pasta and mashed
24 potatoes with gravy without regaining any weight.

25         We believe those are clear misrepresentations of the

5

1  contents of the book, which requires very arduous procedures,

2  including intragluteal injections every day in the buttocks of a

3  substance that is only available by prescription, that is not

4  even approved for the purpose which Mr. Trudeau is advocating it

5  be used for, that is, weight loss.

6          THE COURT:  I think you're getting into your argument at

7  this point.  I've read your brief.  I understand where you are

8  coming from.  I think what I hear is a basic agreement that the

9  issue of whether the order was violated can be determined from

10 the materials you've submitted, the infomercials themselves and

11 the book.

12         MS. KAPIN:  We are in agreement on that, Your Honor.

13         THE COURT:  And so before issuing a show cause,

14 obviously, I would want to make that determination.  So I think

15 Mr. Bradford's procedural description is accurate enough.

16 Obviously, you know, these things collapse into an ultimate

17 decision on whether somebody has committed contempt.

18         I mean, if I were to find after that hearing that he

19 violated it, to order him to show cause would be almost

20 superfluous, wouldn't you say?  You're showing, in a sense, your

21 response is showing cause why he shouldn't be held in contempt.

22         MS. KAPIN:  Well, I'm not going to represent that

23 procedurally things are clear in the case law about this.  But I

24 have been able to find some things that basically say even in

25 this district that once we come forward and give the defendant

1  fair notice, that essentially the next step is a show cause for

2  them to respond why Mr. Trudeau shouldn't be held in contempt and

3  then adhering --

4          THE COURT:  Well, I think I have discretion --

5          MS. KAPIN:  Sure.

6          THE COURT:  -- on how to handle the hearing.  And I'm

7  collapsing the show cause and the actual finding into one

8  proceeding.  I'm happy to do that.  It makes sense.

9          I don't want -- I have not seen the infomercials.  I've

10  just read your brief about what -- I just got this.  Maybe you

11  filed it a while back, but I just looked at it.  And you've given

12  me, you know, this looks like my yearly supply of Netflix here.

13  You've given me a whole bunch of these things.

14          MS. KAPIN:  Well, there is three different infomercials.

15          THE COURT:  And I know from the last time watching these

16  infomercials, it's not, you know, it's not like a commercial, a

17  30-second spot.

18          MS. KAPIN:  They're about 30 minutes.

19          THE COURT:  I know.  Sitting through -- I've said this

20  before, I'm not an infomercial person.  The only time I've ever

21  seen one I think is in this case.

22          So I'm happy to look at it, and I'm not happy to look at

23  it, but I'll look at them.  And, of course, you've given me, in

24  all fairness, you've given me excerpts of transcripts and that

25  sort of thing.  So the job isn't quite as onerous as it might be,

1 and I can go right to the pages you're referring to in the book

2 and look at that. I'm just not prepared, I haven't done that

3 yet, so I'm not prepared to issue a show cause today.

4 But I'm telling you right now when I do see you, you'll

5 have a full opportunity to present whatever claims or defenses

6 there are to this. I may make a finding, if I find against

7 Mr. Trudeau, I may make a finding that he's in contempt of court.

8 MR. BRADFORD: Your Honor, with respect to that latter

9 issue --

10 THE COURT: That doesn't mean we don't get to the remedy

11 and all the rest of it, but because of the way you're requesting

12 this to happen procedurally, which I happen to agree with as a

13 matter of, you know, expeditious use of judicial resources, I may

14 collapse the two things into one.

15 MR. BRADFORD: Your Honor, I think there is another

16 component to the contempt other than a violation of the order,

17 and that is whether or not he exercised reasonable diligence.

18 So, for example, if Your Honor determined that this did

19 misrepresent the book, but it did so in a way where he was acting

20 on advice of counsel, this was reviewed by multiple parties, the

21 FTC approved similar types of programs and so forth, and it is

22 what I would term a good faith misunderstanding of the terms of

23 the order. That is not contempt. I think the law is clear on

24 that.

25 THE COURT: Well, maybe we should have all of that in

1  one proceeding then.

2        MR. BRADFORD:  We're happy to do that.  It seemed to

3  us -- and we're happy to go which ever way the Court prefers,

4  whatever is most efficient.  It did seem to us that if the Court

5  determines the order have been violated, we can sit down with the

6  FTC and see where we can go from there in terms of remedy and

7  related issues.  But I don't want to leave a record --

8        THE COURT:  But the violation wouldn't occur unless I

9  reach those issues that you just mentioned.

10        MR. BRADFORD:  I think they would have made a prima

11  facie showing that the order is violated.  I don't think they

12  would have proved that he acted in contempt of the order, that

13  is, knowing that he had obligations, consciously disregarding

14  those obligations.

15        But I think the threshold issue is:  Does the

16  advertisement misrepresent the book?  If it doesn't, we're done.

17  We don't have to get into those issues.  We believe you're going

18  to find that everything she's talked about down to the sundaes

19  are in the book, that there is nothing that's in the infomercial

20  that's not in the book, and that that's fully protected.  But if

21  you don't, then we have the issue of good faith.

22        I'm happy to address that all at one hearing, but we'll

23  need witnesses then.

24        THE COURT:  Well, then I do, too.  I don't want -- yeah,

25  I don't want to piecemeal this into little, you know, bite size

1  pieces, because it will just drag it out. Are these infomercials

2  running?

3         MR. BRADFORD: They have been running for about eight

4  months, Your Honor. That's part of our reason for concern here

5  in terms of the way this has been approached. Your Honor advised

6  us last time if there was an issue, to try to work that out.

7  We've been in dialogue with the FTC about a variety of issues.

8  Nobody ever said a word to us. They just filed this motion after

9  this show has been running for approximately eight months. It

10 came completely out of the blue, with no opportunity for

11 dialogue, with no question of, if you put this disclaimer or that

12 on it, we wouldn't have a problem.

13        Of course, they want to go back and seek consumer

14 redress for every sale that has been made while they have allowed

15 this to continue to run.

16        I will indicate that the very filing of this action and

17 the press release that the FTC put out when they filed the action

18 has had an impact on the ability to find stations willing to air

19 the infomercial. But it is continuing to run, and it would

20 clearly be a prior restraint to prohibit it from running.

21        I should also indicate, as the FTC knows, Mr. Trudeau

22 has no control over the infomercial. He is not the one who owns

23 the infomercial. He appeared in these infomercials, and he wrote

24 the book. But the infomercial is the property of another party.

25 And the FTC cannot -- that other party has control over whether

10

1  or not the infomercials will or will not appear.

2          MS. KAPIN:  Your Honor, just to respond, as Mr. Bradford

3  stated himself during the September 12th hearing, he stated,

4  "We'll make every effort to submit to the FTC anything we think

5  is even close to the line."  In our view this isn't even close to

6  the line.  This goes way over the line.  And no effort was made

7  to submit these infomercials to us.

8          Had that happened, we probably would have had a

9  dialogue, and, indeed, we may not even have ended up here.  We

10 might have been able to work it out between ourselves.

11         But you clearly advised Mr. Trudeau during that hearing,

12 "Run it by your lawyer so he can go through the channels he has

13 to go through before you're in a position where you can be in

14 contempt."

15         That did not come at least to our door.  I have no idea

16 what happened between Mr. Trudeau and his lawyers.  But to say

17 that this comes out of the blue, when Mr. Trudeau himself did not

18 pick up the phone, knock on our door, seek some input on this

19 infomercial, it is just throwing stones in the wrong direction,

20 Your Honor.

21         And in terms of control of the infomercial, our view is

22 Mr. Trudeau is in contempt of the Court's order stating he shall

23 not misrepresent books.  If it is the fact that Mr. Trudeau is

24 not in control, then the burden is on Mr. Trudeau and his counsel

25 to show that he cannot comply with the Court's order.  Just a

1  mere assertion that he doesn't control it isn't going to be

2  enough if the Court indeed finds he's in contempt of the order.

3  He has to show that he's making all efforts, and best efforts

4  indeed, to comply with the Court's order stating he shall not

5  misrepresent the contents of the books.

6        THE COURT:  That's remedy, that's remedy.  That's not

7  contempt.  That's a remedy for contempt.

8        Now, I want to deal with all these things in this

9  context, and I'd like to do it next month.  And I'll set some

10 time aside, and you can present what you want to present.  I will

11 commit to having viewed, how many?  We have three is what you

12 said in your motion.

13       MS. KAPIN:  There is three separate infomercials.  The

14 reason you have five, five DVDs is that two are available on the

15 Internet as well, and we've provided those to show how they are

16 available.

17       THE COURT:  They are the same?

18       MS. KAPIN:  They are the same.

19       THE COURT:  Okay.

20       MS. KAPIN:  So you see, Your Honor, there aren't five.

21 There are only three that you have to watch.

22       MR. BRADFORD:  Your Honor, I just want to be clear.

23       THE COURT:  Lucky me.

24       MR. BRADFORD:  The schedule we discussed, and this was

25 reflected in the preliminary submission, which I apologize the

1  Court did not receive, was that we would respond to this issue of

2  whether or not the infomercial violated the order, that is,

3  whether it misdescribed the book by next Tuesday.

4         If we're going to have to respond on everything

5  including due diligence, we would certainly ask for more time

6  than that to respond.

7         MS. KAPIN:  Our only concern here, Your Honor, is the

8  infomercials are still running.  And we presume that by

9  submitting our papers that this would be subject to a rather

10  expedited proceeding.  We will try and agree to what's

11  reasonable, but --

12         THE COURT:  Well, you've got to give me time to read

13  what you send in.

14         MS. KAPIN:  Of course, Your Honor.

15         THE COURT:  And I wanted to do this before, I'm going

16  away the first two weeks in November, and I don't want to be, I

17  don't want -- I wanted to do this before then.

18         MR. BRADFORD:  Your Honor, I'm leaving the country

19  October 25.  I've got a closing argument.

20         THE COURT:  Where will you be?  Maybe we can do this in

21  Paris.  I'm going to Paris.

22         MR. BRADFORD:  I'm going to Thailand, I'm afraid to say,

23  but we could meet in the middle.  I think this is going to be

24  difficult to get done in that time frame.

25         THE COURT:  The only date I really would have for you is

1 the 26th.  If you're going to be out of the country, then that's
2 not going to work.

3 　　　　　MR. BRADFORD:  I am back the 8th and obviously prepared
4 to go as soon as Your Honor returns.

5 　　　　　THE COURT:  It's not that easy, not that easy.  I'd
6 rather do this all at one time and deal with all these issues at
7 one time.  I think it would be easier for everybody.

8 　　　　　MR. BRADFORD:  I do think we can do this --

9 　　　　　THE COURT:  He's in jeopardy.  I mean, if these things
10 are running, and he has control over them, you know, if he is
11 found in contempt, the longer they run, the more they run,
12 obviously, the greater jeopardy he's in.  I can't tell you any
13 more than that.

14 　　　　　MR. BRADFORD:  Right.  And I do think that it would,
15 particularly in light of the scheduling issues, that we don't
16 need to call witnesses.  It's a burden on Your Honor, I know,
17 because it requires looking at excerpts of the book and the
18 infomercial.  As I said, we will try to alleviate that burden by
19 at least pointing to particular excerpts that we think make it
20 very clear that mirror image applies here, and that there is no
21 violation, and that this is really an unprecedented departure
22 from the standard that's been applicable in the past by the FTC.

23 　　　　　But Your Honor will form his own judgment about that.
24 If you find that the infomercial misdescribes the book, we
25 understand we have a very serious problem.  And I would suspect

1  we will try to address that problem before Your Honor addresses

2  that problem at a hearing on remedy and diligence.

3          I would note that that happened the last go round.  As I

4  recall, Your Honor found that there was a violation I believe in

5  relation to a preliminary injunction.  The parties were able to

6  agree on remedy, and we came forward with an agreed resolution.

7  So there is some precedent for that.

8          Again, I'm happy to do this however the Court wants, but

9  we could be back I assume before the end of October simply to

10  have oral argument, and we could submit something that addresses

11  the more narrow issue with respect to the mirror image doctrine

12  by early next week.

13          THE COURT:  All right.  I'm going to change my mind.  I

14  would like to make -- I don't like these things.  If these

15  infomercials are inaccurate, I don't want them running until the

16  end of November or early December, which is what we're talking

17  about.  And if I were to find that there is a misrepresentation,

18  I may issue some sort of remedial order at that point regardless

19  of your other defenses.  You can do with that what you want.  If

20  I don't, obviously, then as Mr. Bradford says, we don't have to

21  do anything else.

22          I don't like piecemealing it, but I guess that may be

23  the best thing to do given the time restraints that we have.  So

24  get your brief in by the 2nd.

25          I don't know why I didn't see your brief.  Did you drop

15

1 it off in hard copy, because I know my secretary has been sort of

2 gathering this stuff.

3          MR. HURTADO:  Our docketing department should know your

4 procedures, Your Honor.  I don't know whether they did drop it

5 off in hard copy.

6          THE COURT:  It is our default procedure here.  You know,

7 we've got all these exhibits.

8          MR. BRADFORD:  We do have another copy here.

9          THE COURT:  Well, okay.

10          MR. BRADFORD:  I have a doodle on the back, but I can

11 take off the certificate of service and tender it to the Court if

12 that's acceptable?

13          THE COURT:  If the doodle has something to do with

14 weight loss, maybe I don't mind it.

15          MS. KAPIN:  It doesn't seem like a disparaging doodle.

16          MR. BRADFORD:  May I tender that to the Court?

17          THE COURT:  Sure.

18          MR. BRADFORD:  Thank you.

19          THE COURT:  I'm probably going to wait for your other

20 one anyway.

21          MR. BRADFORD:  Certainly.

22          THE COURT:  Get me yours by the 16th, and then I'll set

23 this for --

24          MS. KAPIN:  Are you available on the 24th by any chance,

25 Your Honor?

16

1        THE COURT:  No.  It's a bad day.

2        MS. KAPIN:  Bad day.

3        THE COURT:  The 22nd is a good day.

4        MR. BRADFORD:  We may still have a problem.  I am

5   scheduled to give a closing argument in a bench trial that's

6   concluded, but we've been ordered back for closings.  I've tried

7   to move that date or other reasons, and I've been unable to.  And

8   on the 23rd, I'm committed to a multiparty settlement conference.

9   The 25th is the date that I leave the country.  The closing

10  argument is out in California.  I think none of these are things

11  where we can do two things in a day unfortunately.

12       THE COURT:  Well, I have the 19th open, too.  But that

13  wouldn't give me a lot of time after the reply brief.  I guess I

14  could try to get ahead of the schedule.

15       MR. HURTADO:  Would the FTC like to perhaps accelerate

16  their reply?

17       MS. KAPIN:  We can get our reply in by the 12th.

18       THE COURT:  Okay.  That would help.  I'll be away on the

19  12th, but that means I can see it when I get back and, of course,

20  my clerks will.  All right.  The 19th then at 9:30.

21       MS. KAPIN:  Your Honor, just as a matter of --

22       THE COURT:  I'll set aside two hours.

23       MS. KAPIN:  Your Honor, just as a matter of

24  housekeeping, the current FTC counsel is different than the FTC

25  counsel from the prior matter.  And we'd like to move to

17

1  substitute myself and my --

2          THE COURT:  Were you involved before?

3          MR. O'TOOLE:  I was not, Your Honor.

4          THE COURT:  You're in the other case?

5          MR. O'TOOLE:  Other two.  I'll see you tomorrow.

6          THE COURT:  Yes.

7          MS. KAPIN:  We wanted to move to substitute myself,

8  Ms. Tucci, Ms. Prabhu, and Mr. O'Toole as current counsel and

9  remove the previous counsel of record.

10          THE COURT:  Okay.  Are you from Washington?

11          MS. KAPIN:  Yes, we are from Washington.

12          THE COURT:  Can I have your names again, please?

13          MS. KAPIN:  Yes.  It's Laureen, L-a-u-r-e-e-n, Kapin,

14  K-a-p-i-n.

15          THE COURT:  Okay.

16          MS. KAPIN:  Sandhya, S-a-n-d-h-y-a, Prabhu, P-r-a-b-h-u;

17  one more colleague from Washington who is not here today,

18  Elizabeth Tucci, T-u-c-c-i; and Mr. O'Toole, David O'Toole.

19          There are several other attorneys of record in the prior

20  case who will not appear in this case, and we're requesting that

21  they no longer be sent activity notices through the electronic

22  case filing system.

23          THE COURT:  We had some AUSAs here, which we'll take

24  off.  So it will just be the four of you.  Are you still at 600

25  Pennsylvania?

1          MS. KAPIN:  We are at 601 New Jersey Avenue.  We're
2 happy to do this, we actually have a copy of a motion.
3          THE COURT:  Go ahead, yes.  Well, I have notes, too.
4          MS. KAPIN:  Okay.  We're at 601 New Jersey Avenue,
5 Northwest.
6          MR. O'TOOLE:  Your Honor, you granted their motions for
7 pro hac vice last week.
8          THE COURT:  Right.
9          MS. KAPIN:  Right.  That has our correct, that has our
10 correct address.
11          THE COURT:  We'll get that for all of you.
12          You're still at 55?
13          MR. O'TOOLE:  Yes.
14          THE COURT:  Okay.
15          MS. KAPIN:  We can submit, we'll submit a copy of this
16 to the clerk's office so they can remove the prior attorneys from
17 the electronic notification system.
18          THE COURT:  Dave Schiavone is no longer involved either,
19 is he?
20          MS. KAPIN:  Your Honor --
21          THE COURT:  No, he wasn't on your side.  He was
22 Barefoot, remember?
23          MR. HURTADO:  Right.  He's no longer involved.
24          MR. BRADFORD:  I don't recall the name.  That's right.
25          MR. O'TOOLE:  He's actually no longer with the firm he

19

1  was with before.  They have no idea --

2         MS. KAPIN:  These procedures certainly don't involve

3  him.

4         THE COURT:  And I had somebody, I had Louise Rose from

5  Washington.

6         MR. HURTADO:  I think he was also Barefoot counsel.

7         MS. KAPIN:  Again, these proceedings don't involve them.

8         THE COURT:  We'll take them off.  So it's just

9  Mr. Bradford and company at Jenner --

10        MR. BRADFORD:  Yes, Your Honor.

11        THE COURT:  -- that will get notice.

12        MS. KAPIN:  Ms. Tucci, Ms. Prabhu, Mr. O'Toole, and

13 myself.  The other FTC attorneys, Mr. Kaufman, Hipsley, Ms.

14 Sullivan, Mr. Miller, Mr. Kossow, and Karen Dodge, they are no

15 longer counsels of record in this case.

16        THE COURT:  Got it.

17        MS. KAPIN:  Sorry to be so cumbersome, Your Honor.

18        THE COURT:  No, no, that's fine.  All right.  I'll see

19 you back here on the 19th, and we'll do what we can do.

20        MR. BRADFORD:  Thank you very much, Your Honor.

21        MS. KAPIN:  Thank you, Your Honor.

22     (Proceedings concluded.)

23              C E R T I F I C A T E
        I, Jennifer S. Costales, do hereby certify that the
24 foregoing is a complete, true, and accurate transcript of the
   proceedings had in the above-entitled case before the Honorable
25 ROBERT W. GETTLEMAN, one of the judges of said Court, at Chicago,
   Illinois, on September 27, 2007.