IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** : | |
| Plaintiff, : | |
| v. : | Civil Action No. 03-C-3904 |
| : | |
| **KEVIN TRUDEAU,** : | |
| Defendant. : | |

### PLAINTIFF'S MOTION IN LIMINE TO DISQUALIFY
### PROPOSED EXPERTS AND EXCLUDE THEIR TESTIMONY

Plaintiff Federal Trade Commission ("FTC") respectfully moves the Court to disqualify Jeffrey Harris and Avin Mark Domnitz as experts and to exclude their testimony. Fed. R. of Evid. 702 permits the expert testimony of a witness qualified "by knowledge, skill, experience, training, or education" if such expert testimony will "assist the trier of fact to understand the evidence or determine a fact in issue." Trudeau has proffered Mr. Harris and Mr. Domnitz as experts and therefore bears the burden of demonstrating that their testimony meets this standard. *See Amakua Development, LLC v. Warner*, Case No. 05-C-3082, 2007 U.S. Dist. Lexis 49952, at *19-20 (N.D. Ill. 2007). However, neither Mr. Harris nor Mr. Domnitz pass muster under Rule 702. Specifically, as discussed in greater detail below, the Court should exclude Mr. Harris's testimony because: 1) it includes impermissible legal conclusions concerning the meaning of the Court's Order; 2) it is irrelevant; and 3) Mr. Harris is not qualified as an expert either to interpret court orders or the FTC's mirror image doctrine. The Court should also exclude Mr. Domnitz's testimony because his knowledge of the book industry includes no expertise concerning the impact of infomercial advertising on the retail sale of books.[1]

---

[1] At the May 29, 2008 status hearing, the Court expressed an inclination to allow these witnesses to testify. However, the FTC is nevertheless filing its motion in limine for two reasons: 1) to exclude improper testimony that will unduly protract the hearing, and 2) to lay the foundation to

**I.     JEFFREY HARRIS IS NOT QUALIFIED TO TESTIFY AS AN EXPERT CONCERNING ANY LEGALLY PERMISSIBLE ISSUE RELEVANT TO THIS CASE.**

The Court has already found Trudeau in contempt of the Stipulated Order for Permanent Injunction ("2004 Order" or "Order"), specifically holding that Trudeau flagrantly misrepresented the content of his *WLC* book in infomercials. *See* Court's Memorandum Opinion and Order of November 16, 2007, Ex. 16 of FTC's Consolidated Exhibits in Support of its Remedy Briefs. However, Trudeau's motion for reconsideration attempts to resurrect the contention that he was "reasonably diligent and energetic" in his attempts to comply with the Order. To that end, he proffers the opinion of purported expert Jeffrey Harris, an attorney who briefly worked at the FTC during the years 1979 to 1981, that Trudeau has reasonably complied with the FTC's Advertising in Books Policy Statement (also known as "the mirror image doctrine"). Mr. Harris's testimony should be excluded because: 1) his opinion includes impermissible legal conclusions about the meaning of the Order; 2) his opinion concerns the irrelevant issue of whether Trudeau complied with the mirror image doctrine, and 3) Mr. Harris is not qualified to provide expert testimony on the mirror image doctrine.

**1.     Mr. Harris's Expert Testimony Impermissibly Offers Legal Conclusions About the Meaning of the Order**

Mr. Harris's opinion that the plain language of the Order somehow incorporates the mirror image doctrine is a legal conclusion that exceeds the parameters of permissible expert testimony under Fed. R. Evid. 702. "The Federal Rules of Evidence prohibit experts from offering opinions or legal conclusions on issues that will determine the outcome of the case."

---

object to any request by Trudeau for the FTC to pay the costs associated with taking discovery from these proposed witnesses pursuant to Fed. R. Civ. P. 26(b)(4)(C).

2

*McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 739 (N.D. Ill. 2003). Moreover, "the only legal expert in a federal courtroom is the judge." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming the district court's exclusion of expert testimony as to the meaning of a statute and regulations). Put simply, the meaning of a court order is not a matter for expert testimony.[2] Further, as the court noted in its contempt findings, the Order is "simple and direct." Ex. 16 at 8. Accordingly, it requires no expert explanation.

Similarly, Mr. Harris' opinion as to whether Mr. Trudeau's interpretation of the Order and subsequent conduct were "reasonably diligent and energetic in attempting to accomplish what was ordered," *see* Ex. 16 at 7-8, is also an impermissible legal opinion that usurps the role of the Court. Moreover, along with being an impermissible legal opinion, Mr. Harris' opinion also lacks a factual basis in that he purports to be able to opine on whether Trudeau was "reasonable," without ever having spoken to Trudeau about what steps he took to comply. Harris Depo at 85 (Attachment A). In short, the Court has no need for an "expert" in understanding its own Order or the applicable law.

    **2.    Mr. Harris's Expert Testimony as to Whether Trudeau Complied with the Mirror Image Doctrine Is Irrelevant.**

Along with offering impermissible legal conclusions, Mr. Harris' testimony is completely irrelevant because there is no basis for his assertion that the Order somehow incorporates the mirror image doctrine. Specifically, Mr. Harris attempts to opine on the meaning of the Order by somehow concluding that it is "coextensive" with the mirror image

---

[2] Even if the Order were viewed as more akin to a contract, it would be impermissible for Mr. Harris to opine on its meaning. *See Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.").

3

doctrine. Thus, by Mr. Harris's reasoning, proof of Trudeau's compliance with the mirror image doctrine would equate to proof of Trudeau's compliance with the Order. Harris Depo at 31.

However, the Order by its plain language does not in any manner incorporate, reference or otherwise mention the mirror image doctrine nor does it contain "commonly understood" language that magically makes it "co-extensive" with the mirror image doctrine, as Mr. Harris suggests. Harris Depo at 30. Rather, as the Court noted, the Order language at issue is "simple and direct" in requiring that Trudeau not misrepresent the content of his books in infomercials. Ex. 16 at 8.

Because the Order does not contain the language of the mirror image doctrine, Mr. Harris takes a Herculean leap – opining that the Order language requiring that Trudeau "not misrepresent the content of the book" is "understood" by the FTC and business community to be "co-extensive" with the mirror image doctrine. The only basis for this contrived reasoning is Mr. Harris' opinion that "it is custom and practice in the field of trade regulation, both by FTC staff and practitioners in the field advising clients, that the term 'not misrepresent the contents of the book' is understood to be co-extensive with the Mirror Image Doctrine." Harris Depo at 30. Such a leap not only violates basic canons of interpretation, but would limit the application of the Order to "FTC staff and practitioners in the field" familiar with the doctrine – as opposed to Trudeau and those in active concert and participation with him pursuant to Fed. R. Civ. P. 65(d).

**3. Mr. Harris Is not Qualified to Provide Expert Testimony as to Whether Kevin Trudeau Has Complied with the Mirror Image Doctrine**

Mr. Harris is not qualified to testify as an expert on the subject for which he is proffered

4

– namely the mirror image doctrine.[3]  Mr. Harris states that his expertise lies "in the field of FTC regulation and enforcement relating to, among other fields, advertising and commercial speech." Harris Report at 1 (Attachment B).  However, by his own admission, Mr. Harris has been involved in only one case in his 40-year career in which the mirror image doctrine was at issue. Harris Depo at 10-11.  Even during his three year stint at the FTC *twenty-seven years ago*, he does not recall being personally involved in any matters that dealt with the mirror image doctrine because such matters "are pretty sparse," and the agency may not even have had such a case during his tenure.  Harris Depo at 13-14.

Moreover, apart from the single case, the extent of Mr. Harris's experience with the mirror image doctrine is limited to two forums: (1) his participation in general policy discussions, when he was at the agency from 1979 to 1981, where the mirror image doctrine would be raised "from time to time;" and (2) his discussions, in private practice, with clients whose matters did not necessarily involve book advertising, but for whom he provided a general overview of advertising and First Amendment law that included some explanation of the mirror image doctrine merely as part of "the playing field."  Harris Depo at 13-17.

Mr. Harris has never before testified as an expert or served as a consulting witness on the mirror image doctrine or anything else.  Harris Depo at 4-8.  His proffered opinions in this case are no place to start.  In exercising its "general 'gatekeeping' authority," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Court may reject expert testimony that will not

---

[3]  Mr. Harris's report provides four distinct opinions, three of which focus on the mirror image doctrine and its applicability to the current proceedings.  Harris Report at 3-15.  As a result, the bulk of the report is devoted to Mr. Harris's explanation of why he believes Trudeau's *WLC* infomercials comply with the mirror image doctrine, and by "co-extensi[on]," the Order.

"assist the trier of fact to understand the evidence or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (*quoting* Fed. R. Evid. 702). Here, Mr. Harris's proffered legal conclusions, irrelevant application of the mirror image doctrine, and lack of relevant experience would be of no assistance to the Court and his testimony should be excluded.

## II. AVIN DOMNITZ IS NOT QUALIFIED AS AN EXPERT ON ISSUES RELEVANT TO THIS CASE.

Trudeau also proffers the expert report and testimony of Avin Mark Domnitz to rebut the presumption that his widespread infomercials are responsible for all sales of the WLC book, including those made through retail outlets. Mr. Domnitz is not qualified to render an expert opinion in this case because his experience does not reach that issue. Specifically, Mr. Domnitz is not qualified to opine on the impact of infomercials on retail sales of the *WLC* book because he has virtually no experience with infomercial advertising being used as a method for marketing books.

In his report, Mr. Domnitz sets out the factors that, in his opinion, drive the sale of books in retail stores. Domnitz Report at 1-2 (Attachment C). Mr. Domnitz has experience in evaluating a number of factors that may influence the sale of books in retail stores including: the in-store placement of a book; the size/design of in-store displays; the reputation of the author; the book jacket; the title/subject of a book; the customer's review of the book; word-of-mouth; book reviews; recommendations from media personalities; and interviews of the author. Significantly, however, according to Mr. Domnitz, television and radio advertising typically constitute a relatively small portion of book marketing. Domnitz Report at 2. For this reason, he

opines that television and radio advertising do not carry nearly the weight of a factor such as word-of-mouth. Domnitz Depo at 24-25 (Attachment D).

Thus, this contempt action involves a scenario that Mr. Domnitz himself acknowledges is uncommon in his experience – the marketing and sale of a book through both direct-response infomercials and retail outlets. Domnitz Report at 7. The question, therefore, for purpose of Rule 702's gatekeeping mandate, is whether Mr. Domnitz has the requisite expertise to opine on the impact of widespread infomercials on retail sales. By his own admission, he does not.

Indeed, when asked a series of questions at his deposition regarding the impact of television and radio advertising on retail sales, Mr. Domnitz answered, "I have a hard time even answering this question because there is so little [television and radio advertising]. I don't even have an opinion." Domnitz Depo at 24-25. When asked what percentage of books sold in retail stores might have television advertising associated with them, Mr. Domnitz answered that he would be "shocked" if it was even as high as five percent, and that "in the overwhelming number of books, it's zero." Domnitz Depo at 28-29. In short, Mr. Domnitz has no experience analyzing the impact of widespread infomercial advertising on sales in retail bookstores.

Experience aside, it is difficult to imagine anyone being able to offer relevant expert testimony concerning the impact of infomercials sales on a particular book without having performed a case-specific analysis. Mr. Domnitz has not performed any such analysis of the advertising and sales of the *WLC* book. Domnitz Depo at 80-82. Therefore, his expert report and testimony should be excluded.

//

//

//

### III. CONCLUSION

For the foregoing reasons, the FTC moves this Court to disqualify Jeffrey Harris and Avin Mark Domnitz as experts and to exclude their testimony.

Dated: July 16, 2008                                                  Respectfully submitted,

                                                                      WILLIAM BLUMENTHAL
                                                                      General Counsel


                                                                      s/ Sandhya Prabhu
DAVID A. O'TOOLE                                                      LAUREEN KAPIN
Federal Trade Commission                                              ELIZABETH TUCCI
55 West Monroe St., Suite 1825                                        SANDHYA PRABHU
Chicago, Illinois 60603                                               Federal Trade Commission
phone: (312) 960-5601                                                 601 New Jersey Ave, NW Suite 2215
fax: (312) 960-5600                                                   Washington, DC 20001
dotoole@ftc.gov                                                       phone: (202) 326-3237, -2402, -2040
                                                                      fax: (202) 326-2559
                                                                      lkapin@ftc.gov; etucci@ftc.gov;
                                                                      sprabhu@ftc.gov

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Sandhya Prabhu, an attorney, hereby certify that on July 16, 2008, I caused to be served true copies of the *Plaintiff's Motion in Limine to Disqualify Proposed Experts and Exclude Their Testimony* by electronic means and by filing such document through the Court's Electronic Case Filing System, which will send notification of such filing to:

    David Bradford, Esq. and Daniel J. Hurtado, Esq.
    Jenner & Block
    330 N. Wabash Ave.
    Chicago, IL 60611-7603
    dbradford@jenner.com
    dhurtado@jenner.com

    s/ Sandhya Prabhu
    Sandhya Prabhu
    Attorney for Plaintiff
    Federal Trade Commission