IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br> )<br>            Plaintiff, )<br>    v. )<br> )<br>KEVIN TRUDEAU, )<br> )<br>            Defendant. ) | No.  03 C 3904<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

On November 16, 2007, this court found defendant Kevin Trudeau in contempt of its September 2004 Injunction (the "2004 Injunction") because Trudeau had misrepresented the contents of his book, The Weight Loss Cure "They" Don't Want You to Know About (the "Weight Loss Book") in several infomercials he originally produced in December 2006 (the "Infomercial").[1] See Federal Trade Commission v. Trudeau, 2007 WL 5366159 (N.D. Ill. 2007) ("Trudeau I").  The court will not repeat the facts or its reasoning, which are fully contained in Trudeau I, except as necessary to explain the instant holding confirming its finding of contempt and imposing an appropriate remedy (on which this court had reserved ruling in Trudeau I).

On July 22, 23, and 25, 2008, after extensive briefing by the parties, the court held an evidentiary hearing to address the issue of remedy, as well as Trudeau's motion to reconsider the finding of contempt.  As stated in Trudeau I, liability for civil contempt required a showing by plaintiff FTC, by clear and convincing evidence, that a valid court order existed, defendant knew of the order, and failed to comply with it.  After making a prima facie showing of contempt, the

---

[1] Trudeau made several versions of the Infomercial which do not differ materially as they relate to the current issues.  The court thus refers to the series of infomercials in the singular.

burden shifted to Trudeau to demonstrate why he was unable to comply with the order.  See Trudeau I, 2007 WL 5366159 at *3.

Motion to Reconsider

Trudeau's motion to reconsider attacks the court's finding that he failed to comply with the 2004 Injunction and, failing that, seeks to establish an excuse for such failure.  Citing Goluba v. School Dist. of Ripon, 45 F.3d 1035 (7th Cir. 1995), Trudeau argues that the 2004 Injunction, which itself resulted from an earlier finding of contempt, must be construed as incorporating the FTC's so-called Mirror Image Doctrine (the "MID" or "Doctrine") that guides the agency in bringing enforcement actions concerning advertisements for books, which are protected by the First Amendment.  The MID was first published in 1971 (36 Fed. Reg. 13414-02), and generally provides that the FTC "ordinarily will not proceed against advertising claims in connection with promoting the sale of books [if the advertisement] only purports to express the opinion of the author or to quote the contents of the publication . . .."[2]  As it relates to this case, Trudeau claims that the comments he made in the Infomercial are either opinion (e.g., the diet protocol is

---

[2] The full text of the Mirror Image Doctrine states:
> The Commission, as a matter of policy, ordinarily will not proceed against advertising claims which promote the sale of books and other publications: *Provided,* The advertising only purports to express the opinion of the author or to quote the contents of the publication; the advertising discloses the source of statements quoted or derived from the contents of the publication; and the advertising discloses the author to be the source of the opinions expressed about the publication.  Whether the advice being offered by the publication will achieve, in fact, the results claimed or it in the advertising will not be controlling if appropriate disclosures have been made.  This policy does not apply, however, if the publication, or its advertising, is used to promote the same of some other product as part of a commercial scheme.

"easy"), or are direct quotes from selected phrases in the Weight Loss Book. It appears that, according to the MID, so long as an advertisement contains an actual quotation of the precise words used in a book, the FTC "ordinarily" won't proceed against such claims even if other material in the book contradicts the quoted language. Thus, because selected quotations from the book state that the diet protocol in the Weight Loss Book is "easy to do," that it can be done at home, and that the dieter can "eat anything you want," to name a few, the same claims contained in the Infomercial are protected by the MID.

Trudeau is wrong on all fronts of this argument. First, the court finds that the MID was not incorporated into the 2004 Injunction. It was never mentioned by name, and the language of the MID was not included. Indeed, the court had never heard of the Mirror Image Doctrine prior to the recent briefing and proceedings. Even defendant's proffered expert on FTC practice, Jeffrey Harris, agreed that courts are generally unfamiliar with the MID. Indeed, the court can find no published court decision that even mentions the MID.

Conceding this fact as he must, Trudeau falls back on the argument that he and his counsel were aware of the MID when the Infomercial was made, and that Trudeau governs his comments with the Doctrine in mind. This argument is absurd for a number of reasons. First, at the evidentiary hearing, Trudeau admitted that he doesn't even read his books after dictating the text, and further that he does not script his infomercials or review them after they are recorded.[3] It would thus be impossible for him to choose his words carefully while making the infomercials in light of the precise language contained in the Weight Loss Book. Moreover, FTC counsel has

---

[3]Trudeau regards his infomercials as unrehearsed "television interviews;" "just like [he] would appear on Larry King Live."

represented to the court that they had no intention of incorporating the MID into the language of the 2004 Injunction, and the court credits that representation. To put it bluntly, if the parties or their attorneys had any intention to incorporate the MID into the 2004 Injunction, they should have and would have informed the court as much, and included the language in that order.

In any event, the Doctrine apparently applies to original enforcement actions, and does not absolutely prohibit proceeding against advertisements for books that merely express opinion or quote from the contents of the publication. The MID states merely that "[t]he Commission as a matter of policy <u>ordinarily</u> will not proceed against" such advertisements. (Emphasis added.) It would not be surprising, even if the MID were to apply in this case, that the FTC would make an exception with respect to Mr. Trudeau, who has a long history of consumer deception as well as findings of contempt by this court. At the hearing in which the 2004 Injunction was entered, this court took great pains to make sure that Mr. Trudeau knew exactly what his obligations were, and expected him to behave accordingly.

Trudeau was banned from making <u>any</u> infomercials except those advertising his books, which all parties and the court recognized were themselves protected by the First Amendment. Although consent orders such as the 2004 Injunction should be interpreted to effect the intention of the parties, they must also be interpreted to effect the intention of the court. Under any standard, the language of that injunction could not be clearer: Trudeau was allowed to make infomercials in connection with the advertising or promotion of publications provided that he "must not misrepresent the content of the book." As the court found in <u>Trudeau I</u>, he clearly and, no doubt intentionally, violated that provision.

The word "misrepresent" is commonly used both by laymen and the legal profession. It includes both outright lies and statements that are misleading in light of unstated circumstances.[4] As held in Trudeau I, the "content" of the Weight Loss Book means "all that is contained . . . everything inside" the book. See Trudeau I, 2007 WL 4109607 at *5.

The court stands by its earlier conclusion that Trudeau's repeated claims on the Infomercial that the diet protocol is "easy" and "simple" misrepresent the content of the book. But even if the court were to credit Trudeau's argument that such statements are mere matters of "opinion," the Infomercial contains a number of statements that are clear misrepresentations. To begin with, Trudeau makes repeated reference on the Infomercial to what a dieter can eat after completing the four phase protocol described in the Weight Loss Book, and states that after he (Trudeau) was "off the program" and "finished this protocol" he was able to eat anything he wanted.[5] These are outright misrepresentations. The Weight Loss Book makes very clear that "Phase 4 is for the rest of your life." Simply put, according to the Weight Loss Book there is no "after." Moreover, dieters following Phase 4 for the "rest of" their lives cannot eat "anything [they] want." To the contrary, the dieter is required to eat "only 100% organic food," and is

---

[4]Webster's Third New International Dictionary (p. 1445) defines "misrepresent" as "to represent incorrectly: to give a false, imperfect, or misleading representation of." The Restatement (Second) of Contracts § 159 defines "misrepresentation" as "an assertion that is not in accord with the facts." See also, American Ins. Corp. v. Sederes, 807 F.2d 1402, 1407 (7th Cir. 1986) ("misrepresentation" defined as "a statement of something as a fact which is untrue and material to the risk, and which the insured states [either] knowing it to be untrue, in an attempt to deceive, or which he states positively is true without knowing it to be true and which has a tendency to mislead").

[5]Trudeau also testified during the evidentiary hearing that he had "completed" the protocol.

prohibited from eating "brand name" food, "fast food," or food served by "regional or national chain restaurants."

Parenthetically, in <u>Trudeau I</u>, the court wondered aloud how Trudeau was able, as he stated repeatedly in the Infomercial, to eat a "big" portion of prime rib "marbled with fat" and a "big hot fudge sundaes with real ice cream, real hot fudge, real nuts and real whipped cream" and still follow Phase 4.  At the recent evidentiary hearing, the court asked this question of Mr. Trudeau, who stated that the meal he was referring to was purportedly eaten at the Boston restaurant Durgin Park.  This court, as well as many people who have visited Boston, has eaten at this famous restaurant located in Faneuil Hall at Boston Harbor.  A perusal of Dugin Park's web site (www. duginpark.com) does not indicate that the restaurant serves only 100% organic foods, or that it prepares its dishes using only ingredients other than those sold under a "brand name."

Another example of an undeniably false statement in the Infomercial is Trudeau's claim that his diet protocol requires "no exercise."  Yet, in three of the four "phases" of the protocol, including Phase 4 which, as noted, is to last the rest of one's life, walking one hour outside daily is listed among the things the person "MUST DO."  Trudeau's claims on the Infomercial that the protocol can "easily" be done "at home" also misrepresents the content of the book, which requires colonics (which, of course, must be done at the office of a licensed practitioner) as well as injections of the human growth hormone HCG.[6]  Even Mr. Trudeau, when questioned about how he was administered the HCG, admitted that for the first three weeks of "Phase 2 " he

---

[6]As noted in <u>Trudeau I</u>, HCG is a prescription drug that is not approved by the United States Food and Drug Administration for obesity or weight loss control, and must be injected into deep muscles such as the upper buttocks.

received them in Germany in a clinic from a physician. Although Trudeau claims that he continued the next three weeks of this "phase" while traveling throughout the United States on business, the court does not credit his testimony that he administered these shots himself. Indeed, the court does not credit much of Mr. Trudeau's testimony at all. As the court found in Trudeau I, the Infomercial falsely and intentionally led thousands (probably hundreds of thousands) of consumers to believe that the Weight Loss Book would describe an "easy," "simple" protocol that, once "finished" would allow the consumer to "eat anything" he or she wants. Nothing that Trudeau or his able counsel have said or done since that ruling will change that conclusion.

Accordingly, the court finds, based upon the record and the testimony of the witnesses (including its finding that Mr. Trudeau is not a credible witness), that the FTC has established by clear and convincing evidence that defendant Trudeau failed to comply with the 2004 Injunction, and that Trudeau has failed to meet his burden of demonstrating that he was unable to comply with the order or that he was "reasonably diligent and energetic" in attempting to accomplish what was ordered. Goluba, 45 F.3d at 1037.[7] Given Mr. Trudeau's history of deception and

---

[7]Trudeau argues at length that the FTC's approval of his infomercials for the first edition of Natural Cures They Don't Want You to Know About (the "Natural Cures Book") led him to believe in good faith that the Infomercial for the Weight Loss Book complied with the 2004 Injunction. The differences between the two sets of infomercials and the two books, however, defeat this argument. In the Natural Cures Book, Trudeau claims that there are "natural, nondrug and nonsurgical cures for almost every illness and disease." The infomercials for this book repeat this claim. The book itself mentions a number of diseases such as cancer, diabetes, arthritis and herpes, but never actually describes the so called "cures" in any detail; neither do the infomercials. The closest Trudeau comes to articulating a colorable argument on this point is his comparison to statements in the infomercials that the "cures" are "simple," while the book contains a regimen like the Weight Loss Book, requiring the consumption of only organic foods and colonics and prohibiting taking nonprescription and prescription drugs. Although Trudeau
(continued...)

contemptuous violation of court orders, his apparent disrespect for the authority of the court and the purpose of the laws for which these orders were entered, and his willful efforts to deceive consumers into believing that his books, particularly the Weight Loss Book, contained material that they do not contain, the court confirms its finding that Mr. Trudeau is in contempt of the 2004 Injunction.

Remedy

As a remedy for Trudeau's contempt of the 2004 Injunction, the FTC seeks to require him to reimburse all purchasers of the Weight Loss Book for the full amount of the purchase price, along with shipping and handling costs. This would amount to more than $46 million. As an alternative monetary remedy, the FTC seeks an order requiring Trudeau to disgorge a conservative estimate of the profit he made from the book, some $6.75 million.[8] In addition, the FTC requests that the 2004 Injunction be modified to require a $10 million performance bond.

Naturally, Trudeau resists these suggestions, and claims that he is currently without sufficient funds to respond to any significant monetary award or, in fact, to retain his current attorneys at Jenner and Block beyond representing him in connection with the contempt

---

[7](...continued)
came close to the line in his infomercials about the Natural Cures Book, he apparently did not step over it and make the type of outright misrepresentations he made in the Infomercial promoting the Weight Loss Book. Moreover, although the FTC approved the Natural Cures infomercials, it objected to the infomercial hawking the first edition because in it Trudeau falsely implied that the book described the "cures." In response, Trudeau published a second edition of Natural Cures that contained such descriptions.

[8]The FTC reaches this figure by taking the number of months (13.5) the offending Infomercial was broadcast, and multiplying it by 50% the $1 million per month that he is entitled to receive from ITV for the sale of his business. While the court finds this estimate to be reasonable, an equally reasonable award would be the $5,173,654.40 Trudeau received as royalties from the book.

proceedings. To support his claim of poverty, Trudeau presented his tax consultant and a balance sheet that is not worth the paper it is written on. Virtually all of the numbers on the balance sheet were put there (or omitted, as in the case of significant assets) at Trudeau's direction, none of them were audited, and his tax consultant admitted that they did not conform to generally accepted accounting principles. The court is, to say the least, highly skeptical of Trudeau's claim of impecunity. He is party to a contract with ITV, which purchased Trudeau's principal business entity, in which ITV is obligated to pay him $1 million a month for a total of 121 months. Although it appears that Trudeau has not collected much of this, he has taken no steps to enforce his contractual rights. As the FTC points out, Trudeau is a very creative person who is likely to maintain the lifestyle to which he has become accustomed.

Based upon the sorry history that Trudeau has had with the FTC and this court, the court has little confidence that he will faithfully and diligently comply with the 2004 Injunction unless forced to do so. At the recent evidentiary hearing, the court explored with the parties the idea of offering purchasers of the Weight Loss Book (which sold at least 860,000 copies) a full refund (an "opt-in" remedy). The court was informed by FTC counsel that such a remedy would require individual notice to each purchaser, costing between $7 and $10 each, and would thus be impractical. Absent such an "opt-in" approach, the court is not confident that a full refund to every purchaser, whether that purchaser was in fact misled or even now unhappy with the Weight Loss Book, would serve the interests of justice.

The court is therefore left with a remedy that would require Trudeau to disgorge any royalties he received as a result of the Infomercial (which the FTC has conservatively calculated to be $5,173,000, a figure that Mr. Trudeau has not contested), and a tightening of the order to

ensure that Mr. Trudeau complies faithfully with the injunction. The only way that the court is confident that this will happen is to ban Mr. Trudeau from producing, broadcasting or participating in the production or publication of any infomercials for products, specifically including books and publications and informational publications, in which he has any interest for a period of three years. This remedy is appropriate, since the court has the inherent power to enforce its orders, see Shilitani v. United States, 384 U.S. 364, 370 (1966), and Mr. Trudeau has made abundantly clear that nothing short of a complete ban, for a reasonable period of time, will achieve compliance with the court's previous directives to limit the content of his infomercials to non-misleading claims about his books. While it is true that commercial speech generally benefits from limited protection under the First Amendment, untruthful or misleading commercial speech finds no refuge under the Constitution, see Central Hudson Gas Co. v. Public Service Commission, 447 U.S. 557, 566 (1980). Moreover, to the extent the First Amendment arguably protects any non-misleading portions of Trudeau's infomercials, it need not trump the public's interest in obtaining compliance with federal court judgments. See Spallone v. United States, 487 U.S. 1251, 1255, 1260 (1988) (countervailing free expression rights insufficient to warrant stay of civil contempt order) (Marshall, J., concurring in denial of stay).

## **CONCLUSION**

For the foregoing reasons, the court denies Trudeau's motion to reconsider its finding in Trudeau I that defendant Kevin Trudeau is in contempt of the court's 2004 Injunction, and enjoins him, or any person or entity acting in concert with him, from participating in the production or publication of any infomercial for any product, including books, in which Mr. Trudeau or any related entity has an interest, for a period of three years from the date of this

order.  In addition, the court enters judgment in favor of the FTC and against defendant Kevin Trudeau in the sum of $5,173,000, representing a conservative estimate of the royalties Trudeau realized from the sale of the Weight Loss Book through the offending infomercials.


**ENTER:**     **August 7, 2008**

                                                      **Robert W. Gettleman**
                                                      **United States District Judge**