**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| | **:** | |
| **FEDERAL TRADE COMMISSION,** | **:** | |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | **Civil Action No. 03-C-3904** |
| | **:** | |
| **KEVIN TRUDEAU,** | **:** | |
| Defendant. | **:** | |

**FTC'S RENEWED MOTION TO MODIFY THE STIPULATED FINAL ORDER FOR
PERMANENT INJUNCTION AS TO DEFENDANT KEVIN TRUDEAU**[1]

Plaintiff Federal Trade Commission ("FTC" or "Commission") moves to modify the
September 2004 Stipulated Final Order for Permanent Injunction ("2004 Order" or "Order")
pursuant to Fed. R. Civ. P. 60(b) to effectuate its purpose of protecting consumers.[2]  The 2004
Order sought to protect consumers by banning Trudeau from all infomercials except those for
books and other informational publications.  Trudeau's contempt of that order through his
blatant misrepresentations in infomercials for his weight loss book – the latest in a long line of
deceptive conduct – reflects the failure of the 2004 Order, as currently written, to adequately
protect consumers.

Rule 60(b) permits modification of an order where, as here, its purpose has not been
achieved.  The FTC has proposed three categories of modification that would: (1) require
Trudeau to obtain a performance bond of $10 million before engaging in infomercial activity for
books and other informational publications (just as proposed last March); (2) prohibit certain
false or misleading representations in advertising for informational publications; and (3) update
the provisions that enable the FTC to monitor Trudeau's compliance.  These modifications serve
the purpose of the Order by better protecting consumers in the event that Trudeau's less-than-

---

[1]  The FTC first filed its Motion to Modify the Stipulated Final Order for Permanent Injunction as to
Defendant Kevin Trudeau on March 6, 2008. D.187.

[2]  The FTC has filed concurrently a Renewed Motion for Entry of Compensatory Monetary Remedy
Against Kevin Trudeau.

stellar track record continues. Finally, to the extent the Court considers re-imposing a limited ban similar to the one it entered in November 2008, Trudeau's post-order conduct and stated intentions demonstrate that such a ban fails to adequately protect consumers.

## I.      BACKGROUND

### A.      Prior FTC Actions Against Trudeau

Kevin Trudeau has a long and inglorious history of violating the law, deceiving consumers and defying court orders. In addition to his felony convictions for credit card fraud and depositing bad checks,[3] Trudeau has repeatedly violated consumer protection laws. The FTC first introduced Trudeau to this Court in 1998, alleging in its complaint that he made false or misleading claims about six different products in his infomercials.[4] FTC Ex. 4, Complaint, *FTC v. Kevin Trudeau*, 98 C 0168 (N.D. Ill.). That action resulted in the first of several court orders against him. FTC Ex. 5, 1998 Order (N.D. Ill. Jan. 14, 1998).[5] But Trudeau did not let the Court's 1998 Order stand in the way of his consumer deception agenda. In later infomercials, Trudeau made unsubstantiated claims that, among other things, Coral Calcium Supreme cured terminally ill cancer patients, and Biotape – an adhesive pain-relief product – "permanently" eliminated pain from arthritis, migraines and sciatica. FTC Ex. 6, 2003 FTC Contempt Memorandum at 6-9.

Thus, in 2003, the Commission was compelled to return to this Court to enforce its 1998 Order. During those proceedings, the Court issued a stipulated Preliminary Injunction that enjoined Trudeau from making his outlandish claims about Coral Calcium. FTC Ex. 8, 2003 Preliminary Injunction at 4-5. In a brazen display of indifference to that injunction, even while still in the midst of the Coral Calcium/Biotape litigation, Trudeau disseminated a letter and

---

[3] FTC Exs. 2 and 3.

[4] Trudeau claimed that the products sold in his infomercials caused dramatic results, including significant weight loss, reversal of hair loss, and achievement of a photographic memory. FTC Ex. 4 at ¶¶ 8-18; 21-61. He also claimed that certain products could cure addictions to heroin, alcohol, cigarettes, and food, as well as cure diseases like depression and arthritis. *Id.* at ¶¶ 8-10, 14, 21-27, 40-46.

[5] The 1998 Stipulated Order for Permanent Injunction prohibited Trudeau from making any unsubstantiated representation about the benefits, performance, or efficacy of any product. Significantly, it also required Trudeau to post a $500,000 performance bond or fund an escrow account in connection with any future infomercials. FTC Ex. 5 at 12-16.

infomercial claiming that Coral Calcium cured cancer, causing the Court to hold Trudeau in contempt. FTC Ex. 9, 2004 Contempt Order. In its contempt ruling, the Court described Trudeau's bogus cancer claim as a "lie" and "clearly violative, not just of the order, but of any standard of truthfulness." FTC Ex. 10, Hrg. Tr. at 6-7 (March 31, 2004).

On September 2, 2004, the Court resolved the Coral Calcium/Biotape case by entering the Stipulated Final Order for Permanent Injunction that further restricted Trudeau's infomercial activities and required him to pay a $2 million judgment. FTC Ex. 1, 2004 Order, *FTC v. Trudeau*, Civ. No. 03-C-3904, Civ. No. 98 C 0168 (N.D. Ill. Sept. 3, 2004).[6] The Order banned Trudeau from "producing, disseminating, making or assisting others in making any representation in an infomercial," but included one exception that permitted Trudeau to appear in infomercials promoting books and other informational publications. FTC Ex. 1, 2004 Order at Part I.

> **B.      The *Weight Loss Cure* Contempt Proceedings**

On November 16, 2007, the Court *again* held Trudeau in contempt, this time for violating the 2004 Order by misrepresenting the "content" of a book he was selling via infomercial. D.93. The Court found that the infomercials promoting *The Weight Loss Cure "They" Don't Want You To Know About* ("*Weight Loss Cure*"), were replete with misrepresentations about the nature of the diet Trudeau was selling in his book. Specifically, the Court found that Trudeau falsely described the diet as "easy" and misled viewers into believing that it involved no long-term dietary restrictions. Accordingly, the Court found that these infomercial misrepresentations "flagrantly" violated the 2004 Order and held Trudeau in contempt.

Significantly, Trudeau's contumacious conduct, which deceived thousands of purchasers of *Weight Loss Cure,* demonstrates that the Order has failed to achieve its purpose of protecting consumers. Therefore, separate and aside from any contempt sanction, in March 2008, pursuant to Fed. R. Civ. P. 60(b), the FTC filed a motion seeking modification of the 2004 Order to better protect consumers. Specifically, the FTC requested that the Court modify the 2004 Order to prohibit Trudeau from participating in infomercials for books or other informational publications

---

[6] The monetary relief included collection on the $500,000 performance bond that the 1998 Order had required Trudeau to obtain. 2004 Order at Part XIII B.

unless he first posted a $10 million bond to provide insurance for consumers should Trudeau again engage in deceptive infomercial marketing for any books. D.187.

This related-but-separate Rule 60(b) Motion was litigated concurrently with the FTC's request for a monetary contempt sanction. The litigation included full-blown discovery, extensive briefing, and a three-day evidentiary hearing in July 2008. On August 7, 2008, the Court issued a Memorandum Opinion and Order that reaffirmed the contempt holding, imposed a monetary contempt sanction of $5.2 million, and further restricted Trudeau's infomercial activities by prohibiting him, for a three-year period, from participating in any infomercials for any product, including books, in which he had an "interest." D.157.

The Commission then moved, pursuant to Fed. R. Civ. P. 59(e), for reconsideration of the order to correct a mathematical error in the calculation of the contempt sanction and to draw the Court's attention to certain flaws in the three-year infomercial ban. D.165. Specifically, the FTC expressed concern about a ban that applied only to infomercials for products in which Trudeau had an "interest." Unfortunately, as discussed in Section III.C.4., *infra*, Trudeau's post-order conduct has proven this concern prescient.

On November 4, 2008, the Court entered a Supplemental Order and Judgment, which changed the contempt sanction award to $37.6 million and revisited the injunction the Court had issued in August. D.220. The Court expressly decreed that the 2004 Order remained in effect, and required that, for a three-year period, Trudeau be prohibited from "disseminating, or assisting others in disseminating" any infomercial that promoted the sale or distribution of any book, newsletter, or informational publication in which he had any "interest." *Id*.

Trudeau filed a motion requesting that the Court alter or amend its Supplemental Order and Judgment, or that, in the alternative, the Court stay the Order pending appeal. D.224. On December 12, 2008, the Court denied Trudeau's motion, D.229, and soon thereafter, Trudeau appealed.

### C.      The Seventh Circuit Decision

In his appeal, Trudeau urged the Seventh Circuit to overturn virtually every aspect of this Court's contempt-related rulings, including the contempt finding, the monetary sanction, and the infomercial ban. In a detailed opinion (hereinafter "Opinion"), the Seventh Circuit strongly affirmed the contempt ruling, but vacated the monetary sanction and infomercial ban and

remanded for further proceedings. *FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009). However, the Opinion makes clear, not only that this Court's contempt finding was correct, but that the Court has the authority to modify the 2004 Order on the FTC's motion so long as Trudeau has notice and an opportunity to be heard with respect to any "stiffer" injunction that might be entered against him. And with respect to the performance bond requested by the FTC, he already has.

### 1. "The District Court was Right in Finding Trudeau in Contempt."[7]

The Seventh Circuit upheld the contempt finding against Trudeau, concurring with this Court's analysis in all significant respects. 579 F.3d at 762-67. The Seventh Circuit agreed that Trudeau's infomercial claims about *Weight Loss Cure* were contradicted by the book's description of the diet protocol and therefore misrepresented its "content." *Id*. at 764-67. The Opinion variously describes Trudeau's infomercial claims as "patently false," "troubling," and "erroneous and deceiving," and concludes that "he outright lied." *Id*. at 766-67.

### 2. The District Court Can Modify the 2004 Order Provided that Trudeau Has Received Due Process

The Seventh Circuit did not quarrel with the necessity or propriety of enhancing the injunction against Trudeau, but it addressed order modification only tangentially within a broader discussion of the three-year infomercial ban.[8] Although the Seventh Circuit found that the "stiffer" injunction in this case did not appear to have resulted from either the granting of the FTC's Rule 60(b) Motion or this Court's *sua sponte* modification of the 2004 Order, it nonetheless indicated that order modification would be proper so long as Trudeau were given due process. *Id*. at 778-79. Specifically, the Opinion states, "the district court could modify the Consent Order, on motion from the FTC or on its own motion, provided it give Trudeau sufficient notice and an opportunity to be heard on the matter." *Id*. at 779. The FTC's initial Rule 60(b) motion gave Trudeau notice that it was seeking a performance bond. Therefore Trudeau received his due process with respect to entry of such a bond, but not, in the opinion of the Seventh Circuit, with respect to the ban ultimately entered by the Court. Thus, despite

---

[7] 579 F.3d at 768.

[8] The Seventh Circuit devoted much of this discussion to whether the infomercial ban could be sustained as a civil contempt remedy and, finding that it was neither compensatory nor coercive, determined it could not. 579 F.3d at 776-77.

setting aside the three-year infomercial ban, the Seventh Circuit found that modification of the 2004 Order would be wholly appropriate, provided that the procedural prerequisites are met.

## II.     ARGUMENT

The FTC continues to seek modification of the 2004 Order on the same grounds and by largely similar means – with the exception of a modification to Parts I and II – as it proposed in its original papers.[9]  Modification is appropriate, pursuant to Rule 60(b), where an injunction has not achieved its purpose.  The purpose of the 2004 Order, as noted by the Seventh Circuit, was to protect consumers from Trudeau's deception.  Trudeau's misleading infomercials for *Weight Loss Cure* illustrate the failure of the order to fully effectuate this purpose.  Therefore, the FTC has proposed specific modifications aimed at better protecting consumers from Trudeau's deceptive practices.

### A.     Rule 60(b) Modification is Appropriate Where an Order Has Not Achieved Its Purpose

Parties seeking modification of court orders, including consent decrees, do so pursuant to Fed. R. Civ. P. 60(b).  *See United States v. Krilich*, 303 F.3d 784, 789 (7th Cir. 2002); *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994).  Rule 60(b)(5) provides in relevant part that, upon motion and such terms as are just, a party may seek relief from a final judgment or order when "it is no longer equitable that the judgment should have prospective application."  Fed. R. Civ. P. 60(b)(5).

Where the plaintiff, *i.e.*, the proponent of the injunction, seeks modification to make an order more stringent, the determinative question is whether the purpose of the original order has been achieved.  *See United States v. United Shoe Machinery*, 391 U.S. 244 (1968).  In *United Shoe*, the government sought to modify an injunction in an antitrust case because the goals of the order – restoring competition to the shoe machinery market – had not been accomplished in the ten years since the order's entry.  391 U.S. at 247.  The Supreme Court decided that, because time and experience had demonstrated that the purposes of the order had not been achieved, it was appropriate "to prescribe other, and if necessary more definitive, means to achieve the result."  391 U.S. at 249, 252; *see also Epic Metals Corp. v. Souliere*, 181 F.3d 1280, 1283-84

---

[9]  D.187 and D.131.

(11th Cir. 1999) (applying *United Shoe* where plaintiff sought to modify injunction); *United States v. Local 560*, 974 F.2d 315, 331-32 (3d Cir. 1992) (same); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 503-04 (5th Cir. 1980) (same).[10]

The FTC has obtained substantial modifications in cases where defendants' contumacious conduct evidenced a need for more stringent injunctive relief.  *See, e.g.*, *FTC v. Vocational Guides, Inc.*, Case No. 3-01-0170, 2009 U.S. Dist. LEXIS 29509 (M.D. Tenn. April 6, 2009) (entering a modified, enhanced injunction following defendant's contempt of the permanent injunction); *FTC v. Int'l Product Design, Inc.*, Case No. 1:97-cv-01114 (E.D. Va. July 12, 2007) (same) (appended to previous filing at D.110); *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1082-84 (E.D. Mo.  2007) (same).

### B.      Trudeau's Contempt Reflects the Failure of the 2004 Order to Achieve Its Purpose

As the Seventh Circuit recognized, the 2004 Order was meant to prevent Trudeau from misleading consumers: "The 2004 Consent Order had two purposes: ***to protect consumers from deceptive practices*** and to compensate those already deceived."  579 F.3d at 764 (emphasis added).  Therefore, modification is warranted if the 2004 Order has not effectively protected consumers from Trudeau's deceptive advertising, which it has not.  In multiple infomercials, Trudeau lied about, among other things, the *Weight Loss Cure* regimen being "easy" and about its lack of dietary restrictions upon completion.  This Court and the Seventh Circuit both concluded that Trudeau's infomercial claims about *Weight Loss Cure* were patently false.  *See* Sections I.B. and I.C., *supra*.  Thus, Trudeau deceived thousands of additional consumers since

---

[10]  Where the defendant, *i.e.*, the enjoined party, seeks relief in order to escape the impact of an injunction, a different standard applies.  *See Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 383 (1992)).  Under the *Rufo* test, the party seeking modification "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." 502 U.S. at 383; *Krilich*, 303 F.3d at 790.  If the moving party meets this initial burden, the court considers "whether the proposed modification is suitably tailored to the changed circumstance."  *Id.*  Where, as here, the government enforcer of the order seeks modification to enhance its effectiveness in protecting consumers, the *United Shoe* standard, focusing on whether the purpose of the original order has been achieved, appears better suited.  *See New York v. Microsoft Corp.*, Civil Action No. 98-1233, 2008 WL 254126, at *23-26 (D.D.C. Jan. 29, 2008) (appended to previous filing at D.110) (discussing applicability of both the *United Shoe* and *Rufo* standards).  Nonetheless, modification in this case would be warranted under either standard as Trudeau's contumacious conduct undoubtedly constitutes "changed circumstances."  *See id.*

entry of the 2004 Order, notwithstanding its goal of preventing just that.  It follows then that the 2004 Order must be enhanced to effectuate its purpose.

Indeed, to truly protect consumers from Trudeau's deceptive practices, any modifications to the 2004 Order must address the nature of his offensive conduct.  At its core, Trudeau's behavior reflects a dedicated effort to engage in deception, thereby subverting the law, not abiding by it.  Since 1998, the FTC has initiated a number of actions against Trudeau for deceptive infomercial claims, each resulting in the entry of stricter orders against him.  *See* Section I.A., *supra*.  Nonetheless, this Court was compelled to *twice* find Trudeau in contempt for violating these orders.

These findings of contempt have hardly chastened Trudeau.  Just recently, on the heels of the Seventh Circuit's decision, Trudeau proclaimed to a Chicago newspaper, "I'm very proud of being held in contempt."  FTC Ex. 58, Greg Burns, *Newest Pitch by Infomercial Kingpin Trudeau: "I'm Poor*," CHI. TRIB., Sept. 14, 2009.  Trudeau's boasting demonstrates that the Court should not count on Trudeau's good faith compliance with its orders, but just the opposite.  Perhaps the Court recognized as much when it stated at the November 4, 2008 hearing that, "Mr. Trudeau is not a credible witness.  There is not much that he can say about himself or about his conduct that I would credit."  FTC Ex. 59, Nov. 4, 2008 Tr. at 18:10-12.  Therefore, a modified order must account for Trudeau's dubious view of compliance, his propensity to engage in deceit, and the possibility that his first inclination may be to disregard the order or exploit its "loopholes."

### C.      The FTC's Proposed Modifications Advance the Purpose of the Order by Better Protecting Consumers

The FTC proposes three modifications aimed at protecting consumers in light of Trudeau's conduct:  (1) an additional provision requiring Trudeau to obtain a performance bond of $10 million before engaging in any infomercial activity related to books and other informational publications; (2) modifications to Parts I and II of the 2004 Order to prohibit Trudeau from making certain false or misleading statements in advertising for books and other informational publications; and (3) updated provisions related to compliance reporting, record keeping, and distribution of the Order to aid the FTC in monitoring Trudeau's compliance. These modifications are reasonable and suitably tailored to address Trudeau's order violations.

Finally, we also address the folly of reinstating the limited 3-year ban on book infomercials because, as Trudeau has already demonstrated since the ban was entered, it would likely fail to adequately protect consumers.

### 1. A Performance Bond Protects Consumers

A substantial performance bond protects consumers by ensuring that a fund will be available to reimburse them in the event that Trudeau continues to flout the law and this Court's orders. The FTC has sought and obtained performance bonds in other cases where such relief was necessary to protect consumers. *See FTC v. US Sales Corp.*, 785 F. Supp. 737, 753 (N.D. Ill. 1992) (requiring FTC defendants to obtain a performance bond in light of their contumacious behavior); *aff'd FTC v. Vlahos*, 51 F.3d 275 (7th Cir. 1995); *see also FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205 (S.D.N.Y. 2002) (ordering a performance bond of $10 million); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263 (S.D. Fla. 1999) (ordering a performance bond of $5 million); *FTC v. Career Assistance Planning, Inc.*, No. 1:96-CV-2187, 1996 WL 929696 (N.D. Ga. Sept. 19, 1996) (appended to previous filing at D.110) (ordering a performance bond of $6 million).

Courts have ordered performance bonds in FTC cases where, as here, the defendant has a history of recidivism. In *FTC v. US Sales Corp.*, this Court held that a bond requirement was appropriate because "merely prohibiting the advertisements discussed in this opinion is insufficient, especially considering Defendants' contemptuous behavior in violating the Preliminary Injunction Order." 785 F. Supp. at 753. Similarly, in *Career Assistance Planning*, the district court ordered a performance bond of $6 million in a case involving unlawful telemarketing, stating that it was warranted "in light of [defendants'] proven propensity to engage in fraud and to refuse cooperation of law enforcement authorities." 1996 WL 929696, at *4.

While the performance bond amount of $10 million is substantial, ultimately, it is a mere fraction of the consumer harm caused by Trudeau's contumacious misrepresentations. The bond amount should reflect an estimation of the consumer harm that would be caused by a similar order violation in the future, thereby guaranteeing a means for reimbursing consumers. Thus, it would be appropriate for the Court to require Trudeau to obtain a bond in the amount of consumer harm he caused in this case. The FTC has nonetheless proposed a far lower bond in

recognition of the fact that Trudeau will continue to receive scrutiny from the FTC and, in the event that Trudeau's infomercials promoting informational publications demand enforcement action again, both the Commission's and this Court's familiarity with the issues, after these proceedings, would facilitate any such action moving even more swiftly.[11]  In light of the fact that Trudeau failed to cease broadcast of his infomercials even upon notice of the FTC's filing of a contempt action in September 2007, the FTC may also seek a temporary restraining order at the outset of any future contempt action in an attempt to further reduce harm to consumers.[12]

**2.** **Prohibiting Misrepresentations About the "Benefits, Performance, or Efficacy" of Any Product, Program or Service in Advertising for Informational Publications Protects Consumers**

Parts I and II of the 2004 Order also should be modified to ensure that Trudeau does not make certain false or misleading statements in advertising for books and other informational publications.  Part I of the Order bans Trudeau from all infomercials except those promoting books and other informational publications, provided that, among other things, he not misrepresent their content.  Part II of the Order bans Trudeau from making health benefit claims for any product, program or service, but includes a similarly-constructed exception for book advertising.  In light of the prolific growth in Trudeau's book advertising since entry of the 2004 Order and the risks such advertising poses for consumers (as evidenced by Trudeau's flagrant contempt), it is now clear that these exceptions provide Trudeau too much leeway to deceive consumers.

Specifically, in pertinent part, the Part I and Part II exceptions allow Trudeau to participate in book advertising in any form, including but not limited to infomercials, and make "***any representation***... in connection with ... any book, newsletter or other informational publication in any format *provided* that any such book, newsletter or other informational publication: 1) does not reference, directly or indirectly, any branded or trademarked product,

---

[11]  The time it takes for the FTC to file an action is influenced by a number of factors unique to each case, not the least of which include the duration of the investigation and the internal process of authorization by the Commission.

[12]  In this case, the violative infomercials remained on the air for 3 months after the FTC filed its contempt action (the action was filed on September 13, 2007 and the infomercials remained on the air until mid-December 2007).  FTC Ex. 18.

program or service that Defendants are promoting; 2) is not, directly or indirectly, an advertisement for any product, program or service; and 3) is not sold, promoted or marketed, directly or indirectly, in conjunction with any product, program or service that is related to the content of the book, newsletter or informational publication or infomercial" FTC Ex. 1 (emphasis added). The FTC agreed to the Part I and II exceptions because the three provisos appeared sufficient to fence in the advertising Trudeau might engage in with respect to informational publications. However, the FTC failed to anticipate the explosion of book marketing that Trudeau would initiate following entry of the 2004 Order, as well as Trudeau's skill at exploiting an unintentional loophole in the Order. For example, to the extent one of Trudeau's books describes a non-branded "program" (*e.g.*, a debt, weight loss, or recession "cure") and his advertising for the book falsely touts the benefits of that program (even if it accurately reflects what is in the book), none of the provisos protects consumers from such misrepresentations.

Additionally, because the exceptions for book advertising in Parts I and II permit "any representation," they interfere with the FTC's ability to enforce Part IV of the Order. Specifically, Part IV of the 2004 Order enjoins Trudeau from making misrepresentations about "the benefits, performance, or efficacy of any product, program or service unless that representation is true and non-misleading." This provision provides important protections for consumers from Trudeau's deceptive advertising. Therefore, to the extent that Trudeau's advertising for books and other informational publications misrepresents "the benefits, performance, or efficacy of any product, program or service," consumers should be protected from it. But as written, the Parts I and II exceptions permitting "any representation" arguably trump the prohibition laid out in Part IV. Thus, the Court should modify Parts I and II so that they remain unambiguously consistent with, and expressly adopt, the mandate of Part IV of the 2004 Order.

There is good reason to believe that the FTC's concerns in this regard are not merely hypothetical. In a letter to the FTC dated September 25, 2009, Trudeau's counsel, Mark Lane, writes that his client "is planning to write a revised version of his 'Weight Loss Cures' book and have it published, utilizing his ***previously produced infomercial*** . . . to promote the book." FTC Ex. 58 (emphasis added). The letter goes on: "Mr. Trudeau is confident that the ***previously***

*produced infomercial*, when aired in combination with the revised book, would be fully in compliance with the court orders." *Id*. Trudeau's intent, therefore, is to merely revise the book to match the existing infomercial notwithstanding any misrepresentations that infomercial may make with respect to "the benefits, performance, or efficacy of any product, program or service" referenced in the book. The Order, as written, arguably permits such misrepresentations, thereby failing to protect consumers to the full extent of the law. In sum, if Trudeau's book advertising makes misrepresentations that would violate Part IV, such false or misleading claims should be barred by the Order, irrespective of whether the book parrots those misrepresentations.

Therefore, the phrase "truthful, non-misleading" should be inserted between the words "any" and "representation" in the exceptions to Parts I and II. Additionally, these Parts should specifically prohibit Trudeau from misrepresenting "the benefits, performance, or efficacy" of any product, program or service referenced in a book Trudeau advertises (as would be otherwise required by Part IV). Such modification is essential to protect consumers and places no additional burden on Trudeau because it is already what the law requires.[13]

### 3. Updating the Compliance-Monitoring Provisions Protects Consumers

Trudeau's history and contumacious conduct also justify updating the provisions in the Order that allow the FTC to monitor Trudeau's compliance. In FTC cases, courts routinely include such provisions to ensure a defendant's compliance with the permanent injunction. *See FTC v. Direct Marketing Concepts, Inc.*, 2009 WL 2707554, at *9 (D. Mass. Aug. 13, 2009); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1018 (N.D. Ind. 2000). The compliance-monitoring provisions are particularly important where, as here, the defendant has a "history of poor diligence." 144 F. Supp. 2d at 1018. The FTC proposes that the Order include the latest, up-to-date versions of these provisions that are routinely used in orders entered in FTC

---

[13] The proposed supplemental order deletes the penultimate sentence of Part I because that provision applied only to conduct occurring before December 31, 2004. Additionally, the proposed order retains the final sentence of Part I, which limits the application of Part I to consumers/addresses located in the United States. However, the FTC has not yet obtained the customer list for *Weight Loss Cure*, and in the event that the FTC learns that Trudeau's infomercials harmed consumers located beyond the United States, the FTC may seek to have this provision modified as well.

cases, and that their time periods begin to run anew.[14] Accordingly, Trudeau would be required to distribute the Order for an additional period of ten years; report on his compliance with the Order every year for an additional period of ten years; and create and retain records for an additional period of thirteen years. These provisions will provide the FTC with tools it needs to monitor Trudeau's compliance.

### 4. A Limited Ban on Infomercials for Books in which Trudeau Has an "Interest" Does Not Protect Consumers

To the extent the Court considers re-imposing it, a limited ban on infomercials for books in which Trudeau has an "interest" fails to enhance the 2004 Order in a way that protects consumers. The "interest" requirement provides Trudeau too great an opportunity to sidestep the ban, and enormously complicates the FTC's ability to enforce it.

In fact, Trudeau's post-order activities to date show that he would (and already has) deftly worked to render such a ban ineffectual. The Court's three-year ban went into effect on November 4, 2008 and remained operative until it was vacated by the Seventh Circuit on August 27, 2009. In that time, Trudeau has been busy cranking out new books as well as infomercials to promote them. Unsurprisingly, he claims to have no "interest" in the books and that he appears in the infomercials merely as a "spokesperson," as expressly permitted by the Court's order.[15] *See* FTC Exs. 59-60. In letters to the FTC this year, Trudeau's counsel, Marc Lane notified the FTC of Trudeau's intent to appear in infomercials for four different new Trudeau-style "cures": "*Recession Cures*," "*Tax Cures*," "*Debt Cures 2*," and "*Kevin Trudeau's Free Money 'They' Don't Want You to Know About*." *Id.* Lane represented that Trudeau was not the author or publisher of any of the books, though he is "allowing the publishers to identify him as the author of the books without charge." *Id.* Lane also represented that Trudeau "does not own the

---

[14] The primary variation from the version of these provisions included in the 2004 Order is that the newer version requires annual compliance reporting. *See* proposed supplemental order at Part IV.

[15] "Interest" means any direct or indirect monetary, financial, or other material benefit, including but not limited to royalty payments on the sale of any book, newsletter, or other informational publication in any format endorsed by Trudeau, or any benefit received in exchange for partial or full ownership of, or rights to, any book, newsletter, or other informational publication in any format written or created by him, but excluding payments made to Trudeau solely in exchange for his appearance as a spokesman for a book, newsletter, or other informational publication in which he does not have an interest. D.220, Supplemental Order at 3.

publishers directly or indirectly," and that he is merely "acting as an unpaid spokesman" for the books. *Id.* Mr. Lane takes the position that, under these alleged circumstances, Trudeau has no "interest" in the books as that term is defined in the Court's Supplemental Order.

As Trudeau has demonstrated, he is both clever and resourceful, and if his participation in infomercials is conditioned on disavowing any "interest" in the books he sells, he will do everything in his power to make it so. The key consideration is whether such a ban accomplishes the goal of protecting consumers, and because of Trudeau's intent and ability to continue business-as-usual, it clearly does not. Rather, the ban impacts Trudeau only to the extent that he must structure his book deals and infomercial appearances in a way that allows him to disclaim "interest," making it difficult for the FTC to prove otherwise by clear and convincing evidence. All the while, consumers will be afforded little, if any, protection from his propensity to engage in deception. Frankly, such a ban is a ban in name only.

## IV. CONCLUSION

For the foregoing reasons, the FTC moves this Court to modify the Stipulated Final Order for Permanent Injunction as to Defendant Kevin Trudeau. A proposed supplemental order is attached.

Dated: November 13, 2009

Respectfully submitted,
Willard Tom, General Counsel

s/ Sandhya P. Brown

David A. O'Toole (dotoole@ftc.gov)
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603
Phone: 312-960-5601
Fax: 312-960-5600

Michael Mora (mmora@ftc.gov)
Sandhya P. Brown (sbrown5@ftc.gov)
Federal Trade Commission
601 New Jersey Ave., N.W., Suite 2215
Washington, DC 20001
Phone: 202-326-3373, -2040
Fax: 202-326-2559