IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL TRADE COMMISSION,      )
                               )
          Plaintiff,           )      No. 03 C 3904
     v.                        )
                               )      Judge Robert W. Gettleman
KEVIN TRUDEAU,                 )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

Following remand by the United States Court of Appeals for the Seventh Circuit

directing this court to explain the monetary sanction imposed after this court (and the Court of

Appeals) found defendant Kevin Trudeau ("Trudeau") in contempt of previous orders, and

reversing a portion of the injunctive relief awarded by this court, plaintiff Federal Trade

Commission ("FTC") filed two motions against Trudeau: a "Renewed Motion for Entry of

Compensatory Monetary Remedy Against Kevin Trudeau" (Doc. 267; the "Monetary Remedy

Motion"); and a "Renewed Motion to Modify the Stipulated Final Order for Permanent

Injunction as to Kevin Trudeau" (Doc. 269; the "Motion to Modify").  After extensive briefing

and argument after remand, the court grants both motions in part.

The sad history of this case is set forth in detail in this court's earlier opinions,[1] as well as

the August 27, 2009, opinion by the Seventh Circuit.[2]  The following discussion addresses the

issues remanded to this court by the Court of Appeals.

---

[1]These include FTC v. Trudeau, 567 F. Supp.2d 1016 (N.D. Ill. 2007); 572 F. Supp.2d
919 (N.D. Ill. 2008).

[2]FTC v. Trudeau, 579 F.3d 754 (7th Cir. 2009).

## I.  Contempt

The Seventh Circuit affirmed this court's finding that Trudeau was in contempt of this court's September 2004 consent order that settled a prior finding of contempt in which Trudeau, (a) paid $2 million for consumer redress, (b) agreed to an order prohibiting him from advertising any products in infomercials and allowing him to participate in infomercials for books and publications, so long as the infomercial did not "misrepresent the content of the book."  As this court found, and the Seventh Circuit affirmed, Trudeau willfully violated that order with respect to a book he published known as the Weight Loss Cure book.  Rather than repeat the details of this court's and the Court of Appeals' findings, the court refers to the opinions cited above.

Of particular importance to the matters currently before the court, the Court of Appeals confirmed that the infomercial was deceptive and "induc[ed] consumers to purchase the book on false hopes and assumptions. . . . Trudeau . . . outright lied."  579 F.3d at 767.

## II.  The Monetary Sanctions

### A.  Consumer Loss as Measure of Sanction for Contempt

Although the Court of Appeals affirmed this court's contempt finding against Trudeau (at that time the second such finding in the history of the case[3]), the reviewing court remanded the case for this court to "explain how it arrived at the specific amount of the sanction imposed. . . . [T]his means not only explaining where the numbers came from, but also outlining the

---

[3]The first finding by this court of contempt by Trudeau was on June 29, 2004 (Doc. 55).  Subsequent to the November 2007 contempt order (Doc. 92, 93) and the supplemental order of November 2008 (Doc. 220, 221) that are the subject of this opinion, on February 17, 2010, the court found Trudeau in criminal contempt for soliciting improper email communications to the court (Doc. 299).  That matter is currently on appeal.

methodology the court used to crunch those numbers and arrive at what it believed to be the appropriate amount." Id. at 770.

The first step, then, is for this court to explain why it ultimately chose an award approximating consumer loss rather than an award approximating the gain Trudeau might have received as a result of the infomercials. Initially, the court had ordered a sanction of slightly over $5 million, which the FTC had argued represented a conservative estimate of the royalties Trudeau received from the sales of the book. Both parties sought revision of that order, with Trudeau arguing, as he continues to argue, that the evidence demonstrated that he received no royalties from ITV and had no profit from the infomercial book sales to disgorge.

As the court has previously found, the court is very dubious of Trudeau's claims of relative impecunity. The FTC has calculated that the sales of the Weight Loss Cure book totaled over $49 million, yet Trudeau claims that he has received zero for his efforts. In the trial conducted by this court in the contempt proceedings, Trudeau attempted to rely on a balance sheet that, as this court found, was not worth the paper it was written on. It was merely a series of numbers that Trudeau's financial planner put together at Trudeau's direction in an unsuccessful attempt to show he could not afford to pay the compensation the FTC was seeking. See, FTC v. Trudeau, 572 F.Supp.2d at 925. The FTC has argued on numerous occasions that Trudeau is hiding substantial assets, and was in the process of discovering those assets when the Court of Appeals' opinion was issued. That process should be concluded before the final chapter is written in this litigation.

Nonetheless, although the court did not and does not believe that Trudeau received nothing for producing the infomercials or from the sales of the book through the infomercials,

Trudeau did convince the court that he has made it next to impossible to determine his gain and, as a result, any sanction based on disgorgement of profits would be a wholly ineffectual remedy and would do nothing to deter (and indeed might encourage) further contempt.  Although not noted in its final order, the court first notified the parties of its intent to base the sanction on consumer loss in the October 30, 2008, post-trial (pre-judgment) hearing, and heard extensive argument on the subject.

Moreover, as the Court of Appeals noted, "courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be `based on the nature of the harm and the probable effect of alternate sanctions.'  Consumer loss is a common measure for civil sanctions in contempt proceedings and direct FTC actions.  Indeed, some courts, including ours, have held that in certain cases consumer loss is a more appropriate measure than ill gotten gains."  Id. at 771 (internal citations omitted).  The court also noted that "as a prerequisite to basing sanctions on consumer loss, courts often require a finding that the defendants were 'engaged in a pattern or practice of contemptuous conduct' as opposed to 'isolated incidents of contumacy.'"  Id. at 772 (citing FTC v. Kuykendall, 371 F.3d 745, 764 (10th Cir. 2004) (en banc)).

The court finds that the consumers who purchased the Weight Loss Cure book as a result of the infomercials did so based upon Trudeau's "outright lies" and misrepresentations that "induc[ed] consumers to purchase the book on false hopes and assumptions" that they would lose weight by following an "easy" protocol, which was anything but easy.  As the Court of Appeals held, "Trudeau repeatedly distorted the content of the Weight Loss Cure book in

multiple infomercials"[4] in direct contempt of this court's orders and Trudeau's own agreement to refrain from misrepresenting the content of any book in an infomercial. See id. at 767-68. Based on his long record of deceptive conduct in direct and willful violation of this court's orders, there can be no serious question that Trudeau has engaged in a "pattern and practice of contemptuous conduct."

Therefore, given Trudeau's history of contemptuous conduct, the fact that his misrepresentations were so widely disseminated, and the fact that disgorgement of ill-gotten-gains would be wholly ineffectual, the court concludes, once again, that a sanction based on consumer loss is the only appropriate remedy.

The court rejects Trudeau's argument that FTC v. Verity Int'l Ltd., 443 F.3d 48, 66-70 (2d Cir. 2006), compels disgorgement as the only available remedy. In Verity, the FTC sued foreign operators of a billing service retained by internet pornographers, alleging that the operators committed statutory unfair trade practices by billing telephone line subscribers for internet access whether or not they actually accessed or authorized access to the pornographers' website. After issuing a preliminary injunction requiring certain financial disclosure requirements, the court held a bench trial on stipulated facts, found in the FTC's favor and ordered the restitutionary remedy of disgorgement to the FTC. On appeal, the Second Circuit held that because the case was brought under the second provision of § 13(b) of the FTC Act, 15 U.S.C. § 53(b), which provides for a preliminary injunction, any award of restitution had to be limited to "equitable restitution," which allows a plaintiff to recover money or property in the

---

[4]To be more precise, Trudeau produced three separate infomercials that were broadcast more than 32,000 times between December 2006 and November 2007.

defendant's possession that could be identified as belonging to the plaintiff. "Here, because the availability of restitution under § 13(b) of the FTC Act, to the extent it exists, derives from the district court's equitable jurisdiction, it follows that the district court may only award equitable restitution." Id. at 67. The Verity court thus rejected an amount of restitution based on the full amount of consumer loss, concluding that the appropriate measure was the benefits unjustly received by the defendants. Id. at 68.

Trudeau's argument that Verity compels disgorgement of unjustly retained profits as the only appropriate remedy for his contumacious conduct is misplaced. Verity involved a remedy for a direct violation of the FTC Act, and the FTC sought relief only under § 13(b), which provided solely for equitable relief. Id. at 67. The instant case is a civil contempt proceeding based on a direct and willful violation of a court order. Verity itself recognizes the difference in its review of the contempt sanctions the district court had ordered as a result of the defendants' violation of the preliminary injunction. In that discussion, which never mentioned disgorgement, the court, quoting United States v. United Mineworkers of America, 330 U.S. 258, 303 (1947), stated "[j]udicial sanctions in civil contempt proceedings may, in the proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for loses sustained." Id. at 70. Thus, even Verity recognizes that consumer loss is an appropriate measure of a contempt sanction. In the instant case, this court concludes that it is the only appropriate civil monetary remedy.

Trudeau has little credibility with this court. Based on his demeanor and conduct, the court has found, and continues to find, that Trudeau cannot be trusted. Any attempt to fashion a monetary sanction against him based on what he says he earned from the infomercials would be

sheer folly.  The consumers who were deceived by him in the infomercials deserve to be compensated for the money they spent on the book that was misrepresented in the infomercials, which includes the cost of the <u>Weight Loss Cure</u> book itself along with the shipping and handling charges associated with the book.  In short, if there was ever a case in which consumer loss was the proper measure of damages, this is it.

## B. <u>Calculation of Consumer Loss</u>

With respect to the calculation of consumer loss, this court has examined the evidence submitted by the FTC[5] to support the figure of $37,616,161.  To answer the Court of Appeals' questions at 579 F.3d at 771, this figure includes only the cost of the book purchased through the "800" telephone number displayed during the deceptive infomercial (including infomercials that were broadcast over the internet), along with shipping and handling costs, less returns to consumers.  In other words, it is a net figure.  It does not include internet sales (sales consummated by computer rather than by the 800 number), retail sales or the shipping and handling costs associated with other books that were sent to consumers who purchased the <u>Weight Loss Cure</u> book.[6]

---

[5]As the Court of Appeals held, "[t]he FTC bears the initial burden of establishing the baseline figures: a reasonable approximation of losses, gains, or some other measure the court finds appropriate . . .. [T]hen the burden shifts to the defendant to show that theses figures were inaccurate."  559 F.3d at 773 (internal citations omitted).

[6]The figure of $37,616,161 is calculated by subtracting $1,432,918 in returns from the direct response sales of $39,049,079.  As noted by the Court of Appeals in the instant case, the award "need not be reduced by the `value' of the books. . . .  `The fraud in the selling, not in the value of the thing sold, is what entitles consumers in this case to full refunds.'" 579 F.3d at 774 (n.16) (quoting <u>FTC v. Figgie Int'l, Inc.</u>, 994 F.2d 595, 606 (9th Cir. 1993).

Frankly, this is a conservative number, because there is little doubt that at least some purchasers of the book from retail stores were influenced to buy the book by the deceptive infomercials. The cover of the book displays a conspicuous sticker reading "As Seen on TV," thus directing the consumer to the misrepresentations in the infomercials. Surely, some consumers bought the book without opening it and discovering that they had been deceived. The same can be said of people who bought the book through the internet. Because the court cannot put a reliable number on such sales, it has decided in the exercise of its discretion to eliminate these entirely from its calculation of consumer loss.

Finally, with respect to the monetary award, the figures arrived at by the court were established by the unchallenged FTC summary exhibit (Plaintiff's Ex. 20), along with excerpts from the Rule 30(b)(6) deposition of ITV's George Potts, which exhibits were admitted into the record by agreement. Although Trudeau argues in the remand proceedings (for the first time) that these exhibits somehow do not support the sales figures advanced by the FTC and adopted by the court, Trudeau is incorrect. Because the history of the admission of trial exhibits has been challenged by Trudeau after remand, the court has reviewed the record and verified that the $37.6 million figure is accurate and, indeed, was never contested by Trudeau until recently.

After the trial testimony concluded in July 2008, the court encouraged the parties to submit an agreed set of exhibits to be incorporated into the court's final order. During this period Trudeau's counsel from the law firm of Jenner & Block (David Bradford and Daniel Hurtado) sought leave to withdraw, and his current counsel from Winston & Strawn (Kimball Anderson) appeared. Both sets of lawyers worked together to accomplish as smooth a transition as possible, but counsel for both sides were unable to agree with respect to all the exhibits. Both

the FTC and Trudeau eventually submitted objections, and the court specifically ruled (and the parties agreed) that any exhibit to which no objection was made would be admitted into evidence. (See, 9/30/08 Tr. at 10.)

The FTC objected to the admission of the entire Potts deposition (which the court sustained), but not specific excerpts offered by Trudeau.[7] Likewise, Trudeau did not object to the excerpts from the Potts deposition submitted by the FTC, nor to the summary exhibit (Plaintiff's Ex. 20) that was based on the sales information provided by ITV. (See Docs. 182, 184.) Indeed, at the October 20, 2008, hearing Mr. Anderson agreed that the ITV payment schedule (Plaintiff's Ex. 23; Potts Dep. Ex. 23) "is in the record." (10/20/08 Tr. At 35, l. 24-25.)[8]

Most importantly, Trudeau agreed to the admission of Plaintiff's Ex. 20, the summary of sales resulting from the infomercial, submitted under Fed. R. Evid. 1006. Mr. Anderson conceded at the hearing conducted by the court on March 12, 2010, that Trudeau never objected to this exhibit either at trial or on appeal.[9] Of course "summaries admitted pursuant to Rule 1006 are evidence." United States v. Winn, 948 F.2d 145, 158 (5th Cir. 1991) (emphasis in original). See also 6 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 1006.04[1]

---

[7]Recently, Trudeau's counsel has argued that the court's sustaining the objections to the admission of the entire Potts deposition somehow excluded the agreed admission of the parties' respective excerpts from the deposition. This is at best revisionist history and totally contrary to the record.

[8]This exhibit summarized ITV's payments to Trudeau for the infomercial sales from December 2006 through November 2007. Like the sales figures provided by ITV and incorporated into Plaintiff's Ex. 20, they were verified through the Potts deposition.

[9]Indeed, as the FTC points out, Trudeau himself cited to Plaintiff's Ex. 20 in his April 29, 2008, response to the FTC's remedy brief. (Doc. 123).

(Joseph M. McLaughlin, ed., Matthew Bender 2 ed. 1997). Trudeau's recent attempt to repudiate this record and question the basis of the court's quantification of consumer loss is wholly without merit.

## C. Discovery and Hearing

Trudeau argues that the Court of Appeals' reference to his right to discovery and a hearing entitles him to initiate a new round of discovery and requires the court to hold another trial. Nonsense. Both Trudeau and the FTC took (or had the opportunity to take) extensive discovery prior to the trial conducted by this court on the issue of contempt.[10] Over a three day period in July 2008, the FTC presented extensive evidence to support its charge of contempt, the damages suffered by consumers, and the remedies it sought.[11] Trudeau chose to present evidence and testimony that this court weighed and largely found to be bogus (the phony financial statements) or incredible (including Trudeau's testimony about the weight loss program). See FTC v. Trudeau, 572 F.Supp.2d 919, 923-25 (N.D. Ill. 2008). Trudeau eschewed the opportunity to present evidence of so-called consumer satisfaction or other mitigating factors, other than the expert testimony about retail sales that the court found at least partly convincing. In short, Trudeau has already been given all the process that he is due in these civil contempt proceedings, and the court has refused to open the record to give him a second (or third) bite at the apple.

---

[10]See, e.g., Doc. Nos. 94, 141 (orders scheduling and extending discovery).

[11]See Doc. Nos. 152-155.

For these reasons, the court grants the FTC's Renewed Motion for Entry of Compensatory Monetary Remedy Against Kevin Trudeau (Docket No. 267), and awards the sum of $37,616,161 subject to the terms discussed below.

### D. **Administration of the Sanction**

In addition to directing this court to explain how it calculated the amount of the award, the Court of Appeals directed the court to "outline how the sanction should be administered," noting that payment to the U.S. Treasury rather than consumers "looks more like a criminal fine than a compensatory sanction." 579 F.3d at 774. The Court of Appeals, however, rejected Trudeau's argument that any "excess money not reimbursed to consumers . . . be returned back to Trudeau." Id.

The FTC's Rule 60(b) renewed motion to modify the inunction suggests the appropriate method for administering the award. Because the FTC is confident that it can identify the consumers who purchased the Weight Loss Cure book via the 800 telephone number listed in the contumacious infomercials, it is confident that it can distribute the $37.6 million to most all of the victims of Trudeau's fraudulent conduct. To the extent that any of these consumers cannot be found or reimbursed, the FTC has proposed to refund the excess left over after deducting Trudeau's profits and costs of administration to Trudeau. In the exercise of its discretion the court declines to reduce any refund to Trudeau by the amount of his profits from the sale of Weight Loss Cure book, because those profits might be subsumed in the award of consumer loss. Given the history of this case and his willful misconduct, Trudeau can ask for no more.

For these reasons, the Modified Final Order for Permanent Injunction and Awarding Monetary Relief (Attachment A hereto) will include the award of $37,616,161 to be paid by Trudeau to the FTC, subject to the terms described above.

### III.  Modification of Stipulated Order for Permanent Injunction

The Seventh Circuit reversed this court's three-year infomercial ban primarily because it found that Trudeau had not been given sufficient notice that this court was considering such a remedy in connection with the contempt proceedings.  The Court of Appeals also acknowledged that this court "is in a better position to fashion an appropriate coercive remedy should it do so on remand.  The court could also, of course, choose to impose a criminal sanction instead."  579 F.3d at 779.  It is in this context that the FTC filed its Motion to Modify under Rule 60(b)(5) to modify the order of permanent injunction (Doc. 269).

First, the court agrees with the FTC that modification of the September 2, 2004 "Stipulated Order for Permanent Injunction as to Defendant Kevin Trudeau" (Doc.56; the "2004 Order") is warranted under Fed. R. Civ. P. 60(b)(5).  That rule provides that the court may relieve a party from a final judgment or order if "applying it prospectively is no longer equitable."  The FTC relies primarily on United States v. United Shoe Machinery, 391 U.S. 244, 247-52 (1968), and its progeny for the proposition that an injunction should be modified when the purposes of the order have not been achieved.  The FTC also cites to cases in which it has obtained "substantial modification" when defendant's contemptuous conduct "evidences the need for more stringent injunctive relief."[12]  Indeed, performance bonds have been granted in FTC enforcement actions even absent contempt findings.  See, FTC v. U.S. Sales Corp., 785 F. Supp. 737, 753 (N.D. Ill. 1997), aff'd, FTC v. Vlahos, 51 F.3d 275 (7th Cir. 1995).

---

[12]As examples, the FTC cites FTC v. Vocational Guides, Inc., 2009 WL 943486 (M.D. Tenn. April 6, 2009); FTC v. Neiswonger, 494 F. Supp. 1067, 1082-84 (E.D. Mo. 2007).

Trudeau disagrees with the notion that United Shoe articulates the proper standard, and cites United States v. Krilich, 303 F.3d 784, 789-90 (7th Cir. 2002), and Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383 (1992), as requiring a two-part test to determine whether modification is warranted: "a party seeking to modify a Consent Decree `bears the burden of establishing that a significant change in circumstances warrants revision of the decree.'" Krilich at 789-90 (quoting Rufo, at 383). The FTC argues that United Shoe should apply when a plaintiff seeks modification, and that Rufo addresses the situation when a defendant seeks to modify a consent decree.

It matters not whose position is correct on the proper standard, because this court finds that Trudeau's willful violations of this court's orders in general, and in particular the deceptive infomercials misrepresenting the content of his book in direct violation of the 2004 Order, constitute sufficiently changed circumstances to merit modification of the 2004 Order to prevent further consumer harm and deter Trudeau from further violations. As the Seventh Circuit noted in is opinion remanding this case, the 2004 Order "had two purposes: to protect consumers from deceptive practices and to compensate those already deceived." 579 F.3d at 764. As noted above, contrary to Trudeau's current position, the Court of Appeals specifically recognized that this court "is in a better position to fashion an appropriate coercive remedy, should it choose to do so on remand. The court could also, of course, choose to impose a criminal sanction instead. Or the district court could modify the [2004] Consent Order, on motion from the FTC or on its own motion, provided it give Trudeau sufficient notice and an opportunity to be heard on the matter." Id. at 779. As the extended briefing and hearings on remand demonstrate, Trudeau has

been given ample notice and an opportunity to be heard with respect to the modifications of the 2004 Order sought by the FTC.

Although the court agrees that the 2004 Order should be modified to accomplish its purposes of consumer protection and compensation, the court does not agree with the FTC that all of its suggested modifications should be adopted. The FTC seeks three specific changes to the 2004 Order: (1) requiring Trudeau to post a $10 million performance bond; (2) prohibiting Trudeau from misrepresenting the "benefits, performance, or efficacy of any product, program or service" in any infomercials he produces or distributes; and (3) reinstating and revising the 2004 Order's compliance reporting requirements, which have now expired.

### A.  Performance Bond

The FTC proposes that the court require Trudeau, for a period of five years, to post a $10 million performance bond "in connection with producing, disseminating, making or assisting others in making any representation in an infomercial for any book, newsletter, or other informational publication, about the benefits, performance, or efficacy of any product, program or service referenced in any such book, newsletter or other informational publication." Because Trudeau has demonstrated that he is likely to repeat his deceptive conduct in connection with marketing his book, the court agrees with the FTC that a performance bond in some amount does not violate Trudeau's First Amendment rights and is part of an appropriate equitable remedy in this case. Indeed, performance bonds in the millions of dollars have been approved in FTC enforcement actions even without a history of contemptuous conduct. See, FTC v. Career Assistance AME Planning, Inc., 1997 U.S. Dist. Lexus 17191 at *10, 20-21, 25 (N.D. Ga. 1997); FTC v. SlimAmerica, Inc., 77 F. Supp.2d 1263, 1275-77 (S.D. Fla. 1999). Of course, deceptive

15

commercial speech is entitled to no constitutional protection, <u>Central Hudson Gas & Elec. Corp.</u> <u>v. Public Serv. Comm'n of New York</u>, 447 U.S. 557, 566 (1980), and the Seventh Circuit has upheld the imposition of performance bonds in connection with contempt remedies. <u>FTC v.</u> <u>Vlahos</u>, 95 F.3d 1154 (7th Cir. 1996)(unpublished).

The court agrees that, in addition to the enhanced injunctive relief discussed below, a performance bond is appropriate in this case. Trudeau willfully deceived thousands of consumers by producing and publishing the deceptive infomercial at issue regarding the <u>Weight Loss Cure</u> book, causing tens of millions of dollars in losses to those consumers. The court has no faith in the notion that Trudeau has somehow been reformed by these proceedings or anything else that has happened since the publications of the offending infomercials in 2007. Indeed, Trudeau continues to deny that he did anything wrong, contends that his deceptive information is somehow protected by the Constitution, and pretends that he did not profit from the book or the infomercials and thus should not have to pay anything to the people he deceived.

Trudeau's only defense to a performance bond that has any credibility with the court is his claim that he cannot afford to post such a bond. Certainly, since this court is requiring Trudeau to pay the FTC the $37.6 million to compensate for consumer loss from the deceptive infomercial, it may well be (or it may well not be) that Trudeau does not have the funds or the assets available to post a bond in that amount. The court has therefore determined that a performance bond in the amount of $2 million is sufficient under the circumstances to require Mr. Trudeau to post before he can produce or publish any infomercials concerning his publications. Should Mr. Trudeau continue to claim that he cannot afford to post such a bond, he may move the court for relief from this provision by filing with the court an audited, verified

financial statement setting forth all of his assets and liabilities and income for the past five years. Should the court receive such a motion and financial statement, the court will schedule a hearing to test the accuracy of the information so provided.[13]

### B. Enhanced Prohibitions

The court agrees with the FTC that the 2004 Order should be modified to clarify that Trudeau is prohibited from making false or misleading statements in advertising for books or other infomercial publications. As the FTC points out, this should not even be debatable, especially in light of Trudeau's history of contempt; this merely repeats the legal principle that deceptive commercial speech is not entitled to any protection and should be prohibited. See United States v. Benson, 561 F.3d 718, 725 (7th Cir. 2009). The court will adopt the FTC's suggested language, with certain clarifying corrections as noted in the final order.

### C. Reinstating and Revising the 2004 Order Compliance Requirements

Again, Trudeau's history of contempt and willful misrepresentation requires the extension of the 2004 Order's requirements for reporting and other compliance activities for a period of ten years. This is especially appropriate in light of the fact that this court expects the FTC to be vigilant in policing Trudeau's infomercials in the future and to bring to the court's attention promptly any communications by Trudeau that the FTC believes are deceptive.

---

[13]The court notes that, in light of the enhanced and extended reporting requirements discussed below and in the final order entered herein, the FTC is tasked with reviewing Trudeau's infomercials and promptly notifying the court should the agency determine that any such infomercials are deceptive. Appropriate vigilance by the FTC should provide added deterrence to Trudeau to avoid deceptive communications and should lessen the potential harm to consumers that any such deception could cause.

## CONCLUSION

For the reasons discussed above, the court will enter this date the Supplemental Order Modifying the Stipulated Final Judgment for Permanent Injunction and Awarding Monetary Relief as to Defendant Kevin Trudeau (Attachment A). In addition, because the court concludes that criminal penalties may be appropriate in this case in addition to the civil remedies discussed above, the court will enter a separate order pursuant to Fed. R. Crim. P. 42, directing defendant to appear to show cause why he should not be held in criminal contempt.

So ordered:


**ENTER:** **April 16, 2010**

**Robert W. Gettleman**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No.  03 C 3904 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL ORDER MODIFYING THE STIPULATED FINAL ORDER FOR
PERMANENT INJUNCTION AND AWARDING MONETARY RELIEF AS TO
DEFENDANT KEVIN TRUDEAU**

On September 2, 2004, this Court entered a Stipulated Final Order for Permanent

Injunction (Doc. 56; the "Final Order") against Defendant Kevin Trudeau ("Defendant

Trudeau") and others.  Pursuant to Fed. R. Civ. P. 60(b), Plaintiff Federal Trade Commission

("FTC" or "Commission") filed a motion seeking modification of the Final Order as to

Defendant Trudeau in order to effectuate its purpose of protecting consumers.  For the reasons

stated in the Memorandum Opinion and Order dated this date (April 16, 2010), which is fully

incorporated herein, the court hereby orders:

**PROHIBITED BUSINESS ACTIVITIES**

**I.  (Supercedes Part I of the Final Order as to Defendant Trudeau)**

**IT IS THEREFORE ORDERED** that Defendant Trudeau, directly or through any

corporation, partnership, subsidiary, division, trade name, or other entity, and his officers,

agents, servants, employees, and all persons and entities in active concert or participation with

him who receive actual notice of this order by personal service or otherwise, in connection with

the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program or service, in or affecting commerce, is hereby permanently enjoined and restrained from producing, disseminating, making or assisting others in making any misrepresentation in an infomercial aired or played on any television or radio media (including but not limited to network television, cable television, radio, and television, radio or other content that is disseminated on the Internet).

This Part I does not prohibit Defendant Trudeau from making any truthful, non-misleading representation in any television or radio media in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any book, newsletter, or other informational publication in any format *provided* that any such book, newsletter or other informational publication:

1) does not reference, directly or indirectly, any branded or trademarked product, program or service that Defendant is promoting;

2) is not, directly or indirectly, an advertisement for any product, program or service; and

3) is not sold, promoted or marketed, directly or indirectly, in conjunction with any product, program or service that is related to the content of the book, newsletter or informational publication or infomercial;

*Provided further* that, Defendant Trudeau:

1) does not misrepresent the content of any such book, newsletter or informational publication; and

2) does not misrepresent the benefits, performance, or efficacy of any product, program or service referenced in any such book, newsletter or other informational publication.

Additionally, the infomercial for any such book, newsletter or informational publication must also comply with the requirements of Part X of the Final Order, reproduced herein.

For purposes of this Part I only, Defendant Trudeau will not be deemed to be disseminating television or radio media on the Internet provided that he does not, directly or indirectly, accept, process, or refer to third parties any orders from any addresses in the United States or consumers located in the United States.

## II. (Supercedes Part II of the Final Order as to Defendant Trudeau)

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and his officers, agents, servants, employees, and all persons and entities in active concert or participation with him who receive actual notice of this order by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program or service, in or affecting commerce, is hereby permanently enjoined and restrained from making or assisting others in making, expressly or by implication, including through the use of endorsements or product names, any misrepresentation regarding the health benefits of such product, program or service or that such product, program or service can cure, treat, or prevent any disease.

This Part II does not prohibit Defendant Trudeau from making any truthful, non-misleading representation in any television or radio media in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any book, newsletter, or other informational publication in any format *provided* that any such book, newsletter or other informational publication:

1) does not reference, directly or indirectly, any branded or trademarked product, program or service that Defendant is promoting;

2) is not, directly or indirectly, an advertisement for any product, program or service; and

3) is not sold, promoted or marketed, directly or indirectly, in conjunction with any product, program or service that is related to the content of the book, newsletter or informational publication or infomercial;

*Provided further* that, Defendant Trudeau:

1) does not misrepresent the content of any such book, newsletter or informational publication; and

2) does not misrepresent the benefits, performance, or efficacy of any product, program or service referenced in any such book, newsletter or other informational publication.

This Part II prohibits the making of any misrepresentations for, among others, the following products: any coral calcium product, Biotape, Eden's Secret Nature's Purifying Product, Sable Hair Farming System, and Dr. Callahan's Addiction Breaking System.


## FINAL ORDER PROVISION REPRODUCED

**WHEREFORE** as Part X of the Final Order is referenced in this Supplemental Order, it is reproduced here:

## FINAL ORDER, PART X

**IT IS FURTHER ORDERED** that Defendant Trudeau, directly or through any corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product or program in or affecting commerce, shall not create, produce, sell or disseminate:

A.    Any advertisement that misrepresents, directly or by implication, that it is not a paid advertisement;

B.    Any television commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually, clearly and prominently, and for a length of time sufficient for an ordinary consumer to read, within the first thirty (30) seconds of the advertisement and immediately before each presentation of ordering instructions for the product or service, the following disclosure:

> "THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

Provided that, for purposes of this provision, the oral or visual presentation of a telephone number, email address or mailing address for viewers to contact for further information or to place an order for the product or service shall be deemed a presentation of ordering instructions so as to require the display of the disclosure provided herein; or

C.    Any radio commercial or other radio advertisement five (5) minutes in length or longer that does not broadcast, clearly and audibly, within the first thirty (30) seconds of the advertisement and immediately before each presentation of ordering instructions for the product or service, the following disclosure:

> "THE PROGRAM YOU ARE LISTENING TO IS A PAID ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

Provided that, for purposes of this provision, the presentation of a telephone number, email address or mailing address for listeners to contact for further information or to place an order for the product or service shall be deemed a presentation of ordering instructions so as to require the announcement of the disclosure provided herein.

## III.  PERFORMANCE BOND

**IT IS FURTHER ORDERED** that Defendant Trudeau shall, in connection with

producing, disseminating, making or assisting others in making any representation in an

infomercial for any book, newsletter, or other informational publication, about the benefits, performance, or efficacy of any product, program or service referenced in any such book, newsletter or other informational publication, obtain and maintain in force a performance bond in the principal sum of two million dollars ($2,000,000). Said bond shall be conditioned upon compliance by Defendant Trudeau with the requirements of Part I of this Supplemental Order. The bond shall be deemed continuous and remain in full force and effect so long as, and for at least five (5) years after: (a) Defendant Trudeau produces, disseminates, makes or assists others in making any such representation in an infomercial for any book, newsletter, or other informational publication; or (b) any infomercial containing any such representation is aired or played on any television or radio media (including but limited to network television, cable television, radio, and television or radio content that is disseminated on the Internet). The bond shall cite this Supplemental Order as the subject matter of the bond and provide surety against Defendant Trudeau's failure to pay any judgment that may be ordered: (a) in consequence of a court finding of a violation of Part I of this Supplemental Order or (b) in settlement of an action by the FTC alleging a violation of Part I of this Supplemental Order. Such performance bond shall be an insurance agreement providing surety and shall be issued by a surety company that is admitted to do business in each state in which Defendant Trudeau is doing business and that holds a Certificate of Authority issued by the U.S. Department of Treasury as acceptable surety on federal bonds and reinsuring. Defendant Trudeau shall provide a copy of such performance bond to the Commission prior to the commencement of any business activity for which such bond is required.

Provided, however, in lieu of a performance bond, Defendant Trudeau may establish and fund, pursuant to the terms set forth herein, an interest-bearing escrow account in the principal sum of two million dollars ($2,000,000) in cash, or such other assets of equivalent value, which the Commission, in its sole discretion, has approved in writing. Defendant Trudeau shall maintain such amount in that account for so long as, and for at least five (5) years after: (a) Defendant Trudeau produces, disseminates, makes or assists others in making any representation in an infomercial for any book, newsletter, or other informational publication, about the benefits, performance, or efficacy of any product, program or service referenced in any such book, newsletter or other informational publication; or (b) any infomercial containing any such representation is aired or played on any television or radio media (including but limited to network television, cable television, radio, and television or radio content that is disseminated on the Internet). The escrow agreement shall cite this Supplemental Order as the subject matter of the escrow agreement and direct the escrow agent to pay the Commission from funds in the escrow account in the event of Defendant Trudeau's failure to pay any judgment that may be ordered: (a) in consequence of a court finding of a violation of Part I of this Supplemental Order or (b) in settlement of an action by the FTC alleging a violation of Part I of this Supplemental Order. Defendant Trudeau shall pay all costs associated with the creation, funding, operation, and administration of the escrow account. The Commission shall, in its sole discretion, select the escrow agent. The escrow agreement shall be in substantially the form attached to this Supplemental Order as Attachment A.

The performance bond or escrow agreement shall provide that the surety company or escrow agent, within thirty (30) days following receipt of notice that a judgment has been

entered either in consequence of a court finding of a violation of Part I of this Supplemental Order or in settlement of an action by the FTC alleging a violation of Part I of this Supplemental Order, shall pay the Commission so much of the performance bond or funds of the escrow account as is equal to the lesser of: (a) the amount of judgment ordered and which remains unsatisfied at the time notice is provided to the surety company or escrow agent, or (b) the amount of the bond or escrow fund. A copy of the notice provided for herein shall be mailed to Defendant Trudeau at his last known address.

Defendant Trudeau shall not disclose the existence of the performance bond or escrow account to any consumer, or other purchaser or prospective purchaser, to whom any book, newsletter, or other informational publication is advertised, promoted, offered for sale, sold, or distributed by means of an infomercial, without also disclosing, at the same time and in a like manner, that the performance bond or escrow account is required by order of the United States District Court for the Northern District of Illinois following findings that Defendant Trudeau made representations in infomercials that deceived consumers.

## IV.  COMPLIANCE REPORTING BY DEFENDANT

### (Supercedes Part XVII of the Final Order as to Defendant Trudeau)

IT IS FURTHER ORDERED, in order that compliance with the provisions of the Final Order and this Supplemental Order may be monitored:

A.      For a period of ten (10) years from the date of entry of this Supplemental Order, Defendant Trudeau shall notify the Commission of the following:

1.      Any changes in Defendant Trudeau's residence, mailing addresses, or telephone numbers, within ten (10) days of the date of such change;

2.  Any changes in Defendant Trudeau's employment status (including self-employment), and any change in Defendant Trudeau's ownership of any business entity, within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that Defendant Trudeau is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant Trudeau's duties and responsibilities in connection with the business or employment;

3.  Any changes in Defendant Trudeau's name or use of any aliases or fictitious names; and

4.  Any changes in corporate structure of any business entity that Defendant Trudeau directly or indirectly control(s), or has an ownership interest in, that may affect compliance obligations arising under the Final Order or this Supplemental Order, including but not limited to:  a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to the Final Order or this Supplemental Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, provided that, with respect to any such change in a business entity about which the Defendant learns less than thirty (30) days prior to the date such action is to take place, Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.  One hundred eighty (180) days after the date of entry of this Supplemental Order, and on the same date each year thereafter for a period of ten (10) years from the date of entry of

this Supplemental Order, Defendant Trudeau shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which he has complied and is complying with the Final Order and this Supplemental Order. This report shall include, but not be limited to:

1. Defendant Trudeau's then-current residence address, mailing addresses, and telephone numbers;

2. Defendant Trudeau's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that Defendant Trudeau is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant Trudeau's duties and responsibilities in connection with the business or employment;

3. A copy of each acknowledgment of receipt of the Final Order and this Supplemental Order, obtained pursuant to Part VI;

4. A copy of any Performance Bond obtained pursuant to Part III of this Supplemental Order;

5. Copies of all then-current advertisements, promotional materials, sales scripts, training materials, or other marketing materials utilized by Defendant Trudeau in the advertising, marketing, promotion, offering for sale, distribution, or sale of any book, newsletter, or other informational publication in any format; and

6. Any other changes required to be reported under subpart A of this Part.

C.    For the purposes of this Order, Defendant Trudeau shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all written notifications to the Commission to:

> Associate Director for Enforcement
> Federal Trade Commission
> 601 New Jersey Ave., N.W.
> Suite NJ-2122
> Washington, D.C. 20001
> Re:  FTC v. Kevin Trudeau, Civil Action No. 03-3904.

*Provided that*, in lieu of overnight courier, Defendant Trudeau may send such reports or notifications by first-class mail, but only if Defendant Trudeau contemporaneously sends an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov

D.    For the purpose of the compliance reporting required by the Final Order and this Supplemental Order, Defendant Trudeau shall provide the Commission with his counsel's name and address for the purpose of communications regarding this Supplemental Order and shall notify the Commission of any change in his counsel for the purpose of this Supplemental Order.

## V.  RECORD KEEPING PROVISIONS

### (Supercedes Part XVIII of the Final Order as to Defendant Trudeau)

IT IS FURTHER ORDERED that, for a period of thirteen (13) years from the date of entry of this Supplemental Order, Defendant Trudeau and any business for which he is a majority owner, officer, or director, or which he directly or indirectly manages or controls, are hereby restrained and enjoined from failing to create and retain the following records:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.      Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.      Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and a description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.      Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests;

E.      Copies of all advertisements, promotional materials, sales scripts, training materials, or other marketing materials utilized by Defendant Trudeau in the advertising, marketing, promotion, offering for sale, distribution, or sale of any book, newsletter, or other informational publication in any format;

F.      All records and documents necessary to demonstrate full compliance with each provision of the Final Order and this Supplemental Order, including but not limited to, copies of acknowledgments of receipt of the Final Order and this Supplemental Order required by Part VI of this Supplemental Order, and all reports submitted to the FTC pursuant to Part IV of this Order; and

G.      All materials that were relied upon in making any representations contained in the materials identified in Subpart E, including all documents evidencing or referring to the accuracy of any claim therein, as well as all evidence that confirms, contradicts, qualifies, or calls into question the accuracy of such claims.

## VI.  DISTRIBUTION OF FINAL ORDER AND SUPPLEMENTAL ORDER

### (Supercedes Part XV of the Final Order as to Defendant Trudeau)

IT IS FURTHER ORDERED, for a period of ten (10) years from the date of entry of this Supplemental Order, Defendant Trudeau shall deliver copies of the Final Order and this Supplemental Order as directed below:

A.      Defendant Trudeau as Control Person:  For any business that Defendant Trudeau controls, directly or indirectly, or in which Defendant Trudeau has a majority ownership interest, Defendant Trudeau must deliver a copy of the Final Order and this Supplemental Order to all: (1) principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Final Order and this Supplemental Order; and (3) any business entity resulting from any change in structure set forth in Subsection IV.A.4 of this Supplemental Order.  For current personnel, delivery shall be within (5) days of service of this Supplemental Order upon Defendant Trudeau. For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection IV.A.4 of this Supplemental Order, delivery shall be at least ten (10) days prior to the change in structure.

B.      Defendant Trudeau as employee or non-control person:  For any business where Defendant Trudeau is not a controlling person of a business but otherwise engages in conduct related to the subject matter of the Final Order and this Supplemental Order, Defendant Trudeau must deliver a copy of the Final Order and this Supplemental Order to all principals and managers of such business before engaging in such conduct.

13

C.     Defendant Trudeau must secure a signed and dated statement acknowledging receipt of the Final Order and this Supplemental Order, within thirty days of delivery, from all persons receiving a copy of the Final Order and this Supplemental Order pursuant to this Part VI.

## VII.  AWARD OF MONETARY SANCTION

As a sanction for Trudeau's contempt of the Final Order as found by this court (FTC v. Trudeau, 572 F. Supp.2d 919 (N.D. Ill. 2008)), and affirmed by the United States Court of Appeals for the Seventh Circuit (FTC v. Trudeau, 579 F.3d 754 (7th cir. 2009)), Trudeau is ordered to pay forthwith to plaintiff the sum of $37,616,161, representing the consumer loss resulting from Trudeau's contumacious and deceptive infomercial marketing of the Weight Loss Cure book.  The FTC shall use its best efforts to use this fund to reimburse all consumers who bought the Weight Loss Cure book over the 800 telephone number displayed in the infomercials for the cost of the book along with shipping and handling charges associated with that book. Any funds remaining after such reimbursement to consumers, less taxable costs and other costs of disbursement approved by the court, shall be returned to Trudeau within 30 days of final court approval.

The FTC is directed to file with the court a written report on the status of reimbursement efforts on or before July 23, 2010.  This matter is set for a status hearing on July 29, 2010, at 10:00 a.m.

## VIII.  ACKNOWLEDGMENT OF RECEIPT OF SUPPLEMENTAL ORDER

IT IS FURTHER ORDERED that Defendant Trudeau, within five (5) business days of receipt of this Supplemental Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Supplemental Order.

## IX. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Supplemental Order.

**IT IS SO ORDERED**, this16th day of April, 2010

_Robert W. Gettleman_

**Robert W. Gettleman**
**United States District Judge**