
CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1383

FEDERAL TRADE COMMISSION,

*Plaintiff*,

v.

KEVIN TRUDEAU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:03-cv-03904—**Robert W. Gettleman**, *Judge.*

ARGUED APRIL 8, 2010—DECIDED MAY 20, 2010

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Kevin Trudeau was before us last year, on appeal from a district judge's order finding him in contempt of court, fining him nearly $40 million, and barring him from appearing in any infomercials for three years. We found that the district judge properly held him in civil contempt (he had violated the terms of a consent order barring him from misrepresenting the content of any of his books on TV) but remanded the case so that the penalty he incurred for his contempt

conformed with the requirements of civil contempt. *FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009). We expressed no opinion on what his penalty should be but entrusted it to the sound judgment of the district court.

Trudeau is before us again. This time he's been sentenced to thirty days in jail after he was found in direct criminal contempt of court for his conduct during the civil contempt proceedings. (We discussed the difference between civil and criminal contempt in our prior opinion in this case, *id.* at 769.) Trudeau, it seems, exhorted his devoted radio audience to send e-mails on his behalf directly to the court e-mail address of the district judge presiding over his case; he posted the radio broadcast on his web site, and followed it up with an e-mail blast asking his e-mail list to send e-mails to the judge. The district judge had not asked for any letters and the judge had not (he thought) made his e-mail address publicly available (it turns out Northwestern University Law School had listed it on its web site; the judge is an adjunct professor there). He was, therefore, surprised to see e-mail after e-mail come pouring into his inbox. He was also nervous. Most of the e-mails were polite and enthusiastic ("If loving the values Kevin Trudeau creates for society is wrong, I don't wanna be right!"), but some had threatening overtones ("Leave kevin and his right to free spach alone. I wish carma on your soul this very moment. may god touch you today." [sic throughout] and "More people than you know are keeping a close eye on this case, not just the special interests who will benefit from Kevin's silence, but every-day regular people. We know that if he can be persecuted, so can we. We are awake to the tyranny

No. 10-1383                                                    3

slowly and quietly creeping into our society. We are watching."). The judge alerted the marshal to the e-mails coming to his account, and the marshal performed a threat assessment to determine whether the judge was in danger. The judge received over 300 e-mails within a span of 36 or so hours.

Once the judge began to understand that all these e-mails were arriving at Trudeau's behest, he summoned Trudeau's lawyer (and the lawyer for the FTC) into court the next morning without explaining why. At that morning's session, the judge notified Trudeau's counsel that Trudeau could be facing a criminal contempt sanction and ordered Trudeau to appear that afternoon. He also instructed Trudeau's counsel to have Trudeau make the e-mails stop. Before he showed up later that day, Trudeau sent an e-mail to his listeners asking them to cease e-mailing the judge. Still, the judge summarily found Trudeau guilty of criminal contempt and, a week later, imposed the 30-day sentence. On Trudeau's motion we stayed the execution of the sentence and expedited his appeal. The FTC officially took no position on the criminal contempt judgment, and deferred to the United States Attorney, who also did not take a position. We, therefore, appointed an amicus to argue on behalf of the contempt judgment.[1] We now consider whether Trudeau's summary punishment for direct criminal contempt was a proper exercise of the district court's authority.

---

[1] We thank Gary Feinerman, of Sidley Austin, for his exceptional service in this role.

Trudeau argues that his conviction is defective on both substantive and procedural grounds, and he does so in that order. Substantively, he contends that his conduct was not contemptuous, not punishable under the criminal contempt statute, 18 U.S.C. § 401, and that it was protected under the First Amendment. Procedurally, he disputes the judge's use of a summary procedure to convict him of contempt. He also questions the reasonableness of his sentence in the event that his challenges to the conviction fail. We think it makes the most sense to address the procedural aspects of the contempt conviction first because by the very nature of a summary proceeding at the district court, the record before us is rather sparse. A more complete record would be more appropriate for the full consideration of his substantive arguments. As you will see, Trudeau's substantive concerns will, for the most part, require further development.

Federal law, 18 U.S.C. § 401, confers upon a court the authority to punish by imprisonment "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice," *id.* § 401(1), and "disobedience or resistance to its lawful writ, process, order, rule, decree, or command," *id.* § 401(3). Conduct that violates § 401 is a crime, and generally contemnors are convicted through normal criminal process. *See Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826 (1994). Federal Rule of Criminal Procedure 42(a) outlines the ordinary procedures necessary for a finding of criminal contempt. None of those procedures

No. 10-1383                                        5

were followed in this case, because the judge proceeded under Rule 42(b), which allows for the summary punishment of direct criminal contempt. (If you read the older cases, you'll notice that in the past 42(a) described summary contempt procedures and 42(b) described the standard process. These provisions were rewritten and re-ordered in 2002. *See* Fed. R. Crim. P. 42 advisory committee notes to the 2002 amendments; *In re Contempt Order*, 441 F.3d 1266, 1267 n.2 (10th Cir. 2006)).

A finding of direct contempt is appropriate only if the criminal contempt occurred in the presence of the judge and "the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b). Contempt in the presence of the court "must be punished on the spot to maintain the court's authority." *Mann v. Hendrian*, 871 F.2d 51, 52 (7th Cir. 1989). The use of the summary contempt power is proper only for "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *Pounders v. Watson*, 521 U.S. 982, 988 (1977) (per curiam) (quoting *In re Oliver*, 333 U.S. 257, 275 (1948)).

The fundamental principle in contempt cases is that the court must exercise the least possible power to the end proposed. *United States v. Moschiano*, 695 F.2d 236, 251 (7th Cir. 1982) (citing *United States v. Wilson*, 421 U.S. 309, 319 (1975)); *see also Anderson v. Dunn*, 19 U.S. 204, 231

(1821). As applied to the direct contempt context, the least possible power principle instructs that summary disposition is proper only when "the express requirements of the rule are met and when there is a 'compelling reason for an immediate remedy' or time is of the essence." *Moschiano*, 695 F.2d at 251; *see In re Jafree*, 741 F.2d 133, 135 (7th Cir. 1984) (requiring that there be both a compelling reason for an immediate remedy *and* time is of the essence). If the literal requirements of the summary disposition rule are met, we review the district judge's decision to impose it for an abuse of discretion. *Moschiano*, 695 F.2d at 251-52. If there is an "explicit determination that there was a compelling need for an immediate remedy, we shall give appropriate deference to that finding." *Id.* at 252. But, "in light of the serious potential for abuse of the summary contempt power . . . we emphasize the special duty of an appellate court to give careful and meticulous consideration to the trial court's decision that summary disposition is appropriate." *Id.*

 "The Supreme Court has said that [summary contempt] is reserved for 'exceptional circumstances' " which include "acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Id.* at 250 (citing *Harris v. United States*, 382 U.S. 162, 164-65 (1965)). Absent those circumstances, the judge should proceed under Rule 42a's procedures.  *See id.* "[T]he power of summary contempt is capable of grave abuse, and is properly regarded by the courts with extreme disfavor." *Id.*(citations omitted). "Accordingly, the Supreme Court has indicated that the

No. 10-1383 7

power of summary contempt is limited to cases in which immediate punishment is essential to prevent demoralization of the court's authority before the public, and that before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice." *Id.* at 250-51 (citations and internal quotations omitted).

The judge found the "presence" condition satisfied in this case because he could read the e-mails on the court's computers (including the computer in the courtroom) and his PDA which he carried with him so that he was "always in communication" with the court. Neither finding is sufficient to satisfy Rule 42's "presence" requirement. We resist the district court's suggestion that the term "presence" should be expanded to reach beyond the judge's actual, physical presence. While the Supreme Court has held that "the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court," *Ex parte Savin*, 131 U.S. 267, 277 (1889) (finding that witness-tampering that occurred in the jury room and court hallway occurred in the court's presence), the language of Rule 42(b) specifically requires that the judge "saw or heard the contemptuous conduct," *see Cooke v. United States*, 267 U.S. 517, 535-36 (1925) (distinguishing the contempt at issue in *Savin* with contempt "under the eye or within the view of the court"). This requirement indicates that the act itself

must be committed in the judge's presence; that its effects are felt by the district judge is insufficient to justify summary disposition. *Pounders*, 521 U.S. at 988 (recognizing that summary disposition is only appropriate where "all of the essential elements of the misconduct are under the eye of the court [and] are actually observed by the court"); *Cooke*, 267 U.S. at 534. Expansion of the term to encompass the "virtual presence" of the court also runs afoul of the limiting principles indicated by the Rule's language and the contempt jurisprudence we discussed above. *See Moschiano*, 695 F.2d at 250; *cf. United States v. Thompson*, 599 F.3d 595, 600 (7th Cir. 2010) (vacating the revocation of defendant's supervised release because defendant's revocation was conducted via videoconference); *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001) (vacating sentence where defendant appeared via videoconference at sentencing hearing and noting that "presence means physical presence"). Furthermore, Rule 42(b) specifically limits the contempt necessary for summary disposition to conduct in the presence of the judge, while § 401(1) punishes both conduct in the presence of the court and conduct "so near thereto as to obstruct the administration of justice." Rule 42(b)'s omission of this latter category of conduct convinces us that we should construe the term "presence" narrowly in the context of summary disposition. *See Cooke*, 267 U.S. at 536 ("When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument.").

No. 10-1383 9

The narrow construction makes sense in this case. Despite his statement that he relied on no extrinsic evidence to find Trudeau in contempt, the judge had to do research in order to figure out why he was getting Trudeau's e-mails. He (or his staff) went on Trudeau's web site, had his court reporter transcribe the broadcast, and entered the e-mails, web site posting, and broadcast into the record. (Furthermore, at the moment he found Trudeau in contempt, the judge did not know where Trudeau had gotten his e-mail address, and implied that it had been obtained improperly: "I don't know how he would have gotten my e-mail address. I'm curious, at least, and concerned about how that happened. It is not a matter of public record." A week later, when sentencing Trudeau, the judge determined that the e-mail address had actually been revealed through a simple internet search.) This level of fact-finding renders summary disposition improper: the justification for summary process is that because he witnessed the contemptuous conduct, the judge knows all he needs to know in order to punish the defendant. Even if the external facts determined by the court are uncontested, we are loath to endorse a system where the only way a defendant can avoid summary process is by denying these facts. This would create a real Fifth Amendment concern by essentially forcing the defendant to admit or deny incriminating behavior before determining the process to which he is entitled.

The judge put Trudeau in something of a bind, for instance, when he said, "Let me just make something very clear. I mean, I want to make sure that it's

clear. Mr. Trudeau concedes that he did, in fact, cause these e-mails to be sent." The context of the statement makes clear that the judge was expecting Trudeau to concede his guilt at this point (his lawyer diplomatically refrained from doing so). But, under the summary contempt procedure, there should be no need to put the question to the defendant; the judge must have seen or heard the contemptuous conduct. Here, relevant facts had to be determined before Trudeau could be found in contempt because the conduct occurred outside the judge's presence; it makes no difference if the judge was absolutely convinced that he had uncovered contemptuous conduct outside the courtroom through his own investigation. *Cooke*, 267 U.S. at 538 ("In cases like this, where the intention with which acts of contempt have been committed must necessarily and properly have an important bearing on the degree of guilt and the penalty which should be imposed, the court cannot exclude evidence in mitigation."). Summary disposition was an abuse of discretion.

Amicus presses the urgency of the situation the district judge faced, which he says justified summary punishment. We note that this argument assumes that the contempt occurred in the judge's presence, which we reject. But underlying the argument is the idea that increased urgency attenuates the necessity of actual presence. This is worth addressing. *See In re Troutt*, 460 F.3d 887, 894 (7th Cir. 2006) (determining whether contempt was in the presence of the court by examining whether time was of the essence, a trial was being

No. 10-1383　　　　　　　　　　　　　　　　　　　　　　11

disrupted by the conduct, and whether any immediate function of the court was threatened by the conduct). Amicus emphasizes that the judge was compelled to ask the marshal to undertake a threat assessment. As we mentioned, some of the e-mails could easily be construed as raising concerns about a threat to the judge (another example: "You have sold your souls for power and wealth, and eternal spiritual destruction awaits those who condemn the righteous. May God be merciful to you, and may He bless Kevin Trudeau always."). But urgency, while required to invoke summary contempt power, is not sufficient to justify its exercise. There must be a nexus between the urgency of the situation and the need for immediate punishment. This required connection is why, for instance, refusing to testify before a grand jury is not subject to summary contempt procedures, *Harris*, 382 U.S. at 164, but refusing to testify during a trial is, *Wilson*, 421 U.S. at 318; *see also In re Grand Jury Proceedings*, 875 F.2d 927, 933 (1st Cir. 1989) ("The rationale for curtailing the usual criminal procedures in the event of in-court contempt is that a court must be able to maintain order to assure the integrity of court proceedings. The same degree of urgency is not inherent in punishment of contempts committed outside the presence of the court, since out-of-court contempts do not disrupt the judge's handling of ongoing proceedings over which he is presiding."). For example, in what we could view as the typical direct contempt case—an obstreperous litigant at trial who will not heed the court's instructions and brings the trial to a halt—the need for the litigant's compliance in order to continue the proceedings is urgent; by the

same token, there is an urgent need to punish the litigant quickly so the proceedings may resume.

But in this case, the need to preserve the court's security and the need to punish Trudeau summarily were not closely linked. A finding, by itself, that the court's security procedures were implicated does not amount to a finding that there was a "compelling reason" to immediately punish Trudeau. The urgency required for summary disposition is not merely that the conduct itself created an emergency but that the need to punish the conduct was so urgent that procedural safeguards should be disregarded. The need for the court to conduct its duties is the fundamental rationale underlying the court's summary contempt powers. *Wilson*, 421 U.S. at 316 (noting that when conduct "disrupts and frustrates an ongoing proceeding . . . summary contempt must be available to vindicate the authority of the court" and remedy the situation.).

The record in this case is devoid of any suggestion that Trudeau's summary punishment was necessary to restore the court's ability to resume its duties. "No trial was being disrupted by a failure to comply with a court order." *Troutt*, 460 F.3d at 894. And, while we credit the judge's determination that the e-mails "imped[ed] [the court's] means of communication and caus[ed] the necessity of a threat assessment," he made no finding that immediate and summary punishment for Trudeau was necessary to solve his communication problems; in fact, Trudeau asked his followers to stop e-mailing the judge before he even got to court. *See Wilson*,

No. 10-1383 13

421 U.S. at 319 (noting that summary punishment is appropriate "to prevent a breakdown of the proceedings"); *see also United States v. Brown*, 791 F.2d 577, 578 (7th Cir. 1986) (holding that summary punishment was appropriate for "a serious interference with the process of justice" defined as "obstreperous conduct" that brought the "trial to a halt"). The judge found that Trudeau should not be able to take advantage of the judge's willingness to allow him a chance to appear in court before finding him in contempt in order to argue that summary contempt was impossible. *Cf. United States v. Griffin*, 84 F.3d 820, 829 (7th Cir. 1996) (noting that because a judge had the power to use summary contempt procedures, the same judge could adjudicate the case under notice-and-hearing procedures). But because the conduct occurred outside the judge's presence and, rather than being forced to stop proceedings by Trudeau's behavior, the judge had to actually *convene* proceedings in order to get Trudeau before the court, summary contempt should never have been an option here.

This is not to say that there should be no consequence for Trudeau's actions, only that absent a compelling reason for summary disposition, Trudeau is entitled to the normal array of procedures under Rule 42(a). *Wilson*, 421 U.S. at 319 ("In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting, [summary contempt] provides an appropriate remedial tool . . . . Where time is not of the essence, however, the [standard contempt procedures] may be more appropriate to deal with contemptuous conduct."); *Jaffree*, 741 F.2d at 135 (Unless time is of the essence and there is some

14                                                               No. 10-1383

"compelling reason for an immediate remedy. . . [a]ll other contumacious conduct is indirect contempt."). While the e-mails surely impeded the court's function, the summary contempt finding was not tailored toward resolution of the problem the e-mails caused. And, even if this were a close case, the judge should have erred "on the side of providing the procedural safeguards assured by Rule 42(a)." *Troutt*, 460 F.3d at 894.

Because there was no compelling reason for the summary disposition and the conduct did not occur in the court's presence, Trudeau's contempt case did not warrant summary disposition. Therefore, the "exclusive remedy" for Trudeau's conduct is found in Rule 42(a). *S.E.C. v. Simpson*, 885 F.2d 390, 396 (7th Cir. 1989). Trudeau argues that, as a matter of law, his conduct could not rise to the level of criminal contempt because he was not "in [the court's] presence or so near thereto as to obstruct the administration of justice" such that he did not violate § 401(1), *see Nye v. United States*, 313 U.S. 33 (1941). *Nye*, he argues, poses a geographical limitation on, contemptuous conduct, and he also argues that there is no evidence in the record to support the notion that he either intended to or actually did obstruct justice. The posture of the case, however, makes it impossible to weigh his arguments; as we discussed, the very nature of summary disposition is that no separate fact-finding is required. This is also why its use should be limited. Trudeau does not argue that our consideration of the case is limited to the record relied on by the district court or that further prosecution under normal contempt procedures is somehow estopped by the

No. 10-1383                                                                 15

judge's choice to pursue summary contempt. He is probably correct to avoid those arguments. *See Troutt*, 460 F.3d at 895 (reversing summary contempt disposition and remanding for "a new contempt proceeding that complies with the requirements of Rule 42(a)"); *United States v. Hawkins*, 76 F.3d 545, 552-53 (4th Cir. 1996) ("Having found that the trial court committed reversible error, we are of the opinion that, rather than simply reverse [the defendant's] contempt conviction, the conviction should be vacated and the matter remanded for further proceedings . . . ."); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (affirming that remanding for a new trial after reversal on a procedural error is consistent with the Double Jeopardy Clause). Unlike many cases where the entire record of the proceedings below constitute the evidence of contempt, all of the conduct here occurred off the record; what we know is based on what the district judge asked to include in the record. The posture of the case once again illustrates why this case was ill-suited for summary disposition. If the case is referred for prosecution, Trudeau will be able to put into the record his full defense. At that point, whether his conduct violated § 401 will be adjudicated by a fact-finder.

Trudeau also argues that soliciting e-mails on his own behalf was protected conduct under the First Amendment, and that any alternative basis for the imposition of criminal contempt (say, under § 401(3) for violating a court order—in this case, the court's decision to keep discovery closed) is impermissible. But we express no opinion on these arguments; we don't know

whether prosecution of Trudeau for his e-mail-related conduct will be resumed in the district court pursuant to Rule 42(a) procedures. But if so, arguments about whether his conduct was contemptuous or protected by the First Amendment should be made in the first instance at the district court and on a more complete record than we have here.

Accordingly, we vacate Trudeau's sentence and the district court's finding of contempt, and remand for further proceedings according to 18 U.S.C. § 401, Fed. R. Crim. P. 42(a), and this opinion. If the district judge chooses to continue with the criminal contempt proceedings and refers Trudeau's case to a prosecutor under Rule 42(a), Circuit Rule 36 shall apply to the adjudication of the criminal contempt charge only. *See Cange v. Stotler & Co.*, 913 F.2d 1204, 1208 (7th Cir. 1990). The underlying civil contempt litigation is still pending in the district court and, as far as we are concerned, is unaffected by this opinion. *See Johnson v. Cherry*, 422 F.3d 540, 556 (7th Cir. 2005).

VACATED and REMANDED.

5-20-10