IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 3904 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The history of defendant Kevin Trudeau's deception and misconduct in connection with his promotional activities is chronicled in the numerous opinions by this court[1] and the court of appeals, and need not be repeated here. Perhaps the best prelude to this latest chapter is the opening paragraph of the Seventh Circuit's opinion in FTC v. Trudeau, 579 F.3d 754, 756 (7th Cir. 2009) ("Trudeau I"[2]):

> If you have a problem, chances are Kevin Trudeau has an answer. For over a decade, Trudeau has promoted countless "cures" for a host of human woes that he claims the government and corporations have kept hidden from the American public. Cancer, AIDS, severe pain, hair loss, slow reading, poor memory, debt, obesity -- you name it, Trudeau has a "cure" for it. To get his messages out, Trudeau has become a marketing machine. And the infomercial is his medium of choice. He has appeared in dozens of them, usually in the form of a staged, scripted interview where Trudeau raves about the astounding benefits of the miracle product he's pitching. But Trudeau's tactics have long drawn the ire of the Federal Trade Commission ("FTC"). By promoting his cures, Trudeau claims he is merely exposing corporate and government conspiracies to keep Americans fat and unhealthy. But the FTC accuses Trudeau of being nothing more than a

[1]FTC v. Trudeau, 567 F. Supp.2d 1016 (N.D. Ill. 2007); FTC v. Trudeau, 572 F. Supp.2d 919 (N.D. Ill. 2008); FTC v. Trudeau, 2008 WL 7874195 (N.D. Ill. 2008).

[2]"Trudeau II" involved a contempt order arising after the events at issue in this opinion. FTC v. Trudeau, 606 F.3d 382 (7th Cir. 2010).

> huckster who preys on unwitting customers-a 21st-century snake-oil salesman. For years Trudeau has dueled with the FTC in and out of court.

In that opinion, the court of appeals affirmed this court's having found Trudeau in contempt of its September 2004 agreed consent order (Doc. 56; the "2004 Order"), resulting from Trudeau's violation of an earlier injunction entered in 2003, after Trudeau had violated a yet earlier injunction arising from his deceptive promotion of purported health care products. See Trudeau I, 579 F.3d at 757-58.

The 2004 Order required Trudeau to pay $2 million for consumer redress and prohibited him from advertising any product or service in infomercials, but allowed him to promote books and publications by infomercials so long as he did "not misrepresent the content of the book." Trudeau's willful violation of this proscription in infomercials promoting what is known as the "Weight Loss Cure" book led this court to find him in contempt[3], a finding that the Seventh Circuit affirmed (Id. at 767):

> In sum, Trudeau misrepresented the content of his *Weight Loss Cure* book. Trudeau may have quoted parts of his book, but he did so deceptively. These selective quotations mislead because they present consumers with an incomplete picture of what the protocol requires, thereby inducing consumers to purchase the book and on false hopes and assumptions. True, Trudeau's belief that the protocol is "easy" is his subjective opinion. But without giving consumers a fuller picture of what the protocol entails while claiming that the protocol is "the easiest method known on planet Earth," consumers are led to believe that Trudeau's statements are more than just his beliefs; they appear as objective facts. Moreover, Trudeau did more than just quote his book; he outright lied. In one infomercial, Trudeau claimed the protocol was "not a diet, not an exercise program, not portion control, not calorie counting, . . . no crazy potions, powder or pills . . . ." None of that is true. Dieters "MUST" eat only 100% organic food, walk an hour a day, eat six meals per day, eat only 500 calories per day for up to 45 days, drink organic raw apple vinegar cider, and take probiotics, krill oil, Vitamin E, digestive enzymes, and Acetyl-L Carnitine. Consequently, we

[3]FTC v. Trudeau, 567 F. Supp.2d 1016 (N.D. Ill. 2007).

conclude Trudeau violated the 2004 Consent Order by misrepresenting the content of his book.

In rebuffing Trudeau's claim that his deceptive infomercials were somehow inadvertent or otherwise excusable, the court of appeals noted: "Trudeau didn't merely 'quote' the weight loss book. He falsely described the weight loss protocol to make it sound safer and less arduous than it actually is." Id. at 767. "Trudeau repeatedly distorted the content of the *Weight Loss Cure* book in multiple infomercials . . . ." Id. at 768.

Having affirmed this court's finding of contempt, the court of appeals remanded the case on the issue of remedy. First, the court of appeals directed this court to explain further how it reached its decision to order Trudeau to pay $37.6 million in restitutionary damages for the consumer loss caused by his contemptuous conduct, and to fashion procedures to ensure that any sum awarded on remand be reimbursed to injured consumers who purchased the Weight Loss Cure book.[4] In addition, the court of appeals reversed the portion of the 2010 Order barring Trudeau from appearing in infomercials for any product, including books, for a period of three years, finding that such a ban is "generally considered punitive and therefore criminal contempt." Id. at 777 (quoting In re: Grand Jury Proceedings, 280 F.3d 1103, 1108 (7th Cir. 2002)). In remanding the case, the court of appeals noted several times that the government or

---

[4]This court, after extensive hearings and briefings by the parties, confirmed its calculations and reimposed the award of $37.6 million in a memorandum opinion and order dated April 16, 2010 (FTC v. Trudeau, 708 F. Supp.2d 711, (N.D. Ill. 2010); (the "April 2010 Order"). Trudeau has appealed that order, and the case was recently argued in the court of appeals.

this court might seek to impose criminal sanctions in addition to or in lieu of civil contempt remedies. Trudeau I, 579 F.3d at 776, 779.[5]

On remand, as noted above, after extensive proceedings this court issued its April 2010 Order, directing Trudeau to pay $37.6 million to reimburse injured consumers, establishing the procedure to effect such reimbursement, and ordering Trudeau to post a $2 million performance bond before proceeding with further infomercials, among other relief. This civil contempt remedy issue is currently on appeal.

In addition, also on September 16, 2010, the court ordered Trudeau to show cause why he should not be prosecuted for and held in criminal contempt of this court's 2004 Order, and requested the United States Attorney to prosecute Trudeau for criminal contempt ("the Show Cause Order"; Doc. 339). In issuing the Show Cause Order, this court sought to "vindicate the authority of the court and the integrity of [its] orders,"[6] as well as to deter Trudeau from continuing the deceptive, damaging misconduct that he has demonstrated he is inclined to continue.

Thereafter, the United States Attorney appeared and accepted the prosecution for criminal contempt with a penalty not to exceed six months imprisonment, and appointed two Assistant United States Attorneys to prosecute the case. Subsequently, Trudeau filed objections to the Show Cause Order and a motion to recuse the undersigned judge from the criminal

[5]"Should the government or the district court seek to impose criminal sanctions on remand, a different measure of due process is required. See Fed. R. Crim. P. 42 . . .". Id. at 776: "The district court is in a better position to fashion an appropriate coercive remedy, should it choose to do so on remand. The court could also, of course, choose to impose a criminal sanction instead." Id. at 779.

[6]U.S. v. Griffin, 84 F.3d 820, 827 (7th Cir. 1996).

prosecution pursuant to 28 U.S.C. § 455(a). It is that objection and motion to recuse, along with supporting and opposing briefs and after oral argument, that is currently before this court for ruling.

The principal basis on which Trudeau objects to this court conducting a non-jury criminal proceeding for contempt under Fed. R. Civ. P. 42 is his contention that the undersigned judge has prejudged defendant's guilt, as evidenced by this court's remarks on a number of occasions that Trudeau's violation of the several injunctions was "willful," or words to that effect. For example, this court has stated that Trudeau is a "career contemnor," is "deceitful," "not credible," and "cannot be trusted." Citing U.S. v. Griffin, 84 F.3d 820, 829-30 (7th Cir. 1996), along with a number of other decisions, Trudeau claims that the Show Cause Order and this court's prior rulings "create[ ] the 'appearance' that this court has prejudged Trudeau's guilt," and that "a finding of criminal contempt by this court would be `fundamentally and irreparably flawed.'"[7]

Although in Trudeau's objection to the Show Cause Order he disclaimed that he was seeking recusal of the undersigned judge, his later motion for recusal seeks just that. Rather than claiming that this court is actually biased, Trudeau argues that the court's remarks about the nature of Trudeau's violations of the various injunctions and his lack of credibility create an "appearance of partiality" that requires recusal under § 455(a), which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Indeed, on several occasions, this court

[7]Trudeau advances several other meritless arguments, such as contending that the $37.6 million civil restitutionary award is somehow a "fine" that is criminal in nature, and that the Show Cause Order lacks specificity.

has stated that it understands perfectly well the difference between civil and criminal contempt, including the difference in *mens rea* and the burden of proof required of the government in criminal cases as opposed to civil proceedings, and would keep an open mind as to whether the government could meet that burden in the instant matter. Trudeau does not seem to question this court's sincerity in those remarks, but instead indicates that the "appearance" of partiality requires recusal under § 455(a). The court disagrees.

First, it is clear that, as explained by the Seventh Circuit in Griffin, 84 F.3d at 831, "[r]eferral of criminal contempt proceedings to another judge is necessary only when the record demonstrates the likely presence of personal animosity between the trial judge and the contemnor." As explained in Liteky v. United States, 510 U.S. 540, 555-56 (1994), a district judge may not be disqualified from hearing a criminal contempt arising out of a lawsuit based upon facts that the judge learned in the litigation itself, or expressions of dissatisfaction or even anger resulting from those facts. Put another way, a litigant may not misbehave his way to another judge.

Any bias that requires recusal must therefore result from extrajudicial sources. As the Supreme Court stated in Liteky (id. at 555):

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias

> or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. [Citations omitted.]

Acknowledging that this standard would not require recusal in the instant case, Trudeau nevertheless argues that even absent actual bias, the court's prior statements based on Trudeau's conduct in the instant case create the appearance of actual bias, requiring recusal under § 455(a). As Trudeau notes and Magistrate Judge Jeffrey Cole described in "Jilting the Judge: How to Make and Survive a Motion to Disqualify," 34 ABA Litigation Journal, No. 2, 48, at 50 (Winter 2008):

> Under section 455(a), the test is an objective one, measured not by the hypersensitive or unduly suspicious person but by the hypothetical, reasonable, thoughtful observer, fully informed of all the relevant facts underlying the grounds on which disqualification is sought. The Supreme Court is quite insistent of the "fully informed" component of the inquiry. Sao Paulo State of Federative Republic of Brazil v. Am. Tobacco Co., Inc., 535 U.S. 229, 232-33 (2002); Cheney v. U.S. Dist. Court for Dist. Of Columbia, 541 U.S. 913, 924 (2004) (statement of Justice Scalia). So, too, are the courts of appeals. In Re Kensington Int'l Ltd., 368 F.3d 289, 302-03 (3d Dist. 2004). Section 455(a) asks whether an informed person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. In re Mason, 916 F.2d 384, 385-86 (7th Cir. 1990). See Liljeberg, 486 U.S. at 859-60. The test of section 455 makes clear that a judge's "moral certainty" that he can be fair is irrelevant; the test is whether his impartiality might reasonably be questioned. In re Cargill, Inc., 66 F.3d 1256 (1st Cir. 1995).

There is no evidence of actual bias or an appearance of actual bias by this court other than the conclusions reached in connection with adjudicating the matters presented in this case. No "reasonable, thoughtful observer, fully informed of all the relevant facts underlying the ground on which disqualification is sought" could conclude otherwise. See Sao Paulo State, 535 U.S. at 232-233. Consequently, this court finds that there is no basis requiring recusal under § 455(a).

The principal problem with Trudeau's position in the instant case is that this court's previous findings of willfulness and deception were made in the context of civil contempt proceedings, which this court has recognized require a different and lesser standard of proof and level of intent than as required in a criminal contempt. Indeed, the court of appeals in this very case, in affirming this court's finding of contempt, has stated that Trudeau "falsely described the weight loss protocol," that Trudeau "repeatedly distorted the content of the *Weight Loss Cure* book in multiple infomercials," and that Trudeau "outright lied." See Trudeau I at 767, 768, 767. The court of appeals' findings are no less prejudicial or indicative of a need to recuse than this court's findings on the same subject. The dictionary definition of a "lie" is "to make an untrue statement with intent to deceive." Websters Third New Int'l Dictionary 1305 (1993). If anything, the language employed by the court of appeals is an even stronger condemnation of Trudeau's conduct than expressed by the undersigned judge. Trudeau's repeated provocations and disregard of this court's orders cannot entitle him to a different judge or judges on this or any other court.

For these reasons, the court overrules Trudeau's objections to the Show Cause Order and denies his motion to recuse.

**ENTER: October 19, 2010**

**Robert W. Gettleman**
**United States District Judge**