
CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

*In the*

# United States Court of Appeals

### For the Seventh Circuit

───────────

No. 10-2418

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

*v.*

KEVIN TRUDEAU,

*Defendant-Appellant.*

───────────

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03-c-03904—**Robert W. Gettleman**, *Judge.*

───────────

ARGUED SEPTEMBER 24, 2010—DECIDED NOVEMBER 29, 2011

───────────

Before RIPPLE, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Infomercialist Kevin Trudeau
violated a court-approved settlement with the Federal
Trade Commission by misrepresenting the content of his
book *The Weight Loss Cure "They" Don't Want You to Know
About*. *FTC v. Trudeau*, 567 F. Supp. 2d 1016 (N.D. Ill. 2007).
The district court held Trudeau in contempt and ordered
him to pay $37.6 million to the FTC and banned him
from making infomercials for three years. On appeal, we

affirmed the district court's finding of contempt but vacated the sanctions. We noted that although a $37.6 million fine "might be correct," the district court needed to explain its math and how the funds would be administered. We did not question the imposition of a coercive sanction in addition to a remedial sanction, but we held that the infomercial *ban* was inappropriate as a civil sanction because it did not give Trudeau an opportunity to purge, that is, to comply with the underlying order not to misrepresent his publications. *FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ("*Trudeau I*"). (We assume familiarity with the contempt proceedings discussed in *Trudeau I* and so do not repeat that background here.)

On remand, the district court reinstated the $37.6 million remedial fine. This time, however, the court explained that it reached that figure by multiplying the price of the book by the 800-number orders, plus the cost of shipping, less returns. Addressing our questions about administration, the court instructed the FTC to distribute the funds to those who bought Trudeau's book using the 800-number; any remainder not paid to those victims or used in the administration of the sanction was to be returned to Trudeau. In addition, as a coercive sanction, the district court imposed a $2 million performance bond, effective for at least five years.

Trudeau appeals the sanctions. He argues that the $37.6 million remedial sanction was improperly based on consumer loss rather than his unjust gain. Against the coercive sanction, he argues that the district court's

modification of the consent order to include a per-
formance bond was beyond its authority and, even if it
had authority to modify the order, the bond require-
ment violates the First Amendment.

We disagree and therefore affirm the district court. The
consent order was intended to protect customers from
deceptive infomercials. The protections, unfortunately,
were too weak: Trudeau aired infomercials in violation
of the order at least 32,000 times. He should not now be
surprised that he must pay for the loss he caused. At a
minimum, it was easily within the district court's dis-
cretion to conclude that he should. And $37.6 million
correctly measures the loss. The figure is *conservative*—
it only considers sales from the 800-number, not sales
in bookstores carrying his "As Seen on TV" titles—and
*reliable*—Trudeau cited this figure himself in briefing
*Trudeau I*. As for the coercive sanction, the district
court properly modified the 2004 order to increase the
likelihood that Trudeau will comply going forward.
After so many violations, the district court did not have
to stick with the old plan. And the new plan, and the
performance bond in particular, does not violate the
First Amendment. The government is not impotent to
protect consumers—nor is the court powerless to
enforce its orders—by imposing narrowly tailored restric-
tions on commercial speech.

## I.  The Remedial Sanction

We review the district court's contempt rulings for
abuse of discretion. *United States v. Dowell*, 257 F.3d 694,

699 (7th Cir. 2001). A district court abuses its discretion if it bases its decision on an incorrect legal principle or clearly erroneous factual finding. *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

For Trudeau's contempt, the district court imposed a remedial fine measured by consumer loss. That was not error. Longstanding precedent dictates that the district court had power to provide "full remedial relief," *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949), "to compensate the complainant for *losses sustained*," *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (emphasis added). In other words, "[r]emedial sanctions . . . are backward looking and seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience." *Dowell*, 257 F.3d at 699 (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999)).

It was within the district court's discretion to decide that unless the remedial sanction was measured by consumer loss, the victims of Trudeau's contempt would not receive full relief for their actual loss. This conclusion is informed—but not limited—by the remedies available in the underlying FTC action. *See FTC v. Kuykendall*, 371 F.3d 745, 753 (10th Cir. 2004) (en banc); *McGregor v. Chierico*, 206 F.3d 1378, 1387-88 (11th Cir. 2000). The FTC enforcement action and the consent agreement aimed to protect consumers from economic injuries based on Trudeau's misrepresentations. *See FTC v. Febre*, 128 F.3d 530, 537 (7th Cir. 1997). When that agreement was breached flagrantly and repeatedly, the district

court chose a remedial sanction that might come close to putting Trudeau's victims in the same position they would have been had Trudeau not misrepresented his books in infomercials in violation of the agreement. *Kuykendall*, 371 F.3d at 764; *Febre*, 128 F.3d at 537. To achieve that remedial end, the district court did what many other courts have done in similar situations and awarded relief based on consumer loss instead of the defendant's unjust gain. *FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 14 (1st Cir. 2010). That was not error.

Trudeau misunderstands a Second Circuit case, *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006), to require a different conclusion. *Verity* was not a contempt case, but a direct action under section 13(b) of the FTC Act. At issue on appeal in *Verity* was the correct measure of damages where the defendants only profited from their phone-sex scheme after several middlemen, the phone companies, took their cuts for processing calls. *Id.* at 68. On those facts, *Verity* created a narrow middleman exception to the usual rule that consumer loss may be the proper measure of damages in a section 13(b) action. *Direct Mktg. Concepts*, 624 F.3d at 15. Trudeau has tried to assimilate his case to *Verity* by emphasizing that he was compensated only indirectly for sales of *The Weight Loss Cure*. But Trudeau's situation bears no resemblance to the defendants' situation in *Verity*: Trudeau assigned his rights to payment from his company's assets to ITV Global in exchange for ten years of monthly million-dollar checks. This was not about middlemen taking a cut for their services, but about steadying Trudeau's cash flow. Now, having received

only $1.05 million from ITV Global, Trudeau argues that the fine should be capped there. But what if ITV Global had not paid him at all? Would the district court have been powerless to impose *any* remedial fine? Of course not. The district court recognized that precisely how Trudeau decided to get paid for selling his books through deceptive infomercials in violation of a court order is irrelevant to the proper measure of his remedial fine.

To calculate his fine, the district court relied on Exhibit 20, a table of 800-number sales figures for Trudeau's *Weight Loss Cure* book, and the testimony of George Potts, ITV's director of financial planning and analysis. According to the table, as explained by George Potts, the 800-number sales plus shipping and handling, minus returns, equals $37.6 million, the amount the district court ultimately concluded Trudeau should pay. Trudeau challenges the evidence supporting that number, but his arguments are unpersuasive: In his first appeal in this case (*Trudeau I*), Trudeau *himself* relied on the $37.6 million figure as the measure of ITV's gross revenues from the *Weight Loss Cure*. The district court's reliance on that evidence was not error, much less clear error. *See FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009). In fact, it is worth emphasizing that the district court showed restraint in calculating the remedial sanction based only on 800-number sales. Most of the sales caused by Trudeau's violation of the court order may have been made through the 800-number, but not all. Out of an abundance of caution—in order to avoid using any questionable figures—the district court decided not to include internet sales or in-store

sales of the *Weight Loss Cure*, even though those books were sold with a conspicuous "As Seen on TV" sticker, making the link between those sales and the infomercial less than speculative. In the end, the district court's careful approach has left us with a reliable and conservative figure—$37.6 million—that is comfortably within its discretion.

## II. The Coercive Sanction

We held in *Trudeau I* that a three-year infomercial ban was an improper coercive sanction because it did not give Trudeau the opportunity to purge. 579 F.3d at 776. On remand, the district court replaced the infomercial ban with a requirement that Trudeau post a $2 million bond before he participates in any "infomercial for any book, newsletter, or other informational publication, about the benefits, performance, or efficacy of any product, program or service referenced in any such [publication]." This sanction *is* purgeable because Trudeau's bond is not forfeited to the FTC unless he makes a deceptive infomercial, as defined by the district court's original and supplemental orders. *FTC v. Trudeau*, 708 F. Supp. 2d 711, 722 (N.D. Ill. 2010). According to Trudeau, however, the coercive sanction (the bond requirement) is still impermissible because it violates the First Amendment. And moreover, Trudeau argues, before we even reach the First Amendment question, we should reject the addition of a performance bond because the district court was powerless to modify the consent order under Rule 60(b)(5) without identifying significant changed circumstances.

Trudeau, again, is incorrect. It was well within the district court's discretion to modify the consent order. *Lee v. Village of River Forest*, 936 F.2d 976, 979 (7th Cir. 1991) (Rule 60(b) modification is reviewed for abuse of discretion). Trudeau believes that the district court incorrectly applied *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 252 (1968)—which allows for modification of an order if it is not achieving its purpose—instead of *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 383 (1992)—which requires the moving party establish that there has been a significant change of circumstances that warrants modification. Trudeau reaches further to assert that *Rufo* actually overruled *United Shoe*, so a modification because the order was not achieving its purpose is out of the question.

But—unquestionably—*Rufo* did not overrule *United Shoe*. *Rufo* applies when a defendant seeks to modify an injunction in an institutional reform case. 502 U.S. at 383. *United Shoe*, by contrast, supplies the rule where a plaintiff is seeking to impose additional restrictions on an enjoined party. 391 U.S. at 251-52. There is simply no conflict between the two. Indeed, *Rufo* cites with approval the page in *United Shoe* explaining that the "new and unforeseen conditions" requirement for defendants asking for relief from an injunction *does not apply* to requests for increased protections by a plaintiff. *Rufo*, 502 U.S. at 380; *United Shoe*, 391 U.S. at 248.

Because the FTC is seeking to modify the original injunction to better achieve its purpose, this case falls squarely under *United Shoe*. So, if the FTC proved that

the order was not achieving its purpose, the district court had discretion "to modify the decree so as to achieve the required result with all appropriate expedition." *United Shoe*, 391 U.S. at 252; *see also United States v. Krilich*, 303 F.3d 784, 789 (7th Cir. 2002) (holding that the general rules for modification of judgments under Rule 60(b) apply to consent orders). The "required result" or purpose of the consent order in this case is "to protect consumers from [Trudeau's] deceptive practices and to compensate those already allegedly deceived." *Trudeau I*, 579 F.3d at 764. The remedial sanction discussed above addresses the compensatory purpose of the order while the performance bond has been added primarily to reinforce the order's protections going forward. In light of Trudeau's 32,000-plus broadcasts of deceptive infomercials for *The Weight Loss Cure*, we have little trouble agreeing with the district court that its original order provided insufficient consumer protections. It was within the district court's discretion to reinforce the order by clarifying its terms and adding a performance bond. *See United States v. Vlahos*, 884 F. Supp. 261, 266-67 (N.D. Ill. 1995), *aff'd*, No. 95-1484, 1996 WL 459937, at *3 (7th Cir. Aug. 9, 1996) (unpublished) (holding that a performance bond was an acceptable method of deterring additional instances of unlawful commercial speech).

And the bond requirement does not violate the First Amendment. *See id.* (holding that a similar performance bond did not violate the First Amendment). Trudeau raises a variety of First Amendment arguments, but the only one that merits discussion is whether his right to engage in commercial speech is violated by the require-

ment that he post a bond before he participate in *any* infomercial, *misleading or not*. Insofar as the court order applies to *misleading* commercial speech, there is no possible First Amendment violation, of course, because misleading commercial speech gets no constitutional protection. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624-25 (1995). The First Amendment is implicated here, however, because Trudeau is required to post a bond before he participates in an infomercial regardless of whether it contains a misleading statement. His bond will not be forfeited unless he makes a misrepresentation in violation of the court order, but that does not eliminate the need for First Amendment scrutiny: The bond requirement is itself a restriction on commercial speech entitled to intermediate scrutiny. *Id.* at 623.

Therefore, it is the FTC's burden to show that (1) there is a substantial interest supporting the restriction, (2) the restriction directly advances that substantial interest, and (3) the restriction is "narrowly drawn." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 564-5 (1980); *Florida Bar*, 515 U.S. at 624. On these facts, the first two constitutional requirements are obviously met. The protection of consumers is a substantial interest. And the performance bond directly advances that interest in at least two ways: It makes it more likely that consumers will be compensated for future violations and, more importantly, it makes it less likely that there will be future violations because Trudeau will face a considerable financial loss if he is involved in a deceptive infomercial.

The tailoring prong requires more discussion but the result is the same. *Central Hudson* stated that a restriction on commercial speech must not be "more extensive than necessary." 447 U.S. at 566. That language led some courts to require a "least-restrictive-means approach." *Bd. of Trs. of the State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989). An extensive discussion in *Fox*, however, clarified that, "commensurate with [the] subordinate position of [commercial speech] in the scale of First Amendment values," the fit needn't be perfect, but only "reasonable[,] . . . not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Id.* at 477, 480. But to say that the restriction must be "reasonably well tailored to its stated objective," *Florida Bar*, 515 U.S. at 633, is not to confuse it with a "rational basis" analysis; rational basis allows a legitimate end to be achieved even at "inordinate cost," whereas here, dealing with a restriction on protected commercial speech, the cost of achieving the substantial interest must be "carefully calculated," *Fox*, 492 U.S. at 480.

The performance bond meets this standard. First, a bond is required only if Trudeau decides to resume making *infomercials*. It does not limit Trudeau as an author; it does not curtail Trudeau's attempt to pitch products in any print medium; it does not even apply if Trudeau makes a TV or radio ad under two minutes. Its application targets only the commercial conduct that has caused such tremendous consumer harm in the past—infomercials. Second, the district court set the performance bond at $2 million but took seriously Trudeau's claim that it is beyond what he can afford by

allowing him to file an audited financial statement and prove as much in a hearing. Third, the bond requirement is proportional to the amount of harm Trudeau caused by previous deceptive infomercials. If anything, the number seems low given that, over the course of nearly a year, Trudeau's *Weight Loss Cure* infomercial sold thousands of books *each day* for many months.

Affirmed.