**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

_____
)
FEDERAL TRADE COMMISSION )
)
Plaintiff, )
)
v. )        Case No. 03-C-3904
)
KEVIN TRUDEAU, )
)
Defendant. )
_____)

**BRIEF IN SUPPORT OF MOTION TO HOLD DEFENDANT TRUDEAU IN**
**CONTEMPT FOR VIOLATING THE JUNE 2, 2010 ORDER, INCARCERATE HIM,**
**AND ORDER HIM TO PROVIDE AN ACCOUNTING OF AND TURNOVER ASSETS**

# **Table of Contents**

I.     Introduction ........................................................................................................... 1

II.     Statement of Facts ................................................................................................ 2

   A.     Prior Proceedings and the Court's Findings Regarding Trudeau's Lack of Credibility .. 2

   B.     Trudeau Has Failed to Pay the Sanction Despite Considerable Wealth. ........................ 3

     1.     Trudeau Uses Nominees to Hide His Control of Numerous Business Entities. .............. 5

     2.     Trudeau Owns or Controls Five Corporations With Nearly $190 Million Total Cash Flow Since 2007 That He Uses to Conceal Assets. .............................................................. 6

     3.     Trudeau Also Used a Casino to Conceal His Assets. ...................................................... 11

     4.     Trudeau Dissipates Significant Assets and Maintains an Extravagant Lifestyle. .......... 12

     5.     Trudeau Has Other Real and Personal Property Available to Pay the Sanction. ........... 13

III.     Argument ............................................................................................................ 14

   A.     Clear and Convincing Evidence Establishes that Trudeau Has Violated the Order By Failing to Pay the Contempt Sanction. ......................................................................... 14

   B.     Trudeau Cannot Support an Inability to Comply Defense While Holding Assets Offshore, Attempting to Conceal Substantial Assets, and Maintaining a Lavish Lifestyle. ...... 15

   C.     Only a Sanction of Incarceration Can Possibly Coerce Trudeau to Comply With the Court's Order. ................................................................................................................ 16

   D.     Trudeau Should Remain Incarcerated Until He Pays in Full or Provides a Full Accounting and Complete Turnover of Assets. ....................................................................... 17

IV.     Conclusion .......................................................................................................... 18

# Table of Cases

*Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007)............... 14

*Central States Fund v. Wirtz*, 155 F.3d 868 (7th Cir. 1998)....................................................... 14

*Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing*, 207 F.3d 500 (8th Cir. 2000)................................................................................................................ 4, 15

*Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525 (11th Cir. 1992)............................................................................................................ 15, 17

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999)................................................... 15

*FTC v. Trudeau*, 572 F. Supp. 2d 919 (N.D. Ill. 2008) ............................................................... 2

*FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ......................................................................... 14

*FTC v. Trudeau*, 662 F.3d 947 (7th Cir. 2011)..................................................................... 2, 13

*FTC v. Trudeau*, 708 F. Supp. 2d 711 (N.D. Ill. 2010) .............................................................. 3

*FTC v. Trudeau*, Case No. 1:12-MC-022 (S.D. Ohio) ................................................................ 9

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995)..................................................... 14-15

*Jones v. Lincoln Elec. Co.,* 188 F.3d 709 (7th Cir. 1999) ........................................................ 14

*Maggio v. Zeitz*, 333 U.S. 56 (1948)........................................................................................ 17

*In re Resource Tech. Corp.*, 624 F.3d 376 (7th Cir. 2010)................................... 1, 3, 14, 15, 17

*SEC v. Custable*, No. 94 C 3755, 1999 U.S. Dist LEXIS 1776, (N.D. Ill. Feb. 10, 1999)........... 17

*SEC v. Hyatt*, 621 F.3d 687 (7th Cir. 2010)............................................................................... 1

*Shillitani v. United States,* 384 U.S. 364 (1966) ................................................................ 14, 16

*Trudeau v. FTC*, Case No. 12-C-574 (N.D. Ill.) ......................................................................... 5

*United States v. Lippitt*, 180 F.3d 873 (7th Cir. 1999) .......................................................... 2, 16

*United States. v. United Mine Workers of Amer.*, 330 U.S. 258 (1947) ..................................... 16

*United States ex rel. Thom,* 760 F.2d 736 (7th Cir. 1995)......................................................... 17

*United States v. Rylander*, 460 U.S. 752 (1983)...................................................................... 15

## I.    Introduction

On June 2, 2010, the Court ordered Trudeau to pay a contempt sanction of $37,616,161. To date, he has not paid a penny and so – once again – Trudeau is in contempt of this Court.   *In re Resource Tech. Corp.,* 624 F.3d 376 (7th Cir. 2010) (finding contempt for failure to comply with order to pay).   Incredibly, Trudeau claims an inability to pay while at the same time orchestrating a web of domestic and off-shore entities through which he has funneled millions of dollars and maintained a lavish lifestyle.   This extensive asset concealment and dissipation vitiates his ability to establish "clearly, plainly, and unmistakably that compliance is impossible."   *Id.* at 387 (italics and citation omitted).   Moreover, Trudeau's complete failure to pay, his extensive history of failing to obey court orders, and his total lack of credibility, demonstrate that he will not comply with the Court's Order unless he is coerced to do so by incarceration.   *United States v. Lippitt*, 180 F.3d 873 (7th Cir. 1999) (affirming order coercively incarcerating defendant for failing to pay criminal fine).   Accordingly, the FTC moves to:   (1) hold Trudeau in contempt for failing to pay the $37,616,161 contempt sanction; (2) immediately incarcerate him to coerce his compliance; and (3) order that he remain incarcerated until he purges his contempt by paying the sanction in full, with interest, and failing that, until he "clearly, plainly, and unmistakably" accounts for and turns over *all* assets directly or indirectly held by him or for his benefit.[1]

---

[1] The FTC moves for Trudeau to be held in contempt by notice and motion.   An order to show cause is unnecessary.   *SEC v. Hyatt*, 621 F.3d 687, 694-95 (7th Cir. 2010).

## II.    Statement of Facts

### A.    Prior Proceedings and the Court's Findings Regarding Trudeau's Lack of Credibility

The Court is very familiar with Trudeau's long history of deception and contumacious conduct.   The FTC will only briefly summarize those proceedings relevant to this motion.   In September 2007, the FTC filed a motion to hold Trudeau in contempt for violating the Stipulated Final Order in the underlying action with blatantly deceptive infomercials for his diet book, *Weight Loss Cure*.   ECF No. 62.   In November 2007, the Court held Trudeau in contempt. ECF No. 93.

The Court imposed a $37.6 million compensatory contempt sanction against Trudeau, based on the total amount of consumer loss he caused.   Specifically, the Court stated: "*Trudeau is ordered to pay forthwith* to plaintiff the sum of $37,616,161."   Corrected Supplemental Order at 13-14, ECF No. 372 (emphasis added).   The Seventh Circuit affirmed the Supplemental Order in November 2011.   *FTC v. Trudeau*, 662 F.3d 947 (7th Cir. 2011).

Over the course of the sanction proceedings, the Court "[did] not credit much of Mr. Trudeau's testimony," finding that "Trudeau is not a credible witness."   *FTC v. Trudeau*, 572 F. Supp. 2d 919, 924 (N.D. Ill. 2008).   Rejecting Trudeau's claim that he was unable to pay a significant compensatory sanction, the Court also found that the unaudited balance sheet he presented was "not worth the paper it is written on," because "[v]irtually all of the numbers on [it] were put there (or omitted, as in the case of significant assets) at Trudeau's direction."   *Id.* at 925.   The Court further noted that "Trudeau is a very creative person who is likely to maintain the lifestyle to which he has become accustomed."   *Id.*   As discussed below, the Court's

observations were prescient.   Moreover, rejecting Trudeau's plea for a lesser sanction based on

his purported earnings from the infomercial sales of his diet book, the Court reiterated:

"Trudeau has little credibility with this court.   Based on his demeanor and conduct, the court has

found, and continues to find, that Trudeau cannot be trusted."   *FTC v. Trudeau,* 708 F. Supp. 2d

711, 716 (N.D. Ill. 2010).

      B.      **Trudeau Has Failed to Pay the Sanction Despite Considerable Wealth.**[2]

It is undisputed that Trudeau has failed to comply with the Court's order to pay the

contempt sanction.   To date, he has refused to pay anything, claiming poverty.[3]   But his claim

is a charade, flatly contradicted by the facts.   Trudeau is engaged in multiple, lucrative business

ventures and lives a life of luxury.   Trudeau, his wife Nataliya Babenko, and the many

corporations he owns or controls have held more than *eighty (80)* bank accounts at five different

---

[2] Citations herein to FTC's exhibits and attachments are abbreviated as "PX__, Att. __."   In accordance with Fed. R. Evid. 1006, the attachments include summaries of voluminous corporate and financial records that cannot be conveniently examined in court.   The FTC has made these records available to Trudeau, and will produce them to the Court upon request.

[3] *See* Defendant's Motion to Stay, June 7, 2010, ECF No. 378 (claiming inability to pay sanction).   Trudeau flatly told a reporter "*I'm never going to pay it.*"   Mitch Lipka, *The Unstoppable Kevin Trudeau,* Dec. 3, 2009, dailyfinance.com (emphasis added), Lewis Decl., PX 1, Att. A.   More recently, Trudeau falsely claimed that he was so poor he would have to drive from Chicago to Washington, D.C. to attend a meeting with the FTC.   Mora Decl., PX 4, Att. A (October 2011 emails from Trudeau counsel Marc Lane).

banks over the past five years,[4] through which *$220 million* has flowed.[5] Luceri Decl., PX 2,

Att. B. Indeed, rather than making any reasonable effort to pay the sanction, Trudeau has gone

to extraordinary lengths to shelter or conceal significant assets by, *inter alia*: transferring them

offshore or to his wife, Babenko; keeping his name off corporate records and bank accounts by

using Babenko and his long-time confidant Suneil Sant as his nominees; and in the case of his

corporate affiliates, by "layering" or transferring funds through multiple bank accounts to

conceal their origin. In addition to using his companies as a means to conceal his assets,

Trudeau also has used a casino to launder funds, purchasing hundreds of thousands of dollars in

chips, mostly with corporate funds, and then cashing out almost the same amount of chips later

after relatively minimal gambling.

---

[4] The time period since 2007 is relevant to Trudeau's ability to pay the contempt sanction
because the FTC initiated contempt proceedings against him in September 2007. Since that
time, and certainly since the Court first entered the $37.6 million sanction in November 2008,
Trudeau has been on notice that his assets could be subject to a compensatory contempt sanction.
*See In re Resource Tech. Corp.,* 624 F.3d at 387 (contemnor's past ability to comply with order
triggers presumption of present ability to comply). As discussed below, with this knowledge in
hand, Trudeau has been engaged in a systematic effort to conceal and dissipate assets – thereby
vitiating any inability to pay defense. *Chicago Truck Drivers Union Pension Fund v.
Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000) (inability to comply cannot be
self-induced).

[5] The bulk of the information cited herein comes from third party sources such as banks because
information sought from Trudeau is of limited value. He is simply evasive and lacks credibility.
For example, Trudeau claims that: he resides in the Ukraine ███████████████ █
██████████████████████████████████████████████████████
███████████████████████████████████████ and he does not
own or control any of his corporate affiliates that were created post-judgment. *See* PX 4, Att. B,
(Nov. 2011 sworn compliance report from Trudeau reporting that he resides in Ukraine); Att. C ,
Items 1, 9, and 24 (April 2009 sworn financial statement from Trudeau); Att. D, p. 3 (May 2012
letter from Kimball Anderson). As discussed below, the evidence shows otherwise.

Trudeau also has dissipated assets at an alarming rate, as have his affiliates, on expenses such as:   credit and charge card usage at the rate of ███████ ████████████████████████; buying a $340,000 Bentley and two other vehicles for cash with corporate funds; renting a multi-million dollar luxury home for $12,000 per month; traveling by private jet; and employing a live-in domestic worker and a personal chef.   This substantial dissipation amply demonstrates that Trudeau has the ability to comply with the Court's order.

Sections II.B.1–5 below discuss in greater detail how Trudeau has concealed and dissipated assets.[6]

1.   Trudeau Uses Nominees to Hide His Control of Numerous Business Entities.

Trudeau keeps his name off corporate and bank records to conceal his assets. Specifically, he uses his wife **Nataliya Babenko** and his long-time associate **Suneil Sant,** aka Neil Sant, to serve as nominee officers and directors for the many corporations he owns or controls.   Trudeau married Babenko, a native of the Ukraine, in May 2008, shortly before the Court originally entered the contempt sanction against him.   PX 1, Att. C.   Babenko is the named officer and director of two Trudeau affiliates that were incorporated post-judgment, KT Radio Network ("KTRN") and GIN USA, and she is a signatory on the bank accounts of KTRN,

---

[6] Moreover, Trudeau has used dubious litigation tactics to impede the FTC's discovery of his assets:   (1) he and his affiliates moved to quash numerous FTC subpoenas for bank records; (2) his counsel Kimball Anderson sent letters to the Illinois Attorney Registration and Disciplinary Commission accusing FTC counsel Michael Mora of violating ethics rules by supervising an undercover investigation of Trudeau's marketing activities, as expressly authorized by the Court's Stipulated Final Order, PX 4, Att. D; (3) his multilevel marketing scheme, Global Information Network (discussed *infra* at Section B.2), invoked arbitration against the FTC and its investigator in St. Kitts and Nevis, alleging that the FTC's investigation violated its "*wishes to remain outside of government review,*" *id.* at Att. E; and (4) he sued the FTC under the Freedom of Information Act for withholding documents in response to his demand for the FTC's "investigative files."   *See Trudeau v. FTC*, Case No. 12-C-574 (N.D. Ill.).

GIN USA, and Global Information Network FDN.[7]   Luceri Decl., PX 2, Att. A, B.   Neil Sant

has been a nominee officer for Trudeau's other business entities since 2004, and he is a signatory

on bank accounts for those entities.   *Id.* at Att. B*; PX 4, Att. F (deposition of Neil Sant in

underlying contempt proceeding, testifying that his duties as officer for Trudeau's business

entities are merely "administrative" and that he takes directions from Trudeau).

      2.      Trudeau Owns or Controls Five Corporations With Nearly $190 Million Total
<u>Cash Flow Since 2007 That He Uses to Conceal Assets.</u>

Trudeau directly or indirectly owns or controls five corporations with total cash flow

from bank deposits of nearly $189 million:[8]   **International Pool Tour** ("IPT"); (2) **Natural**

**Cures**; (3) **KTRN**; (4) **Website Solutions, USA** (WSU), and (5) **GIN USA**.   PX 2, Att. B.

Each has the same office address, phone number, nominee officers and bank signatories

(Babenko and Sant); banks where they maintain accounts; and incorporator and corporate

counsel (Marc Lane).   PX 2, Att. A, B.

      a.      *Trudeau Owns or Controls IPT, Natural Cures, KTRN, WSU and GIN USA*

Trudeau directly owns 100% of IPT, a failed company that once promoted billiards

tournaments but has been defunct since 2006.   PX 1, Att. A (news article describing IPT's

demise); PX 4, Att. I (Trudeau affiliates chart as of 2007).   Sant identifies himself as the

president of IPT in bank records and is IPT's bank signatory.   *See* PX 2, Att. A, B.

---

[7] As discussed *infra* at Section B.2.a and B.3, Trudeau has also used Babenko's personal bank
account and casino account to conceal assets.

[8]  PX 2, Att. B.   Trudeau also owns or controls at least 10 other corporations that had an
additional $31 million in cash flow since August 2007.   *See id.* at Att. A, B.

Trudeau owns 97.7% of Natural Cures through an offshore trust,[9] and three intermediate holding companies.[10]   Natural Cures promotes Trudeau's books, has a subscription-based website, and distributes a newsletter to subscribers.   *See* www.naturalcures.com.   Sant is the officer, director, and bank signatory for Natural Cures.   PX 2, Att. A, B.

Trudeau also beneficially owns or controls KTRN, WSU, and GIN USA, each of which was created after the Court first entered the contempt sanction.   PX 2, Att. A (entities incorporated in June 2009, March 2010, and June 2011, respectively).   These companies are affiliated with Global Information Network ("GIN"), a purported wealth building program and multilevel marketing scheme in which members pay $1,000 to join and $150 monthly dues ($1,800 per year), and earn compensation by recruiting new members, *i.e.*, from their "downline."   *See* PX 1, Att. V (web pages from GIN website).[11]   PX 2, Att. B.   Babenko is an

---

[9] Trudeau's offshore trust, the KMT Fiduciary Trust (Mauritius), ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████   Moreover, Trudeau recently notified the FTC that he intended to sell Natural Cures to "a newly formed United Kingdom Limited Liability Partnership" that Trudeau purportedly has no connection with. PX 4, Att. H (April 2012 notice of sale).

[10] The convoluted ownership structure of Natural Cures is as follows:   Trudeau is the sole beneficiary of his offshore trust; the trust wholly owns K.T. Corporation Ltd. ("KT Corp."), an offshore company registered in Isle of Man; KT Corp. wholly owns Trucom LLC; and Trucom owns 97.7% of Natural Cures Holdings, Inc., which wholly owns Natural Cures, Inc.   *See* PX 4, Att. B, H, I (documents showing ownership connection).

[11] Trudeau denies that he is an "owner, officer, or director" of GIN, *see* PX 4, Att. D at p. 3 (May 2012 letter from Kimball Anderson), but as discussed below, the evidence shows he beneficially owns or controls the entities through which this get-rich-quick scheme is financed:   GIN FDN, KTRN, WSU, and GIN USA.

officer and bank signatory for KTRN and GIN USA. *Id*. at Att. A, B. Sant is an officer and bank signatory for KTRN and WSU. *Id*.

As the Court may recall from a declaratory judgment motion Trudeau filed in July 2010, he began promoting GIN in 2009 through, *inter alia*, his audio book "*Your Wish is Your Command, How Anyone Can Make Millions!,*" and infomercials for the book. Trudeau asked the Court to rule that he did not have to post the $2 million performance bond required by the Supplemental Order for these infomercials. The Court denied his motion, finding that he was promoting the purported wealth-building program contained in the *Your Wish*/GIN book in his infomercials. *See* ECF Nos. 401-02, 407, 412, 424.

On its website, GIN claims that it is a "multiform foundation" (known as Global Information Network FDN ("GIN FDN")) registered in the notorious asset haven of St. Kitts and Nevis,[12] whose founders "will always remain anonymous." PX 1, Att. V. In fact, Trudeau has repeatedly admitted that he is the founder of GIN, and there is ample evidence that he beneficially owns or controls GIN FDN, KTRN, WSU, and GIN USA:

- Both in a radio interview and in a recent promotional video he did for GIN, Trudeau admitted that he is a founder of GIN and a member of its council. PX 1, Att. X, Y.

- Since its inception, Trudeau has been the chief spokesperson for GIN and has heavily promoted it through his *Your Wish* publication, through KTRN on "The Kevin Trudeau Show" and its website, www.ktradionetwork.com, and at GIN promotional seminars. *See id*. at ¶¶ 20-28, Att. Y, Z (video broadcasts of Trudeau promoting GIN, and describing how he founded it and promoted it through seminars).

- In a recent video addressed to his stable of paid speakers for GIN seminars, Trudeau announces major changes in GIN's operations, and explains in detail how he started GIN in 2009 by soliciting customers who purchased his *Natural Cures* and *Debt Cures* books

---

[12] As GIN admits on its website, however, it is actually "headquartered in Chicago," *i.e*., where Trudeau and his affiliates are located. PX 1, Att. V ("FAQ" page from GIN website).

to join the program. *Id.* at Att. Z   Trudeau further recounts how he conducted the initial GIN seminars in Zurich, Chicago, and Cancun. *Id.*

- A testimonial on the web site of a consulting firm Trudeau has used bears his electronic signature as "*Founder & Owner, Trudeau Approved Products, Global Information Network, Kevin Trudeau Radio Network.*" *Id.* at Att. W (McClain Companies web pages) (emphasis added).[13]

Trudeau and his affiliates also control GIN's finances and conduct its operations.   In GIN's first year of operation from 2009-2010, his wife Babenko was the signatory for two bank accounts that GIN FDN maintained in the U.S.   PX 2, Att. B.   Moreover, the start-up costs for GIN, as well as the initial deposits to set up the accounts, were paid from Babenko's *personal* bank account.   PX 2, Att. D, p. 1 ("GIN Set Up" check to corporate counsel Marc Lane); Van Wazer Decl., PX 3, Att. I (initial deposits to GIN FDN accounts).   Subsequently, GIN's operating expenses – advertising, seminars, GIN member commissions, refunds, etc. – have been paid from bank accounts held in the names of KTRN and WSU.   PX 2, Att. C, p. 2-3.

b.   *IPT, Natural Cures, KTRN, WSU and GIN USA Commingle Their Assets, and Trudeau Uses Corporate Funds to Pay His Personal Expenses*

Although IPT has been defunct since 2006, more than *$13 million* has flowed through its bank accounts since 2007, PX 2, Att. B, including funds transferred to and from other Trudeau affiliates.   For example, in August and September of 2011, $405,000 was transferred from a

---

[13] Trudeau's ownership and control of GIN through WSU and his web of other companies is further corroborated by a June 2010 letter from Trudeau counsel Daniel Hurtado to the FTC on behalf of Trudeau, *on WSU letterhead,* PX 4. Att. J, and a statement by Peter Wink on his Linkedin resume, listing his title as "Director of Sales and Marketing at *Website Solutions/Kevin Trudeau.*"   PX 1, Att. U (emphasis added).   Despite the overwhelming evidence of Trudeau's control of the GIN-related entities, in their pending motion to quash FTC's subpoena for GIN-related bank records, *FTC v. Trudeau*, Case No. 1:12-MC-022 (S.D. Ohio), GIN FDN unabashedly takes the position that Trudeau has no control over it, arguing that "Mr. Trudeau is not, and never has been, an owner, manager, officer or director of GIN."   *Id.,* ECF No. 1, p.3.

GIN USA bank account to IPT's account.   PX 3, Att. A.   Thereafter, IPT transferred $500,000

to an entity called Asia Capital Markets, LTD.   *Id.*

Since 2007, *$65.8 million* has flowed through Natural Cures' bank accounts.   *Id*. at Att.

B.   From June 2010 to September 2011, $16 million passed through a Natural Cures account, of

which over $2.6 million was deposited by IPT, KTRN, and WSU.   *Id.*   During this same period:

$5.2 million was transferred from this account to IPT, KTRN, and WSU; $1 million was wired to

international destinations (the recipients are unknown to the FTC); and more than $300,000 was

used to pay Trudeau's personal credit card expenses.   *Id*.

Since 2009, a total of *$110 million* has flowed through the bank accounts of the

GIN-related entities:   KTRN, WSU, and GIN USA.   *See* PX 2, Att. B.   Much of this cash flow,

however, is attributable to intercompany transfers among those accounts and accounts held by

other Trudeau affiliates.   For example, from August 2011, when a WSU account was opened, to

October 2011, when it was closed, over $4.3 million flowed through the account.   PX 3, Att. C.

Three million dollars of those funds came from GIN USA and KTRN, and $1.2 million was

transferred to KTRN, Natural Cures Holdings, and Trudeau Approved Products.   *Id*.   Similarly,

from June 2010 to September 2011, $24.1 million flowed into a KTRN account, of which $10.3

million was transferred to IPT, Natural Cures, and WSU.   PX 3, Att. D.   Also, from June to

July 2011, GIN FDN transferred over $2.9 million from its bank account in Liechtenstein –

another notorious asset haven jurisdiction – to WSU's bank account.[14]   PX 2, Att. F.

---

[14] Furthermore, in August 2009, checks were written on a GIN FDN account in the amounts of $150,000, $103,000, and $8,000 on two different dates.   These amounts correspond exactly to deposits made in IPT and KTRN bank accounts on the same dates.   PX 3, ¶ 11, Att. F.

Also beginning in 2009, Trudeau used a KTRN account to pay the $12,000 monthly rent for his multimillion dollar Chicago abode, and the expenses for his domestic worker and a personal chef. *See* PX 2, Att. C, pp. 1-2; PX 1, Att. H (zillow.com estimated value of subject property).

Finally, in February 2012, Trudeau funded the escrow account he established under Part III of the Supplemental Order by transferring $2 million from a WSU bank account to a GIN USA account, and then wiring those funds to the Trudeau escrow account.[15] PX 3, ¶ 13, Att. H.

    3.    <u>Trudeau Also Used a Casino to Conceal His Assets.</u>

In addition to his own companies, Trudeau used a casino to conceal assets. Between November 2011 to January 2012, Babenko and Trudeau purchased $285,500 in casino chips, $200,000 by Babenko and $85,500 by Trudeau. They ultimately cashed out $282,375 in chips, $124,000 by Babenko and $158,375 by Trudeau. *See* PX 1, Att. M (casino account records). Significantly, Babenko purchased all of her $200,000 in chips on December 29, 2011, with funds transferred from a WSU bank account to the casino for her benefit. *Id*. at Att. O, p. 5 (casino wire transfer record). She withdrew the entire $200,000 in chips on that same day. *Id*. at Att. O. Video surveillance records show that she handed the chips to Trudeau while they were still at the cashier window. *Id.* at Att. R.

Moreover, Trudeau and Babenko were involved in a series of incidents at the casino illustrating his proclivity for concealing assets, particularly with Babenko's assistance:

---

[15] While Trudeau has made substantial use of corporate accounts to move assets, after the contempt sanction was entered, his use of his personal bank account decreased dramatically. From August 2007 to January 2009, he deposited $8.6 million in his account. PX 3, Att. G. After January 2009 (the Court initially entered the contempt sanction in November 2008), he deposited only $218,442.65 into his account over the next 14 months until it was closed. *Id.*

- On his first visit to the casino on November 20, 2011, Trudeau attempted to avoid federal currency transaction reporting requirements by cashing in over $10,000 in chips but refusing to provide his social security number.   He claimed that reporting was not required, he was not carrying any identification, and he resided in Italy.   He later returned with an Italian passport.   Casino personnel had to look up his social security number in a database.   *Id.* at Att. N, Q. (incident report, surveillance video excerpt)

- Similarly, on December 29, 2011, before Trudeau and Babenko purchased $200,000 in chips with the wire transfer from WSU, they first tried to open a credit account in Babenko's name.   Casino personnel explained that Babenko could not open a credit account without a social security number, which she did not have.   Eventually, Babenko cashed in the wire transfer for $200,000 in chips, and handed them to Trudeau.   *Id.* at Att. O, R (incident report, surveillance video excerpt).

- Finally, on April 6, 2012, Trudeau's domestic worker Matthew Green visited the casino by himself, driving a Jeep Rubicon titled to KTRN.   *See infra* at Section B.4.   He went directly to a cashier to cash in $124,000 in chips.   Casino records state that he was acting as an agent for Babenko.   He received the cash in a brown paper bag and left the casino. *Id.* at Att. P, S (incident report, surveillance video excerpt).

   4.   <u>Trudeau Dissipates Significant Assets and Maintains an Extravagant Lifestyle.</u>

Trudeau's and Babenko's personal bank and credit card account records evidence

millions of dollars in lavish spending.   ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████   As noted above in

Section B.2.b, Trudeau also pays for his lavish housing and domestic staff expenses through one

of his corporate accounts.   Further, records show that Trudeau leases a 2008 Bentley co-titled in

his name.   PX 1, Att. I.

Babenko's personal bank account was funded by Trudeau and his entities. From November 2008 to September 2010, $619,956.12 was deposited into her account, PX 3, Att. I, of which at least $562,000 came from Trudeau's companies, Sant, or Trudeau himself. PX 2, Att. D. Babenko wired much of this money overseas to accounts in the Ukraine (including an account in the name of her mother, Olga Babenko), Cyprus, and Liechtenstein. She also wrote two checks to purchase Dodge vehicles before finally closing her account by obtaining an $87,404.75 bank check, which to the FTC's knowledge, has not yet been cashed. *Id.*

Finally, Trudeau also spends enormous sums on attorney fees. Most recently, he filed a petition for certiorari on which he is represented by no less than seven attorneys from two law firms. *FTC v. Trudeau*, 662 F.3d 947 (7th Cir. 2011), *pet. for cert. filed,* __ U.S.L.W. __ (U.S. June 28, 2012) (No. 12-6).

     5.   <u>Trudeau Has Other Real and Personal Property Available to Pay the Sanction.</u>

Trudeau's offshore holding company, KT Corp., holds legal title to a home located at 60l Del Oro Drive, Ojai, California, in which Trudeau formerly resided. PX 1, Att. D. Trudeau is the beneficial owner of this property, but he did not disclose it in the sworn financial statement he provided to the FTC. *See* PX 4, Att. C at Item 18. The property has an estimated value of $1.3 to $1.5 million. *Id.* at Att. G (trulia.com estimated value of subject property). In 2007, Trudeau refinanced a $942,500 first mortgage on the property, and took out a $145,000 second mortgage. PX 1, Att. E, F.

Trudeau and his affiliates also own multiple vehicles that should be liquidated to pay the contempt sanction. In 2011, WSU paid $340,000 cash for a 2011 Bentley registered in its name. *See* PX 1, Att. J; PX 2, Att. C. WSU also has a 2012 Bentley titled in its name. PX 1, Att. J.

In 2010, Babenko purchased a 2010 Dodge Challenger titled in her name for approximately $60,000, using a personal bank account funded by Trudeau and his affiliates.   PX 1, Att. K; PX 2, Att. D, pp. 1-2.   Finally, KTRN purchased a 2011 Jeep Rubicon registered in its name for $36,000, which is driven by Trudeau's domestic worker Matthew Green.   PX 2, Att. C; PX 1, Att. L.

## III.    Argument

### A.    Clear and Convincing Evidence Establishes that Trudeau Has Violated the Order By Failing to Pay the Contempt Sanction.

This Court has the inherent power to enforce its orders through civil contempt proceedings.   *Shillitani v. United States,* 384 U.S. 364, 370 (1966); *Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 737 (7th Cir. 1999).   *See also In re Resource Tech. Corp.*, 624 F.3d at 377 (holding company in contempt for violating order to pay $500,000 into escrow account); *Central States Fund v. Wirtz*, 155 F.3d 868 (7th Cir. 1998) (holding company owner in contempt for violating order to pay employee pension liability payments); *Huber v. Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995) (holding attorney in contempt for failing to pay court-ordered fines). Contempt is established if the Court finds "by clear and convincing evidence that [Trudeau] has violated the express and unequivocal command of a court order."   *In re Resource Tech. Corp.*, 624 F.3d at 387; *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007).   Specifically, Trudeau is in contempt if:   (1) the order sets forth an unambiguous command; (2) Trudeau violated that command; (3) his violation was significant, meaning he did not substantially comply with the order; and (4) he failed to take steps to reasonably and diligently comply with the order.   *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009).

14

The FTC has clearly and convincingly proven Trudeau's contempt. The order in question sets forth an unambiguous command that is simple and direct: as a compensatory sanction for his contempt, "*Trudeau is ordered to pay forthwith* to plaintiff the sum of $37,616,161, representing the consumer loss resulting from Trudeau's contumacious and deceptive infomercial marketing of the <u>Weight Loss Cure</u> book." Supplemental Order at 13-14 (emphasis added in italics). It is undisputed that Trudeau has violated this command in its entirety, and thus, significantly. Moreover, he has failed to diligently and reasonably comply with the order. Trudeau has not paid even a penny despite overwhelming evidence of substantial assets held by him or for his benefit. Instead, he has gone to great lengths to conceal his assets and dissipate them on his extravagant lifestyle. *Supra* at II.B.1-5. Accordingly, the FTC has demonstrated Trudeau is in contempt, shifting the burden to him to demonstrate that he is unable to comply. *United States v. Rylander*, 460 U.S. 752, 757 (1983); *In re Resource Tech. Corp.*, 624 F.3d at 387.

> **B.** **Trudeau Cannot Support an Inability to Comply Defense While Holding Assets Offshore, Attempting to Conceal Substantial Assets, and Maintaining a Lavish Lifestyle.**

Trudeau must do more than simply assert an inability to pay. A contemnor like Trudeau who has made no effort whatsoever to comply with an order has the burden to *credibly* show: (1) a "complete inability" to pay by establishing "clearly, plainly, and unmistakably that compliance is impossible," *In re Resource Tech. Corp.*, 624 F.3d at 387 (citing *Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995); italics omitted); (2) that his inability to comply was not self-induced; and (3) that he has made in good faith "all reasonable efforts" to comply. *Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing,* 207 F.3d 500, 506 (8th Cir.

15

2000) (citing *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999), and

*Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525,

1527-29 (11th Cir. 1992)).

Trudeau cannot meet any of these factors. First, he cannot "unmistakably" show that

compliance is "impossible" when he has concealed substantial assets. Second, he cannot show

that his inability to comply is not self-induced when he has transferred assets to his spouse, holds

them offshore, or holds them in the name of corporations that he actually or beneficially owns.

Finally, he cannot show that he has in good faith made "all reasonable efforts to comply" when

he has dissipated significant assets on his lavish lifestyle, while paying nothing.

### C. Only a Sanction of Incarceration Can Possibly Coerce Trudeau to Comply With the Court's Order.

A court may apply sanctions in a civil contempt proceeding "to coerce the defendant into

compliance with the court's order." *United States. v. United Mine Workers of Amer.*, 330 U.S.

258, 303-04 (1947). In such instances, the court must "consider the character and magnitude of

the harm threatened by continued contumacy, and the probable effectiveness of any suggested

action in bringing about the result desired." *Id.* (footnotes omitted). Available coercive

sanctions include imposition of fines and incarceration. *See Shillitani*, 384 U.S. at 368

(imprisonment); *United States v. Lippitt*, 180 F.3d 873 (7th Cir. 1999) (same); *United Mine*

*Workers*, 330 U.S. at 304 (fine).

Here, immediate incarceration is the only viable option. Trudeau's failure to pay

anything thus far, his meritless claim of poverty, the lengths to which he has gone to his conceal

and dissipate substantial assets, and his history of contumacious violations of the Court's prior

orders show that it is highly unlikely he will ever comply with the Court's order unless he is

16

coerced to do so by incarceration.   The lesser sanction of a coercive fine – as evidenced by his failure to pay to date – would be wholly ineffective in facilitating compliance.

      **D.**      **Trudeau Should Remain Incarcerated Until He Pays in Full or Provides a Full Accounting and Complete Turnover of Assets.**

Finally, if he persists in not paying in full even after being incarcerated, Trudeau should remain incarcerated until he pays in full or provides a *credible* accounting of all assets held by him or for his benefit, and has turned over all such assets to the FTC.   Self-serving statements of financial hardship or indigence, without corroboration by third parties or detailed financial records such as tax returns, canceled checks, or bank statements, do not satisfy the burden of production to purge contempt.   *SEC v. Custable*, No. 94 C 3755, 1999 U.S. Dist. LEXIS 1776, at *6 (N.D. Ill. Feb. 11, 1999) (citing *Wellington Precious Metals, Inc.,* 950 F.2d at 1529, and *United States ex rel. Thom,* 760 F.2d 736, 739-40 (7th Cir. 1995).   Self-serving denials are particularly inadequate where, as here, the Court has found that the contemnor lacks any credibility.   *Id.* at *8 (citing *Maggio v. Zeitz,* 333 U.S. 56, 76 (1948)) (finding insufficient the alleged contemnor's "own denials which the court finds incredible in context").   Again, a contemnor such as Trudeau must produce credible evidence showing "clearly, plainly, and unmistakably" that "compliance is impossible."   *In re Resource Tech. Corp.*, 624 F.3d at 387.

Accordingly, the FTC requests that the Court order Trudeau to purge his contempt to secure his release by paying the sanction in full, with interest, and failing that, to provide a full, credible accounting of all assets held by him or for his benefit, and turning over all such assets.   Only then should he be released from confinement.   At a minimum, if he fails to pay the sanction in full, Trudeau should be required to:

(1) *credibly* identify and provide documentation for all assets in which Trudeau has or had an ownership or beneficial interest, directly or indirectly, from August 2007 through the present

17

(the "Relevant Period"), including all assets of entities held by Trudeau, held for his benefit, or that he directly or indirectly controls (the "Trudeau Entities");

(2) Create and produce *credible* comprehensive annual and year-to-date balance sheets and income statements for himself and each of the Trudeau Entities, for the Relevant Period;

(3) For each liability in excess of $500.00, produce *credible* documentation sufficient to identify the amount of the liability, the nature of the liability, and the individual or entity to which the liability is owed;

(4) For each asset over $500.00 that is not cash or cash equivalent, produce documents sufficient to *credibly* identify the nature of the asset and to support his valuation of the asset;

(5) Create and produce a *credible* ledger identifying all financial transactions greater than $500.00 for Trudeau and the Trudeau Entities that occurred during the Relevant Period; and

(6) Turnover all assets held by him or for his benefit.

## IV.    Conclusion

Trudeau has violated the Court's June 2, 2010 Order to pay the $37,616,161 contempt sanction.   Although he claims an inability to pay, the evidence plainly shows otherwise, and he has made no effort to even partially comply with the Court's Order.   After going to great lengths to conceal substantial assets and dissipate others at a rapid rate, he cannot meet his heavy burden of "clearly, plainly, and unmistakably" demonstrating that "compliance is impossible." Accordingly, the FTC moves the Court to:   (1) hold Trudeau in contempt; (2) immediately coercively incarcerate him; and (3) order that he remain incarcerated until he purges his

/

/

contempt by paying in full, or failing that, until he fully accounts for and turns over all assets held by him or for his benefit.


Dated: July 13, 2012                    Respectfully Submitted,


                                        /s/ Michael P. Mora
                                        Michael Mora (mmora@ftc.gov)
                                        Stephen Dowdell (sdowdell@ftc.gov)
                                        Federal Trade Commission
                                        600 Pennsylvania Ave., N.W. M-8102B
                                        Washington, DC   20580
                                        Phone:   202-326-3373; -2814
                                        Fax:   202-326-2558

19