**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | Case No. 03-C-3904 |
| v. | Hon. Robert W. Gettleman |
| KEVIN TRUDEAU, | |
| Defendant, | |
| WINSTON & STRAWN LLP, | |
| Respondent, | |
| THE LAW OFFICES OF MARC LANE, PC, | |
| Respondent, | |
| WEBSITE SOLUTIONS USA, INC., | |
| Respondent. | |

**BRIEF IN SUPPORT OF OMNIBUS MOTION TO COMPEL WINSTON & STRAWN, THE LAW OFFICES OF MARC LANE, AND WEBSITE SOLUTIONS USA TO <u>COMPLY WITH SUBPOENAS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I. INTRODUCTION ....................................................................................................... 1

II. BACKGROUND ......................................................................................................... 2

    A. This Court's Most Recent Order and the FTC's Subsequent
       Discovery Effort.................................................................................................. 2

    B. The Winston & Strawn Subpoena...................................................................... 4

    C. The Lane Subpoena............................................................................................ 6

    D. The WSU Subpoena........................................................................................... 7

    E. Meet and Confer Attempts................................................................................. 7

III. LEGAL STANDARD.................................................................................................. 8

IV. ARGUMENT............................................................................................................... 9

    A. Winston & Strawn's Position With Respect to Request 1 That It Has
       No Retainer Agreement Related To Trudeau Is Implausible.................................. 9

    B. Winston & Strawn's Objections to Request 2 and Lane's Objections
       Are Baseless...................................................................................................... 10

        1. The Attorney-Client Privilege Does Not Apply to Fee Information ......... 10

        2. Illinois RPC 1.6 Is Inapplicable .................................................. 12

        3. Fee Information Is Significant and Cannot Be Obtained Elsewhere ......... 12

    C. The Court Should Order the Firms To Provide Unequivocal Responses to
       Request 3.......................................................................................................... 14

    D. WSU's "Boilerplate" Objections Are Baseless, and the Court Should Order
       WSU To Produce Documents and a Corporate Designee Promptly...................... 14

V. CONCLUSION.......................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*aaiPharma, Inc. v. Kremers Urban Development Co.*,
  361 F. Supp. 2d 770 (N.D. Ill. 2005) ....................................................................................... 13

*Avoletta v. Danforth*, 2012 WL 3113151 (D. Conn. July 30, 2012) ............................................ 12

*Burke v. Messerli & Kramer, P.A.*, 2010 WL 2520615 (D. Minn. June 15, 2010) ....................... 12

*Fields v. City of Chicago*, 2012 WL 4892392 (N.D. Ill. Oct. 15, 2012) ................................. 12-13

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................................... 10

*FTC v. Trudeau*, 2012 WL 6100472 (N.D. Ohio Dec. 7, 2012) ..................................................... 1

*FTC v. Trudeau*, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012) ............................................. 1, 8-9

*Hope for Families & Community Service, Inc. v. Warren*,
  2009 WL 174970 (M.D. Ala. Jan. 26, 2009) ........................................................................... 12

*In re Barnicle*, 800 F. Supp. 1021 (D.N.H. 1992) ........................................................................ 14

*In re Decker*, 606 N.E.2d 1094 (Ill. 1993) .............................................................................. 11-12

*Johnson v. Dovey*, 2011 WL 5374958 (E.D. Cal. Nov. 7, 2011) .................................................. 13

*JP Morgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp.*
  2011 WL 6753984 (N.D. Ill. Dec. 22, 2011) ........................................................................ 9, 11

*Matter of Walsh*, 729 F.2d 489 (7th Cir. 1984) ............................................................................ 11

*Matter of Witnesses*, 623 F.2d 489 (7th Cir. 1980) ................................................................. 10-11

*Miyano Machinery. USA, Inc. v. Miyanohitec Machinery, Inc.*,
  257 F.R.D. 456 (N.D. Ill. 2008) ............................................................................................... 13

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) ................................................................. 8

*Qad.inc. v. ALN Associates, Inc.*, 132 F.R.D. 492 (N.D. Ill. 1990) .............................................. 13

*Sabol v. Brooks*, 469 F. Supp.2d 324 (D. Md. 2006) ................................................................... 13

*SEC v. Sassano*, 274 F.R.D. 495 (S.D.N.Y. 2011) ....................................................................... 12

*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987) .............................................. 13

*Shire LLC v. McAndrews Held & Malloy, Ltd.*
  2011 U.S. Dist. LEXIS 141585 (N.D. Ill. 2011) ....................................................................... 13

*Swidler & Berlin v. United States*, 524 U.S. 399 (1998) ............................................................. 10

*United States v. BDO Seidman*, 337 F.3d 802 (7th Cir. 2003) ..................................................... 10

*United States v. Jeffers*, 532 F.2d 1101 (7th Cir. 1976) ............................................................... 11

*Wilson v. O'Brien*, 2010 WL 1418401 (N.D. Ill. Apr. 6, 2010) .................................................... 13

**<u>Rules</u>**

Fed. R. Civ. P. 37 ..................................................................................................................... 1, 9

Fed. R. Civ. P. 45 ..................................................................................................................... 1, 9

Fed. R. Civ. P. 69 ..................................................................................................................... 1, 8

Ill. RPC 1.5 ................................................................................................................................. 10

Ill. RPC 1.6 ................................................................................................................................. 12

I.  **INTRODUCTION**

Pursuant to Federal Rules 37, 45 and 69, and Paragraph XVI of the Stipulated Final Order (Sept. 3, 2004) (DE56), Plaintiff FTC moves to compel Winston & Strawn, the Law Offices of Marc Lane ("Lane"), and Trudeau-affiliated entity Website Solutions USA ("WSU") to comply with subpoenas seeking information related to Kevin Trudeau ("Trudeau"). Following the December status conference, the FTC sought additional information to add to the already substantial evidence that Trudeau controls multiple companies and has significant hidden assets. As part of this effort, the FTC served subpoenas on Winston & Strawn and Lane seeking discovery regarding their fees. Although this information is relevant and not privileged, Trudeau's attorneys have made clear that they will not disclose Trudeau's likely substantial payments to them without a Court order. The FTC also subpoenaed WSU to obtain corporate testimony and basic financial records. But WSU has not produced any documents, nor will WSU communicate regarding deposition dates. Rather, WSU submitted "boilerplate" objections to the FTC's subpoena and granted itself a three-week extension to provide an unspecified "response."

As the Court is aware, the various persons and entities associated with Trudeau routinely adopt frivolous legal positions intended to hinder or delay discovery relevant to Trudeau's alleged inability to pay. The five prior judicial decisions addressing Trudeau's obstinate discovery tactics have rejected them.[1] Trudeau's strategy here is no different, and the result should be the same.

---

[1] *See* DE475 (May 24, 2012) (denying motions filed by Trudeau and Nataliya Babenko to quash subpoena to Rivers Casino); DE466 (Apr. 19, 2012) (denying motions to quash filed by Trudeau-affiliated entities WSU, GIN USA, and KT Radio Network ("KTRN"); *see also* PXA:1, *GIN USA v. FTC*, No. 1:12-mc-022, 2012 WL 6100472 (N.D. Ohio Dec. 7, 2012) (DE21), at 1 (denying GIN USA's motion to quash; "The FTC has provided sufficient evidence establishing that GIN's bank account records are relevant to its investigation into Trudeau's undisclosed assets and are sought for good cause.") (mag. op.); PXA:2, *FTC v. Trudeau*, No. 5:12MC35, 2012 WL 5463829, 5 (N.D. Ohio Nov. 8, 2012) (denying motion to quash; "The record evidence suggests that movants [WSU, GIN USA, and KTRN] are not business pursuits created totally independent from Trudeau, but may have been created to evade the contempt sanction and conceal Trudeau's assets.") (citation omitted) (mag. op.); PXA:3, *Babenko v. FTC*, No. 1:12-mc-00006 (S.D. Ohio Mar. 22, 2012) (denying motion to quash subpoena for Babenko's bank records) (mag. op.).

## II.     BACKGROUND

### A.     This Court's Most Recent Order and the FTC's Subsequent Discovery Effort

On July 13, 2012, the FTC moved to hold Trudeau in contempt.[2] Motion (DE481). On December 6, the Court held that "there is no question that the FTC has met its initial burden, establishing a prima facie showing of contempt." Order (DE535) at 2. The Court further stated that Trudeau's "failure to make any payments prior to the filing of the [contempt] motion by the FTC demonstrates a lack of good faith." *Id.* The evidence Trudeau submitted "falls woefully short" of demonstrating his alleged inability to pay "or that he has made all reasonable efforts to comply." *Id.* Because "[t]his all-reasonable-efforts standard is construed strictly," "even a showing of diligent and substantial efforts" is not enough, and Trudeau has the burden to show "categorically and in detail" why he purportedly cannot comply. *Id.* (citation omitted).

Although the burden to produce this evidence is Trudeau's, the Court expressed interest in supplementing the record regarding the assets Trudeau controls. *See*, *e.g.*, Tr. (Nov. 20, 2012), PXA:4 at 5:24 ("I would like to get to the bottom of this.").[3] The FTC already has presented substantial evidence that Trudeau controls significant assets, including:

- **Trudeau controls GIN USA and various associated entities.** Millions of dollars have flowed through GIN USA's accounts and those of associated entities, including WSU and KTRN. *See* FTC Contempt Opening Br. (July 13, 2012) (DE481) (July 12, 2012) ("Opening Br.") at 9-11. Trudeau admits that he founded GIN. *See id.* at 8. He also serves as its chief spokesperson. *See id.* In fact, when GIN USA moved to quash a prior subpoena seeking earlier bank records, GIN USA could not establish that anyone other than Trudeau controls GIN. *See FTC v. Trudeau*, 2012 WL 6100472, at *5 ("[T]he FTC's evidence indicating that Trudeau is a 'founder' and 'council' member of GIN <u>who exercises control</u> over GIN remains unrebutted.") (S.D. Ohio Dec. 7, 2012) (emphasis added) (mag. op.), PXA:1. WSU and KTRN pay GIN's operating expenses, and Trudeau controls these entities through Babenko and Suneil Sant, his "right hand man." *See* Opening Br. at 7-9.

- **Trudeau funded the $2 million escrow account with GIN-related monies.** The <u>$2 million</u> came from GIN USA, which received the money from WSU, which itself received the money from GIN USA's Nevis-based parent entity, GIN FDN. *See* FTC Contempt Reply (Oct. 15, 2012) (DE517) ("Reply") at 12 n.16.

---

    [2] As the Court is very familiar with this litigation, we include only background germane to the instant dispute.

    [3] Citations herein to the FTC's exhibits and attachments are abbreviated as "PX_:_."

2

- **Trudeau uses the entities he controls to pay for his lavish lifestyle.** Beginning in 2009, various Trudeau-affiliated entities made every dollar of nearly $3 million in payments to American Express for Trudeau's credit card bills, including hundreds of thousands of dollars in obviously personal charges. Trudeau also lived in an expensive suburban home and enjoyed the services of two personal chefs and a butler – all at KTRN's expense. *See id.* at 8-9.

To bolster this and other evidence even further, the FTC served (or attempted to serve) subpoenas seeking testimony[4] and/or documents from:

- **Winston & Strawn**. The FTC seeks nonprivileged information regarding Trudeau's payments to Winston & Strawn. Winston & Strawn has not produced any documents.

- **Lane**. Lane specializes in "asset protection," which (according to Lane) means "protect[ing] [his] clients assets from creditors and lawsuits while, at the same time, allowing them to retain control over the assets and the income they produce." PXA:5. Lane formed and represents many of the entities Trudeau controls. PXA:6; PXA:7. The FTC seeks nonprivileged information regarding Trudeau's payments to Lane. Lane has not produced any documents.

- **WSU**. The FTC seeks corporate testimony and basic financial information from this Westmont-based Trudeau-affiliated entity. PXA:8. WSU has not produced documents or responded to repeated requests for deposition dates.

- **KTRN**. The FTC seeks corporate testimony and basic financial information from this Westmont-based Trudeau-affiliated entity. PXA:9. KTRN has not produced documents or responded to repeated requests for deposition dates.

- **GIN USA**. The FTC seeks corporate testimony and basic financial information from this Westmont-based Trudeau-affiliated entity. PXA:10. GIN USA has not produced documents or responded to repeated requests for deposition dates.[5]

- **Nataliya Babenko**. The FTC seeks Babenko's testimony and documents regarding assets she purports to control. Trudeau married Babenko shortly before the judgment at issue, PXA:12, and she was then installed as the owner of WSU, GIN USA and KTRN, *see* Trudeau's Opp. to Contempt Motion (Sept. 25, 2012) (DE508) at 5. Babenko is also the sole director of APC Trading, a Belize IBC that owns Website Solutions Switzerland, which is Trudeau's purported current employer. *See* Reply at 3 n.3. Trudeau's counsel have argued that Babenko is a "successful businesswoman in her own right." Contempt Opp. (DE508) at 5. Despite an extensive effort to serve her (including attempts at two addresses associated with Babenko), the FTC cannot find her. None of her husband's

---

[4] *See* Tr. (Nov. 20, 2012), PXA:4 at 5:10-13 (suggesting the importance of depositions in addition to document discovery).

[5] The FTC originally served GIN USA and KTRN through their registered agents in South Dakota and Delaware, respectively. Because both entities are based in Westmont, however, the FTC has re-served them within this District to reduce the expense associated with the anticipated need to move to compel these Trudeau-affiliated entities to comply.

3

- **Michael Dow**. Dow is WSU's CFO and apparently serves a similar role for various other Trudeau-affiliated entities including GIN USA and KTRN. PXA:11. The FTC seeks testimony regarding the Trudeau-affiliated entities' finances, and Trudeau's control. Dow has separate counsel, and the FTC reached an agreement with his attorney regarding his deposition. The FTC likely will depose Dow after it receives WSU's document production.

- **Golden Lion Mint**. The FTC's subpoena covers records regarding gold bar purchases from Golden Lion. The FTC recently received a response, which the FTC is reviewing. Preliminarily, it appears Trudeau purchased $100,000 in Golden Lion gold bars in 2008, and kept them until October, 2011, when Sant personally visited Asheville, North Carolina to exchange them for gold bars another entity manufactured.[7] *See* PXA:30.

- **Rivers Casino**. The FTC sought records reflecting Trudeau's financial transactions at the casino over the past eight months. Rivers Casino responded very recently, and the FTC has not yet had the opportunity to review the production thoroughly, but Trudeau continues to use the casino to launder money.[8]

lawyers will accept service on her behalf, inform the FTC who represents her, or explain where she is. The FTC will continue attempting to serve her.[6]

Additionally, the Court ordered Trudeau to submit a financial statement and appear at a contempt hearing the Court will set. Order (Dec. 6, 2012) (DE535) at 3.

### B. The Winston & Strawn Subpoena

The Winston & Strawn subpoena seeks three very limited categories of documents:

(1) "[A]ll Retainer Agreements Referring or Relating to compensation for work or services performed for or provided to any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity."[9]

(2) "[A]ll documents . . . created on or after June 2, 2010 . . . evidencing payment received or promised, or the source of payment received or promised, for work or services performed or to be performed for any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity."

---

[6] Babenko is an NYU film school student. As part of its effort to serve Babenko, the FTC has asked NYU for her address and class schedule. NYU has provided responsive information.

[7] Trudeau exchanged the original bars for Scotia Bank gold bars. *See* PXA:30. Most likely, Trudeau preferred Scotia Bank bars because they are more easily transferable.

[8] The FTC also has served subpoenas on American Express and BMO Harris (Diner's Club) seeking updated credit card charge information.

[9] "Trudeau-Affiliated Person" and "Trudeau-Affiliated Entity" are broadly defined to include Trudeau, Babenko, and the various other persons and entities associated with Trudeau. *See* PXA:14 at 1-2.

4

    (3)    "[D]ocuments sufficient to establish the balance of funds at all times . . . in any account controlled directly or indirectly by [your firm] for the benefit of or on behalf of any Trudeau-Affiliated Entity or Trudeau-Affiliated Person."

PXA:14 at 5. Significantly, the requests included the following limitation exempting any privileged material:

### LIMITATIONS - REQUESTS TO PRODUCE DOCUMENTS

> The subpoena Specifications below do not cover, and the Federal Trade Commission does not seek, any information regarding anyone's motive for seeking legal representation, Trudeau's litigation strategy (or that of his counsel), the specific nature of any legal services provided, or the substance of any attorney-client communication other than the limited financial portions of any Retainer Agreement that do not reveal anyone's motive in seeking representation, litigation strategy or the specific nature of the services provided or to be provided.

*Id.* The request also invited Winston & Strawn to redact from the documents produced "all portions thereof that reveal the motive in seeking legal representation, litigation strategy or the specific nature of the services provided or to be provided." *Id.*

On December 21, FTC counsel asked Winston & Strawn attorneys to accept email service of the subpoena. PXA:13. Winston & Strawn attorneys did not respond to the request that the firm accept service as a courtesy. As a result, the FTC engaged a process server to serve Winston & Strawn on December 26. *See* PXB. At approximately 4:30 p.m., the server was informed that no one at the firm was available to accept service. *Id.* at ¶ 3 (server's affidavit). The following morning, December 27, an assistant to a Winston & Strawn attorney informed the server: "I've been instructed to tell you that Winston & Strawn will not accept service of this subpoena."[10] PXC at ¶ 4 (server's affidavit).

On December 28, after the FTC instructed its server to leave the subpoena in the firm's lobby, Winston & Strawn begrudgingly accepted service. In its subsequent response to the subpoena, Winston & Strawn complains that it was served "late on Friday, December 28, 2012, when our offices were closed for [the] holidays[.]" PXA:15 at 3. Actually, it was served at

---

[10] In disbelief, the server repeated this sentence back to the Winston & Strawn representative, who "confirmed it." PXC at ¶ 4.

12:23 p.m., and there was no indication that the Winston & Strawn office was closed at that time. *See* PXD at ¶¶ 3-4 (server's affidavit).

### C. The Lane Subpoena

On December 21, the FTC asked Lane to accept email service of a similar subpoena to his firm.[11] PXA:17. Lane did not respond to the email. Unlike Winston & Strawn, however, Lane accepted service from the FTC's server on December 26. PXE. The following day, Lane requested an extension until January 31 to respond (a three-week extension beyond the two weeks the subpoena already provided). PXA:16. Later that afternoon, the FTC expressed its willingness to "grant a reasonable extension" if Lane would coordinate with the FTC regarding discovery from various Trudeau-affiliated entities that Lane represents (WSU, GIN USA, and KTRN). PXA:19. FTC counsel also attempted to reach Lane by phone, and left a message inviting Lane to call him. *See id.*

On December 30, Winston & Strawn sent a terse email asking again that Lane receive a three-week extension.[12] PXA:21. The FTC declined because neither Lane nor Winston & Strawn "provided any reason whatsoever that possibly could justify extending the response date for three weeks" (to a total of five weeks), especially given the narrowly-tailored requests and that the FTC sought to obtain this information prior to the scheduled February 1 status conference. PXA:22. The FTC also declined the proposed extension because neither Lane nor Winston & Strawn had responded to the FTC's requests that the parties coordinate with respect

---

[11] Like the Winston & Strawn subpoena, the Lane subpoena contains a very clear limitation exempting any privileged material. *See* PXA:18 at 5.

[12] The FTC takes the Court's recent remarks regarding professionalism very seriously. The FTC was willing (and remains willing) to negotiate reasonable extensions or other accommodations. *See, e.g.*, PXA:13 ("[We] have cleared our calendars to the extent possible to facilitate scheduling."); PXA:20 ("[W]e don't mean for anyone to have to work over the holidays. . . . [P]ropose some (near-term) [deposition] dates to us, and then we'll work together to resolve whatever timing issues there are with respect to the document production."); PXA:22 ("[I]f you explain why Marc or his clients need additional time to make their productions, we'll consider what you have say."); PXA:19 ("We're willing to grant a reasonable extension, but we need to know where things stand regarding the depositions before we can address document production."). Additionally, the FTC has quickly and informally resolved discovery issues involving parties other than those whose conduct Trudeau controls.

to discovery generally, including depositions of Trudeau-affiliated entities.[13]  *See id*.  The FTC had (nine days earlier) proposed to Winston & Strawn <u>thirteen</u> mid-to-late January dates to hold these depositions.  PXA:13.  But Winston & Strawn had not responded – and, indeed, Winston & Strawn never responded.

### D. The WSU Subpoena

The WSU subpoena seeks testimony from a corporate designee along with two narrowly-tailored document requests designed to limit any burden and facilitate a rapid response:[14]

1. Provide bank statements from all banks or other financial institutions of any sort, for any account held by or in the name of any Trudeau-Affiliated Entity, from January 1, 2012 through the date of full and complete compliance with this subpoena.

2. Provide Financial Statements for all Trudeau-Affiliated Entities from January 1, 2010 through the date of full and complete compliance with this subpoena.

PXA:8 at 7.  Thus, the FTC seeks only financial and bank statements.

### E. Meet & Confer Attempts

On January 3, Lane objected to the subpoenas to his firm, WSU, GIN USA, and KTRN. PXA:7.  The following morning, the FTC requested a prompt "meet and confer."  PXA:24.  On January 7, Lane responded that Winston & Strawn now represented his firm, so the FTC would have to arrange any "meet and confer" concerning his firm with Winston & Strawn.  *See* PXA:25 ("Winston and Strawn is representing The Law Offices of Marc J. Lane, P.C., in this matter.").  Furthermore, Lane stated that other (unidentified) counsel would be representing the Trudeau-affiliated entities, so the FTC would have to arrange any meet and confer regarding their objections at an unspecified future time.  *See id.*  As of this writing, Lane has not provided any

---

[13] *See also* PXA:20 (asking Lane for dates); PXA:19 (asking "where things stand regarding the depositions"); PXA:22 ("Despite our repeated requests, neither you nor Marc has provided us with deposition dates in mid-January.").

[14] The FTC originally served the WSU subpoena with attachments seeking both documents and testimony, although the subpoena itself was issued on form AO88B (seeking only documents).  Counsel noticed the error and asked Lane to accept a corrected subpoena (Lane is both WSU's attorney and its registered agent, *see* PXA:23).  Lane refused, so the FTC served a new but otherwise identical subpoena by re-serving Lane as WSU's registered agent.

information regarding who represents the Trudeau-affiliated entities, or with whom the FTC can meet and confer.[15]

Also on January 7, Winston & Strawn served objections to its subpoena.[16] PXA:15. Among other things, Winston & Strawn represented that it has no retainer agreement or other similar document "referring or relating to compensation for work or services performed for or provided to [Trudeau]." *See id.* at 1; PXA:14 at 5. The FTC then requested a prompt "meet and confer" with Winston & Strawn regarding both the Winston & Strawn subpoena and the Lane subpoena.[17] PXA:26. The parties spoke on Saturday afternoon, January 12. PXA:29. Winston & Strawn reiterated that it has no written contract covering services provided to Trudeau, and that it would not produce other responsive documents unless ordered to do so. *Id.* Winston & Strawn also informed the FTC, for the first time, that it was not yet representing Lane and could not "meet and confer" on his behalf.[18] *Id.*

## III. LEGAL STANDARD

Under Rule 69, "[t]he scope of post judgment discovery under the Federal Rules is broad," and the FTC "is entitled to utilize the full panoply of federal discovery measures." *Trudeau*, 2012 WL 5463829 at *4. This includes discovery "from any person," FRCP 69(a)(2), "of any matter that is relevant to the claim or defense of any party," *Trudeau*, 2012 WL 5463829

---

[15] Specifically, on January 7, Lane informed the FTC that he would promptly identify the counsel with whom the FTC should meet and confer regarding the WSU subpoena. PXA:25 ("I will advise you as soon as such counsel is engaged, presumably within the next few days.").

[16] Any objection not clearly made is waived. *See*, *e.g.*, *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) ("Rule 45 requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.") (quotation omitted). Likewise, any objection not made "before the earlier of the time specified for compliance or 14 days after the subpoena is served" is waived. *See* FRCP 45(c)(2)(B).

[17] Winston & Strawn proposed 3:00 p.m. on January 10, which the FTC quickly accepted. PXA:27. On January 10, however, Winston & Strawn canceled the call. PXA:28. Winston & Strawn offered alternative times on Saturday afternoon, January 12, and the following Monday. *See id.* The FTC accepted Saturday afternoon because it was the earliest option.

[18] At 9:30 PM EST on January 17, hours before the FTC planned to file this motion, Winston & Strawn emailed the FTC, stated that it now represented Lane, and would confer on his behalf. This communication came almost two weeks after the FTC requested a meet and confer with Lane. PXA:24. Despite this late offer, the FTC will confer with counsel promptly.

8

at *4 (citing Rule 26(b)(2)); *see also JP Morgan Chase Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp.*, No. 02-C-6240, 2011 WL 6753984, *4 (N.D. Ill. Dec. 22, 2011) (denying motion to quash post-judgment subpoena seeking "retainer agreements and records regarding payments from defendants to [their counsel], including but not limited to any records relating to any funds held by [counsel] on behalf of defendants in a trust account or otherwise").

Because Winston & Strawn, Lane and WSU have objected to the FTC's document requests, the FTC may move "for an order compelling production[.]" FRCP 45(c)(2)(B)(i). Because WSU also has not responded to the FTC's deposition subpoena seeking testimony in this District, the FTC may move to compel WSU to appear. *See* FRCP 37(a)(1)-(2).

## IV. ARGUMENT

This section addresses: (i) Winston & Strawn's implausible position that it has no retainer agreement or other similar contract related to Trudeau (request 1); (ii) Winston & Strawn's baseless objections to request 2 (payment information) and Lane's related (and equally specious) objections;[19] (iii) the firms' incomplete responses with respect to request 3 (escrow sums); and (iv) WSU's "boilerplate" objections and refusal to respond regarding a deposition.

### A. Winston & Strawn's Position With Respect to Request 1 That It Has No Retainer Agreement Related To Trudeau Is Implausible.

Winston & Strawn denies that it has any retainer agreement or other similar contract related to Trudeau. PXA:15. The request states: "Provide all Retainer Agreements Referring or Relating to compensation for work or services performed for or provided to any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity."[20] PXA:14 at 5. The subpoena defines "Retainer Agreement" broadly to include "any contract governing the payment for legal or other professional services." *Id.* at 1. Taken together, "Trudeau-Affiliated Entity" and "Trudeau-Affiliated Person" include Trudeau himself along with Babenko and the various other persons

---

[19] Winston & Strawn asserts objections with respect to request 2 only.

[20] As with its other requests, the FTC invited Winston & Strawn to redact portions of documents produced "that reveal the motive in seeking legal representation, litigation strategy, or the specific nature of the services provided or to be provided." PXA:14 at 5.

9

and entities associated with Trudeau. Simply put, there is no reasonable way to interpret this request in a manner that does not cover whatever documents govern the compensation Winston & Strawn has received for its work on Trudeau's behalf.

The idea that Winston & Strawn has no such documents is not something that any attorney familiar with modern "big firm" practice can accept easily. Most major law firms have policies that require written retainers regarding rates, the scope of the representation, conflict waivers and other key terms. *Cf.* Ill. RPC 1.5(b) (the agreement with the client should "preferably [be] in writing"). It is implausible that a prominent global law firm has represented Trudeau through four years of intense civil and criminal work based on an oral agreement. Notwithstanding whatever crabbed interpretation of the request Winston & Strawn employs to justify its "we have no documents" response, the Court should order Winston & Strawn to produce (within three business days) all documents governing the compensation Winston & Strawn has received for its work related to Trudeau.[21]

### B. Winston & Strawn's Objections to Request 2 and Lane's Objections Are Baseless.

#### 1. The Attorney-Client Privilege Does Not Apply to Fee Information.

Winston & Strawn and Lane have the burden to establish that the information at issue is privileged. *See, e.g.*, *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Because the attorney-client privilege "'has the effect of withholding relevant information,' courts construe the privilege to apply only where necessary to achieve its purpose." *Id.* at 810-11 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The purpose is to encourage confidential communications between attorney and client, *see, e.g.*, *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998), and, consequently, "information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and client," *Matter of Witnesses*, 729 F.2d 489, 491 (7th

---

[21] Notably, the request is extremely clear, and Winston & Strawn does not even offer a "boilerplate" "vague and ambiguous" objection with respect to request 1.

10

Cir. 1984) (citation omitted); *see also Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) ("As a general rule, matters involving the receipt of fees from a client are not privileged as they do not involve confidential communications.") (citations omitted).[22]

Notably, although Trudeau's payments to his lawyers are not confidential communications, they are very probative of whether Trudeau is impoverished as he claims. When – as in this case – payments to attorneys can be disclosed without revealing confidential communications, they are "[l]ike any other expenditure, . . . a legitimate subject of inquiry," and evidence of substantial payments to attorneys is no different than "evidence that the defendant had bought a Rolls-Royce for cash (*i.e.*, a substantial expenditure)." *Matter of Witnesses*, 729 F.2d at 492 (quoting *Jeffers*, 532 F.2d at 1115). Indeed, the Court recently listed Trudeau's likely substantial payments to his lawyers as one of the many facts raising questions about Trudeau's claimed poverty.[23]

Neither firm's objection gives a "straight answer" regarding why these important payments cannot be disclosed.[24] The objections avoid referring to "privilege," but they both mention "the attorney's rule of confidentiality" or the protections afforded "confidential client information." PXA:15 at 2; PXA:7 at 2. In particular, Winston & Strawn relies on *In re Decker*, 606 N.E.2d 1094 (Ill. 1993), which explains that a client "'confidence' refers to information

---

[22] In this circuit, the only narrow exception to the "general rule" that fee information must be produced is when disclosing such information "would disclose confidential communications between the attorney and client." *Matter of Witnesses*, 729 F.2d at 492; *see also United States v. Jeffers*, 532 F.2d 1101, 1115 (7th Cir. 1976) (refusing to apply privilege to fee information even when the disclosure would incriminate the client), *vacated in part on other grounds*, 432 U.S. 137 (1977). Neither firm argues that disclosing fee information also would disclose attorney-client communications.

[23] PXA:5 at 4:16-20 ("There [are] certainly a lot of questions raised, [Trudeau's] credit cards, the way he lives, the way he travels. I don't know whether these people are his butlers or his cooks or anything else. I don't know how he's paying Mr. Anderson. I don't think this is one of your *pro bono* cases, Mr. Anderson.").

[24] The firms also contend that Trudeau has not authorized them to release the information. PXA:7 at 2 ("[The subpoena] calls for the production of confidential client information for which we have no authorization from the client to release."); PXA:15 at 2. "A client's expectation of confidentiality, however, is not sufficient by itself to establish attorney-client privilege from disclosure." *JP Morgan*, 2011 WL 6753984 at *3. Whether Trudeau elects to "authorize" his lawyers to release the information is irrelevant to their duty to comply.

protected by the attorney-client privilege under applicable law." *Id.* at 615 (quoting Ill. RPC 1.6(a)). However, as explained above, fee information is not privileged "under applicable law."

### 2. Illinois RPC 1.6 Is Inapplicable.

Winston & Strawn also wrongly cites Ill. RPC 1.6 to support its refusal to comply. PXA:15 at 2. Although Rule 1.6 generally prohibits disclosing client confidences or secrets,[25] such disclosures are always permissible when necessary to "comply with other law[.]" Ill. RPC 1.6(b)(6); *see also SEC v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) (explaining that Rule 45 "constitutes a 'law'" under Rule 1.6). Consequently, "Rule 1.6 is not intended to, and does not apply to judicial proceedings in which a lawyer may be required to produce evidence concerning a client." *Avoletta v. Danforth*, No. 3:11CV1126, 2012 WL 3113151, *1 (D. Conn. July 30, 2012); *see also Burke v. Messerli & Kramer, P.A.*, No. 09-1630, 2010 WL 2520615, *2 (D. Minn. June 15, 2010) ("Rule 1.6 is inapplicable to discovery requests and deposition questions.") (mag. op.); *Hope for Families & Cmty. Serv. v. Warren*, No. 3:06-CV-1113, 2009 WL 174970, *33 (M.D. Ala. Jan. 26, 2009) (finding that Rule 1.6 cannot be used "to oppose Plaintiffs' motion seeking a court order directing disclosure").

### 3. Fee Information Is Significant and Cannot Be Obtained Elsewhere.

Winston & Strawn contends that it is "rarely appropriate to subpoena an adversary's law firm."[26] PXA:15 at 2. Courts in this District use two largely similar tests to evaluate discovery issued to opposing counsel. Winston & Strawn cites neither test and, in any event, the FTC satisfies both.[27] Under the first formulation, discovery from opposing counsel is permitted "if there is no other reasonable means to obtain relevant and significant information that the attorney possesses." *Fields v. City of Chi.*, No. 10 C 1168, 2012 WL 4892392, at *3 (N.D. Ill. Oct. 15,

---

[25] A client "secret" is "information gained in the professional relationship, that the client has requested be held inviolate or the revelation of which would be embarrassing to or would likely be detrimental to the client." Ill. RPC, Introduction; *see also Decker*, 606 N.E. at 315.

[26] Lane's objection does not mention this issue. *See* PXA:7.

[27] Most decisions involve either proposed depositions of opposing counsel, or both depositions and document requests. The FTC's subpoenas to counsel seek only documents.

12

2012) (citation omitted). Other courts permit discovery from counsel when (1) there is no other means to obtain the information, (2) the information is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *See e.g.*, *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. 2008).[28] Under either phrasing, discovery from Trudeau's counsel is necessary because there is no other practical way to obtain the information. Requesting it from Trudeau himself is a useless exercise, the people and entities Trudeau controls have demonstrated repeatedly they will not cooperate with discovery, and subpoenas to banks have not disclosed how Trudeau pays his lawyers.[29] As explained above, the information is non-privileged and extremely important given that Trudeau has the burden to demonstrate his complete inability to pay. Trudeau cannot contend that he does not control any assets while continuing to benefit from legal work likely costing millions.[30] Accordingly, the Court should order both firms to comply fully with request 2 within three business days.

---

[28] The second test comes from *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). To the extent *Shelton* creates a heavier burden than *Fields*, multiple courts in this District have declined to follow *Shelton*. *See Shire LLC v. McAndrews Held & Malloy, Ltd.*, No. 11 C 7730, 2011 U.S. Dist. LEXIS 141585, at *5 (N.D. Ill. Dec. 9, 2011) ("[The Court] will not apply *Shelton* — at least not in the strict way advocated by respondents[.]"); *Wilson v. O'Brien*, No. 07 C 3994, 2010 WL 1418401, *2 (N.D. Ill. Apr. 6, 2010) (declining to apply *Shelton* and instead adopting "[t]he alternative position," which is "one of flexibility and consideration of all the circumstances presented in a particular case, permits discovery to proceed until a clear obstacle is encountered"); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 775 (N.D. Ill. 2005) (declining to follow *Shelton*); *Qad.inc. v. ALN Assocs., Inc.*, 132 F.R.D. 492, 495 (N.D. Ill. 1990) (explaining that the *Shelton* test, "stated as a rule of law . . . must be viewed as wrong").

[29] Winston & Strawn contends that the fee information at issue "is cumulative of other payment information that the FTC already has obtained by subpoenaing Mr. Trudeau's banks and already presented to the court." PXA:15 at 2. The FTC only has possibly incomplete information regarding payments to lawyers made between August 2008 and January 2009.

[30] Both Winston & Strawn and Lane assert miscellaneous "boilerplate" objections ("unduly burdensome, vague, ambiguous," and so forth). PXA:7 at 2; PXA:15 at 2. Neither provides any support for these "boilerplate" objections, which the Court should disregard. *See, e.g.*, *Johnson v. Dovey*, No. 1:08-CV-00640, 2011 WL 5374958, *3 (E.D. Cal. Nov. 7, 2011) (overruling "boilerplate objections" to subpoena); *Sabol v. Brooks*, 469 F. Supp.2d 324, 329 (D. Md. 2006) (finding objections to subpoena waived when non-party "used the boilerplate objections that this Court repeatedly has warned against").

### C. The Court Should Order the Firms To Provide Unequivocal Responses to Request 3.

Both Winston & Strawn and Lane give incomplete responses to the FTC's request seeking amounts they hold (or have held) for benefit of Trudeau, his corporate entities, or his associates (including his wife, Babenko). PXA:14 at 5 (request 3); PXA:18 at 5 (same). Lane does not deny that he has responsive documents, but states instead that he "holds no cash or other assets owed to, or belonging to, the judgment debtor [Trudeau]." PXA:7 at 2. Lane conspicuously fails to mention whether he previously held such funds, or whether he holds (or held) funds on behalf of Trudeau's corporate entities, Babenko, or other associates.

For its part, Winston & Strawn denies having any documents responsive to request 3, but includes a similar caveat: "We are not [now] holding any funds" on Trudeau's behalf, or on behalf any Trudeau-affiliated entity. PXA:15 at 3. The Winston & Strawn response is vague regarding whether Winston & Strawn previously held funds on Trudeau's behalf (or on behalf of his entities), or whether it ever held funds on behalf of one of Trudeau's associates.[31] Because the subpoenas seek this information, the Court should order Trudeau's lawyers to give unequivocal responses within three business days.

### D. WSU's "Boilerplate" Objections Are Baseless, and the Court Should Order WSU To Produce Documents and a Corporate Designee Promptly.

The FTC's subpoena to WSU is very limited, seeking only three years of financial statements, one year of bank records, and corporate testimony. Through Lane, WSU submits nothing beyond "boilerplate" objections to the document requests.[32] *See* PXA:7. Lane also has refused to communicate regarding deposition dates. *Cf. In re Barnicle*, 800 F. Supp. 1021, 1023-24 (D.N.H. 1992) ("Evasion of a deposition subpoena constitutes an obstruction of the administration of justice."). Accordingly, the FTC seeks an order that WSU comply fully with

---

[31] In fairness, during the "meet and confer," Winston & Strawn appeared to withdraw these caveats. If Winston & Strawn has no documents responsive to request 3, an order requiring Winston & Strawn to comply with this request will not burden the firm.

[32] WSU has not objected to the 30(b)(6) deposition. *See* PXA:7.

the document request within three business days and produce a well-prepared 30(b)(6) designee at a mutually convenient time no more than one week after its document production.

## V. CONCLUSION

The baseless objections and other obstructionist tactics outlined above illustrate the futility of conventional discovery efforts involving Trudeau. For this reason, and because there is already a sound legal basis to support immediate coercive sanctions, *see* Opening Br. at 16-17, Reply at 11-12, the FTC again urges the Court to consider imposing coercive incarceration, or expediting the hearing regarding such sanctions. Put simply, coercive incarceration is the only means to achieve a full accounting of Trudeau's assets. At minimum, to move this process forward incrementally, the Court should order that Winston & Strawn, Lane, and WSU comply with the FTC's document request within three business days, and that WSU produce a corporate designee no more than one week thereafter.

Dated: January 18, 2013

Respectfully Submitted,

David O'Toole (dotoole@ftc.gov)
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603-5001
Phone: (312) 960-5601
Fax: (312) 960-5600

/s/ Jonathan Cohen
Michael Mora (mmora@ftc.gov)
Jonathan Cohen (jcohen2@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., N.W. M-8102B
Washington, DC 20580
Phone: 202-326-3373; -2551
Fax: 202-326-2558

15

**CERTIFICATE OF SERVICE**

  I, Jonathan Cohen, hereby certify that on January 18, 2013, I caused to be served true copies of the foregoing by electronic means, by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to:

Kimball Richard Anderson
kanderson@winston.com

Thomas Lee Kirsch, II
tkirsch@winston.com

Katherine E. Croswell
kcroswell@winston.com


  I further certify that, on January 18, 2013, I caused to be served true copies of the foregoing by Federal Express to:

Marc J. Lane
The Law Offices of Marc Lane, PC
180 North LaSalle Street
Chicago, IL 60601

Nataliya Babenko & Suneil Sant
c/o Website Solutions USA, Inc.
130 Quail Ridge Drive
Westmont, IL 60559

Michael Dow
c/o Mary Patricia Benz, Esq.
111 West Washington, Suite 1150
Chicago, IL 60602


        /s/ Jonathan Cohen
        Jonathan Cohen (jcohen2@ftc.gov)
        Attorney for Plaintiff
        Federal Trade Commission