IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | No. 03 C 3904 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| KEVIN TRUDEAU, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On June 2, 2010, this court ordered Kevin Trudeau to pay a sanction of $37,616,161 to the Federal Trade Commission ("FTC") as a result of Trudeau's contemptuous failure to comply with this court's September 2004 Consent Order that settled a prior finding of contempt. See FTC v. Trudeau, 708 F. Supp.2d 711 (N.D. Ill. 2010). That order has been affirmed by the court of appeals. FTC v. Trudeau, 662 F.3d 947 (7th Cir. 2011). Trudeau has failed to comply with ignored the order, much like he has treated all of this court's orders, leading the FTC to move to hold him in contempt yet again (Doc. 481).

Because Trudeau had paid nothing toward the sanction, on December 6, 2012, this court held (Doc. 535) that the FTC has carried its initial burden to establish by clear and convincing evidence that Trudeau has violated the court's order, shifting the burden to Trudeau to produce evidence of poverty or insolvency that prevents compliance. SEC v. Custable, 1999 WL 92260 at *2 (N.D. Ill. 1999) (citing Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). Such evidence must show categorically and in detail why the alleged contemnor was unable to comply with the court's previous order. Id. Self-serving statements of financial hardship or indigence, absent corroboration by third parties or financial records including tax returns, bank statements and cancelled checks, do not satisfy this burden of production. Id.

To carry his burden, and on order of the court, Trudeau has filed a "Sworn Financial Statement" with supporting documents that suggests that he lacks the ability to pay anything toward the $37 million sanction. The FTC has rightfully challenged the bona fides of Trudeau's statement, presenting evidence that Trudeau is living much more like a prince than the pauper he professes to be. For example, the FTC has presented evidence that until recently Trudeau lived in an expensive suburban home with two personal chefs and a butler. Between August and November 2012 he purchased over $100,000 in home furnishings, over $16,000 in clothes and close to $1,000 worth of cigars. All of these purchases were made with a credit card issued to Trudeau. The credit card bills have been paid, but it is unclear by whom.

To bolster their argument, the FTC has served subpoenas seeking testimony and/or documents from third parties it suspects to be related to Trudeau and/or might have information relating to Trudeau's ability to pay the sanction. Not surprisingly, these efforts have been met with stiff resistance, forcing the FTC to litigate the enforcement of its subpoenas in the issuing courts. Despite defeating all efforts to quash its subpoenas, little information has been forthcoming. See e.g., Global Information Network, U.S. v. FTC, 2012 WL 6100472 (N.D. Ohio Dec. 7, 2012); FTC v. Trudeau, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012); Babanko v. FTC, No. 1:12-MC-00006 (S.D. Ohio March 22, 2012).

As part of its efforts to challenge Trudeau's claim of inability to pay, the FTC has also issued a number of subpoenas from this court. First, it has subpoenaed Trudeau's current attorneys, Winston & Strawn ("Winston"), seeking information regarding Trudeau's payments for legal services. Second, the FTC has subpoenaed the Law Offices of Mark Lane ("Lane"), a self-professed specialist in protecting his "client's assets from creditors and lawsuits while, at the

2

same time allowing them to retain control over the assets and the income they produce."[1] The Lane subpoena, like the Winston subpoena, seeks only documents relating to payments made to Lane or Winston by or on behalf of Trudeau. Finally, the FTC has issued a subpoena to Website Solutions U.S.A. Inc.("WSU").

Because all of the subpoenaed parties have raised objections and none have produced any information or otherwise complied with the subpoenas, the FTC has, pursuant to Fed. R. Civ. P. 45(c)(2)(B)(I), moved to compel their compliance. Winston and Lane have raised objections and arguments that are about as valid as the misrepresentations on Trudeau's contemptuous infomercials. Therefore, for the reasons set forth below, the motion is granted as to all three subpoenaed parties.

## **BACKGROUND**

The Winston and Lane subpoenas seek three categories of documents:

(1) All retainer agreements referring or relating to compensation for work or service performed for or provided to any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity [Trudeau-Affiliated Person and Trudeau-Affiliated Entities are broadly defined in the subpoena];

(2) All documents created on or after June 2, 2010, evidencing payment received or promised, or the source of payment received or promised, for work or services performed or to be performed for any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity; and

(3) Documents sufficient to establish the balance of funds at all times in any account controlled directly or indirectly for the benefit of or on behalf of any Trudeau-Affiliated Entity or Trudeau-Affiliated Person.

The subpoenas have a specific limitation indicating that the FTC is not seeking confidential information relating to Trudeau's motive for seeking legal representation, litigation

---

[1]These are Lane's own description of his services as an "asset protector."

strategy or the specific nature of any legal services provided, or the substance of any attorney/client communication other than the limited financial portions of any retainer agreement that do not reveal such information. The subpoenas specifically invited Winston and Lane to redact from the documents produced "all portions thereof that reveal the motive in seeking legal representation, litigation strategy or the specific natures of services provided or to be provided."

Winston responded to the subpoena by letter from Trudeau's primary counsel, Kimball Anderson, to FTC attorneys Mora and Cohen. Anderson's letter indicated that Winston had no documents responsive to categories (1) or (3). With respect to category (2), the letter indicated that Winston represents Kevin Trudeau and no other Trudeau affiliated entity as defined in the subpoena. With respect to Trudeau personally, Winston objected to producing any category (2) documents based on: (1) Rule 1.6(a) of the Illinois Rules of Professional Conduct; (2) the request was overly broad, unduly burdensome, ambiguous, vague, and not calculated to lead to the discovery of admissible evidence; (3) the request was cumulative to information the FTC had obtained by subpoenaing Trudeau's banks; and (4) it was inappropriate to subpoena opposing counsel.

Lane initially responded by objecting to the subpoena because it was: (1) unduly burdensome, vague, ambiguous, not reasonably calculated to lead to admissible evidence and cumulative to previous subpoenas issued by the FTC; and (2) it sought production of confidential client information. Lane did indicate that it "holds no cash or other assets owed to, or belonging to the judgment debtor."[2]

---

[2]Lane initially responded by letter from Marc Lane. During the course of briefing the instant motion, Lane has been represented by Winston.

**DISCUSSION**

As an initial matter, all subpoenaed parties have argued that the subpoenas are invalid because the FTC has not complied with Fed. R. Civ. P. 69(a). As the FTC points out, because none of the subpoenaed parties raised this argument in their responses or objections, the argument is technically waived. See Ott v. City of Milwaukee, 682 F.3d 552, 558 (7th Cir. 2012) (Rule 45 requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.). Objections must be raised before the earlier of the time specified for compliance or 14 days after the subpoena is served. Id.; Fed. R. Civ. P. 45(c)(2)(B).

Even if not waived, the argument has no merit. Rule 69(a)(1) provides that "a money judgment is enforced by a writ of execution, unless the court directs otherwise. (Emphasis added). In the original September 2004 Sanction Order, the terms of which were incorporated into the court's June 2, 2010 Order, the court specifically directed (and authorized) the FTC to monitor compliance using "procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36 and 45." Thus, the court has "ordered otherwise."

Moreover, even if the court had not authorized the FTC to follow federal discovery rules, Rule 69(a)(2) provides that "in aid of the judgment . . . the judgment creditor may obtain discovery from any person . . . as provided in these rules or by the procedure of the state where the court is located." (Emphasis added). As noted by then District Judge Rovner in Evans v. Chicago Football Franchise Limited Partnership, 127 FRD 492, 493 (N.D. Ill. 1989), "this language clearly contemplates that plaintiff has a choice between using the federal discovery rules and using the practice of the state."

5

Any argument that the FTC must first commence execution proceedings under Illinois law by serving Trudeau with a citation to discover assets before conducting discovery in aid of the judgment is unavailing and unsupported by Dexia Credit Local v. Rogan, 629 F.3d 612 (7th Cir. 2011), the case on which the subpoenaed parties rely. Dexia did state that under Illinois law a citation to discover assets initiates supplemental proceedings, but it was not faced with the instant question, nor did it hold that a citation to discover assets must be served before a judgment creditor could seek discovery in aid of a judgment (as opposed to execution), and it certainly never held that a judgment creditor specifically ordered by the court to use the federal discovery rules to monitor a contemnor's compliance with a sanction order must do so. Blaw Knox Corp. v. AMR Indus., Inc., 130 FRD 400 (E.D. Wis. 1990), the other case on which the subpoenaed parties rely, dooms their argument. In reviewing Rule 69(a), the Blaw Knox court determined that the Rule contained a distinction between execution and discovery, and held that "a judgment creditor is limited to the collection options provided by the state," but may obtain discovery under either federal or state law. Id. at 402. Thus, the court rejected the argument that discovery under the federal rules had to be preceded by an attempt at execution under state law. Id. Under Blaw Knox, a judgment creditor may seek discovery under the federal rules at any time post-judgment. Any assets of the judgment debtor found during such discovery are not, however, subject to a lien that would be created if execution proceedings had begun under state law. See e.g., Peterson v. Farrakhan, 2008 WL 656267 at *3 (N.D. Ind. March 5, 2008).

Winston and Lane next argue that compliance with the FTC's subpoenas would compel them to violate their ethical obligations under Illinois Rule of Professional Responsibility 1.6(a), which provides in part that a lawyer "shall not reveal information relating to the representation

6

of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b) or required by paragraph (c)." Even if Winston and Lane are correct that the source of payments made to them by or on behalf of Trudeau or any Trudeau-affiliated person or entity constitutes "information relating to the representation of a client,"[3] paragraph 1.6(b)(6) specifically permits disclosure of such information "to comply with other law or a court order." Fed. R. Civ. P. 45 constitutes a "law" that requires Winston and Lane to reveal otherwise confidential, non-privileged client information, and a subpoena issued under Rule 45 is a court order that compels compliance absent some other valid objection. See SEC v. Sassano, 274 FRD 495, 497 (S.D. N.Y. 2011). "Rule 1.6 is not intended to, and does not apply to judicial proceedings in which a lawyer may be required to produce evidence concerning a client." Avoletta v. Danforth, 2012 WL 3113151 at *1 (D. Conn. 2012) (applying Connecticut rule virtually identical to Illinois rule). Thus, Winston and Lane have fulfilled their ethical obligation under Rule 1.6(a) by bringing the matter to this court's attention and must, if ordered, reveal the information.

Finally, Winston and Lane have raised a number of the usual boilerplate objections, none of which carry any merit. The subpoenas are not overbroad, but actually are limited in nature. Compliance would not be unduly burdensome, particularly since the information sought is most likely available within the firms' computer systems. The subpoenas specifically disclaim any attempt to discover confidential information, and even if such information was called for, neither Winston nor Lane has identified such privileged information in a log as required by Fed. R. Civ.

---

[3]For an thorough discussion of the breath of Rule 1.6 see Edward W. Feldman, Be Careful What You Reveal: Model Rule of Professional Conduct 1.6, ABA Litigation Magazine, Vol. 38 No. 4 Summer/Fall 2012.

P. 45(d)(2)(A). As for Winston's argument that taking discovery of opposing counsel is rarely appropriate, the court finds that it is appropriate in the instant case, given Trudeau's efforts to avoid paying the sanction and his apparent ability to retain prestigious counsel and live a life of luxury.

Accordingly, for the reasons set forth above, the motion to compel Winston and Lane to comply is granted. Winston and Lane are ordered to produce forthwith all records showing payments and source of payments received for its legal services on behalf of Kevin Trudeau or any Trudeau-affiliated entity or Trudeau-affiliated person as defined in the subpoenas. WSU is ordered to comply forthwith with the subpoena and provide all responsive financial information and bank statements.

## CONCLUSION

For the reasons set forth above, the motion to compel Winston & Strawn, the Law Offices of Marc Lane, and Website Solutions USA to comply with subpoenas is granted.

**ENTER:** **March 6, 2013**

_____
**Robert W. Gettleman**
**United States District Judge**