# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Case No. 03-C-3904<br>) |
| v. | ) Hon. Robert W. Gettleman<br>) |
| KEVIN TRUDEAU, | )<br>) |
| Defendant, | )<br>) |
| THE LAW OFFICES OF MARC J. LANE, PC, | )<br>)<br>) |
| Respondent. | )<br>)<br>) |

**BRIEF IN SUPPORT OF MOTION TO COMPEL MARC LANE TO DISCLOSE
INFORMATION REGARDING TRUDEAU'S ASSET PROTECTION PLAN**

I.    **INTRODUCTION**

Pursuant to Federal Rules 37, 45 and 69, and Paragraph XVI of the Stipulated Final Order (Sept. 3, 2004) (DE56), the FTC moves to compel Marc Lane and his firm (collectively, "Lane") to disclose information regarding Trudeau's "asset protection" plan. As the Court has noted, Lane is "a self-professed specialist in protecting his 'client's assets from creditors and lawsuits while, at the same time, allowing them to retain control over the assets and the income they produce.'" Mem. (Mar. 6, 2013) (DE578) at 2-3 (quoting Lane's website). In light of Lane's asset protection specialty and his close business relationship with Trudeau, the FTC served Lane with a subpoena seeking documents and testimony regarding "the protection of existing or potential Assets from known or reasonably foreseeable creditors including, without limitation, the FTC." PXA:1 at 8 (spec. 1); *id.* at 3 (spec. B). In response, Lane withheld all responsive documents and indicated he will not testify at his deposition regarding Trudeau's asset protection plan.[1] Significantly, however, Lane has substantial information regarding Trudeau's assets – in fact, Lane produced a privilege log listing ▮▮▮▮▮▮ documents responsive to the FTC's request seeking documents related to protecting assets "from known or reasonably foreseeable creditors." *See* PXA:2.

For two reasons, Lane's privilege assertion is meritless. First, planning how to protect assets from "known or reasonably foreseeable creditors" is not "predominantly" legal advice. Second, even assuming that Lane's asset protection planning for Trudeau was privileged, the crime-fraud exception vitiates any privilege here. Indeed, *prima facie* evidence shows that Trudeau used Lane's asset protection plan (including the business entities Lane created) to avoid complying with the Court's June 2010 order to pay, thereby violating 18 U.S.C. § 401(3), which criminalizes "[d]isobedience or resistance" of a court's lawful order. Likewise, *prima facie* evidence shows that Trudeau has used the entities Lane created to convey assets fraudulently in

---

[1] *See* Lane Motion To Quash (Feb. 26, 2013) (DE569) at 10 (seeking to quash the FTC's request pursuant to FRCP 30(b)(6) for deposition testimony concerning asset protection). Lane's motion to quash primarily addressed other issues, and the privilege objection was left unresolved.

derogation of the FTC's rights as a judgment creditor. Thus, there is abundant evidence that the crime-fraud exception to the attorney-client privilege applies to Lane's asset protection planning. Accordingly, the FTC asks the Court to compel Lane to produce the documents at issue and testify regarding Trudeau's asset protection plan.

## II.　BACKGROUND

### A.　The FTC's Asset Protection Discovery

The FTC's asset protection discovery requests seek only documents reflecting advice "related to the protection of existing or potential Assets from known or reasonably foreseeable creditors including, without limitation, the FTC."[2] PXA:1 at 8 (spec. 1) (emphasis added). The request seeking testimony from Lane's firm contains identical language. *See id.* at 3 (spec. B).

After the Court indicated that Lane must log responsive documents, Lane produced a privilege log with ▮▮▮▮▮ entries. Lane describes most of the documents very vaguely (*see, e.g.*, PXA:2 at 12 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), although some plainly concern asset protection (*see, e.g.*, *id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added), and all of which Lane logged as responsive to the FTC's request for documents related to asset protection.[3] *See* PXA:1 at 8 (spec. 1).

---

[2] Not all strategies that might "protect assets" are necessarily unethical or illegal. *See e.g.*, L. Davis et al., *A Distinction Without a Difference? An Examination of the Legal and Ethical Difference Between Asset Protection and Fraudulent Transfers Under Virginia Law*, 47 U. RICH. L. REV. 381 (2012). The line between legitimate and illegitimate planning is often drawn at the point where the client (in this case, Trudeau) has known or reasonably foreseeable creditors. *See, e.g.*, G. Rothschild & D. Rubin, *Asset-Protection Planning: Ethical? Legal? Obligatory?* 142 TRUSTS & ESTATES 42 (Sept. 2003) ("On one side is the legal and ethical asset-protection planning that serves merely to protect against the possibility of creditors in the future. On the other side is planning that serves to defraud existing or probable future creditors."). The FTC located one ethics opinion that addressed directly the "propriety of asset protection planning." Specifically, the San Diego County Bar Association found it unethical for an attorney "to advise, prepare, and assist in the implementation of an asset protection plan," which the client sought "to protect personal assets from existing and identifiable creditors." Ethics Op. 1993-1 (Emphasis added).

[3] Lane has also objected on privilege grounds to the 30(b)(6) deposition topic concerning asset protection. *See* Lane Motion To Quash (Feb. 26, 2013) (DE569) at 10. On February 19, prior to Lane's motion to quash the FTC's subpoena seeking asset protection documents and discovery, the parties conducted a meet and confer regarding Lane's objection to disclosing asset protection information.

2

B. **Lane's Role Facilitating Trudeau's Financial Affairs**

The fact that Lane logged ███████ documents as responsive to the FTC's request for asset protection materials is unsurprising given Lane's ubiquitous presence as Trudeau's *de facto* financial manager. Significantly, Lane formed most (if not all) of the multi-tiered portfolio of entities designed to protect Trudeau's wealth from techniques that judgment creditors routinely employ.[4] Following the Court's original 2008 order to pay, Lane created a "first tier" of three domestic entities that Trudeau uses to operate the Global Information Network: GIN USA, KT Radio Network ("KTRN"), and Website Solutions USA ("WSU").[5] PXA:4-6. Lane is also involved with (and apparently created)[6] a "second tier" of offshore entities that own the first tier: Global Information Network FDN ("GIN FDN"), which owns GIN USA; APC Trading ("APC"), which owns KTRN; and NBT Trust, which owns WSU.[7] PXA:7 (FRAP 26.1 disclosure of GIN USA, KTRN, and WSU, filed last week).[8]

---

[4] In essence, "[a]sset protection planning is about creating a plausible story to tell a judge or a jury, which has as its end result that assets are protected." J. Adkisson & C. Riser, Asset Protection at 5 (2004).

[5] *See also FTC v. GIN USA*, No. 5:12MC35, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012) at 5 ("The record evidence suggests that movants [GIN USA, KTRN, and WSU] are not business pursuits created totally independent from Trudeau, but may have been created to evade the contempt sanction and conceal Trudeau's assets.").

[6]  ███ aid Lane at least ███████ so far this year. PXA:11 (m███ ███. Lane also ██████ d note pursuant to whic███ ██████████ note on ██ ███████ned as ██████████ which, in turn, is the ██ ██████████. *See id.*

[7] From an asset protection standpoint, Lane has employed an effective "separation methodology." *See* Adkisson & Riser, Asset Protection at 88-89. In essence, Trudeau runs the "Global Information Network" through a set of domestic entities, none of which holds all of the various component parts necessary to operate the business, and all of which quickly move funds offshore. *See id.* at 89 ("Separation methodology involves removing valuable assets from a liability-attracting operating business entity and using leases, rents, and licenses to continually bleed the business of assets. Thus, the operating business never accumulates significant value that could be exposed to creditors. The assets important to overall business success are spread across the component entities, so the value and profits in each entity is minimized but, when taken as a whole, in practical terms, the client is more wealthy and profitable than ever.").

[8] These six "first tier" and "second tier" entities are not the only entities involved. For instance, APC's Swiss subsidiary, Website Solutions Switzerland GmBH ("WSS") "employs" Trudeau. *See* FTC Contempt Reply (Oct. 15, 2012) (DE517) at 3 n.3.

3

Significantly, in addition to forming and coordinating among the various asset protection vehicles Trudeau controls, Lane serves as Trudeau's business advisor, tax preparer, and financial planner. PXA:9 at 99:15-17 ("Q: And what types of services have you provided for Mr. Trudeau or his affiliated companies? Lane: Business, tax, and financial planning."). Among other things, Lane prepared the dubious tax returns Trudeau offered in opposition to the pending contempt motion.[9] *See* Opp. (Sept. 25, 2012) (DE509), Exs. D, F-H. Lane also testified in the underlying contempt trial regarding Trudeau's financial affairs, *see* PXA:9 at 100-107, and prepared a balance sheet that the Court concluded was "not worth the paper it is written on," Mem. Op. (Aug. 7, 2008) (DE157) at 9. Finally, Trudeau has paid Lane to perform ▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬, including ▬▬▬▬ Lane received for ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ PXA:12-13.

C. **Payments Lane Received After this Court's June 2010 Order To Pay**

The ▬▬▬▬ Trudeau paid Lane for these ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ are not the only monies he paid Lane after the Court ordered that Trudeau pay to redress the more than 800,000 consumers he injured.[10] Specifically, after the Court entered the Order to pay in June 2010, Lane received more than ▬▬▬▬ for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* PXA:14. Lane knew about the Court's Order when he received these payments, *see* PXA:1 at 42 (▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"), yet Trudeau continued to pay Lane, and Lane continued to take Trudeau's money.

---

[9] More than $6 million in federal and state tax liens have been filed against Trudeau, PXA:10, which suggests that Trudeau has no qualms about filing returns that understate his ▬▬▬▬▬ his most recent "sworn" financial disclosure, Trudeau lists his current tax liability as ▬▬▬▬▬ PXA:11 at 8.

[10] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ d ▬▬▬▬. PXA:12. ▬▬▬▬▬▬puted that Trudeau owns ▬▬. *See* Opp. (DE509) at 5 n.2. ▬▬▬ paid Lane the other ▬▬▬▬ PXA:11.

### III. LEGAL STANDARD

Pursuant to Rules 37(a)(1), 45(c)(2)(B)(i), and 69(a)(2), the Court has the authority to compel Lane to provide discovery concerning Trudeau's asset protection plan. Although Lane asserts an across-the-board privilege claim, the attorney-client privilege is narrowly construed "because it is in derogation of the search for truth." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Lane has the burden to prove each element of the privilege, including that the communications involve "legal advice," and that Lane provided the advice in his capacity as a "legal adviser." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983) (citing 8 Wigmore § 2292). For advice to qualify as sufficiently "legal" to support the privilege, its legal aspects "must be the predominant element," rather than its business aspects. *See*, *e.g.*, *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996) ("[T]he legal advice given to the client, or sought by the client, must be the predominant element in the communication[.]") (citation omitted) (emphasis added). Furthermore, "[t]he claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *White*, 950 F.2d at 430 (citation omitted). Finally, even if Lane could establish that the documents contain predominantly legal advice he provided as a legal adviser, the "privilege is forfeited if the attorney is assisting his client to commit a crime or a fraud."[11] *United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007) (quotation omitted).

### IV. ARGUMENT

Lane's privilege argument fails for two reasons. First, Lane cannot establish that his asset protection planning constitutes predominantly legal advice. Second, there is far more than the required *prima facie* showing that Lane's asset protection plan enabled Trudeau to both 1) evade the Court's order to pay in violation of 18 U.S.C. § 401(3), and 2) convey assets

---

[11] "To establish the crime-fraud exception, and thus defeat the privilege, the government must present prima facie evidence that gives color to the charge by showing some foundation in fact. Such evidence then allows the district court to require the defendant to come forward with an explanation for the evidence offered against the privilege. The district court then exercises its discretion in accepting or rejecting the proffered explanation." *United States v. Boender*, 649 F.3d 650, 655-56 (7th Cir. 2011) (citations, alterations, and quotations omitted).

5

fraudulently. Accordingly, even if the information is arguably privileged, the crime-fraud exception applies.[12]

### A. Lane's Asset Protection Planning Is Not Predominantly Legal Advice.

As Lane's website explains, his asset protection services involve placing assets beyond the reach of creditors, while enabling clients "to retain control over the assets and the income they produce."[13] PXA:3 (Lane's website). This is exactly what Lane did for Trudeau when Lane created various entities (including several offshore) and installed Trudeau's wife as their nominal owner. This asset protection assistance is not "legal work." Rather, Lane's work creating a web of business entities and asset transfers concerns business matters and, therefore, is not privileged. *See*, *e.g., Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000) ("An attorney's work in drafting by-laws, promissory notes, security agreements, incorporation documents, partnership documents and tax information concerns business–not legal–matters and therefore is not privileged.") (quotation omitted); *Boca Investerings P'Ship v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998) (explaining that there is no privilege "[w]hen a lawyer acts merely to implement a business decision").

---

[12] ████████████████████████████████ there is no need to address the work product doctrine separately because, with respect to the issues this motion raises, there is no difference between the privilege and work product claims. As with the attorney-client privilege, the attorney-work product doctrine does not apply unless Lane establishes that the documents at issue contain exclusively <u>legal</u> work product. *See, e.g.*, *United States v. Frederick*, 182 F.3d 496, 501-02 (7th Cir. 1999) (holding no work product protection applied to documents reflecting thoughts of an attorney working as a tax preparer); *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) (stating that work product protections apply "[o]nly where the document is primarily concerned with <u>legal</u> assistance") (emphasis added). And, even if the documents at issue do contain exclusively legal work product (which is extremely doubtful), the crime-fraud exception would vitiate any work product protection. *See, e.g.*, *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003) ("The crime-fraud exception provides that communications normally protected by the attorney-client privilege <u>or by the work product doctrine</u> are not protected if they relate to communications made in furtherance of a crime or fraud.") (citation omitted) (emphasis added).

[13] One leading source on asset protection "concepts and strategies" uses similar language, explaining that "[t]he most difficult issues in asset protection involve control, or more precisely, how to have effective absolute control over an asset without having to legally own it and thus expose it to creditors." Adkisson & Riser, <u>Asset Protection</u> at 245.

6

Furthermore, even if one views Lane's asset protection planning as "mixed" business and legal advice, no privilege applies because legal considerations do not "predominate." *See*, *e.g.*, *Harmony Gold*, 169 F.R.D. at 116 ("[T]he legal advice given to the client, or sought by the client, must be the <u>predominant element</u> in the communication[.]") (citation omitted) (emphasis added); *N. Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) ("[T]he confidential communications must be <u>primarily</u> legal in nature[.]") (citations omitted) (emphasis added).[14] On Trudeau's behalf, Lane created entities and coordinated transfers between them. Even if this work is "quasi-legal," it is not predominantly legal and therefore, the privilege does not apply.[15] Especially given that the privilege "obscure[s] the search for the truth" and therefore must "be confined to [its] narrowest possible limits to minimize the impact on the discovery process," *N. Shore*, 164 F.R.D. at 61, this type of asset protection planning is not sufficiently "legal" to warrant protection.

### B. The Crime-Fraud Exception Vitiates Any Privilege.

#### 1. Lane's Asset Protection Planning Facilitates Trudeau's Ability To Evade the Court's Order To Pay in Violation of 18 U.S.C. § 401(3).

Pursuant to 18 U.S.C. § 401(3), "criminal contempt is a crime, like all other crimes." *In re Troutt*, 460 F.3d 887, 893 (7th Cir. 2006) (citing *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). The elements of criminal contempt under Section 401(3) are "(1) a lawful and reasonably specific order that (2) the defendant has violated (3) willfully." *Romero v. Drummond Co., Inc.*,

---

[14] *See also Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 392 (N.D. Okla. 2010) ("Where, however, the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged only if the legal purpose outweighs the business purpose.") (citations omitted); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp.2d 548, 563 (S.D.N.Y. 2008) ("[I]n order to merit protection, the 'predominant purpose' of the communication must be to render or solicit legal advice[.]") (citations omitted); *Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000) ("Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected.") (citations omitted).

[15] Notably, writing with respect to tax materials, the Seventh Circuit has found "dual purpose" documents are not privileged. *See Frederick*, 182 F.3d at 501-02 ("a dual-purpose document—a document prepared for use in preparing tax returns and for use in litigation—is not privileged").

7

480 F.3d 1234, 1242 (11th Cir. 2007) (citation omitted); *see also United States v. NYNEX Corp.*, 8 F.3d 52, 54 (D.C. Cir. 1993) (same).

Initially, it is beyond dispute that Trudeau has violated (and continues to violate) this Court's lawful Order to pay.[16] Furthermore, there is overwhelming evidence that Trudeau has knowingly used Lane's asset protection planning to evade the Court's Order. *See e.g.*, FTC Mem. (Apr. 1, 2013) (DE603) at 2-3 (summarizing evidence that Trudeau controls entities that Lane formed, and which have assets that Trudeau could use to comply). At very minimum, there is sufficient proof to conclude that it has "some foundation in fact," which is the evidentiary threshold necessary to establish a *prima facie* case that the crime-fraud exception applies. *See Boender*, 649 F.3d at 655; *see also Al-Shahin*, 474 F.3d at 946-47 ("In order for the crime/fraud exception '[t]o drive the privilege away, there must be 'something to give colour to the charge;' there must be 'prima facie evidence that it has some foundation in fact.'") (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)) (Seventh's Circuit's alterations); *id.* at 947 (noting that the relevant question "is not whether the evidence supports a verdict but whether it calls for inquiry"). Because there is *prima facie* evidence that Lane helped Trudeau violate 18 U.S.C. § 401(3), the crime-fraud exception to the attorney-client privilege applies. *Cf. United States v. Rogan*, No. 1:08-cr-00415-2 (N.D. Ill.) (attorney Frederick Cuppy sentenced to prison following indictment on various charges arising from Cuppy's efforts to help judgment debtor (Peter Rogan) protect assets through an offshore trust Cuppy created post-judgment).

### 2. Lane's Asset Protection Planning Has Enabled Trudeau To Effect Fraudulent Conveyances.

Attorneys may not advise their clients regarding how to effect a fraudulent conveyance,[17] and such advice, if given, is not privileged. *See, e.g.*, *Tindall v. H & S Homes, LLC*, 757 F.

---

[16] *See generally* Order (Dec. 6, 2012) (DE535) (holding that there is "no question" that the FTC has "establish[ed] a *prima facie* showing of [civil] contempt."). The FTC's *prima facie* showing included establishing that Trudeau substantially violated an unambiguous command. *See FTC v. Trudeau*, 739 F.3d 754, 763 (7th Cir. 2009) (elements of civil contempt).

[17] *See, e.g.*, *The Fla. Bar v. Rood*, 622 So.2d 974, 978 (Fla. 1993) (affirming discipline against attorney who helped fraudulently convey a property) (per curiam); *In re Conduct of Hockett*, 734 P.2d 877, 883 (Or. 1987) ("Assisting clients to cheat creditors is 'dishonesty' under

Supp. 2d 1339, 1361-63 (N.D. Ga. 2011) (holding that the crime-fraud exception applied to post-judgment communications related to the creation of new entities as part of "a plan to assist Defendants in transferring assets . . . for the purpose of avoiding the payment of the outstanding judgment") (quotation omitted); *Cendant Corp. v. Shelton*, 246 F.R.D. 401, 406 (D. Conn. 2007) (allowing deposition of debtor's attorneys as to the formation and operation of certain entities based on evidence that debtor's "primary purpose in forming and operating each of these entities was to use them as a vehicle for shielding his assets from creditors who were making claims against him while maintaining his control over those assets").

Under the Federal Debt Collection Procedures Act ("FDCPA"), transfers are fraudulent as to the United States if made "with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A). In prior briefs, the FTC has presented overwhelming evidence that Trudeau has used (and continues to use) companies (GIN USA, KTRN, and WSU) to convey assets to his wife, Nataliya Babenko, who serves as their nominee owner while Trudeau retains control.[18] As relevant to this motion, however, it is undisputed that Lane created these entities, *see* PXA:4-6, and it is beyond serious debate that Trudeau has made transfers to and through these entities "with actual intent to hinder, delay, or defraud a creditor" (such as the FTC).[19] At

---

DR 1–102(A)(4). We conclude that the accused's act of assisting his clients in 'fraudulent' transfers, was done with the intent to cheat creditors of their lawful debts. Such conduct is 'conduct involving dishonesty,' a violation of DR 1–102(A)(4)."); *Allen v. State Bar*, 570 P.2d 1226, 1229 (Cal. 1977) ("Participating in a scheme to defraud creditors is a crime and properly subjects an attorney to disciplinary action.") (internal citation omitted); *Townsend v. State Bar*, 197 P.2d 326, 328-29 (Cal. 1948) (suspending attorney who transferred client's property after learning of decision adverse to client because transfers were for the purpose of preventing recovery on the judgment); Conn. Informal Op. 91-23 (Dec. 5, 1991) ("[A] lawyer may not counsel or assist a client to engage in a fraudulent transfer that the lawyer knows is either intended to deceive creditors or that has no substantial purpose other than to delay creditors.").

[18] *See e.g.*, Contempt Mem. (Apr. 1, 2013) (DE603) at 2-3 (summarizing evidence that Trudeau controls GIN USA, KTRN, and WSU).

[19] Additionally, Trudeau used Lane's asset protection plan to violate 28 U.S.C. § 3401(a), pursuant to which a transfer made after the debtor incurs an obligation is fraudulent as to the United States if either (1) the debtor does not receive reasonably equivalent value, and is insolvent or becomes insolvent as a result of the transfer, or (2) the transfer was made to an insider, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

9

very minimum, there is *prima facie* evidence that Lane assisted fraudulent transfers, thereby triggering the crime-fraud exception to the attorney-client privilege.

**V.     CONCLUSION**

Lane's asset protection planning is not privileged, but even assuming otherwise, the privilege yields here to the substantial the evidence that Lane's asset protection plan enabled Trudeau to violate 18 U.S.C. § 401(3), the law prohibiting fraudulent transfers, or both. Accordingly, the FTC asks the Court to compel Lane to produce the documents at issue and testify regarding Trudeau's asset protection plan.

Dated: April 15, 2013                                              Respectfully Submitted,

David O'Toole (dotoole@ftc.gov)                  /s/ Jonathan Cohen
Federal Trade Commission                           Michael Mora (mmora@ftc.gov)
55 West Monroe Street, Suite 1825              Jonathan Cohen (jcohen2@ftc.gov)
Chicago, Illinois 60603-5001                          Federal Trade Commission
Phone: (312) 960-5601                                   600 Pennsylvania Ave., N.W. M-8102B
Fax: (312) 960-5600                                        Washington, DC  20580
                                                                        Phone:  202-326-3373; -2551
                                                                        Fax:  202-326-2558

## **CERTIFICATE OF SERVICE**

  I, Jonathan Cohen, hereby certify that on April 15, 2013, I caused to be served true copies of the foregoing by electronic means, by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to:

Kimball Richard Anderson
kanderson@winston.com

Thomas Lee Kirsch, II
tkirsch@winston.com

Katherine E. Croswell
kcroswell@winston.com

Daniel J. Donnellon
ddonnellon@ficlaw.com

Kenjiro D. LeCroix
klecroix@ficlaw.com

            /s/ Jonathan Cohen
            Jonathan Cohen (jcohen2@ftc.gov)
            Attorney for Plaintiff
            Federal Trade Commission