UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-C-3904 |
| | ) | |
| KEVIN TRUDEAU, | ) | Honorable Robert W. Gettleman |
| Defendant. | ) | |

**DEFENDANT KEVIN TRUDEAU'S RESPONSE IN OPPOSITION TO THE FTC'S POST-HEARING BRIEF IN SUPPORT OF ITS CONTEMPT MOTION**

The relief sought be the FTC is neither proper nor supported by the evidence. The FTC asks the Court to incarcerate Trudeau until one of following conditions is met: (1) Trudeau pays the FTC $37.6 million or (2) Trudeau completes a full accounting and turns over all of his assets. The FTC does not maintain – nor could it – that Trudeau has $37.6 million to pay to the FTC. Nobody seriously believes that. Instead, the FTC argues that because Trudeau has failed to prove beyond any doubt that he cannot pay some amount greater than zero, the Court should incarcerate him until he pays the entire $37.6 million. That is not, and cannot be, a proper remedy for civil contempt. Instead, it is unlawful debtor's prison.

Recognizing the absurdity of its first request, the FTC offers the Court a second option.[1] But this option does not justify imprisonment unless and until Trudeau refuses to cooperate with a third-party accounting. To incarcerate Trudeau is not permitted for civil contempt. To date, Trudeau has proposed such an accounting (which the FTC prior to its filing on July 15 had refused) (*see* Ex. 28), has undertaken an expedited third party accounting (which the FTC incredibly argues is not admissible and should not be considered by the Court), and has even

---

[1] The FTC states that it offers three options, but the third – the Court finds that incarceration no longer serves its coercive purpose – is not a purge condition.

1

gone so far as to suggest that the Court appoint a receiver to oversee his financial matters. Yet, astonishingly, the FTC maintains that he should be imprisoned because maybe, down the road, he will decide to stop cooperating with an accounting, and incarceration is the only way to coerce him to cooperate with an accounting which has not commenced. But, incarceration to deter future misconduct is a remedy for criminal contempt, not civil contempt. *See In Re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002) ("A contempt order is considered . . . criminal if its purpose is to . . . deter future misconduct.")

The absurdity of the FTC's relief position is apparent on its face. But, the FTC complicates matters further by putting conditions on the accounting which entirely places the keys to the prison in the accountant's and the FTC's hands. The FTC does not address this problem at all. Who decides if Trudeau has cooperated with the accountant? By what criteria? What if he asserts his Fifth Amendment privilege during an interview?[2]

Trudeau has already proposed and agrees with the FTC's suggestion – which should have been made a year ago – that the Court (or the parties) select an appropriately qualified independent accounting firm to complete a full accounting of Trudeau's assets. Trudeau should not and cannot be incarcerated while the accounting takes place unless and until the FTC proves and the Court finds that Trudeau has somehow failed to cooperate with the accounting. To do otherwise would be criminal punishment to deter future misconduct.

I. ARGUMENT

    A. **Trudeau Does Not Have $37.6 Million, And Therefore He Cannot Be Incarcerated Until He Pays That Sum.**

The FTC's request that Trudeau be incarcerated until he pays the full $37.6 million judgment is not tenable because compliance is impossible. There is no evidence to support the

---

[2] The FTC seems to be suggesting that Trudeau may be imprisoned until he decides to waive his Fifth Amendment rights. The Court cannot impose those conditions.

conclusion that Trudeau presently has (or ever had) $37.6 million. The FTC's evidence of available assets – even after the voluminous discovery that it took – comes nowhere close to establishing that Trudeau has $37.6 million with which he could pay the judgment.

The FTC acknowledged that Trudeau never received the $37.6 million on which the judgment entered in this case was based. (Ex. 48, 10/20/08 Tr. at 27:24-28:1 ( "We do not dispute that of that amount the record shows that Mr. Trudeau has only actually received the close to $2 million figure."); Docket No. 267 at 11 ("[T]he amount of consumer loss is significantly greater than any estimate of Trudeau's ill-gotten gains[.]"); Docket No. 161, 7/25/08 Tr. at 267 ("Now, we are not saying he has received that money from ITV. The evidence we have is that he has not."). And the FTC never once points to any current assets totaling anywhere near that figure in its briefs, in its findings of fact, or in any of its exhibits. (*See generally* Docket Nos. 713 & 716.) Instead of showing present assets, the FTC's evidence centers almost exclusively on money *spent*. (*E.g.*, Docket No. 716 at 8-10, 13.) And the FTC repeatedly argues that Trudeau's inability to pay is self-induced, virtually conceding that Trudeau does not have a present ability to pay $37.6 million (or any amount for that matter). (*Id.* at 3-4, 13.)

In addition, the Court has not found that Trudeau has $37.6 million available to satisfy the judgment. Indeed, the Court in the past referred to the $37.6 million figure as "rather Draconian," which is consistent with the fact that Trudeau never received the money. (Docket No. 161, 7/25/08 Tr. at 354-55 ("[T]o say that everybody who bought this book should be given a refund strikes me as a bit overdoing it[.]").)

Trudeau spent a great deal of time in his brief explaining that no such assets exist. (Docket No. 710 at 8-12, 18-19.) Trudeau has been forced to try to prove a negative (a nearly

3

impossible task), and has attempted in good faith to show the Court that he is unable to pay the gargantuan judgment against him. The FTC has not attacked the veracity of the evidence, but rather indicates that it is "incomplete" without providing its own evidence in rebuttal. (*E.g.,* Docket No. 716 at 7-8.) The Court should not acquiesce to the FTC's persistent demands of incarceration when the FTC has not provided this Court with any affirmative evidence of presently available funds. Trudeau simply does not have $37.6 million available to pay the judgment in this case, and the FTC cannot and does not seriously maintain that he does. As a result, the FTC's request that Trudeau be incarcerated until he pays the full $37.6 million judgment is invalid on its face.

### B. Incarcerating Trudeau To Ensure That He Cooperates With A Prospective Accounting Is Not A Proper Remedy.

The FTC argues that, as an alternative to incarcerating Trudeau until he pays the full $37.6 million judgment, the Court should incarcerate Trudeau until a full accounting is completed and all available assets are turned over to the FTC. But, this "relief" is criminal punishment and is falsely presuming that Trudeau will not cooperate with an accounting that he has already proposed and tried to complete without the cooperation of the FTC. The FTC asks the Court to incarcerate Trudeau not because he has failed to cooperate with an accounting, but because he *might* refuse to do so in the future. Clearly, such an approach is not appropriate in civil contempt. *See In Re Grand Jury Proceedings*, 280 F.3d at 1107. Furthermore, while liberty can be taken away in certain circumstances, it is never taken away lightly. In criminal cases, an individual is not deprived of his or her liberty until a jury of twelve of the defendant's peers finds that the individual is guilty beyond a reasonable doubt – a very high standard of proof. Yet the FTC essentially argues that Trudeau should be imprisoned because at some point in the future he might decide not to comply with the Court's order for a third-party accounting.

4

The FTC's argument is reckless and is not a proper remedy here even if the Court finds Trudeau in contempt for failing to pay the judgment.

Also, as Trudeau has argued countless times, coercive incarceration is only appropriate when the defendant carries the keys to his own prison, i.e. has the means to get himself out of prison as soon as he complies. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911). But the FTC asks the Court to incarcerate Trudeau and put the keys to the prison in a third-party accountant's hands. This begs the question: if Trudeau is civilly incarcerated for contempt as the FTC requests, what can he do to purge that contempt and be released from prison? The answer, according to the FTC, is that he can do nothing to gain his freedom except wait. In other words, Trudeau must be incarcerated indefinitely as the FTC continues to investigate Trudeau's finances. The FTC's proposal thus invites the Court to ignore the boundaries of civil contempt and punish Trudeau.

The FTC's argument for incarceration until a full accounting is completed is disingenuous given the fact that Trudeau specifically offered a full independent accounting several months ago, which the FTC refused. (*See* Ex. 28.) On May 10, 2013, counsel for Trudeau emailed the FTC to discuss the manner in which Trudeau could purge a possible contempt finding. (*Id.*) Counsel understood that the "FTC's position in the event of a contempt finding would be that Trudeau must provide a complete accounting of his assets, including any entities that the court finds that he controls . . . ." (*Id.*) Trudeau then agreed to provide such an accounting, and asked the FTC to provide a list of entities that the FTC would want included in the accounting along with a list of any accountants/auditors who could perform this work. (*Id.*)

The FTC, however, refused to engage with counsel for Trudeau regarding this plan.[3] And yet, now this is precisely what the FTC asks from this Court.

Trudeau suggests that the Court order an accounting to determine what sum of money could be paid and then incarcerate Trudeau only if he fails to pay that sum (or specifically fails to comply with a legal obligation imposed by the Court in connection with the accounting). In *FTC v. Leshin*, a case that this Court found instructive and specifically asked the parties to review, the court ordered the defendant to pay an amount that the court found that the defendant was *then* able to pay, or else face jail time. -- F.3d --, 2013 WL 2420363, at *1 (11th Cir. June 5, 2013). In other words, the court first determined the amount of money that the defendant was affirmatively able to pay, and only then threatened jail time if that amount was not paid. *Leshin* undercuts the FTC's "incarcerate now, sort out the finances later" approach.

### C. The Court Should Proceed Under The FDCPA

The appropriate path towards final resolution in this case is to proceed under the Federal Debt Collection Procedures Act ("FDCPA"). The FTC concedes in its brief that this Court may proceed with collection of the judgment in this case under Federal Rule of Civil Procedure 69 and the FDCPA, but argues that the Court should ignore the FDCPA, and instead proceed only under the Court's contempt power. (Docket No. 716 at 15-17.) But the FDCPA, which is the "exclusive civil procedures for the United States to . . . recover a judgment on a debt," provides important protections to debtors, including notice of their rights, procedures for putting liens on property, exemptions for certain property, and limitations on garnishment of their salary as just a

---

[3] When the FTC refused to identify the entities it wished to be included in a third party accounting, or provide a list of acceptable accountants/auditors, Trudeau sought to provide his own accounting of his assets in hopes of satisfying the FTC's request for an accounting. (Ex. 55.) Now, incredibly, that FTC argues that this report is inadmissible and the Court should disregard it.

6

few examples. *See generally* 28 U.S.C. § 3001 et seq. The FTC cites no authority for the proposition that it is entitled to run rough-shod over those rights. To be sure, the FDCPA does not eviscerate a federal court's contempt powers. It is equally certain, however, that the FDCPA does not allow the FTC or a court exercising its contempt powers to eviscerate a debtor's statutory rights. Where, as here, civil contempt sanctions such as fines and incarceration would be wholly inappropriate and ineffective, the FDCPA provides a fair and methodical way to collect the judgment, thus bringing order to the years of chaos in this case.[4]

### D. Trudeau Should Not Be Held In Contempt Because He Has Shown An Inability To Pay And The FTC Has Failed To Meet Its Burden To Show That Trudeau Has The Ability To Pay Any Specific Sum Of Money.

#### 1. Trudeau's Evidence Meets His Burden of Production.

Trudeau has met his burden of production to show inability to pay, and the FTC's argument to the contrary focuses on issues that are completely irrelevant. According to the FTC: (1) Trudeau offered no evidence demonstrating that he does not control certain corporate entities, (2) Trudeau's financial records are incomplete and drawn from a self-selected subset of the entities, (3) the expert report of Mary O'Connor is inadmissible and does not prove inability to pay, and (4) Trudeau does not explain where corporate and personal assets have gone. But none of these arguments wins the day.

First, Trudeau has offered evidence demonstrating that he does not legally control the entities that the FTC has identified as so-called "Trudeau-Affiliated Entities," but regardless of who controls the entities, Trudeau has shown that the companies control no appreciable assets. In his initial brief opposing the FTC's contempt motion, Trudeau explained that he does not

---

[4] The FTC also argues that execution against Trudeau's assets is not "feasible." (Docket No. 716 at 18.) The FTC has not even tried to attach to any of Trudeau's assets to date, and therefore has no basis to claim that it is not practical.

7

legally control the various corporate entities, and that they are actually legally owned and controlled by others. (Docket No. 508 at 4-8.) As the FTC admits, Trudeau is not the legal owner, officer or director of the majority of these entities, and his name is not on nor is he a signer for the majority of the bank accounts. (*See, e.g.*, Docket No. 481-1 at 5-6, PX 2 (Att. A & B).) Through Trudeau in a practical sense does exercise *some* influence over these companies, the fact of the matter is that the actual owners, officers and directors of these companies could tell Trudeau to "take a hike" at any time and he would have no recourse.[5] The FTC has never argued otherwise. But regardless of whether the Court believes that Trudeau controls these entities, Trudeau provided the Court with ample evidence that the companies have no net assets, and therefore any alleged control of the entities is irrelevant since there is nothing to pay over to the FTC. (Docket No. 710 at 8-12, 17-18.)

Second, the FTC argues that Trudeau has produced "incomplete" financial records drawn from a "self-selected" subset of the entities. This position is untenable given that Trudeau offered to move forward with a third-party accounting with the FTC's cooperation (and by the FTC's rules – the FTC was offered the chance to pick the accountant/auditor and to choose the companies that would be included in the accounting), and the FTC's outright refused. (*See supra* at 1-2, 4-5.) Moreover, Trudeau's evidence is not "incomplete." Trudeau submitted a sworn financial statement outlining all of his assets and liabilities, and provided this Court with an accounting by a third-party accounting firm, Sikich LLP, regarding the assets of a dozen

---

[5] *See* Ex. 50, 6/26/13 Tr. at 110:23-111:4, 112:10-13 ("I fully understood at that time that this was a bona fide arrangement whereby Ms. Babenko would in fact own this company not as anybody's nominee, but in her own right and based upon her own capabilities."), 113:4-10 ("Q: [D]o you know whether Mr. Trudeau and Ms. Babenko have any sort of prenuptial or post-nuptial agreement? . . . A. I know of none. Q: So if they separated and Natalie Babenko owned an entity, who would keep the entity? A: Presumably she would, unless and until some Judge decided otherwise."); *see also* Ex. 49, 5/21/13 Tr. at 120-121.)

companies that the FTC has indicated are "Trudeau-Affiliated Entities." (Exs. 25 & 55.) The FTC has not disputed that any of this evidence is inaccurate, and simply argues that the evidence is "incomplete." (*E.g.*, Docket No. 716 at 7-8.) But the FTC has no basis to suggest that Trudeau has access to any additional financial records that have not already been produced.[6] In reality, Trudeau has presented this Court with the evidence he has to show that he and the corporate entities do not have appreciable net assets available to pay the judgment. This is enough to satisfy his burden and put the onus on the FTC to prove an *ability* to pay. *See SEC v. Custable*, 1999 WL 92260, at *3 (N.D. Ill. Feb. 11, 1999).

The FTC also asks this Court to disregard the expert report of Mary O'Connor, arguing that it is inadmissible and does not prove inability to pay. The FTC's conclusory argument that the report is inadmissible, without any explanation or analysis whatsoever, is insufficient.[7] In any event, the FTC's arguments are without merit. This is not a jury trial and the Court has indicated that it is not concerned with admissibility so much as weight to be afforded to the evidence. The Court should admit the report and accord it the weight it deserves. Moreover, the

---

[6] Trudeau does not have access to the financial records of all of the companies that the FTC has identified as "Trudeau-Affiliated Entities," including Global Information Network Foundation ("GIN FDN"). Trudeau's counsel requested financial records from GIN FDN in connection with the Sikich third-party accounting but the executive director of that organization refused this request out of concern that the foundation's financial information would eventually be filed publicly in this case, subjecting the organization to competitive harm. GIN is a Nevis foundation with no owners, and there has been no suggestion by the FTC that Trudeau controls the executive director (he does not). The executive director has a fiduciary responsibility to the foundation and its members. The executive director has indicated that if this Court were to allow all GIN FDN information to be filed under seal, he would consider releasing that information for the Court's eyes only.

[7] The FTC argues that the report is inadmissible because "the evidentiary hearing had concluded already; Trudeau never disclosed his purported expert pre-trial; the FTC did not have an opportunity to take expert discovery; the Court never qualified the author as an expert; and the document is an inadmissible report, not opinion testimony." (Docket No. 716 at 11.) the FTC does not provide any detail as to why any of these points render the report inadmissible.

evidentiary hearing in this case is not complete and evidence is not closed. As this Court indicated during the hearing on May 21, 2013, the Court understood that the parties would submit briefing after the in-court hearing proceeded, and that the parties would have the opportunity to offer evidence at that time. (*See* Ex. 49, 5/21/13 Tr. at 5.) But Trudeau submitted the O'Connor report on July 1, 2013 before briefing was even scheduled in this case. (Ex. 55.) Indeed, as soon as the FTC rejected Trudeau's offer to work cooperatively on a third-party accounting, Trudeau's counsel leapt into action and secured an accounting firm to complete this work in light of the FTC's demand for an accounting. The accounting report was filed within a week after it was received. The FTC therefore has no grounds to criticize the timeliness of the report. In addition, the FTC's arguments that it has not had an opportunity to take expert discovery and the Court has not qualified O'Connor as an expert are nonsensical (and certainly not a justification to immediately incarcerate Trudeau). Now that the report has been filed, the FTC is free to take expert discovery and independently verify the information in that report. Nothing is stopping them. And the Court now has all of O'Connor's credentials in order to determine the weight that it will give to the report. The FTC is grasping at straws and tries to create inadmissibility problems where there are none.

The FTC also criticizes the substance of the O'Connor report and argues that its conclusions do not help Trudeau. The FTC glosses over O'Connor's conclusions that the financial records of the companies show that they have ***no net assets*** and presents no evidence that those conclusions are wrong, and instead criticizes the scope of the report and the accounting approach used. Again, the FTC has the opportunity months ago to dictate the terms of the accounting but refused to do so, and should not be allowed to argue now that they would have

10

done the accounting differently.[8] (*See supra* at 1-2, 4-5.)

Finally, the FTC criticizes Trudeau's evidence of inability to pay by arguing that "Trudeau does not explain where significant corporate and personal assets have gone." Once again, the FTC insists on looking backwards, not forwards. But civil contempt is forward looking, and can only be used to coerce Trudeau to comply with this Court's order, not to punish Trudeau for how he or the corporate entities may have spent money. The only relevant inquiry in deciding a coercive contempt motion is whether Trudeau has the present ability to comply with the court order. *See Maggio v. Zeitz*, 333 U.S. 56, 73 n.6 (1948) ("A contempt order should not be issued unless there is a ***present*** ability to comply."); *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 251 (1972); *United States v. Rylander*, 460 U.S. 752, 757 (1983); *Leshin*, 2013 WL 2420363, at *1; *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996). He does not have a present ability to comply, and therefore where certain monies were spent is irrelevant to the issues before this Court. Indeed, the FTC cites to no authority for the proposition that Trudeau must account for where every single nickel has gone out over the past several years. That is not his burden, and in any event the place for such an accounting is in a third-party accounting (not in contempt briefing), which Trudeau has asked for and agreed to over and over again.[9]

---

[8] The FTC makes a few additional convoluted arguments about the content of the O'Connor report, such as suggesting that the fact that Trudeau and Babenko owe the corporate entities $3.6 million somehow indicates that Trudeau could have paid more than $54,000 towards the judgment. This $3.6 million includes the $2 million bond that Trudeau borrowed from GIN in order to re-enter the infomercial business, and the other $1.6 million does not represent cash that Trudeau ever received. Rather, this represents personal expenses that the corporate entities have paid on Trudeau's behalf (legal bills, credit card bills, etc.), which Trudeau is obligated to repay. Thus, this figure supports Trudeau's argument that he is unable to pay the judgment in this case.

[9] In any event, the FTC is incorrect to suggest that Trudeau has not explained where personal and corporate assets have gone. With respect to personal assets, the FTC has not shown that he even has any. And as for the corporate assets, Trudeau has repeatedly explained that the vast

Thus, the FTC's argument that Trudeau has not established an inability to pay fail. Trudeau has met his burden of production and the FTC must now come forward with evidence of ability to pay the judgment. *Custable*, 1999 WL 92260 at *3.

### 2. The FTC Has Not Put Forward Evidence In Rebuttal Showing That Trudeau Is Presently Able To Pay Any Amount Of Money.

The FTC has certainly failed to establish that Trudeau has an ability to pay. In an effort to show ability to pay, the FTC again spills much ink regarding sums that the so-called Trudeau-Affiliated Entities have allegedly *spent* on business expenses in the past. (*See e.g.*, Docket No. 716 at 13 (regarding $12 million that the FTC alleges the so-called "Trudeau-Affiliated Entities have "dissipated" in years past).) However, the FTC fails to identify even a single cent that Trudeau currently possesses that could be used to pay down the judgment. The law is clear that evidence concerning monies spent in the past—*i.e.* which the Defendant necessarily no longer possess—have no bearing on whether a contempt order should issue. This is because the only relevant inquiry in deciding a coercive contempt motion is the present ability of the defendant to comply with the court order. *See Maggio,* 333 U.S. at 73 n.6; *McNeil*, 407 U.S. at 251; *Rylander*, 460 U.S. at 757; *Leshin*, 2013 WL 2420363, at *1; *Drollinger*, 80 F.3d at 393.

Nowhere in its brief does the FTC identify a specific amount of money that Trudeau has the present ability to pay. Instead, the FTC insinuates—without providing any evidence—that there must be some money somewhere that Trudeau could use to pay down the judgment, even though the FTC fails to tell us how much or where it allegedly is. (*See, e.g.*, Docket No. 716 at 1 ("There is no real dispute that Trudeau…could pay vastly more than the token $54,000 he

---

majority of the corporate expenditures are for business-related operating expenses, and any personal expenses that the corporations paid on behalf of Trudeau have been documented as loans (which Trudeau has the obligation to pay back). Importantly, there is no evidence that corporate or personal assets were ever transferred by Trudeau or anyone else to some hidden account.

12

volunteered."); *Id.* at 12 (same).) The FTC's unsubstantiated conjecture is woefully insufficient under *Leshin* and other authority which holds that a defendant can only be found in coercive civil contempt after failing to turn over a specific amount of money that the defendant is presently able to pay. (*See supra* at 4-5; *U.S. ex rel. Thom v. Jenkins*, 760 F.2d 736, 738-40 (7th Cir. 1985) (incarcerating defendant only after affirmatively finding that defendant had present ability to pay $115,172 but failed to do so); *United States v. Harris*, 582 F.3d 512, 521 n.13 (3d Cir. 2009).)

        **a.    FTC's Authority Regarding A "Self-Induced" Inability To Pay Is Misleading And Inapposite.**

The FTC is also wrong to suggest that this Court may coercively incarcerate Trudeau if his inability to pay the $37.6 million judgment is "self-induced." The FTC cites *United States v. Bryan* for the alleged proposition that a civil contemnor can be coercively incarcerated for failing to comply with an order if "he is responsible for their unavailability." (*See* Docket No. 716 at 3.) This is not the holding of *Bryan* for the simple reason that that case involved ***criminal*** contempt, and not ***civil*** contempt. In *Bryan*, the defendant was charged with contempt of Congress (a federal crime) for failing to turn over documents in response to a subpoena issued by the House Committee on Un-American Activities. 339 U.S. 323, 341 (1950). In the context of criminal contempt, the Court noted, in *dicta*, that punitive incarceration might be appropriate where the contempt is self-induced. (*Id.* at 330-31.) While punishment may be an appropriate remedy in a criminal contempt case, it is forbidden in the coercive civil contempt context. *See F.T.C. v. Trudeau*, 579 F.3d 754, 769-70 (7th Cir. 2009) ("civil contempt is remedial, and for the benefit of the complainant, while criminal contempt is punitive, to vindicate the authority of the court….coercive sanctions are not intended as a deterrent to offenses against the public."); *In re Grand Jury Proceedings*, 280 F.3d at 1107 ("A contempt order is considered . . . criminal if its

13

purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct."). This is because when a contemnor is jailed merely as punishment, he does not carry the keys to his own prison in his pocket. *Gompers*, 221 U.S. at 442. Indeed, it is revealing that the FTC would cite a criminal contempt case in support of its efforts to incarcerate Trudeau because it underscores that its purpose is purely punitive and therefore unlawful.

Similarly, the FTC's citation to *United States v. Seetapun*, 750 F.2d 601, 605 (7th Cir. 1984) has no bearing on the present case because the Court there did not impose any coercive sanctions (incarceration or coercive fines) on the alleged self-induced contemnor. In fact, the FTC has not cited a single case where self-induced inability to pay has led to a defendant being incarcerated or coercively sanctioned. This is not surprising because inability to pay—self-induced or otherwise—is a complete defense to coercive civil contempt. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 n.7 (9th Cir. 1983).

### b. The FTC's "Evidence" Is Heavy On Conclusions And Light On Facts.

As noted above, the FTC is unable to identify a specific dollar amount that Trudeau is currently able to pay. What little "evidence" the FTC puts forward in its brief amounts to little more than unsubstantiated conclusions, not objective facts. To name just a few examples:

- The FTC baldly asserts that Trudeau withdrew $2 million from a bank account in Liechtenstein. (Docket No. 716 at 7.) However the finding of fact which the FTC cites in support of this alleged conclusion notes only that GIN USA received $2 million from WSU. (Docket No. 713 at II.B.1.e.i.6.)

- Similarly, the FTC asserts that Trudeau personally arranged to have his salary paid from the alleged account in Liechtenstein. (Docket No. 716 at 7.) However, the exhibit cited in finding of fact (FTCX 11R)[10] which supposedly supports this assumption is an email exchange between Trudeau and Suneil Sant discussing transactions which might occur in

---

[10] The FTC cites a number of exhibits which they do not attach to their brief. As these exhibits were not properly submitted to the court in connection with the FTC's brief, they should be disregarded.

14

the future. There is no indication in this email whether Trudeau's salary was ever actually paid from this account and if it was, who authorized it.

- The FTC claims that APC Trading Limited owns 100% of six other entities associated with GIN. (Docket No. 716 at 7.) However the finding of fact cited in support of this alleged conclusion notes only that that APC owns three entities (KTRN, NBT Trading Limited, and WSS). (Docket No. 713 at II.A.2.d.)

- The FTC argues that Trudeau moved assets offshore. (Docket No. 716 at 18-19.) However, the FTC's support for this assertion, (Docket No. 713 at III.D), contains only prospective statements made by Trudeau with no indication whether these statements were ever acted upon. Moreover, the record is clear that no fraudulent transfers ever took place. (Ex 50 at 114:16-19 ("Q: Sir, are you aware of Mr. Trudeau transferring any asset after 2007 or 2008? A: . . . I cannot think of an example."), 119:15-17 ("Q: And we've talked about transfer[ring] any assets, which to your knowledge never happened, right? A: That's right."), 121:10-17, 123:24-124:2.) Thus once one cuts through the FTC's speculation, it is clear that the FTC is unable to point any concrete facts which demonstrate that any assets were ever transferred offshore.

The FTC has completely failed to identify any specific assets that Trudeau could use to satisfy the judgment against him. The FTC's unsupported conjecture cannot displace reality.

## II. CONCLUSION

For the reasons set forth above and as explained in Trudeau's opening post-hearing brief (Docket No. 710), the FTC's motion for contempt is an illegitimate attempt to punish Trudeau, including by deterring future misconduct. Because incarceration would be unlawful, and because the FTC has already acknowledged that a monetary sanctions would be ineffective (*see* Docket No. 481-1 at 16-17; Docket No. 716 at 19-20, n.30), the FTC's contempt motion should be denied. The parties should instead move forward under the FDCPA and with an independent third-party accounting to effect consumer remediation and bring this matter to a close.

July 23, 2013                                                                 Respectfully submitted,

                                                                              KEVIN TRUDEAU

                                                                    By:       /s/ Kimball R. Anderson
                                                                              One of His Attorneys

**CERTIFICATE OF SERVICE**

      I, Kimball R. Anderson, an attorney, hereby certify that on July 23, 2013, I caused to be served true copies of DEFENDANT KEVIN TRUDEAU'S RESPONSE IN OPPOSITION TO THE FTC'S POST-HEARING BRIEF IN SUPPORT OF ITS CONTEMPT MOTION, and accompanying exhibits by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to all counsel of record including:

Michael Mora
Jonathan Cohen
Amanda Kostner
Federal Trade Commission
601 New Jersey Avenue NW, Suite 2215
Washington, DC 20001

David O'Toole
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, IL 60603

                                            /s/ Kimball R. Anderson
                                            Kimball R. Anderson

1