**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Case No. 03-C-3904 |
| ) | |
| v. ) | Hon. Robert W. Gettleman |
| ) | |
| KEVIN TRUDEAU, ) | |
| ) | |
| Defendant. ) | |

**FTC'S STATEMENT WITH RESPECT TO THE APPOINTMENT OF A RECEIVER**

## I. INTRODUCTION

Pursuant to the Court's July 26, 2013 Order (DE729), the FTC proposes two potential receivers and raises other issues associated with the Court-created receivership. Given the FTC's extensive experience with contemnors who have hidden their assets, it is very concerned that a receivership will not succeed and ultimately will exacerbate consumer injury. Trudeau has clearly demonstrated that he will never cooperate with the receiver, who will have to appear before the Court regularly, further draining funds available for redress.[1] Moreover, Lane provided expert advice on moving assets to foreign havens with laws intended to frustrate American courts, and those assets are almost certainly hidden in asset-protection vehicles specifically designed to impede a receiver's efforts.[2] The chance that a receiver will recover any significant portion of these funds is small.[3]

---

[1] If cornered, Trudeau simply will assert his Fifth Amendment right rather than provide the cooperation necessary for the receivership to succeed (which would force the Court to incarcerate him as a coercive contempt sanction for his violation of the June 2, 2010 order).

[2] KMT Fiduciary Trust contains a form of "duress clause," which allows the trustee to disregard instructions to turn over assets if the instructions are, in effect, instructions from an American court. *See* DX 7 at 44 (duress clause); *FTC v. Affordable Media*, 179 F.3d 1228, 1240 n.9 (9th Cir. 1999) (discussing so-called "duress clauses" in asset protection trusts); Trudeau's other offshore trusts or accounts likely have similar features.

[3] The FTC has now concluded a year of litigation during which consumers' contact information became increasingly stale. A protracted battle between Trudeau and the receiver

However, to maximize the chance that the receivership accomplishes its objectives, the FTC asks the Court to: (1) appoint an accountant with asset-tracing expertise, not an attorney (the FTC nominates two such accountants below); (2) guarantee the receiver's compensation with money already escrowed to protect consumers <u>only if</u> – as the existing Order provides, *see* DE372 (June 2, 2010) – Trudeau cannot air specified infomercials if the escrow amount falls below $2 million;[4] (3) avoid an unconscionable state of affairs in which the consumers Trudeau victimized pay for his continued defense against the civil and criminal consequences of the conduct that caused their injury (in fact, allowing this outcome is an abuse of discretion under the Seventh Circuit's decision in *FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002)); and (4) determine at regular intervals whether the receivership is serving consumers' interests, so that the Court can quickly terminate it, if it is not.

## II. ARGUMENT

### A. The Court Should Appoint a Forensic Accountant With Asset-Tracing Experience as the Receiver.

The FTC has extensive experience with receiverships and that experience demonstrates that lawyers are not the best choice in cases like this one.[5] First, locating Trudeau's assets is primarily a forensic accounting problem, not a legal one. In the FTC's experience, accountants are better equipped to trace assets, and any attorney appointed as a receiver will need to engage forensic accountants anyway. Second, even well-qualified forensic accountants charge

---

will only exacerbate this already unacceptable situation. Trudeau is well aware that he need not ultimately win in court; he need only delay until conducting meaningful redress is impossible.

[4] Under the existing Order, Trudeau is generally banned from making infomercials except for infomercials regarding books, newsletters, or other publications. In addition, he cannot market books, newsletters, or other informational publications through infomercials containing representations "about the benefits, performance, or efficacy of any product, program or service referenced" in the book, newsletter, or informational publication unless he has funded the $2 million escrow account (or obtained a $2 million bond). *See* DE372 (June 2, 2010) at 5-8.

[5] The FTC will not reargue the point, but the FTC has substantial concerns that a receivership will not work at all, and the FTC does not consent to the receivership. At this stage, the FTC's goal is to enhance the likelihood that a receivership will succeed and, alternatively, to minimize the resource loss to consumers in the event that it does not.

considerably less than attorneys, and every dollar paid to the receiver is a dollar consumers lose. Accordingly, the FTC proposes two accounting firms with asset-tracing experience.

First, the FTC proposes Robb Evans, a CPA with asset-tracing expertise whose firm the FTC has nominated in other similar cases involving difficult asset tracing. The credentials of Robb Evans & Associates LLC are attached hereto, *see* PXA:1, and its rates range from $90/hour to $382.50/hour. The FTC has used this firm with success in many matters involving hidden assets. Second, the FTC proposes Jim Snyder, an attorney and CFE who heads the Forensics & Valuation Services Division at BKD, LLP. BKD is a national firm with substantial resources and extensive experience with offshore asset tracing. Information regarding BKD's expertise is attached hereto, *see* PXA:2, and its rates range from $130/hour - $420/hour. Both Messrs. Evans and Snyder are available for the Court to interview them regarding their relevant experience, and both would like to speak with the Court regarding the advantages of using an accounting firm with asset-tracing experience to accomplish the receivership's objectives.[6]

To the extent that the Court appoints a Chicago attorney, the FTC respectfully requests that the Court limit his or her hourly rate to that charged by the highly experienced forensic accountants the FTC has suggested. Consumers should not have to pay two or three times the amount these firms charge without any corresponding benefit.

### B. The Court Should Not Alter the $2 Million Escrow Requirement.

Because the Court required Trudeau to escrow $2 million to protect consumers from further injury, the FTC asks that the Court only use the escrow funds to guarantee the receiver's compensation if the requirement that Trudeau cannot air infomercials without fully funding the $2 million escrow account remains effective.[7] *See* Order (DE372) at 5-8. As the Court previously wrote, a performance bond or escrow sum is necessary because "[t]he Court has no

---

[6] Both also have questions regarding the nature of the project, their potential responsibilities, and compensation. Neither can accept the role as receiver without additional information from the Court.

[7] As a practical matter, this would mean that Trudeau could not air infomercials if the receiver uses a portion of the escrowed money (unless a genuinely independent third party "refilled" the escrow account to the required $2 million level).

faith in the notion that Trudeau has somehow been reformed by these proceedings. . . .   Indeed, Trudeau continues to deny that he did anything wrong[.]"  *FTC v. Trudeau*, 708 F. Supp.2d 711, 721 (N.D. Ill. 2010).  Not only did the Seventh Circuit affirm the $2 million performance bond requirement, it wrote that, "[i]f anything, the number seems low[.]"  *FTC v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011).  Particularly when Trudeau is both the wrongdoer and fully capable of funding the receivership, it does not make sense to reduce the protections this Court created for one set of consumers to facilitate relief for another set of consumers.  It is simply unconscionable that Trudeau's brazen contempt would have the perverse consequence of <u>lessening</u> consumer protection.  The solution to this problem is to leave the infomercial ban unaltered, so that if the escrow amount falls below the Court-ordered $2 million minimum (because the receiver uses the funds), then Trudeau cannot air infomercials.  As long as this is the case, the FTC will accept using escrow funds to guarantee the receiver's compensation.

Alternatively, the FTC proposes that Trudeau guarantee the receiver's compensation in two ways.  First, Trudeau can turn over the deed to his Ojai, California house, which can be held in escrow to guarantee payment until the receiver locates additional assets.  According to the report from Trudeau's accountant, the Ojai house has approximately $400,000 in equity.  *See* O'Connor Report (July 1, 2013) (DE704) at 3-4.  Second, the arrangement with the receiver can be structured so that the first $600,000 the receiver recovers (excluding the Ojai house) is held in escrow to guarantee the receiver's compensation.  Through this approach, it should be possible to fund the receivership (thereby helping one set of consumers) without putting at risk money set aside to protect other consumers.

### C. Having Consumers Fund Trudeau's Civil and Criminal Defense Is Unconscionable.

It is inconceivable that the consumers Trudeau victimized should pay for his defense – although they already have, as a practical matter, paid almost $2 million to Winston & Strawn to fight their claim and more than $5 million to Lane's firm to make Trudeau's assets harder to find.  In fact, the Supreme Court recently reiterated that "the Due Process Clause does not always

4

require the provision of counsel in civil proceedings where incarceration is threatened." *Turner v. Rogers*, 131 S. Ct. 2507, 2518 (2011). Whatever arguable right Trudeau may have had to spend money on his defense previously, now that the Court has found him in contempt a <u>third</u> time, there is no legal or ethical basis to permit Trudeau to continue spending consumers' money to defend the collection phase of this third contempt proceeding. Winston & Strawn entered this process with "eyes open,"[8] was well aware of the risks, and has already collected at least $1.7 million (and likely much more). Accordingly, the FTC asks the Court to prevent any further payment to Winston & Strawn for work performed in this action unless Trudeau establishes that the money comes from a genuinely independent third party.

The situation with respect to Trudeau's criminal proceeding is no different. Under both Supreme Court and Seventh Circuit authority, Trudeau has no right to use money that belongs to others – indeed, <u>money that belongs to his victims</u> – to defend himself.[9] *See*, *e.g.*, *Caplin & Drysdale*, 491 U.S. at 626 ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice."); *Think Achievement*, 312 F.3d at 262 (reversing a district court order releasing money to pay the defendant's criminal defense counsel from a constructive trust created to compensate the contemnor's victims; "<u>Why should the victims of Tankersley's fraud be made to finance his defense to a criminal prosecution?</u>") (Posner, J.) (emphasis added). And, once again, Winston & Strawn entered this process fully

---

[8] *Cf. FTC v. Image Sales & Consultants*, No. 1:97-CV-131, 1997 U.S. Dist. LEXIS 18905, at *8 (N.D. Ind. Nov. 14, 1997) ("As has been observed, 'an attorney who knowingly consents to represent a defendant whose assets have been frozen assumes the risk of not being paid.' This principle squarely applies here and leads to the conclusion that no additional withdrawals for the payment of attorney fees and costs should be allowed, thus preserving at least some assets for potential consumer redress.") (quoting *FTC v. Jordan Ashley, Inc.*, No. 93-2257, 1994 U.S. Dist. LEXIS 7577, *9-*10 (S.D. Fla. May 4, 1994)).

[9] Additionally, although Trudeau has a right to counsel, he does not have a right to the best or most expensive counsel. *See*, *e.g.*, *United States v. Messino*, 181 F.3d 826, 830-31 (7th Cir. 1999) ("The Sixth Amendment guarantees [a defendant] adequate counsel, not the best possible counsel.") (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)); *see also Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997) ("The sixth amendment does not . . . entitle defendants to the best available counsel.").

aware that it might lose the ability to collect from Trudeau at some point. Given the binding legal authority and Winston's knowledge of the risks, the Court should not permit Trudeau to fund his defense with consumers' money.

### D. The Court Should Determine at Regular Intervals Whether the Receivership Is Serving Consumers' Interests.

Based on past experience – both in this case and in other similar matters – the FTC anticipates that Trudeau will feign compliance while doing everything possible "behind the scenes" to thwart the receiver's progress. Unfortunately, in the FTC's experience with contemnors like Trudeau, even the best receivers often spend as much (if not more) than their ultimate net recovery.[10] For this reason, it makes sense to review the receiver's progress frequently. The Court can (and should) terminate the receivership quickly if it costs consumers more than it benefits them. Any such calculation must consider that, with each passing day, fewer and fewer consumers will ever see any funds even if they are recovered eventually.

## III. CONCLUSION

The FTC asks that the Court select a receiver with forensic accounting expertise and, in all events, structure the receivership in a manner that furthers the goal of maximizing consumers' recovery — but without exposing other consumers to new risks, and without requiring that consumers pay to defend the person who harmed them in the first place.

Dated: July 29, 2013

David O'Toole (dotoole@ftc.gov)
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603-5001
Phone: (312) 960-5601
Fax: (312) 960-5600

Respectfully Submitted,

/s/ Jonathan Cohen
Michael Mora (mmora@ftc.gov)
Jonathan Cohen (jcohen2@ftc.gov)
Amanda B. Kostner (akostner@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., N.W. M-8102B
Washington, DC 20580
Phone: 202-326-3373; -2551; -2880
Fax: 202-326-2551

---

[10] The FTC has learned "the hard way" that, at least in cases like this one, using an attorney rather than a forensic accountant enhances the likelihood that the costs of recovery consume too much of the recovery itself.

**CERTIFICATE OF SERVICE**

   I, Jonathan Cohen, hereby certify that on July 29, 2013, I caused to be served true copies of the foregoing by electronic means, by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to:

Kimball Richard Anderson
kanderson@winston.com

Thomas Lee Kirsch, II
tkirsch@winston.com

Katherine E. Rohlf
kcroswell@winston.com

            /s/ Jonathan Cohen
            Jonathan Cohen (jcohen2@ftc.gov)
            Attorney for Plaintiff
            Federal Trade Commission