IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Case No. 03-C-3904<br>) |
| v. | ) Hon. Robert W. Gettleman<br>) |
| KEVIN TRUDEAU, | )<br>) |
| Defendant. | )<br>)<br>) |

**REPLY IN SUPPORT OF MOTION TO MODIFY THE RECEIVERSHIP ORDER TO PREVENT TRUDEAU FROM FUNDING PERSONAL EXPENSES WITH ASSETS NEEDED TO COMPENSATE HIS VICTIMS**

**I.     INTRODUCTION**

Trudeau offers no reason why the Court should permit him to use money needed to compensate his victims to fund personal expenses. In fact, newly-discovered information makes the need to terminate his allowance even more stark. First, *Think Achievement* establishes that Trudeau can't spend money that isn't his. Second, although the Receiver has only started to investigate Trudeau's offshore holdings, the Receiver has already located an Australian account that he did not disclose. PXA:1-2. In fact, notwithstanding this Court's July 26 asset freeze (DE729) and the Court's August 7 Receivership Order (DE742), Trudeau used a debit card to spend thousands from this Australian account, including:

- $894.30 in a single visit to Westmont Liquors;
- $780.48 in two trips to Whole Foods in Hinsdale;
- $359.00 for two haircuts at Vidal Sassoon (Trudeau's usual salon);
- $1,057.88 on high-end meat products apparently ordered online (*see* www.grasslandbeef.com); and
- $920.86 on cigars (from the Humidor of Westmont).

*See* PXA:1-2.[1]  Trudeau also transferred approximately **$18,642** (20,000 Australian dollars)[2] from his Australian account to an unknown location on July 28, two days after the July 26 asset freeze.[3]  PXA:2 at 3.  Trudeau's disregard for the Court's asset freeze and turnover order is exceptionally blatant even by his own standards as a triple contemnor.  At very minimum, the FTC urges the Court to order that Trudeau repay consumers everything he spent or transferred in violation of the Court's orders and disgorge the remaining Australian funds before he receives anything further from the Receivership Estate.

## II.    BACKGROUND

On July 26, the Court found Trudeau in contempt a third time and froze his assets.  *See* DE729.  As relevant here, the Court prohibited Trudeau from "transferring or spending any money," except that the Court allowed Trudeau to spend money on "ordinary and necessary living expenses."  *Id.* at 3.  The Court further instructed the FTC to submit a detailed proposed order regarding the receivership that incorporated the operative provisions of the Court's July 26 order.  Consistent with this instruction, the FTC's proposed Receivership Order allowed Trudeau "ordinary and necessary living expenses."  On August 7, the Court adopted this order.  *See* DE742.  Significantly, although the Receivership Order provides that "the Receiver shall allow Trudeau sufficient funds and property for ordinary and necessary living expenses," *see id.* at 6, it does not specify whether those funds should come from the Receivership Estate, or from money Trudeau earns through legitimate employment.

---

[1] These totals include expenses Trudeau charged to his Australian account after the Court's July 26 asset freeze.  When reviewing the bills, note that it takes several days for charges Trudeau incurred in the Chicago area to clear his Australian account.  Thus, the far left column on the exhibits (PXA:1-2) includes the date when the charge cleared (in Australian dollars), not the date when Trudeau incurred the charge (in U.S. dollars).  The descriptions themselves (the second column from the left) include the date when Trudeau incurred the charge and the amount in U.S. dollars.

[2] *See* www.bloomberg.com/markets/currencies/ (viewed Sept. 16, 2013) (AUD to USD exchange rate of .9319).

[3] The Australian account is almost certainly not the only source of funds that Trudeau is using to maintain his lifestyle.  It is merely the only one for which the Receiver has obtained statements thus far.

2

Additionally, among other things, the Receivership Order absolutely prohibits Trudeau from spending or transferring any money, *see id.* at 6, or from otherwise "[d]oing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody . . . of the Assets . . . subject to this receivership," *id.* at 14. The Court further ordered "that Trudeau's failure to comply **fully** and timely with this order will result in Trudeau's **immediate incarceration**" until such time as certain conditions obtain. *Id.* at 20 (emphasis added).

As the Court will recall, on July 26, the Court sternly warned Trudeau regarding what would happen if he did not comply with the receivership and asset freeze. As the Court put it, "I would be absolutely within reason and the law and the facts of this case to incarcerate [you] today," PXA:3 at 30:20-22, but the Court wanted to give Trudeau a chance to cooperate with a receivership. However, if that "doesn't work," then incarceration "will be the next thing that happens." *Id.* at 31:8. As the Court explained to Trudeau, "instead of putting you in prison, or incarcerating you, I'm giving you the key to open that [jailhouse] door. I'm giving you the key to keep you out of that door. **And it's the last time I am going to do that**." *Id.* at 40:17-20.

The next day, July 27, Trudeau spent $185 at the Dalia Salon & Spa in Hinsdale. *See* PXA:2 at 3; *see also* www.salon-spadalia.com. And the following day (July 28), Trudeau spent $357.21 at Whole Foods in Hinsdale, $559.52 on cigars in Westmont, and transferred 20,000 Australian dollars (approximately $18,642) from his Australian account to an unknown location.[4] *See id.*

---

[4] Notably, Trudeau did not disclose his Australian account to the Receiver voluntarily. The Receiver discovered the account through its efforts. The account is at St. George Bank, which Trudeau vaguely referenced in his "sworn" financial statement filed on January 25. *See* DE535 at 4. In the statement, Trudeau provided no address for the bank, or even a country. *See id.* He denied knowing the account number. Trudeau further represented that the account had less than $1,500 "net of liability." *See id.* It isn't clear what that means, but on January 25, Trudeau had two St. George accounts worth more than 141,000 Australian dollars (about $131,000). *See* PXA:4. The Court may also recall documents the FTC offered at the hearing regarding an account in Australia. Responding to questions from Trudeau's counsel, Lane testified that, to his knowledge, Trudeau never "transfer[ed] any of his salary from KTRN to a personal bank account in Australia." PXA:5 at 123:24-124:4. At this time, the FTC does not know whether the Australian funds came from KTRN as opposed to some other source.

### III. ARGUMENT

#### A. The Court Should Not Allow Trudeau To Fund Personal Expenses With Money Needed for Consumer Redress.

*Think Achievement* held that, after a court determined frozen assets are "necessary to compensate the victims of the fraud for their losses, [the contemnor] had no right to use any part of the frozen money **for his own purposes**[.]" 312 F.3d 259, 262 (7th Cir. 2002) (emphasis added). Because *Think Achievement* involved a contemnor's attempt to spend money on attorneys, Trudeau contends that "the FTC is unable to cite a single case" supporting the proposition that "'there is no difference between spending another person's money on legal expenses and spending it on personal expenses.'" Opp. at 4. The FTC isn't sure what sort of case Trudeau wants to see. "A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989). This is because "[t]he money, though in his possession, is not rightfully his[.]" *Id.* Certainly, a robbery suspect also cannot use money "not rightfully his" for personal expenses.

In fact, the situation presented here is an even easier case, because—as in *Think Achievement*—the Court has already found that Trudeau owes the money at issue to consumers. *See FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002) ("It was okay for the district court, **prior** to the entry of the final judgment against Tankersley, to permit some of the frozen assets to be used to pay the lawyer who was defending him against the FTC's suit.") (Seventh Circuit's emphasis). Trudeau cites two decisions in which courts allowed defendants living expenses, but both involved distributions before the court had determined the defendant's liability. *See SEC v. Dowdell*, 175 F. Supp.2d 850, 855 (W.D. Va. 2001) (prejudgment request made following a TRO); *FTC v. Washington Data Resources*, No. 8:09-cv-2309, 2009 WL 4348689, *1 (M.D. Fla. Nov. 4, 2009) (same) (mag. op.).

Finally, Trudeau argues that "it would be nearly impossible for him to find employment" because he "is a convicted felon, with a criminal trial pending." Opp. at 3. Trudeau has not established that he cannot find a job, but even if he could prove that, it wouldn't matter, because

the fact that someone cannot locate employment does not entitle him to take money from someone else.[5] Likewise, the fact that Trudeau may not qualify for public assistance does not give him the right to spend money that "is not rightfully his." *Caplin & Drysdale*, 491 U.S. at 626. Assuming Trudeau complies with the Court's orders, the Court should permit the Receiver to allow him whatever amount he adds to the Receivership Estate as long as it does not exceed the amount the Receiver determines is appropriate to fund his "ordinary and necessary" living expenses.[6] In short, Trudeau should be permitted to pay for ordinary living expenses—only not with money needed to redress his victims.

> **B. In No Event Should the Court Permit Trudeau a Monthly Allowance Until He Repays Everything He Spent or Transferred in Violation of the Court's Orders and Disgorges the Funds Remaining in His Australian Account.**

Allowing Trudeau to continue receiving a *de facto* pension from consumers he injured while flagrantly violating the Court's asset freeze orders would be a gross miscarriage of justice. Worse, allowing Trudeau continued allowance payments notwithstanding his violations will only encourage further such violations. Accordingly, in no event should the Court permit Trudeau to receive an allowance from the Receivership until he has complied fully with the Court's orders.

## IV. CONCLUSION

The FTC urges the Court not to remain idle while Trudeau flouts its two most recent orders. Holding Trudeau in contempt a fourth time is pointless because the Court's three prior contempt rulings have proven ineffective at coercing his compliance. However, some type of

---

[5] Suffice it to say, it isn't the fault of the consumers Trudeau injured that he's a convicted felon facing another criminal trial. In any event, the FTC doubts that Trudeau truly cannot find legitimate employment. More likely, Trudeau has not attempted to find legitimate employment because—as the last six weeks have established—he can pay his personal expenses with money stashed abroad. Finally, Trudeau is wrong that the Receivership Order prevents him from receiving the generosity of others. Although friends and family cannot give him money, they can give him a place to stay or other necessities.

[6] As an aside, the Receiver's $4,767 (after tax) monthly budget is generous. Conservatively assuming a 20% tax rate, Trudeau's monthly "pension" from consumers is equivalent to earning more than $71,000 annually. The Receiver's calculation also assumed that Trudeau would live with his wife and contribute to her living expenses. Trudeau's wife, however, has returned to Ukraine. *See* PXB.

5

coercive sanction is necessary. Although the Court may elect to incarcerate Trudeau now (and the FTC reserves the right to seek such relief in the future), the FTC asks the Court to:

(1) modify the Writ *Ne Exeat* (June 25, 2013) (DE699) to prevent Trudeau from leaving the Northern District of Illinois until he: (A) repays everything he spent in violation of the Court's orders ($8,679.43);[7] (B) disgorges the remaining balance in his Australian bank account to the Receiver; and (C) provides the $18,642 that he transferred from that account on July 28 to the Receiver; and

(2) modify the Receivership Order to clarify that Trudeau may only receive money for "ordinary and necessary" living expenses from amounts he contributes to the Receivership Estate through legitimate employment.

Dated: September 16, 2013

David O'Toole (dotoole@ftc.gov)
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603-5001
Phone: (312) 960-5601
Fax: (312) 960-5600

Respectfully Submitted,

/s/ Jonathan Cohen
Michael Mora (mmora@ftc.gov)
Jonathan Cohen (jcohen2@ftc.gov)
Amanda B. Kostner (akostner@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., N.W. M-8102B
Washington, DC 20580
Phone: 202-326-3373; -2551; -2880

---

[7] This is based on an AUD to USD conversion rate of .9319. *See* www.bloomberg.com/markets/currencies/ (viewed Sept. 16, 2013). To the extent that Trudeau establishes that particular charges between July 26 and August 7 qualify as "ordinary and necessary" living expenses, the FTC agrees that such charges should be deducted from the $8,679.43 he must repay.

6

# **CERTIFICATE OF SERVICE**

      I, Jonathan Cohen, hereby certify that on September 16, 2013, I caused to be served true copies of the foregoing by electronic means, by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to:

Kimball Richard Anderson
kanderson@winston.com

Thomas Lee Kirsch, II
tkirsch@winston.com

Katherine E. Rohlf
kcroswell@winston.com

Blair R. Zanzig
bzanzig@hwzlaw.com


                                      /s/ Jonathan Cohen
                                      Jonathan Cohen (jcohen2@ftc.gov)
                                      Attorney for Plaintiff
                                      Federal Trade Commission