## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Case No. 03-C-3904 |
| | ) |
| v. | ) Hon. Robert W. Gettleman |
| | ) |
| KEVIN TRUDEAU, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

### FTC'S REPLY IN SUPPORT OF COERCIVE INCARCERATION

The primary question before the Court is whether Trudeau should receive yet another "second chance" to disclose his assets voluntarily, or whether the Court should give coercive incarceration the opportunity to work so that his victims can obtain redress. Trudeau supports the former alternative with three legally meritless and factually fictional points addressed below.

### A. TRUDEAU HAS NOT BEEN COOPERATIVE OR CANDID WITH THE COURT OR THE RECEIVER.

First, Trudeau claims to have "fully cooperated with the Receiver," DE766 at 1 (Oct. 10, 2013), notwithstanding the Court's contrary finding that he "has not been fully cooperative or candid with the Receiver," DE751 (Sept. 18, 2013) at 1, and also notwithstanding the mountain of evidence supporting the Court's finding. At this point, it is beyond reasonable argument that Trudeau has not been fully cooperative and candid: (1) his most recent filing reflects a lack of candor; (2) his new order violations prove that he has not been fully cooperative; and (3) his implausible explanations concerning his assets further illustrate his continued refusal to be forthcoming.

### 1. TRUDEAU'S MOST RECENT FILING ILLUSTRATES HIS LACK OF CANDOR.

Two examples from Trudeau's most recent filing demonstrate that, even now, Trudeau continues his dishonesty. First, Trudeau writes: "Throwing caution to the wind, however, the

FTC speculates without any factual basis that Trudeau **may have received** $4.2 million. But no evidence exists that Trudeau received such a transfer." Trudeau's Br. at 9 (Trudeau's emphasis). But one need only look at Exhibit 9 to Trudeau's filing to see that he received at least $4,305,452.43 for infomercials since 2007. Specifically, Exhibit 9 shows $4,305,452.43 in wire transfers from third party infomercial producers to Trustar Productions, Inc ("Trustar"). *See* Ex. 9, DE766 (Oct. 11, 2013). The Court found that Trudeau controls Trustar,[1] which is one of multiple entities Trudeau controlled through Isle of Man-based KMT Fiduciary Trust.[2] *See* PXA:1. Amazingly, Trudeau still maintains that "**no evidence exists**" that he received this money. *See* Trudeau Br. at 9 (emphasis added). Through Trustar, however, he did receive the money. Trudeau's claim that "no evidence exists" that he received more than $4 million is one of many bald assertions in his brief that are demonstrably false.

Second, Trudeau dismisses his 2012 purchase of two pairs of cufflinks (for $12,470.99) by attributing the purchase to his wife, *see* Trudeau Br. at 11 n.2 (representing that the cufflinks "were purchased by [his] wife"), notwithstanding his 2013 sworn financial statement in which he denied any knowledge concerning his wife's jewelry. *See* DE535 (Jan. 25, 2013) at 7.[3] In any event, as part of his story, Trudeau refers to the cufflinks as "**women's** cufflinks," *id.* (emphasis added), although nothing in the Ebay invoice indicates they are "women's cufflinks," *see* PXA:27, DE764-3 (Oct. 4, 2013). In fact, simply looking at them strongly suggests that they are not "women's cufflinks,"[4] and Ebay sells them as "men's jewelry."[5] Suffice it to say, Trudeau

---

[1] *See* DE729 (July 26, 2013) at 1; DE713 at 6 (July 15, 2013) (proposed findings of fact regarding Trustar Productions).

[2] TRUCOM owns Trustar Productions, which is owned by K.T. Corporation Limited, which is owned by KMT Fiduciary Trust. *See* PXA:1.

[3] Specifically, Item 17 on the sworn financial statement form (page 6 of the form) asks Trudeau to disclose "other personal property," including "jewelry." *See* DE535 (Jan. 25, 2013) at 7. With respect to his wife, he wrote: "UNKNOWN." *See id.*

[4] *See* PXA:2 (webshots); www.christies.com/lotfinder/jewelry/patek-philippe-a-pair-of-18k-white-5167196-details.aspx (viewed Oct. 12, 2013). Due to the government shutdown, the FTC will forward a copy of this filing (and the exhibits) to chambers via Federal Express.

[5] *See* PXA:3 at 2 (webshots); www.ebay.com/itm/Patek-Philippe-18K-White-Gold-Diamond-Ellipse-Cufflinks-/151060790543 (viewed Oct. 12, 2013).

makes no attempt to explain why his wife needed Neil Sant (Trudeau's right-hand man) to purchase two pairs of cufflinks for her through Trudeau's Ebay account, *see* DE764-3 (Oct. 4, 2013), or why she isn't even copied on the email regarding "her" cufflinks (the email is from Sant to Trudeau, *see id.*). Moreover, no amount of forensic accounting will find $12,000 worth of easily-hidden cufflinks. The fact that this issue concerns only $12,000 does not detract from its significance: even now, Trudeau remains untruthful.

<h3 style="text-align:center">2.     TRUDEAU'S CONTINUED ORDER VIOLATIONS SHOW HIS LACK OF COOPERATION.</h3>

Trudeau argues that he has corrected his five new order violations or, alternatively, they are not serious enough to warrant coercive sanctions. This misses the point. These violations demonstrate that Trudeau has not been honest and forthcoming. His dishonesty has ramifications beyond the individual lies and order violations that come to light. Specifically, the Receiver cannot marshal Trudeau's assets if he is willing to lie and continue violating orders even with respect to relatively small amounts of hidden funds. For example:

- **The Non-Disclosure of the Australian Account.** Trudeau could not have reasonably believed that his opaque reference to this account as having less than $1500 "net of liabilities" qualified as sufficiently candid—particularly when his purported "disclosure" did not include the account number, or the bank's address, or even the country where the bank is located. *See* DE525 at 4 (Jan. 25, 2013).

- **Spending from the Australian Account.** Trudeau could not have reasonably believed that it was acceptable to spend thousands from this account notwithstanding the Court's asset freeze. Most important, he didn't stop until he got caught.

- **Destruction of Documents.** Trudeau could not have reasonably believed that deleting emails was consistent with order provisions prohibiting him from destroying documents. *See* DE742 (Aug. 7, 2013) at 13. The fact that he agreed to stop once he got caught does not lessen the violation's significance.[6]

- **The Non-Disclosure of the On-Line Gaming Account.** Trudeau could not have reasonably believed that waiting six weeks to disclose the on-line gambling account was consistent with the receivership order. The fact that he eventually disclosed it (under questioning from the Receiver) does not make his prior nondisclosure any more honest.

---

[6] Trudeau observes that "[t]he FTC is unable to identify any relevant or material documents that were destroyed." Trudeau Br. at 6. This is true—most likely, no one ever will know what was lost precisely because Trudeau destroyed the documents.

- **Lying to the Receiver.** Trudeau's claim that "there are no hidden assets anywhere in the world" was indisputably false. *See* Receiver's Supp. Report (DE750-1) (Sept. 16, 2013) (attaching Sept. 7 email from Trudeau). Additionally, the fact that Trudeau later provided log-in information for his Australian account does not take away from the fact that he initially denied having it. *See id.* at 2.

For the receivership to have any hope of working, Trudeau has to be fully cooperative—not simply admit to specific facts after he gets caught. In short, the Court correctly found that Trudeau "has not been fully cooperative or candid with the Receiver," DE751 (Sept. 18, 2013) at 1, and none of his halfhearted explanations regarding these incidents should change that conclusion.

### 3. TRUDEAU'S IMPLAUSIBLE STORIES REGARDING HIS ASSETS ILLUSTRATE HIS LACK OF CANDOR.

#### a. Trudeau's Dubious Explanations Regarding Offshore Activity.

Trudeau controls at least three active offshore bank accounts. After reviewing extensive evidence, the Court found that Trudeau controls the Global Information Network ("GIN") and various affiliated entities, including Global Information Network FDN ("GIN FDN") and Website Solutions Switzerland ("WSS").[7] Based on information the Receiver obtained, between January 1 and September 6 of this year, nearly $16 million flowed into GIN FDN accounts, and nearly $17 million flowed out. *See* PXA:4, Receiver's Supp. Report (DE750-1) (Sept. 16, 2013) at 25-26. There are at least two GIN FDN accounts: one at Valartis Bank (Lichtenstein), *see* PXA:5 (wire information), and one at National Westminster Bank (U.K.), *see* PXA:6 (wire information). The Court may recall both accounts from the evidentiary hearing. For instance, Trudeau used the National Westminster account to pay Marc Lane, PXA:7, and when he was attempting to set up the Liechtenstein account, he gave instructions to Sant about how he should answer the bank's likely questions regarding Babenko's role, PXA:8. Later, in 2011, Trudeau asked Sant: "how much [money] is in Liechtenstein"? PXA:9. Sant responded: "$3,523,838.30." *Id.*

---

[7] *See* DE729 (July 26, 2013) at 1; DE713 at 14-16 (July 15, 2013) (proposed findings of fact regarding GIN FDN and WSS).

In addition to the GIN FDN accounts, WSS also has an account. Trudeau instructed Sant to wire money from Lichtenstein to WSS, PXA:10 (which means WSS must have had an account), and Trudeau received a supposed "salary" from WSS as recently as July, *see* Ex. 8, Trudeau Br. (which further establishes that WSS has a bank account).[8] The money in GIN FDN and WSS accounts belongs to the Receivership, *see* DE742 (Aug. 7, 2013) at 4, and should be turned over immediately. Trudeau's refusal to do so underscores his lack of cooperation.

With respect to the many other offshore entities, Trudeau calls the FTC analysis "pure conjecture." Trudeau Br. at 8. But the power of attorney Trudeau received from N.T. Trading S.A. is not conjecture—it is an exhibit to the FTC's prior filing. *See* FTC Statement, PXA:9 (also attached hereto as PXA:12). Trudeau's refusal to allow Lane to have the power of attorney revoked is also not conjecture, *see* PXA:13, and strongly suggests that Trudeau was undertaking some sort of activity with N.T. Trading. In fact, with respect to Hong Kong entity NBT Trading Ltd., Trudeau gave this instruction to Sant less than a year ago: "[T]he ari deal should NOT be in my personal name…it should be with **nbt trading limited**…can you have ar[i] redo it under that name please[?]"[9] PXA:15 (emphasis added). Nevertheless, Trudeau continues to maintain that he knows essentially nothing about NT Trading, NBT Trading, or various other offshore entities, and that they were created solely so that he would have shell companies he could use later. *See* FTC Statement at 7-8. Trudeau's continued denials and fictional explanations regarding these entities further highlights his lack of candor.

### b.    Trudeau's Dubious Explanations Regarding Gold.

Sticking with his refrain, Trudeau argues that the gold bars and coins "belong to Natalia Babenko." Trudeau Br. at 8. However, Trudeau ignores the evidence that at least $100,000 used to pay for the gold bars came from an account in his name.[10] PXA:16. On one invoice, Trudeau

---

[8] When interviewed, Trudeau referred to WSS as a "legitimate company" that had little to do with him. PXA at ¶ 29. As the Court may recall, Website Solutions Switzerland was part of Trudeau's original "vision" that he conveyed to Marc Lane's firm in 2009. PXA:11.

[9] "Ari" apparently refers to Ari Wasserman, who produced and distributed various of Trudeau's infomercials. *See* Trudeau Br., Ex. 9.

[10] Trudeau also ignores his sworn financial statement, in which he denied knowing

is listed under the "billed to" and "shipped to" name, PXA:17 at 1, and every invoice shows the bars (or coins) going either to Trudeau's Ojai home or his 130 Quail Ridge Drive business address, *see* PXA:17. Trudeau also fails explain the email from Golden Lion Mint ("GLM") referring to one gold shipment as "**Kevin's package**." PXA:18 (emphasis added). In fact, in another email, GLM writes to Trudeau: "I thought we could get the ball rolling on **your** gold and silver." PXA:19 (emphasis added). Babenko is not copied. *See id.* With respect to the 2011 exchange of GLM bars for more readily-transferable Scotia Bank bars, GLM sent Trudeau this email:

> Hi Kevin!
>
> We're hoping to see **your** GLM bars soon.
>
> Like I mentioned, we have pre-sold five bars.
>
> Any ideas when we'll see them?
>
> Thanks!

PXA:20 (emphasis added).[11] Again, Babenko isn't copied (or even mentioned). *See id.* Trudeau then forwarded this email to Sant with the instruction: "Neil…work this out with the gold." *See id.* Once again, Babenko is not copied or mentioned. *See id.*

Put simply, Trudeau bought, controlled, and almost certainly continues to possess significant gold and other precious metals worth hundreds of thousands of dollars. Trudeau's claim that these were his wife's transactions is another instance in which he continues to deceive the Court and the Receiver.

---

whether his wife had coins or other gold. Specifically, Item 17 on the sworn financial statement form (page 6 of the form) asks Trudeau to disclose "other personal property," including "coins" and "bullion." *See* DE535 (Jan. 25, 2013) at 7. With respect to his wife, he wrote: "UNKNOWN." *See id.*

[11] GLM managers Peter Lundell and Tony Balistreri have a close relationship with Trudeau. Trudeau apparently arranged for them to present a GIN seminar, *see* PXA:19 ("We're excited about doing a GIN event too!"), and there are records reflecting a $1,994 payment for "event tickets" by Natural Cures to Roaring Lion Publishing, another company associated with Lundell and Balistreri. *See* PXA:21 (Natural Cures "Bills Due" printout); PXA:18 (email signature line "Roaring Lion Publishing/Golden Lion Mint").

c.     **Trudeau's Dubious Explanations Regarding Transfers.**

Trudeau does not even attempt to explain GIN's books (which suggest both he and his wife received substantial transfers). These transfers include $149,051.82 to Babenko this year, PXA:4, and $16,305.79 to an account in Antigua as recently as August 20. *See* Receiver's Supp. Report (DE750-1) (Sept. 16, 2013) at 2. Trudeau denies any knowledge about this transfer, but the problem is that these transfers to Babenko came from GIN FDN, *see* PXA:4—the Nevis-organized entity that the Court found Trudeau controls.[12] There are other suspicious transfers as well, including $644,727.70 (this year) to Office Pool GmbH, PXA:4, a Swiss firm that helps people move to Zurich, obtain local driver's licenses and bank accounts, and establish offices.[13] In fact, this January, **Office Pool funneled money back to Lane from an account at Credit Suisse**. PXA:24. Trudeau, however, informed the Receiver that he was "only an employee" and that he knows little about Website Solutions Switzerland, PXA ¶ 29—despite the fact that WSS was part of the original "vision" he conveyed to Marc Lane's firm, *see* PXA:11, and despite the fact that Trudeau directed payments from GIN FDN to WSS, *see* PXA:10. Simply put, Trudeau has not been honest or forthcoming.[14]

B.     **TRUDEAU WILL "HOLD THE KEYS TO HIS RELEASE."**

Second, Trudeau suggests that the Court cannot coercively incarcerate him because the FTC, not the Court, "will hold the keys to Trudeau's release," DE766 at 1 (Oct. 10, 2013), but this ignores the purge conditions the Court identified would obtain if Trudeau failed to

---

[12] *See* DE729 (July 26, 2013), DE713 at 14 (July 15, 2013) (proposed findings of fact).

[13] *See* PXA:22 (web shots); www.officepool.ch (viewed Oct. 13, 2013). Additionally, GIN FDN made significant payments this year to both Marc Lane and Winston & Strawn. *See* PXA:4. Notably, GIN FDN also disbursed $129,692.34 this year to W.P. Barlow, *see id.*, a retired Texas attorney who lobbied "a former FTC Commissioner" and "a high ranking FTC staff member" to discourage the FTC from aggressively pursuing this litigation, PXA:23.

[14] This was the issue with the Ukrainian apartment as well. *See* FTC Statement at 8. Trudeau claims he was "not directly involved" with paying the mortgage on the apartment, *see* Trudeau Br. at 9. In reality, however, he was substantially involved. *See* PXA:25 ("[A]re we all square with [t]he kiev apartment? Natalie wants to sell it…GIN wants to buy it…thoughts?") (Trudeau's ellipses); PXA:26 ("[C]onfirm that we are paying off the apartment in Kiev."). Trudeau argues that he cannot turn over the apartment, but the immediate issue is the fact that he has not been completely forthcoming with the Receiver or the Court about his role.

cooperate. The receivership order specifies the precise purge conditions that will govern

Trudeau's incarceration:

> It is further ordered that Trudeau's failure to comply fully and timely with this order will result in Trudeau's immediate incarceration until (A) such compliance is achieved; (B) Trudeau fully complies with this Court's June 2, 2010 order (DE372); (C) Trudeau establishes that he has no present ability to comply with the Court's June 2, 2010 order; or (D) Trudeau establishes that continued incarceration will not coerce him to comply with the Court's June 2, 2010 order.

DE742 (Aug. 7, 2013) at 20. Accordingly, if Trudeau persuades the Court that he has honestly

disclosed everything he knows, and thus can do nothing further to comply, then the Court should

release him immediately because he will have satisfied purge conditions (A) and (C).

Significantly, this framework gives Trudeau the option to provide full cooperation at any

time, and gives the Court (not the FTC or the Receiver) discretion to determine whether that

cooperation has been achieved. In fact, other courts have used purge conditions similar to these

when confronted with contumacious defendants like Trudeau. For instance, in *CFTC v. Trimble*,

No. 09-154, 2009 U.S. Dist. LEXIS 102197 (W.D. Okla. Nov. 2, 2009), the Court stated that

Trimble could obtain his release by complying with various orders, including an order that he

"provide **full and complete disclosure**" regarding both his and his wife's assets. *See id.*

(emphasis added). Likewise, in *Andrews v. Holloway*, 256 F.R.D. 136 (D.N.J. 2009), the court

found "that civil confinement is the only appropriate and effective sanction for Defendant's

contemptuous conduct," and ordered the contemnor "to remain in custody until he provides

**complete and honest testimony**" regarding his assets. *Id.* at 151 (emphasis added). The purge

conditions here are essentially the same—Trudeau must satisfy the Court that he has been candid

and forthcoming, and therefore there is nothing further he can do to comply.

Importantly, the fact that it may be difficult for Trudeau to satisfy the Court is a problem

Trudeau created. Trudeau has no one but himself to blame for his four contempts and lies to the

Court stretching back to 1999. This history may make it more difficult for Trudeau to establish

that he has candidly disclosed everything he knows about assets he controls, but it does not make

it impossible (he might start by abandoning the fiction that assets ranging from gold bars to

cufflinks belong to his wife). Additionally, Trudeau spent several years (and millions of dollars) implementing various "asset protection" techniques designed to create the appearance of poverty while making the assets he controls as difficult as possible to locate and retrieve.[15] Again, however, even if Trudeau's decision to undertake these efforts makes it more difficult for him to establish that he has candidly disclosed everything he knows, it does not make it impossible.[16] Rather, after imposing coercive sanctions, the Court should judge whether Trudeau has said and done everything he can. If the Court is satisfied, then he should be immediately released.

### C. THE CONSUMER-FUNDED FORENSIC ACCOUNTING IS NOT A BASIS TO PROVIDE TRUDEAU WITH YET ANOTHER "SECOND CHANCE."

Finally, the Receiver's proposed consumer-funded forensic accounting is not a basis to give Trudeau yet another "final opportunity" to avoid coercive sanctions. The proposed forensic accounting is, at best, a supplement to what Trudeau knows about assets he controls—it is not a new basis for him to defer the consequences of his deceit once again. Worse, not only will a forensic accounting take considerable time (which itself works to consumers' substantial detriment), the forensic accounting will be funded with assets that would otherwise go to consumer redress. The notion that consumers should pay to find assets Trudeau hid from them is hard to accept and, most important, it is not what the Court ordered. Rather, the Court ordered that if Trudeau "fail[ed] to comply fully and timely," it would result in his "immediate incarceration." DE742 (Aug. 7, 2013) at 20. The Court did not allow him the luxury of waiting months until a forensic accounting is completed, nor should the Court do so.

---

[15] The difficulty with untangling asset protection efforts is the primary reason why courts faced with contemnors like Trudeau use coercive incarceration: asking them to disclose their assets voluntarily doesn't work, and untangling an intentionally-constructed web of obscure transactions and offshore entities is either impossible or prohibitively expensive. *See, e.g.*, *In re Lawrence*, 279 F.3d 1294, 1296-97 (11th Cir. 2002) (affirming incarceration of defendant who used asset protection trust); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241-43 (9th Cir. 1999) (same); *SEC v. Solow*, 682 F. Supp.2d 1312, 1334 (S.D. Fla. 2010) (incarcerating contemnor who engaged in various asset protection techniques).

[16] Notably, Trudeau is correct about one thing: the fact that the FTC doesn't believe him is irrelevant. What matters is whether the Court believes him.

Dated: October 14, 2013

David O'Toole (dotoole@ftc.gov)
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603-5001
Phone: (312) 960-5601
Fax: (312) 960-5600

Respectfully Submitted,

/s/ Jonathan Cohen
Michael Mora (mmora@ftc.gov)
Jonathan Cohen (jcohen2@ftc.gov)
Amanda B. Kostner (akostner@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., N.W. M-8102B
Washington, DC 20580
Phone: 202-326-3373; -2551; -2880
Fax: 202-326-2551

## CERTIFICATE OF SERVICE

I, Jonathan Cohen, hereby certify that on October 14, 2013, I caused to be served true copies of the foregoing by electronic means, by filing such documents through the Court's Electronic Case Filing System, which will send notification of such filing to:

Kimball Richard Anderson
kanderson@winston.com

Thomas Lee Kirsch, II
tkirsch@winston.com

Katherine E. Rohlf
kcroswell@winston.com

Blair R. Zanzig
bzanzig@hwzlaw.com

/s/ Jonathan Cohen
Jonathan Cohen (jcohen2@ftc.gov)
Attorney for Plaintiff
Federal Trade Commission