**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 03 C 3904** |
| | ) | |
| **KEVIN TRUDEAU,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

The Federal Trade Commission filed this lawsuit against Kevin Trudeau over twenty-one years ago, in 2003, alleging deceptive practices.[1]  It was not the first time the FTC had sued Trudeau.  In 1998, the FTC sued Trudeau for deceptive practices and false advertising in connection with a number of products he promoted through infomercials.  *FTC v. Trudeau*, No. 98 C 168 (N.D. Ill.).  Trudeau settled that case and paid $500,000 to compensate the products' purchasers.  He also agreed to an injunction that included, among other things, a provision barring him from making representations about the benefits or performance of any product without "competent and reliable evidence" of his claims.

The present lawsuit involved similar conduct and included a claim that Trudeau had violated the injunction in the earlier case.  A consent order was entered in

---

[1] This summary of the history of the litigation is taken from previous court rulings in the present case, including by the Seventh Circuit, and from a joint status report filed by Trudeau and the government in his criminal case in July 2023.

September 2004. It ordered Trudeau to pay $2 million for consumer redress and prohibited him from advertising any products in infomercials. But it allowed Trudeau to participate in infomercials for publications, including his own publications, so long as the publication did not refer to any other product he was marketing. The order provided, however, that infomercials for a book could not misrepresent the book's contents.

In 2007, Trudeau appeared in infomercials promoting his book *The Weight Loss Cure "They" Don't Want You To Know About*. The FTC sued, contending that the infomercials misrepresented the contents of the book and thus ran afoul of the 2004 consent order. The revenues from sales of the book amounted to about $37 million from infomercial sales and $9 million from retail sales. Judge Robert Gettleman, to whom the case was assigned, found that Trudeau had made misleading statements and found him in contempt. *See FTC v. Trudeau*, 567 F. Supp. 2d 1016 (N.D. Ill. 2007). Litigation ensued over the appropriate remedy. This is summarized in a later decision by the Seventh Circuit. *See FTC v. Trudeau*, 579 F.3d 754, 761-62 (7th Cir. 2009). The bottom line is that Judge Gettleman initially ordered Trudeau to pay the FTC about $5.1 million to disgorge some of the royalties he had received from sales of *Weight Loss Cures*. Judge Gettleman's order also banned Trudeau from doing any infomercials for a three-year period. *See FTC v. Trudeau*, 572 F. Supp. 2d 919, 925-26 (N.D. Ill. 2008). Several months later, however, Judge Gettleman increased the monetary award to $37.6 million, "representing a reasonable approximation of the loss consumers suffered as a result of [Trudeau's] deceptive infomercials." Order of Nov. 4, 2008 (dkt. 219).

Trudeau appealed. The Seventh Circuit overruled his challenges to Judge Gettleman's contempt finding but remanded for a better explanation of the $37.6 million

2

monetary award. *Trudeau*, 579 F.3d at 768, 769-75. The court also vacated the three-year infomercial ban, concluding that it was an inappropriate remedy for civil contempt because it did not give Trudeau an opportunity to purge the contempt. *Id.* at 776-79.

In 2010, on remand, Judge Gettleman found that "given Trudeau's history of contemptuous conduct, the fact that his misrepresentations were so widely disseminated, and the fact that disgorgement of ill-gotten-gains would be wholly ineffectual, . . . a sanction based on consumer loss is the only appropriate remedy." *FTC v. Trudeau*, 708 F. Supp. 2d 711, 715 (N.D. Ill. 2010) (dkt. 355). Judge Gettleman further explained that the $37,616,161 sanction represented "the cost of the book purchases through the '800' telephone number displayed during the deceptive infomercial . . ., along with shipping and handling costs, less returns to consumers." *Id.* at 717. The order provided that "[a]ny funds remaining after such reimbursement to consumers, less taxable costs and other costs of disbursement approved by the court, shall be returned to Trudeau . . . ." *Id.* at 729. Judge Gettleman also modified the injunction he had previously imposed, prohibiting Trudeau from misrepresenting the benefits, performance or efficacy of any product, program, or service in any infomercial"; reinstating certain compliance reporting requirements originally imposed in 2004; and requiring Trudeau to post a $2 million performance bond, as security for any failure to pay a judgment resulting from a violation of the injunction's terms, before he could produce or air any infomercials. *Id.* at 724.

On appeal, the Seventh Circuit affirmed Judge Gettleman's order in its entirety. *FTC v. Trudeau*, 662 F.3d 947 (7th Cir. 2011). In particular, the court found that the $37.6 million figure "correctly measures the loss" and indeed was "conservative." *Id.* at

950.

In September 2013, Judge Gettleman found that Trudeau had concealed assets to avoid paying the contempt judgment, and he ordered coercive incarceration to compel full disclosure. Judge Gettleman suspended this order in March 2014 to allow Trudeau to begin serving a sentence for criminal contempt, discussed in the next paragraph.

Earlier, in April 2010, after he imposed the original civil contempt sanction, Judge Gettleman entered an order directing Trudeau to show cause why he should not be held in criminal contempt of court for the same conduct that had led to the civil contempt finding. The U.S. Attorney's Office agreed to prosecute the case, and the criminal matter was transferred to Judge Ronald Guzman. A jury convicted Trudeau in 2013, and Judge Guzman imposed a below-Guidelines sentence of ten years imprisonment. As indicated in the previous paragraph, Judge Gettleman suspended his civil coercive incarceration of Trudeau in March 2014 so that he could serve the sentence for criminal contempt. On appeal from the criminal contempt conviction, the Seventh Circuit affirmed. *United States v. Trudeau*, 812 F.3d 578 (7th Cir. 2016).

Trudeau was released from prison in or about January 2022 and began to serve a term of supervised release, which is under the supervision of another judge in this district.

Back to the present case. In 2013, at the suggestion of Trudeau, Judge Gettleman appointed a receiver. By 2015, the receiver had collected from Trudeau a little over $15 million to be applied toward the $37.6 million contempt judgment. The Court will discuss the disposition of the $15 million and other payments by Trudeau later

4

in this decision.

After Trudeau was released from prison in 2022, proceedings in the present case resumed. The FTC contended that Trudeau had hidden assets and was impeding collection of the civil contempt judgment. It sought further coercive incarceration. Trudeau contended that he was not hiding assets. In June 2023, after discovery and an extended evidentiary hearing, Judge Gettleman found that Trudeau had paid about $2.6 million toward the judgment during 2023, most of which had come from donations by members of his fan club, the Kevin Trudeau Fan Club (KTFC). Judge Gettleman also stated that:

> [The] evidence presented at the hearings demonstrates that Trudeau remains in contempt of the judgment order, and would justify any appropriate remedy, including coercive incarceration, that the court might impose to bring about the desired result of full payment of the judgment. Nevertheless, in the exercise of the court's discretion to fashion such a remedy, it must consider the probable effectiveness of any sanction. In the instant case, coercive incarceration *at this time* would appear to be counterproductive, because Trudeau has demonstrated that he has the ability to earn substantial compensation and receive gifts from donors that could be used to pay the balance of the outstanding judgment (which is in excess of $17 million). That ability would be significantly diminished, if not eliminated, were Trudeau to resume coercive incarceration at this time.

Order of June 6, 2023 (dkt. 1146) at 2-3. Judge Gettleman ordered Trudeau to (among other things):

- Pay the FTC seventy-five percent of all monies received from GIN Unite, Inc. or its affiliates, less income taxes;

- Pay the FTC one hundred percent of all monies he received from any other source, less income taxes;

- Submit bimonthly verified statements of all monies received and expenses and disbursements by him and KTFC, "along with the status of any

business relationship he has entered into or intends to enter into"; and

- Before agreeing to any business relationship, submit his intended activities to the FTC for approval, followed by good faith consultation, after which either party could move the Court for determination.

*Id.* at 3-4. The same order stated that "Trudeau is prohibited from acting through nominees." *Id.* at 4.

A later order by Judge Gettleman made some slight modifications to the June 6, 2023 order, including the details of the reporting requirements, and it (among other things):

- Authorized KTFC to "retain funds to cover its reasonable operating expenses, which Trudeau shall itemize in his Reports. *Any funds net of such expenses and those amounts paid to Trudeau will be paid to the FTC directly by the KFTC or paid to Trudeau so that he can pay them to the FTC net of all taxes at the time of his bi-monthly Reports*";

- Precluded Trudeau from "the practice of tithing until further order of this court"; and

- Authorized Trudeau to establish "a new legal defense fund separate from KTFC," with "the sole purpose" to collect contributions "to pay Trudeau's legal fees and costs and to remit such contributions to Trudeau's counsel," with a bi-monthly requirement to report on the fund's income and expenses.

Order of June 16, 2023 (dkt. 1151) at 1-2 (emphasis added).

On August 3, 2023, Judge Gettleman entered an order, on Trudeau's motion for approval of business relationships (dkt. 1154), that among other things provided the

following:

- Trudeau was authorized to enter into an agreement with FortyFPS Films and sell certain books;

- Any future books "cannot promote the sale of any branded or trademarked products, programs or services pursuant to the consent order entered in September 2004";

- Trudeau was required to pay any tax refunds to the FTC in partial satisfaction of the judgment;

- "The $2 million infomercial bond shall stay in place. Should Trudeau seek relief from this requirement, he must submit all proposed infomercials to the FTC and the court for approval, as he has agreed to do."

- All funds received from investment income are assets subject to payment on the judgment;

- Trudeau "remains prohibited from entering into any personal endorsement agreements for Natural Cures.com"; and

- Trudeau "may enter into an endorsement agreement for World's Best Nutritionals and Organics, Inc., but must submit any commercial activities in which he intends to participate to the FTC for approval. Lacking such approval he may bring the matter to the attention of the court for the court's approval."

Order of Aug. 3, 2023 (dkt. 1185) at 1-2.

In late September 2023, the case was reassigned to the undersigned judge after Judge Gettleman recused himself. Since that time, the parties' filings have been voluminous enough to fill a small pickup truck. There are, depending on how one

counts, close to a couple dozen contested matters before the Court, including objections by the FTC to various aspects of Trudeau's bimonthly reports. As the filings multiplied, the Court saw the contested matters as facets of a single whole, thus making it inadvisable to rule on each point separately. Rather, the Court determined, it made sense to rule on all the contested issues together. Unfortunately, the Court has taken far longer than it hoped to rule on the disputed matters. This is in no small part because there are no simple solutions on many of the disputed points. And as time has passed, more disputes have arisen, making the task more difficult. The Court has endeavored in this order to address everything, though as will be seen several items will require further action.

Stepping back a bit and looking at the big picture, the current state of affairs is not good. No one is satisfied. The FTC continues to believe that Trudeau is hiding assets and otherwise evading payment of the coercive sanction; it has repeatedly asked the Court to reimpose coercive incarceration. The FTC is also quite dissatisfied with the provision of Judge Gettleman's June 2023 order that requires Trudeau to submit new business relationships to the FTC for preapproval. Though the FTC did not seek reconsideration of the order at the time and did not appeal following the order's entry, it contends that this provision is a legally inappropriate imposition upon the agency. Instead the FTC wants the Court to appoint a monitor, to be paid for from funds collected from Trudeau, to vet his proposed business ventures and his finances. Alternatively, it asks the Court to eliminate the preapproval requirement.

Trudeau, too, is dissatisfied with the current state of affairs. He has sought approval for a number of new ventures and contends the FTC is stonewalling him. He

wants to be able to travel internationally to pursue moneymaking ventures, which he has been precluded from doing since 2013. He wants to be able to pay accountants from the legal defense fund and wants his related entities to be able to pay legal expenses from their retained earnings. And Trudeau contends that the FTC's litigation conduct has inappropriately imposed undue burdens on him and has unfairly cast him in a bad light.

The Court does not find the current state of affairs to be satisfactory either:

- Even though well over $17 million has been collected from Trudeau in various ways, only about $5.4 million has actually been distributed to consumers. And the flow of funds from Trudeau to the FTC for payment of the judgment seems to have slowed to a relative trickle at this point.

- Everyone seems to be making out pretty well, except for the consumers harmed by Trudeau's misconduct. The receiver and fund distribution administrator appointed by the FTC have been paid quite handsomely (more on this below). A very significant amount of money has been raised by Trudeau for legal defense and has been paid to his lawyers. And Trudeau himself appears to be doing quite well for someone facing a $37.6 million contempt judgment. Half the rent on his home is being paid by certain of his business entities that have been accumulating money without any payments from those amounts to the FTC. Many of the furnishings purchased for the "home office" and thus essentially for the benefit of Trudeau appear to be high-end items that, at least on the surface, appear to go beyond any reasonably legitimate needs for a basic home business office. That aside, Trudeau has been spending an almost

absurdly large amount of the entities' money on cigars (supposedly giveaways used for promotional purposes). And then there is the $6,600 set of golf clubs purchased by the businesses for Trudeau. That may not be a Rolls-Royce-level set of clubs, but it's close to a Bentley.[2] And all of this has happened even as Trudeau has, over time, paid dwindling amounts to the FTC on the judgment.

• The current setup imposes a significant burden on everyone, including the Court. The best examples of this are the bimonthly reports by Trudeau and the resulting objections and replies, as well as the business relationship preapproval process.

• That preapproval process has not worked in an optimal fashion. It was presumably Judge Gettleman's intention that the process would result in agreement on some proposed relationships and some winnowing of others via modification or voluntary withdrawal. But that has not happened. With a relatively modest exception or two, nothing has actually gotten approved. This may be for good and valid reasons, but the bottom-line consequence at this point is essentially that no money from new business activities has gone to pay the judgment. And all of the disputes have been put on the plate of the Court, which is ill-equipped to make an advance determination of the propriety of Trudeau's proposed business ventures.

---

[2] Assuming that Trudeau complies with the Rules of Golf, which allow a player to carry no more than 14 clubs, *see* Rules of Golf 4.1(b), https://www.usga.org/content/usga/home-page/rules/rules-2019/players-edition/rule-4.html (last visited Sept. 10, 2024), this means that the price of each club was, on average, $470. The Court can attest that, absent gold plating, that's quite a lot, even for "custom fit" clubs.

- Distribution to consumers of the amounts collected from Trudeau on the judgment has also been less than optimal, to put it mildly. Over $15 million was collected from Trudeau by the receiver; this does not count amounts paid in 2023-24 from Trudeau's earnings in those years. Of the $15 million, the receiver was paid $6.8 million (about forty-six percent of the total), and the administrator the FTC retained to make distributions to consumers was paid just short of $2.5 million (about seventeen percent). Only about $5.4 million—just thirty-six percent of the amount collected—went to consumers, most of whom got about $9 each.[3] To a disinterested observer, that seems rather paltry.

As the Court has indicated, there are no obvious solutions to these problems. In fact, it's not clear there are *any* real solutions. Everything that is in place and that has been proposed has its downside.

With this rather dim and pessimistic introduction, the Court addresses what it believes are all of the parties' disputes.

## A. Periodic financial reports by Trudeau

The Court begins with what it considers to be the most cumbersome set of disputes: resolution of issues arising from the bimonthly financial reports filed by Trudeau pursuant to Judge Gettleman's June 2023 order. The protocol is: Trudeau files a verified report; the FTC generally files a response, including objections; and Trudeau replies to any objections.

### 1. November 2023 report (covering August-September 2023)

---

[3] Some got less—about $5—because they did not cash the second check. Around 550,000 consumers did not cash even the first check and thus were not sent a second one.

The FTC's response to Trudeau's November 2023 report is at docket 1243; Trudeau's reply is at docket 1250.  The major points are as follows.

a.      The FTC notes that per the report, Trudeau saved and put away about $56,000 between January and June 2023 without notifying the Court.  The FTC characterizes this as a slush fund and suggests it is inappropriate.  But as Trudeau correctly points out, this money was made in the period before entry of the June 6, 2023 order and thus was not subject to that order's restrictions.  Trudeau's access to this significant pot of money is a factor appropriately considered in assessing his compliance with the judgment as well as how to proceed moving forward, but it is not a basis for imposition of any sort of a sanction or penalty.

b.      The FTC notes that during the reporting period, Trudeau received about $143,000 in net personal income and paid about $122,000 to the FTC on the judgment. This left $21,000 that he kept.  The FTC notes that Trudeau spent only about half of the $21,000.  Again, however, the order *permits* Trudeau to keep 25 percent of the income paid to him by GIN Unite, and that's what the $21,000 represents.  There is no provision in the current order requiring him to turn over the unspent amounts.  Again, this may be a factor appropriately considered in any further action the Court may take, but there is no provision in the June 6 order that requires Trudeau to pay this money over.

c.      The FTC notes that per the report, KTFC brought in around $243,000 during the reporting period and spent around $145,000, leaving about $98,000.  Of that, Trudeau appears to have spent about $65,000 for legal bills, leaving $32,000 on the table.  Trudeau's company Trudeau Consulting Training and Coaching (TCTC or Trudeau Consulting) brought in around $480,000 and spent around $257,000, leaving

approximately $223,000. The FTC argues that the leftover money all should have to be paid on the contempt judgment and that these entities should not be permitted to accumulate reserves.

In response, Trudeau says that the June 6 order only requires Trudeau himself to pay over a percentage of his income from GIN Unite and that "[n]o order requires any of Trudeau's businesses to pay redress directly to the FTC, nor does any order specify how often these businesses must pay Trudeau so that he can forward those payments to the FTC." Dkt. 1250 at 4. That may be correct at this point for Trudeau Consulting, but it's flat wrong with respect to KTFC: Judge Gettleman's June 2023 order, though allowing KTFC to retain funds to cover reasonable operating expenses, specifically required KTFC to pay over to the FTC, or Trudeau to send to the FTC, "any funds net of those expenses." And regarding Trudeau Consulting, there is *no order* permitting it to retain funds for reasonable operating expenses: it was up to Trudeau to ask for that, and he hasn't. The Court intends to rectify this and will discuss the point a bit later in this order.

More broadly, Trudeau argues that Judge Gettleman permitted the businesses to retain funds to cover reasonable operating expenses. He contends that if these entities were required to, in effect, empty their accounts every two months as the FTC seems to contend, the businesses would not be able to meet expenses and thus would have to cease operating. The Court will return to these points later in this order but notes, again, that there appears to be no order at this point allowing Trudeau Consulting to retain funds for operating expenses, let alone setting the terms upon which it may do that.

13

d.      In the same vein, the FTC notes that from June 6 through October 8, 2023, Trudeau's businesses KTFC and Trudeau Consulting took in a total of about $1.5 million (KTFC about $440,000; Trudeau Consulting about $994,000) but paid only $92,000 to Trudeau.  The FTC says that at least some of what the business are paying out for "business expenses" also personally benefit Trudeau, e.g., payment of half his rent and payment of his phone bills.  Again, the Court will return to these points below.

There are also disputes about particular expenses, but the Court does not regard it as a wise use of its time to litigate these on an micro (item-by-item) basis.

e.      The FTC contends that Trudeau's report reflects that he is pursuing unapproved business activities:  (1) a naturalcures.com celebrity endorsement agreement for which he has not sought approval; (2) a new entity called World's Best Nutritionals & Organics to sell supplements (the FTC notes that Judge Gettleman allowed Trudeau to pursue this business generally, subject to approval for specific activities, but says that Trudeau has sought no such approvals as of the report date); (3) a reference to unapproved activities by Trudeau Consulting; (4) $10,000 in unexplained "affiliate income"; (e) supposedly inappropriate health-related claims being made by KTFC; and (f) a potential podcast.

Trudeau has the better of these points, at least as of time of the November 2023 report and the ensuing briefing.  The report appears to identify only one *current* activity as of the date of the report, a seminar that the FTC appears to have approved.  Everything else was, at that point, on the if-come and did not involve any current business activity as of the date of the report.  On the "health claims" point, the Court agrees that the FTC's objection includes no *evidence* that Trudeau was running afoul of

the injunction or any other order. As for the $10,000 payment by KTFC, Trudeau explains this reimbursed a GIN Unite employee for a fee he paid for a Trudeau seminar even though he worked the seminar as a staff member. That explanation appears adequate to the Court.

      f.     The FTC's submission ends with a request to the Court to: (1) modify the provision of the order allowing Trudeau to keep 25 percent of his income from GIN; (2) require documentation of any expense paid by another person or entity that benefits Trudeau; (3) clarify the appropriate amounts set aside by Trudeau for estimated taxes; and (4) preclude the Trudeau legal defense fund from paying accountants and experts. The tax withholding issue was fixed, at least prospectively, in 2023 after Trudeau retained a new accountant. The accountants/experts issue is the subject of a separate motion, addressed below. The other two points will be addressed later in this decision as part of a broader discussion.

Trudeau, in his reply, complains about the time and effort needed to address the FTC's objections, which he says were largely lacking in merit. He asks the Court to impose a good faith consultation requirement as a precondition to assertion of an objection to a financial report. The Court will address this later in this order.

      **2.**     **December 2023 report (covering October-November 2023)**

The FTC's response to Trudeau's December 2023 report is at docket 1255; Trudeau's reply is at docket 1267. The major points are as follows.

      a.     Regarding the businesses' retention of funds for future operating expenses, the FTC points out that Judge Gettleman's June 6, 2023 order allowed KTFC to do this, but not other businesses (for example, Trudeau Consulting). The FTC

acknowledged that it agreed at the time not to oppose such a request, but it notes that this did not relieve Trudeau from asking for a modification of the Court's order—which he never did. The FTC says that now, based on its view of the track record in this regard, it *would* oppose a "retention of funds" modification for Trudeau Consulting unless significant restrictions are imposed—but it does not say what sorts of restrictions it proposes.

Trudeau does not respond to this point in any meaningful way. The FTC is correct that Trudeau Consulting *does not have* an order allowing it to retain funds for operating expenses. It might make sense to enable this, but it was and is incumbent upon Trudeau to make the request. Due to the absence of any order allowing it, the Court hereby bars Trudeau Consulting from retaining funds on a month-to-month basis pending the granting of a motion by Trudeau to modify the Court's prior orders accordingly, and in the interim the Court bars Trudeau Consulting from disposing of or dissipating *any* funds or other assets pending further order of court. Given this (presumably temporary) bar, it is in Trudeau's interest to get any such motion on file as promptly as possible. The Court will set a prompt hearing once Trudeau files the motion.

b. The FTC notes in its objections to the December 2023 report that the report does not contain any separate accounting for the Trudeau legal defense fund authorized by Judge Gettleman; rather it just appears as a line item on KTFC's income statement. The FTC points out that the order required this account to be held separately. In his response, Trudeau has established to the Court's satisfaction that there is in fact a separate account for the legal defense fund. It also appears that as of

the date of the report, any payouts from the fund had gone to the two law firms representing Trudeau, Clark Hill and Winston & Strawn.  Trudeau agreed in his reply, as requested by the FTC, to itemize the sources of legal defense fund contributions.  The Court directs Trudeau to do this consistently going forward.

  c. The FTC claimed in its response that Trudeau did not provide supporting bank statements; did not provide documentation for what appear to be "loans" from Trudeau to Trudeau Consulting, another amount owed by Trudeau Consulting, and an amount loaned to World's Best Nutritionals; and did not provide receipts for certain expenses questioned by the FTC.

  It does appear, as Trudeau says in his response, that bank statements *were* turned over—but were converted to spreadsheets as provided in the Court's order—and that the so-called loans were in fact disclosed.  As for receipts, Trudeau's response likewise appears sufficient regarding when, currently, those are and are not required.  The Court is willing to entertain a request to modify the order in an appropriate way to require greater itemization and documentation for expenditures, at least significant ones.

  d. The FTC says, in a similar vein, that the reports do not include sufficient detail on certain expenditures, for example, $54,000 spent on computers that is identified as a single line item with no supporting detail.  Trudeau did not directly respond to this point.  The Court directs Trudeau to provide, within ten days of this order, a supplement to the report, itemizing the amounts spent on computers identified in this particular report (specifically, listing all items purchased and the price for each—a copy of any receipts covering the purchases will suffice as the disclosure so long as it

17

itemizes what was purchased).  The Court notes that the $54,000 amount seems relatively high, so it looks forward with interest to the supporting details.

e.     The FTC also says that the report does not include sufficient information on other current and anticipated business ventures, for example World's Best Nutritionals.  This point is answered adequately in Trudeau's response.  *See* dkt. 1267 at 9-10.

f.     The FTC acknowledges that Trudeau has complied with the June 2023 order's requirement to pay over 75 percent of his GIN income for consumer redress.  It points out, however, that Trudeau has obtained benefits that far exceed the remaining 25 percent, via items paid by the entities as business expenses that benefit Trudeau personally, including one or more suits, Uber rides to and from court, fancy dinners paid for by the entities, and so on.

In reply, Trudeau says (as he did in an earlier response) that the June 2023 order does not require the businesses to pay the FTC and does not tell them how often they have to pay funds to Trudeau or in what amounts.  (As the Court has noted, this is just plain wrong regarding KTFC.)  He also repeats his point that if the businesses cannot retain funds for operating expenses, they will not be able to operate.

All of this suggests that it would be appropriate to modify the June 2023 order to require the Trudeau-controlled entities to pay out all or a specified proportion of their retained earnings (net of reasonable business expenses) to Trudeau to pay to the FTC, or directly to the FTC, for payment on the contempt judgment.  The existence of relatively large amounts of retained funds is also a factor appropriately considered in connection with other motions filed by the parties, as discussed below.  Separately, the

Court notes that the current arrangement in effect incentivizes Trudeau to characterize what otherwise might be considered personal expenses as business expenses to justify having the businesses pay them.

g.     The FTC again contends that Trudeau appears to be pursuing a number of business ventures or ideas that it contends likely would violate the 2004 order.  The Court's view of this is that the June 2023 order requires preapproval of business relationships, and any violation of law may be pursued may be pursued via a separate lawsuit or, perhaps, a request for a contempt finding in this case.  None of what is identified here appears to the Court—at least on the short summary provided—to be ripe for that sort of consideration as of the date of this particular FTC filing.

**3.     February 21, 2024 report (covering December 8, 2023 to February 7, 2024); April 19, 2024 report (covering February 8, 2024 to April 7, 2024)**

These reports are found at docket 1277 and docket 1289.  There does not appear to have been any direct response filed by the FTC.

**4.     June 21, 2024 report (covering April 8, 2024 to June 7, 2024)**

The FTC's response is found at docket 1336; Trudeau's reply is found at docket 1341.  The major points are as follows.

a.     The FTC points out that by this point in mid-2024, Trudeau is paying progressively less and less of his and his businesses' gross income to the FTC even though he and the businesses have about $1.2 million in cash on hand.  The current pace, the FTC says, is on average only about $13,000 per month paid over to the FTC for consumer redress.

Trudeau responds that "gross income" is not an appropriate figure to consider, as

the Court's order does not require payment of a percentage of that. He also contends that business revenue isn't the same as personal income. Trudeau says that over the four reporting periods including the one covered by this report, he paid to the FTC a total of about $320,000 of about $373,000 he was paid as personal income, which includes the required 75 percent of his pay from GIN. He again repeats his earlier point about the need for the businesses to retain funds for operating expenses. Also, Trudeau says in his reply that he is "treading water" to see if the Court grants his request to drop the $2 million infomercial bond requirement.

The figures suggest that it would be appropriate—as noted by the Court earlier— to require all Trudeau-controlled businesses to pay to Trudeau to pay to the FTC, or to pay directly to the FTC, a specified portion of the funds received or retained by the businesses. As the Court has indicated, an order to this effect is already in place for KTFC, but not for TCTC or any other entity that Trudeau may establish.

b. The FTC takes issue with a number of expenses identified by the businesses that it characterizes as frivolous, including $25,000 paid to cigar establishment; $1146 at a liquor store; $1214 at Capital Grille, a restaurant; $4500 at a "celebrity brain scan center"; various amounts paid by GIN, including for shipment of Trudeau's golf clubs; $22,000 paid to a person referred to as Trudeau's former romantic partner, classified as an office expense without further explanation; and $289 for an Uber ride to a court hearing in the present case.

Trudeau responds as follows. The cigars are branded with a Trudeau trademark and are handed out at his seminars supposedly to generate more business. The liquor store expense was for "business entertainment" purposes, and the restaurant expense

involved a dinner with purchasers of a Trudeau seminar. The $22,000 and $4,500, Trudeau says, were "legitimately incurred for research and testing purposes." Dkt. 1341 at 6. The $22,000 was for four "Life Force Energy Tesla Devices," whatever that means, and the $4,500 was for a "brain scan" at a particular clinic. Trudeau says he incurred these expenses so he could write about the products in a forthcoming book and discuss them on YouTube shows. All of this has some surface appeal, but it illustrates a broader issue regarding the effectively unregulated expenditures (and non-expenditures) of funds by the Trudeau-controlled entities.

c.     The last point raised by the FTC is one made earlier: there is no documentation regarding the purportedly separate legal defense fund account. Trudeau responds, as before, that the fund has no expenses other than paying the attorneys. But this does not excuse a failure to report. Trudeau is directed to provide an itemized accounting of all amounts received and paid by the legal defense fund to date. For receipts, the accounting is to include the date, amount, and remitter of each amount received. For disbursements, the accounting is to include the date, amount, and payee. A similar accounting must be included in all bimonthly reports going forward.[4]

**5.     August 21, 2024 report**

This report, found at docket 1342, was recently filed, so there is no response by the FTC as of the date this section of the present order was written.

**6.     Summary**

In summary:

---

[4]  For periods already past, it appears that this retrospective accounting now may have been provided as a result of the objections and briefing. If so, Trudeau may simply re-produce it to the FTC.

- There is an open issue regarding TCTC's unregulated retention of funds given the absence of a court order allowing and governing this. The Court has imposed a bar on spending, dissipation of assets, etc. by TCTC pending entry of such an order. Trudeau has the burden of filing an appropriate motion in this regard and should do so promptly.

- There is an open issue regarding how much Trudeau's businesses should be able to retain and hold for business expenses, and when and in what amounts retained funds must be paid over to the FTC or to Trudeau for payment to the FTC. *See also infra* at 33. The parties are directed to engage in good faith discussion to attempt to agree on a proposal and are to submit a *joint* report to the Court with their proposal(s). The Court wishes to emphasize that it is quite serious in imposing the good faith requirement. If a party does not carry this out, it will effectively be forfeiting its place at the table: the Court is inclined, if the parties cannot reach agreement and submit separate proposals, to pick one or the other on the various points, along the lines of a baseball-type arbitration.

- Trudeau must make a supplemental disclosure regarding all receipts and disbursements by his legal defense fund, as spelled out above, and must do so in each bimonthly report going forward.

- There needs to be greater documentation and itemization of the entities' business expenses, as least above a particular threshold. The Court directs the parties to confer in good faith and make a proposal on this as well.

- Going forward, any objections or disputes by the FTC filed with the Court regarding a Trudeau bimonthly report must first be communicated to Trudeau's

counsel, no later than seven days before the due date for the FTC's response to the report. Upon such communication, both sides must engage in prompt, good faith discussions to resolve the dispute in advance of the FTC's filing deadline. Any disputes that survive this process and thus are included in a filing by the FTC in response to a bimonthly report will require an in-person evidentiary hearing before the Court. To the extent the Court's schedule permits, the hearing will be held within seven days after the due date for Trudeau's response to the objections.

**B.      Resumption of coercive incarceration of Trudeau**

The next issue to be addressed is the FTC's proposal to resume coercive incarceration of Trudeau. Adopting this approach presumably would provide some level of moral satisfaction, at least for the FTC. But there is no basis in the record to believe that it would accomplish anything with respect to compliance with the contempt judgment. After conducting extensive hearings in 2023, Judge Gettleman was not persuaded that reimposition of incarceration would lead to any further assets being surfaced or faster payment (or payment at all) of the contempt judgment. And incarceration would have a significant downside: to the extent Trudeau is able to generate *any* income to pay for consumer redress, incarcerating him would bring that to a screeching halt.

The FTC also contends that the bimonthly financial reports show that Trudeau is, in essence, turning somersaults to make sure that incoming funds end up going for anything other than consumer redress, and in significant part for his direct or indirect personal benefit. But to the extent that's so, the better solution is a more direct one:

23

revise the current scheme to prevent, minimize, or penalize inappropriate distributions and payments, regulate what may be retained for ongoing operating expenses, and require distributions by the Trudeau-controlled entities to him, or to the FTC, to pay down the judgment. That is what the Court contemplates, as indicated by its directions in the previous section of this order.

For these reasons, the Court, like Judge Gettleman in his June 2023 order, declines to impose further coercive incarceration at this time.[5]

## C.     Imposition of a monitorship

The next issue involves the FTC's alternative proposal for a monitorship. *See* dkt. 1251. Specifically, the FTC asks the Court to appoint a monitor to oversee Trudeau's finances and business activities and provide semiannual reports to the Court.

Imposition of a monitorship would relieve the FTC—and, possibly, the Court—of at least some of the burden of assessing new ventures proposed by Trudeau. But this would come at a high price. A monitor would have to first become immersed in the history of the litigation and Trudeau's past and current business ventures, and then would have to engage in extensive analysis—analysis the FTC itself characterizes as cumbersome, *see* dkt. 1251 at 13—before recommending approval or disapproval of any particular venture. And any thumbs-up or thumbs-down presumably would be subject to briefing by the parties and determination by the Court. The Court has learned quite well from its brief tenure presiding over this case that there appears to be no dispute too small to avoid being disputed at length, and typically with both sides'

---

[5] To be clear, this most emphatically *does not* mean that this is being taken off the table indefinitely.

attorneys' adjective and adverb generators turned on and set to high.  There's not much hope—at least, *the Court* doesn't have much hope—that establishing a monitorship would avoid this.

Perhaps more importantly, imposition of a monitorship inevitably would lead to an additional financial drain on any income Trudeau might be able to garner.  As indicated, one of the tasks the FTC proposes to assign to the monitor is the responsibility for overseeing the finances and transactions of Trudeau and his related entities.  In this regard, the FTC's proposed order would allow the monitor to retain other professionals, and it's reasonable to believe that the monitor would do so, in particular an accountant—who would also have to be paid.  The FTC asks that the monitorship be paid for by Trudeau himself.  But that money would have to come from somewhere. And any money available to Trudeau that goes to pay for a monitor is by definition unavailable for payment on the judgment and thus unavailable for consumer redress.  In the Court's view, the amount that a monitorship would divert for fees and expenses is likely to be significant:  that's been the experience with the FTC-approved trustee and redress administrator, who collectively were paid the lion's share—*sixty-four percent*—of the initial $15 million recovered from Trudeau, leaving a relatively modest amount for the consumers who were victims of Trudeau's scheme.

The potential advantages of a monitorship would be twofold.  As indicated, it would remove from the FTC the burden of pre-approval review for Trudeau's business activities, and depending on how things work out, it might also lighten the load on the Court in that regard.  Second, a monitorship theoretically might relieve some of the burden imposed upon the FTC, defense counsel, Trudeau's accountants, and the Court

in connection with the review of Trudeau's finances.

In the Court's view, however, the second of these two potential benefits is likely a mirage.  Given the level of contention in the case, the likelihood that the FTC would no longer feel the need to object or otherwise weigh in on Trudeau's financial reports, even if they were being vetted first by a monitor, is a pipedream.  And the history of the Trudeau-related litigation going back to 1998 suggests that Trudeau would feel no compunctions about pushing the limits of what he may permissibly do, and the FTC likewise would feel no compunctions about strenuously objecting to a significant part of his financial activities.

The same is true of pre-approval of business relationships.  *Someone* likely would be objecting to the monitor's recommendations on such proposals, either Trudeau or the FTC.  And thus there still would be, and would have to be, briefing, argument, and hearings.

In short, appointment of a monitor, in the Court's view, would unreasonably drain further the funds available for payment on the judgment, with no reasonably equivalent corresponding benefit.  The Court therefore denies the FTC's motion (dkt. 1251), without prejudice to renewed consideration if circumstances change materially.

**D.  Motion for approval of business activities (dkt. 1284)**

Trudeau has moved the Court to approve the following business activities:  (1)  a contract with Groove Digital, LLC and its sister companies to market and sell their online marketing software; (2) promotion of the previously-approved "money processes" seminar offered by Trudeau through his company TCTC, including use of a particular marketing brochure; and (3) purchase of the website naturalcures.com.

As accurately summarized by the FTC in its response, there are two relevant sets of restrictions that apply to Trudeau's business activities—in addition to prohibitions imposed by statutory, regulatory, and common law.  First, under the 2004 consent order, Trudeau is enjoined "from making or assisting others in making, expressly or by implication . . . any representation about the benefits, performance or efficacy of any product, program or service unless the representation is true and non-misleading."  Dkt. 56 at 10-11.  Second, under the 2010 order, Trudeau is enjoined from making representations of any sort in any infomercial aired or played on any television or radio media (including the Internet), and from "making, or assisting others in making, expressly or by implication," any representation about the "health benefit" of any "product, program or service" or that any "product, program, or service can cure, treat, or prevent any disease."  Dkt. 372 at 1-4.  These prohibitions have a carve-out—an exception—for truthful, non-misleading representations on television or radio media in connection with books, newsletters, and informational publications, *if* Trudeau satisfies five elements:  the publication does not reference, directly or indirectly, any branded or trademarked product, program or service that Trudeau promotes; the publication is not directly or indirectly an advertisement for any product, program or service, regardless of who promotes it; the publication is not promoted directly or indirectly in conjunction with any other product, program or service that is related to the content of the publication; Trudeau cannot misrepresent the publication's contents; and he cannot misrepresent the benefits, performance, or efficacy of any product, program, or service the publication references.  *Id.*

Those are the relevant prohibitions, and they have been around in this case for a

long time.  The pre-approval requirement is much more recent; it is contained in Judge

Gettleman's June 6, 2023 order.  That order states, in relevant part:

> Before agreeing to any business relationship, including those referred to in
> Trudeau's corrected motion to alter the judgment (Doc. 1119), Trudeau
> must submit his intended activities to the FTC for approval.  Trudeau is
> prohibited from acting through nominees.  If the parties, after good faith
> consultation, cannot reach agreement on any such plan, either party may
> file an appropriate motion with the court for determination.

Dkt. 1146 at 4.

The FTC objects to Trudeau's motion.  The FTC principally says that the Court

should eliminate the pre-approval requirement, which it characterizes as "unlawful" in

terms of what it imposes upon the agency.  The Court will return to that proposal in a

moment.  Alternatively, the FTC says that any business relationships should be

evaluated by its proposed monitor, to whom the Court should defer.  The Court has,

however, overruled the FTC's motion to establish a monitorship.

Regarding Groove Digital, the FTC says that it questions the authenticity of the

letter from Groove's CEO proposing the deal; Trudeau has not disclosed whether he

has any connections with Groove; Groove has not responded to inquiries by the FTC,

so it can't tell what exactly Trudeau would be doing; and the proposed agreement is not

with Trudeau himself but rather with TCTC, leaving up in the air whether the

arrangement would generate anything for consumer redress, which is payable by

Trudeau at this point.

The Court approves the proposed arrangement between Trudeau and Groove

Digital, but this approval is conditioned upon establishment and approval of terms

acceptable to the Court that will ensure that revenues obtained by TCTC or any other

Trudeau-related entity on this deal, or at least a significant portion of them, will go for

28

payment on the contempt judgment in the present case. Trudeau may not proceed until this is in place and approved.

And the Court wishes to make crystal clear what should be obvious: it is approving only the establishment of a relationship between Trudeau and/or his entities and Groove Digital; *not* any particular activities, statements, representations, or marketing that might be undertaken pursuant to that relationship. The Court *has not been asked to do so*, nor would it do so if asked: the Court is not going to do anything that could be viewed as an advance imprimatur of whatever Trudeau or others end up doing pursuant to a given business relationship. The June 2023 order requires advance approval of *relationships*, not particular statements, representations, or marketing campaigns. In this regard, Trudeau remains subject to the prohibitions and requirements imposed by the Court's orders in this case, as well as any applicable statutory, regulatory, and common law prohibitions and requirements.

Next is the proposed promotion of "money processes" seminars to be conducted via TCTC. In response, the FTC says that "Trudeau does not need the FTC's preapproval to run the 'Money Processes' ad (though the FTC reserves the right to pursue enforcement activity should he elect to use the ad)." Dkt. 1307 at 20. The FTC is right; the June 2023 order requires preapproval for business relationships, not particular communications. Thus the Court will not address the proposal for advance approval of the ad copy. Trudeau is on his own on that one and remains fully subject to the restrictions imposed in this case and, of course, by the law.

The last business relationship for which Trudeau seeks preapproval via this motion is the purchase of the website naturalcures.com. The FTC's first objection is

that "Trudeau has not committed to anything and, consequently, there is nothing to review." *Id.* at 25. The FTC also objects that it is highly likely that Trudeau will use the website to engage in fraud and misrepresentation. *Id.* The latter objection is hypothetical at this point and thus is not a basis to disapprove the website acquisition. The FTC's first objection, however, has a more solid foundation. Trudeau's motion does not tell the Court anything firm regarding the purchase price—just that it has to be negotiated and will be "no more than $1 million." Just as importantly, the motion says nothing about who (Trudeau? TCTC? some other entity?) will own the website and how revenues it generates will be distributed—including for payment on the judgment. These are necessary components for the Court to consider in determining whether to approve any "business relationship" in the way contemplated by the June 2023 order. The Court therefore denies this aspect of Trudeau's motion, without prejudice.

The Court notes that Trudeau has suggested at various points in his submissions that the FTC should not be heard later to object to some or all of his activities on different grounds or, perhaps, on bases that it had the opportunity to assert earlier but bypassed. That's an easy one: it's wrong. Trudeau's argument is not supported by any conceivably applicable legal authority. To be clear, the FTC is not estopped from anything with regard to Trudeau's businesses and activities, nor is the Court. Regarding the FTC, it retains its authority to bring appropriate proceedings to enforce the law and the consent orders and other orders entered in this case, as well as to refer matters to other regulatory and enforcement agencies.

The Court returns, finally, to the FTC's request to eliminate the preapproval process. The FTC argues that this provision is "unlawful." The Court need not

determine that point.  But it wishes to point out to the FTC that if the legality of this aspect of Judge Gettleman's June 2023 order was a serious question, one would have expected an *immediate* motion to reconsider or an appeal.  The FTC did neither.

But that aside, the FTC preapproval requirement, in practice, does not appear to be serving any useful purpose.  Judge Gettleman's expectation and hope presumably was that the requirement would result in some winnowing of proposals by Trudeau and agreed-upon approval of other proposals.  That, however, is not the way it has worked out.  The FTC preapproval requirement has been counterproductive, or at least unproductive.  The Court eliminates this requirement, effective on September 20, 2024.

This does not relieve Trudeau from the obligation to report in his bimonthly reports regarding "the status of any business relationship he has entered into or intends to enter into," as required by Judge Gettleman's June 6, 2023 order.  Dkt. 1145 at 4.  Indeed, as discussed below, the Court intends to assess whether this this requirement needs to be made more robust in light of the elimination of the FTC preapproval requirement.

Looking a bit further down the road, the Court would prefer to also eliminate the requirement for court preapproval of Trudeau's business relationships.  The Court is ill-equipped to evaluate proposed business relationships in advance; courts have no particular expertise in this regard.  Trudeau's business activities are already regulated by previous orders in this case and by statutory, regulatory, and common law.  If he engages in unlawful or otherwise prohibited activity, contempt proceedings can be initiated, and/or the FTC can commence a new lawsuit.  That should be sufficient.  Another problem with preapproval by the Court of a business relationship is that it sets

up a risk that the Court will be seen, or portrayed, as having placed its imprimatur upon whatever follows in that business relationship.

The Court will not, however, eliminate the court-preapproval requirement without first considering and initiating preventative measures. As discussed earlier, Trudeau is currently required to remit to the FTC only a specified percentage of his GIN Unite income, any other income he receives personally, and whatever is left in KTFC after reasonable business expenses. There's nothing in place in this regard for TCTC, which has taken in significant revenues, let alone for any other entity or venture Trudeau may establish in the future. Without a mechanism governing when, how, or in what amounts any such funds have to be distributed to Trudeau or remitted, in whole or in part, to the FTC, this amounts to a significant loophole. The Court intends to close the loophole. Among other things, the Court does not intend to allow a situation in which Trudeau starts up a business venture, puts it in a corporate or entity name, it makes money, and then Trudeau does not apply those revenues to the judgment and says (as he is currently saying regarding TCTC) that there's no mechanism requiring the revenues, or any part of them, to be paid to him or to the FTC.[6] Rather, the current process will need to be modified to establish how monies generated for *any* entities controlled by or affiliated with Trudeau will be contributed to the FTC on the judgment and/or distributed to Trudeau for that purpose.

---

[6] Under the current regime, for example, Court approval of the naturalcures.com purchase would enable Trudeau to buy the website and then cause its revenues to be directed to TCTC, which could then pay for golf outings, cigar events, Trudeau's business dinners, travel to and from supposed work-related activities, phone bills, or whatever—without any of it going to the FTC for payment of the contempt judgment. That's inappropriate given the large balance remaining due on the judgment.

32

For this reason, as discussed earlier, the Court directs the parties to promptly confer and attempt, diligently and in good faith, to reach an agreement regarding disposition of revenues received by Trudeau's controlled, affiliated, and related entities, including KTFC, TCTC, and any that may be established in the future. *See supra* at 23. These entities should be permitted to retain a reasonable amount of money (preferable, in specified amounts or percentages) in anticipation of reasonable and legitimate business expenses, as estimated in advance and subsequently documented; they should be able to pay their employees reasonable but not excessive wages; and they should be able to pay their trade creditors in a timely fashion. But the Court will not permit them to be used to accumulate funds that, in turn, are used in significant part to pay expenses that Trudeau would otherwise pay himself or to support a high-end lifestyle for him, while the contempt judgment just sits there unpaid. The Court wishes to emphasize its direction to both sides to address this point *diligently and in good faith* to attempt to reach an agreement. As the Court has indicated, any party that does not do that will in effect be forfeiting its seat at the table.

While discussing this topic, the parties are also directed to review the current orders (in particular the June 6, 2023 order) regarding whether they include a sufficiently robust reporting requirement regarding Trudeau's ongoing business activities, particularly in light of the elimination of the FTC preapproval requirement and the future elimination of the requirement for Court preapproval. They are to discuss possible changes, consistent with the Court's direction, diligently and in good faith as well. The Court does not intend for the elimination of the preapproval requirement(s) to create an informational vacuum regarding Trudeau's day-to-day and longer-term

business activities, at least so long as the contempt judgment remains unpaid.

### E.    The $2 million infomercial bond requirement

Trudeau asks the Court to eliminate the requirement, found in the 2010 order, to post a $2 million performance bond, effectively as security against future consumer harm from infomercials that Trudeau may disseminate.  The Court notes that this requirement also has the effect of requiring Trudeau to have some skin in the game if and when he chooses to create infomercials:  he can't do it scot-free.

At this point, Trudeau has not sufficiently made the case even for reducing the amount of the performance bond, let alone eliminating it.  And this is where the fact that the ongoing accumulation of funds by the Trudeau-controlled entities without any distribution to the FTC or to Trudeau to pay to the FTC—which, at least for TCTC, the Court's orders do not specifically preclude—comes back to bite.  The infomercial bond is, and should be, an expense of Trudeau and his businesses.  He has accumulated significant funds in his business entities, and he has not made the case that he is financially incapable of putting up the bond.  The Court would entertain a focused, and properly supported, motion to *reduce* the bond.  But the Court denies Trudeau's request to eliminate the bond requirement altogether.

The Court notes, in this regard, that Trudeau has suggested—actually he has *affirmatively said*—that if the Court doesn't see this one his way, he will simply "retire," presumably retreat to his home, and thus generate no more money for consumer redress.  *See, e.g.*, Dkt. 1311 at 7; Dkt. 1238 at 5.  The Court feels constrained to say that it does not appreciate this threat (which is exactly what it is).  But that aside, it's not quite that easy.  Trudeau is under an obligation to make diligent efforts to comply with

the Court's orders, including the order requiring payment to the FTC. *See* Order of June 6, 2023 (dkt. 1146) at 2 (citing *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995)). If he instead decides, figuratively speaking, to sit in the corner and hold his breath until he turns blue, there is at least some risk that he will be in contempt. Trudeau would be well advised to keep that in mind as he decides how to conduct himself going forward.

### F. International travel prohibition

Trudeau is currently prohibited from traveling internationally, via an order entered by Judge Gettleman in June 2013. *See* dkt. 700. Trudeau has moved the Court to lift this prohibition. *See* dkt. 1242, 1275. He says it is "counterproductive" because, among other things, it prevents him from conducting GIN Unite-related fundraising activities abroad, which is significant because, he says, over sixty percent of GIN's members are located outside the U.S. Trudeau argues that "[m]ember conferences are GIN Unite's lifeblood," *id.* at 2, and that the preclusion of international travel prevents him from taking advantage of such opportunities and any resulting income—seventy-five percent of which would go to the FTC. He says that "[s]imilar concerns apply to Trudeau's own business of [TCTC] and Trudeau's work for [KTFC]." *Id.*[7]

In response, the FTC points out that that the prohibition was imposed by Judge Gettleman in 2013 following "Trudeau's attempt to flee to his luxury home in Switzerland," dkt. 1252 at 1, and it contends the prohibition remains a viable and

---

[7] Trudeau also contends that the travel restriction "has no proper remaining role" because "there is nothing Trudeau can do to 'purge' himself of this restriction." *Id.* at 3. That's quite clearly wrong; paying off the remainder of the judgment would purge the contempt, or at least this particular aspect of the contempt judgment.

appropriate exercise of the Court's equitable power to preserve its ability to compel repayment from Trudeau.  *See id.* at 2 (citing *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 187-90 (7th Cir. 2011)).  The FTC also argues that allowing international travel would remove the threat of coercive incarceration and thus render the contempt monetary judgment ineffective.  And, it argues, this would provide "another opportunity for Trudeau to spend extravagantly under the guise of his businesses' reasonable operating expenses."  *Id.*

The key problem with Trudeau's motion is that (as the FTC pointed out in response) it did not identify any specific business opportunity that he lost, or any specifics about any particular opportunities he might have in the future.  Without this, the motion basically came across as a request to approve an overseas vacation.  For these reasons, the Court denies the motion (dkt. 1242) without prejudice.

The Court is willing to entertain specific, and fully supported, requests for international travel for specific, and real, opportunities along the lines of what Trudeau suggests.  But to even get through the front door, the request will have to include, at a minimum, a detailed description of the proposed activities and itinerary and who else would be involved; a full budget (anticipated expenses and revenue, in detail); an explanation of what advance payments and commitments would be required and what they would cost; an undertaking regarding how and by whom expenses will be paid or advanced; an estimate of the amount that Trudeau and GIN Unite expect to realize; and a proposal for a binding commitment regarding when, how, and in what amounts any sums that are realized will be paid on the contempt judgment.

After briefing on the original motion was complete, Trudeau filed a "supplement"

that contained more information regarding his proposal.  It does not appear that the Court set a schedule on this motion or that the FTC ever filed a response.  The Court strikes the supplement (dkt. 1275) without prejudice to resubmission by Trudeau consistent with the requirements outlined by the Court in the previous paragraph.

## G.    Accounting and expert expenses

Judge Gettleman's June 16, 2023 order permits Trudeau to raise funds for a "legal defense fund" separate from KFTC.  The order states:

> Trudeau may establish a new legal defense fund separate from KTFC. The sole purpose of the new legal defense fund will be to collect third-party contributions to pay Trudeau's legal fees and costs and to remit such contributions to Trudeau's counsel.  One hundred percent (100%) of all contributions to the fund shall be applied toward Trudeau's legal fees and costs, net of any reasonable expenses incurred to create and maintain the fund.  Trudeau may solicit contributions to his legal defense fund, provided that any such solicitations expressly state that the sole purpose of any contributions to the fund are to pay Trudeau's legal expenses and that such contributions are not in lieu of any payments that would otherwise be made to KTFC.  Trudeau shall submit bi-monthly Reports detailing the income and expenses of the legal defense fund consistent with his other reporting requirements.

Dkt. 1151 ¶ 7.  The parties dispute whether the phrase "legal fees *and costs*" allows Trudeau to pay accounting and expert fees.  The Court concludes the order allows this, if (but only if) the accountant is retained by counsel and the particular fees charged *are directly related to the present lawsuit.*  An example would be preparation of the bimonthly financial reports that are required by court order.  The June 16 order does *not* authorize use of the legal defense fund for the regular accounting expenses of Trudeau's businesses, for making proposals to approve business opportunities, and so on.

In addition, the Court wishes to make clear that the legal defense fund allowed by

the June 16 order *must be a separate account* from any other account held by KTFC, Trudeau, or any of his businesses.  (It appears this has now been done, but there may previously been some confusion on this point.)  And as previously discussed, the reporting must include an itemization of the contributions and contributors; and for any accounting or expert expenses that are paid, there must be a verification, including by counsel, that they are directly related to the present lawsuit.  Expenditures will be subject to review by the Court for determination of compliance with applicable orders.

Trudeau has separately moved, more recently, to allow his businesses "to pay their outside legal and accounting litigation-related expenses."  Dkt. 1312 at 1.  The Court denies the motion, without prejudice to refiling.  The request is not properly supported or anywhere close to it.  There is no indication of the amounts involved; there is no proposal for any meaningful guardrails to determine what is "litigation-related"; and there is not a good explanation (actually, there is *no* explanation) of why this shouldn't come from the already-permitted legal defense fund rather than as an expenditure that effectively reduces the business-related income available for payments on the contempt judgment.  In addition, given the current state of affairs—in which Trudeau has accumulated significant funds in TCTC—granting Trudeau's proposal could enable him to (for example) take all the accumulated funds, pay them over to counsel, and then turn his pockets inside out and claim he can no longer afford to post the performance bond but should be allowed to plow ahead into new infomercials anyway.  As the Court has indicated, all of the separate pieces discussed in the parties' respective requests and in this order are pieces of a single whole, and they should be dealt with as such rather than in a piecemeal way.

**H.** **Effect of FDCPA**

Trudeau has contended that the Federal Debt Collection Practices Act caps at twenty-five percent the amount that he may be ordered to pay on the judgment from his earnings. The Court ruled orally a number of months ago, at a status hearing held on December 13, 2023, that this cap is inoperative with regard to the $37.6 million contempt judgment. The Court indicated that it would make a written ruling later, but has reconsidered and does not see a need to do that, beyond the comments in this section.

The FDCPA provides "the exclusive civil procedures for the United States to recover a judgment on a debt," 28 U.S.C. §3001(a)(1), but it "shall not be construed to supersede or modify . . . the authority of a court . . . to exercise the power of contempt under any Federal law." *Id*. § 3003(c)(8)(C). In this case we are not dealing with a preexisting debt, and we are not dealing with an ordinary civil judgment that the FTC is attempting to collect by garnishment or otherwise. Rather, we are dealing with a contempt order. The $37.6 million judgment was imposed as part of a civil contempt order, and the collection mechanism ordered by Judge Gettleman is part and parcel of the civil contempt order. Thus collection is within the specific exception set out in section 3008(c)(8)(C) of the FDCPA.[8]

The Court also notes that even if the FDCPA's limitations—including related limitations on garnishment—apply, Trudeau *specifically agreed* to pay over an amount

---

[8] *CFTC v. Escobio*, 946 F.3d 1242 (11th Cir. 2020), cited by Trudeau for the proposition that a party cannot be held in contempt for failure to pay a money judgment, simply does not govern here. In this case we do not have a preexisting money judgment that the Court is enforcing via contempt. Rather what is at issue is an order to pay imposed as a contempt sanction. See dkt. 372 at 13-14.

that exceeded the FDCPA's cap.  He expressly offered to pay more than the twenty-five percent cap imposed by limitations on wage garnishment, and Judge Gettleman expressly took him up on that offer.  Thus Trudeau affirmatively waived the limitations set out in the FDCPA even if they apply.  And once Judge Gettleman entered the formal order regarding payment in June 2023, Trudeau could have appealed and/or sought reconsideration if he believed the order ran afoul of the FDCPA.  He did not do so.

For these reasons, the Court overrules Trudeau's contention that the FDCPA cap applies and need not address the FTC's alternative contentions on this point.

## I.     Other issues

An issue was raised some months ago regarding what amount remains due and owing on the $37.6 million judgment.  One of the specific questions is, is it $37.6 million less whatever the FTC has collected and Trudeau has paid?  Or should the fact that some consumers did not cash their refund checks (and, for some, thus weren't sent a second refund check) be taken into account?  There may be other related questions as well.

It is time to get this decided.  The Court's order will require the parties to submit position papers on this point.

### Conclusion

The Court:  (1) overrules the FTC's request for coercive incarceration; (2) denies the FTC's motion to impose a monitorship [1251]; (3) denies without prejudice Trudeau's motion to lift the international travel restriction [1242] and strikes without prejudice his supplemental motion on this point [1275]; (4) denies without prejudice Trudeau's motion to eliminate the $2 million infomercial performance bond requirement; and (5) denies

without prejudice his motion to allow his businesses to pay legal and accounting expenses [1312].  The Court also directs the parties to confer in good faith on the various topics outlined in the body of this opinion and submit a joint status report on October 14, 2024.  On that same date, the parties are to submit position papers regarding what amount remains due and owing on the contempt judgment.  Finally, the Court directs Trudeau to file, within ten days of today's date, a verified statement with details on the $54,000 computer expenditure as outlined in the body of this opinion.

Date:  September 13, 2024

_____
MATTHEW F. KENNELLY
United States District Judge