## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | )  Case No. 03-C-3904 |
| | ) |
| v. | )  Hon. Matthew F. Kennelly |
| | ) |
| KEVIN TRUDEAU, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CONSENT ORDER CONCERNING PAYMENTS

The Federal Trade Commission ("FTC") and Defendant Kevin Trudeau ("Trudeau") jointly moved the Court to enter this Consent Order. For good cause shown, the Court **ORDERS** as follows:

### DEFINITIONS

(1)     "2023 Reporting and Compliance Requirements" include all reporting or compliance requirements imposed on either party (or any entity Trudeau Controls) by any Court Order on or after June 6, 2023 (including, without limitation, reporting and compliance requirements imposed pursuant to ECF No. 1146 at 3-4), except for the prohibition on Trudeau acting through nominees (*see* ECF No. 1146 at 3).

(2)     "Conduct Restrictions" refer to the Stipulated Final Order for Permanent Injunction, Sections I through X in ECF No. 56 (Sept. 2, 2004), as modified by ECF No. 372 (June 2, 2010).

(3)     "Control" includes both direct or indirect control, and both legal or beneficial control. However, notwithstanding anything else herein, an entity is not under Trudeau's Control unless Trudeau can legally or practically direct a material portion of its financial affairs. The existence of a contractual relationship between Trudeau and another entity does not,

standing alone, establish Control (unless the contractual relationship allows Trudeau to legally or practically direct a material portion of another entity's financial affairs).

(4)     "Entry Date" means the date the Court enters this proposed Consent Order.

(5)     "Filing Date" means the date this proposed Consent Order is filed.

(6)     "Gross Income" is meant to be defined in the broadest possible manner.  It includes any income of any sort to Trudeau without regard to deductions for taxes, overhead, expenses, or any other possible deduction.  "Gross Income" includes, without limitation, all money received by Trudeau such as sales revenue of any sort, affiliate payments, endorsement payments, compensation, donations, contributions, or gifts made to Trudeau regardless of the purpose, or other payments or transfers of anything of value to others on Trudeau's behalf or for Trudeau's benefit.  However, notwithstanding the foregoing, Gross Income does not include transfers exclusively between Trudeau Parties.

(7)     "Payment Period" means the two calendar months after the conclusion of the prior Payment Period, except that the first Payment Period will run from one hundred and twenty (120) days after the Filing Date until the conclusion of the fourth full calendar month after the 120-day period concludes.  For example, if the Filing Date is November 1, 2024, the first payment will be due July 21, 2025, based on all gross income in March, April, May, and June 2025.

(8)     "Trudeau" means Kevin Trudeau, any entity under his Control, or any nominee of Kevin Trudeau (although Kevin Trudeau remains prohibited from acting through nominees, *see* ECF No. 1146 (June 6, 2023) at 3).

(9)     "Trudeau Party" means any person or entity that falls within the definition of Trudeau.

## PROVISIONS

(10)     The Court incorporates by reference all prior findings of fact and law in this matter, except that the 2023 Reporting and Compliance Requirements are VACATED.

(11)     The prohibition on Trudeau's international travel, ECF No. 699 (June 25, 2013) is VACATED.

(12)     The asset freeze in ECF No. 1381 (Sept. 13, 2024) is VACATED.

(13)     Notwithstanding anything else herein, the Conduct Restrictions and all other provisions of ECF No. 56 as modified by ECF No. 372 remain valid and enforceable.

(14)     Within ten business days of the Entry Date, Trudeau will transfer $725,000 to the FTC, which will be applied against his obligations pursuant to ECF No. 372 (June 2, 2010).

(15)     Within twenty-one (21) days of the conclusion of each Payment Period, Trudeau will transfer 15% of his Gross Income during that Payment Period to the FTC, which will be applied against his obligations pursuant to ECF No. 372 (June 2, 2010).

(16)     Nothing in this Order constitutes an additional waiver or limit of any right to engage in any type of speech.

(17)     Defendant's total remaining payment obligation pursuant to ECF No. 372 (June 2, 2010) is $8,000,000.  This $8,000,000 is in addition to all sums already paid prior to the Entry of this Order.  He will not be assessed any additional interest, administrative costs, or any other costs or fees.  Once he pays $8,000,000 (in addition to all sums already paid), his payment obligations pursuant to ECF No. 372 will be satisfied.

(18)     With respect to the $8,000,000 (and all sums already paid, and any interest earned thereon), Trudeau relinquishes dominion and all legal and equitable right, title, and interest in all assets paid, transferred, assigned, or relinquished pursuant to this Order, or any prior Order in this matter, and he may not seek the return or refund of any of these funds.  Trudeau will have no input into how the Commission makes further consumer redress distributions in this matter, nor will he have any right to object to any aspect of any consumer redress distribution procedure.  To the extent it is impractical or impossible to use any portion of the $8,000,000 (and all sums already paid) for consumer redress, that portion will be disgorged to the United States Treasury.

**SO ORDERED**, this 15th day of November 2024.

MATTHEW F. KENNELLY
UNITED STATES DISTRICT JUDGE